No. 02-898C
(Judge Wheeler)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

VERMONT YANKEE NUCLEAR POWER CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S MOTION TO CONSOLIDATE OR,
IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS
PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

MARIAN E. SULLIVAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, NW, 8th Floor
Washington, D.C. 20530
Telephone: (202) 307-0365
Facsimile: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of the General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington D.C. 20585

May 3, 2006

Attorneys for Defendant

## TABLE OF CONTENTS


Page

DEFENDANT'S MOTION TO CONSOLIDATE OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b) . . . . 1

BACKGROUND . . . . 2

DISCUSSION . . . . 4

I. CONSOLIDATION IS APPROPRIATE UNDER THE CIRCUMSTANCES BECAUSE BOTH CASES INVOLVE MULTIPLE COMMON FACTUAL AND LEGAL ISSUES, AND, IN THE ABSENCE OF CONSOLIDATION, THERE IS A SUBSTANTIAL RISK OF INCONSISTENT JUDGMENTS BETWEEN THE CASES . . . . 4

A. Standards For Consolidation . . . . 4

B. Vermont Yankee's and ENVY's Cases Satisfy The Criteria For Consolidation . . . . 6

1. Vermont Yankee's And ENVY's Cases Share Common Issues Of Fact And Law . . . . 6

2. Neither Vermont Yankee Nor ENVY Would Be Prejudiced By Consolidation . . . . 13

3. The Government Will Be Heavily Prejudiced If The Two Cases Are Not Consolidated . . . . 14

II. IF THE COURT DECLINES TO CONSOLIDATE THESE CASES, THE COURT SHOULD ISSUE A SUMMONS TO JOIN ENVY AS A THIRD-PARTY DEFENDANT IN VERMONT YANKEE'S CASE AND, FURTHER, SHOULD ISSUE RCFC 14(b) NOTICES TO ENVY AND VERMONT YANKEE . . . . 15

CONCLUSION . . . . 17

## TABLE OF AUTHORITIES

### CASES

Allfirst Bank v. Progress Rail Serv. Corp.,
178 F. Supp. 2d 513 (D. Md. 2001) . . . . . 5

Bank of Montreal v. Eagle Assocs.,
117 F.R.D. 530 (S.D.N.Y. 1987) . . . . . 5

Boston Edison Co. v. United States,
67 Fed. Cl. 63 (2005) . . . . . 6, 7, 12

Cable Belt Conveyors, Inc. v. Alumina Partners of Jamaica,
669 F. Supp. 577 (S.D.N.Y. 1987) . . . . . 5

Del-Rio Drilling Programs, Inc. v. United States,
17 Cl. Ct. 844, 849 (1989) . . . . . 16

Entergy Nuclear Indian Point 2, LLC v. United States,
62 Fed. Cl. 798 (2004) . . . . . 5, 6, 12

Farrell v. American Flyers Airline Corp.,
42 F.R.D. 341 (S.D.N.Y. 1967) . . . . . 7

Harris v. L&L Wings, Inc.,
132 F.3d 978 (4th Cir. 1997) . . . . . 5

Karuk Tribe of California v. United States,
27 Fed. Cl. 429 (1993) . . . . . 5, 8

Mylan Pharmaceuticals Inc. v. Henney,
94 F. Supp. 2d 36 (D.D.C. 2000), rev'd on other grounds sub nom.
Pharmachemie B.V. v. Barr Laboratories, Inc., 276 F.3d 627
(D.C. Cir. 2002) . . . . . 7, 8

Philadelphia Suburban Corp. v. United States,
211 Ct. Cl. 354 (1976) . . . . . 16

Rochester Gas & Electric Co. v. United States,
65 Fed. Cl. 431 (2005) . . . . . 9

St. Bernard Gen. Hosp., Inc. v. Hospital Serv. Assoc.,
712 F.2d 978 (5th Cir. 1983) . . . . . 5

Uram v. United States,
216 Ct. Cl 418, 420 (1978) . . . . . 16

**STATUTES AND REGULATIONS**

10 C.F.R. § 961.11 . . . . . passim

31 U.S.C. § 3727 . . . . . 8

41 U.S.C. § 15 . . . . . 8

41 U.S.C. § 114(b) . . . . . 1, 16

42 U.S.C. §§ 10101 et. seq. . . . . . 8

42 U.S.C. § 10222(b)(3) . . . . . 9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| VERMONT YANKEE NUCLEAR POWER CORPORATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 02-898C |
| | ) | (Judge Wheeler) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO CONSOLIDATE OR,
IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS
PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)

Pursuant to Rules 42 and 42.1 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court consolidate two cases, Vermont Yankee Nuclear Power Corporation v. United States, No. 02-898C (Fed. Cl.), and Entergy Nuclear Vermont Yankee, LLC, et. al. v. United States, No. 03-2663C (Fed. Cl.). Both of these cases are currently pending before the same judge, involve the assignor and assignee of the same contract with the Department of Energy ("DOE"), and have the same counsel. Further, both cases currently are in the same procedural posture. Consolidation will promote the efficient administration of justice and prevent the potential for inconsistent rulings between the two cases.[1] If the Court declines to consolidate the Vermont Yankee and Entergy Nuclear Vermont Yankee cases, we respectfully request that the Court: (1) issue a summons pursuant to RCFC 14(a) to join Entergy Nuclear Vermont Yankee ("ENVY") as a third-party defendant upon a contingent claim in Vermont Yankee; and (2) issue binding notice pursuant to RCFC 14(b) and the Contract Settlement Act, 41 U.S.C. § 114(b), to ENVY in Vermont Yankee

[1] The Government is filing this motion in both the Vermont Yankee and Entergy Nuclear Vermont Yankee cases.

and to Vermont Yankee Nuclear Power Corporation ("Vermont Yankee") in Entergy Nuclear Vermont Yankee.

BACKGROUND

Vermont Yankee was the owner and operator of the Vermont Yankee Nuclear Power Station ("Power Station") from the 1970s through July 31, 2002. Vermont Yankee First Amended Compl. ¶ 2. On or about June 15, 1983, Vermont Yankee and DOE entered into the Standard Contract for Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste ("Standard Contract"), 10 C.F.R. § 961.11 (1983). ENVY Compl. ¶ 9.[2] The Standard Contract required DOE to begin "[t]he services to be provided by DOE" under the Standard Contract "not later than January 31, 1998." 10 C.F.R. Part 961, Art. II. Although the Standard Contract provided that the Government would begin its program of accepting spent nuclear fuel ("SNF") from the commercial industry by January 31, 1998, 10 C.F.R. § 961.11, Art. II, the Standard Contract did not specify any mandatory minimum "rate" at which DOE would be required to accept the industry's SNF. Rather, the Standard Contract contained a contractual mechanism by which DOE would develop a queue for SNF acceptance that would determine the particular time DOE would accept SNF from each Standard Contract holder.[3]

---

2/ Vermont Yankee, in its amended complaint, alleges that it entered into the Standard Contract with DOE on or about July 12, 1983. However, the copies of the Standard Contract with Vermont Yankee that the Government has in its possession are dated June 15, 1983. ENVY's complaint alleges the same June 15, 1983 date.

3/ All commercial nuclear power reactor owners entered into a Standard Contract with DOE, and the basic terms of each Standard Contract are virtually identical. 10 C.F.R. § 961.11 (1983).

Vermont Yankee sold the Power Station to ENVY on July 31, 2002. Vermont Yankee First Amend. Compl. ¶ 3; ENVY Compl. ¶ 2. As part of the sale, Vermont Yankee assigned its contract with DOE to ENVY, but alleges that it reserved rights to pursue claims for damages against the Government, "including pursuit of damages for diminished selling value of the Power Station." Vermont Yankee First Amend. Compl. ¶ 3; ENVY Compl. ¶ 2.[4] However, the letter that Vermont Yankee sent to DOE notifying it of the assignment states: "Vermont Yankee Nuclear Power Corporation, pursuant to the Purchase and Sale Agreement for the Station, has retained the rights to any an all damages and other remedies that might accrue from the Department of Energy's breach of its obligations under the [Standard] Contract to the extent of the one-time fee for fuel used to generate electricity prior to April 7, 1983." Exhibit 1 (emphasis supplied).

On September 2, 2004, Vermont Yankee's First Amended Complaint was filed by leave of the Court.[5] In its three-count complaint, Vermont Yankee asserted that DOE breached the Standard Contract and sought damages based upon the breach.[6] Vermont Yankee's alleged

---

[4] In another notion being filed today, we discuss the fact that we can find no language in Vermont Yankee's assignment of claims to ENVY that purports to reserve any diminished value claim.

[5] The Government filed an answer to Vermont Yankee's original complaint on October 30, 2002. Because the cases have been stayed since the filing of Vermont Yankee's amended complaint and the filing of ENVY's original complaint, the Government has not yet answered either of these complaints.

[6] Prior to the filing of Vermont Yankee's first amended complaint, the Government had filed a motion to dismiss Vermont Yankee's taking claim and motions for partial summary judgment regarding the issues of the rate of SNF acceptance and the acceptance of Greater-Than-Class-C radioactive waste. In response to the motion for summary judgment regarding the rate of acceptance, Vermont Yankee filed a cross-motion for summary judgment on liability. None of these motions have been decided. We understand that Vermont Yankee will be filing a new

damages as a result of the breach included the costs to provide "extended on-site storage for the Power Station's SNF prior to the sale of the Power Station," as well as the dimunition in value of the Power Station as the result of DOE's breach. Vermont Yankee First Amend. Compl. ¶ 22-26. Vermont Yankee also asserted a breach of the implied covenant of good faith and fair dealing and an uncompensated taking. Id. at ¶¶ 27-35.

On November 12, 2003, ENVY filed a three-count complaint in the Court of Federal Claims. ENVY claimed that DOE breached the Standard Contract and sought to recover as damages the "substantial additional costs to provide for extended on-site storage of [] SNF" at the Power Station. ENVY Compl. ¶ 21-25. Based upon DOE's alleged breach of the Standard Contract, ENVY also claimed a breach of the implied covenant of good faith and fair dealing and a taking without just compensation. Id. at ¶¶ 26-34.

## DISCUSSION

### I. CONSOLIDATION IS APPROPRIATE UNDER THE CIRCUMSTANCES BECAUSE BOTH CASES INVOLVE MULTIPLE COMMON FACTUAL AND LEGAL ISSUES, AND, IN THE ABSENCE OF CONSOLIDATION, THERE IS A SUBSTANTIAL RISK OF INCONSISTENT JUDGMENTS BETWEEN THE CASES

#### A. Standards For Consolidation

Motions to consolidate are governed by RCFC 42, which provides the following when actions involve a common question of law or fact:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all matters in issue in the actions; it may order all the actions consolidated; and it may make any such orders concerning

motion regarding liability, pursuant to the Court's Second Amended Scheduling Order, issued April 26, 2006.

> proceedings therein as may tend to avoid unnecessary costs or delays.

RCFC 42(a).

In determining whether consolidation is appropriate, the Court must weigh the interest of judicial economy against the potential for delay, confusion, and prejudice that may result from consolidation. See Karuk Tribe of California v. United States, 27 Fed. Cl. 429, 433 (1993). Indeed, "[o]ne of the primary objectives of consolidation is to prevent separate actions from producing conflicting results, which can occur when both cases require judicial determinations of the same facts." Id. (quoting Bank of Montreal v. Eagle Assocs., 117 F.R.D. 530, 532 (S.D.N.Y. 1987); see Cable Belt Conveyors, Inc. v. Alumina Partners of Jamaica, 669 F. Supp. 577, 581 (S.D.N.Y. 1987) (consolidation was appropriate where different factual findings between the two cases could result in inconsistent damages awards).

Courts have held that, where two plaintiffs have sued the same defendant, alleging the same misconduct, and answered with the same defenses, the two cases share "common issues of law and fact," justifying consolidation. Harris v. L&L Wings, Inc., 132 F.3d 978, 981 n.2 (4th Cir. 1997); see Allfirst Bank v. Progress Rail Serv. Corp., 178 F. Supp. 2d 513, 520 (D. Md. 2001) (where the parties are the same, the claims and defenses are identical, and the same contract must be construed in each case, that consolidation is appropriate).

The decision whether to consolidate two cases is within the discretion of the Court. Karuk Tribe, 27 Fed. Cl. at 433; see Entergy Nuclear Indian Point 2, LLC v. United States, 62 Fed. Cl. 798, 802 (2004). Moreover, the Court may order consolidation despite the opposition of the parties. See St. Bernard Gen. Hosp., Inc. v. Hospital Serv. Assoc., 712 F.2d 978, 989 (5th Cir. 1983); see Entergy Nuclear Indian, 62 Fed. Cl. at 802. "The court should take the positions

of the parties into account in its analysis but need not accord the parties' views dispositive weight." Boston Edison Co. v. United States, 67 Fed. Cl. 63, 66 (2005) (citing Entergy Nuclear Indian, 62 Fed. Cl. at 802).

### B. Vermont Yankee's and ENVY's Cases Satisfy The Criteria For Consolidation

#### 1. Vermont Yankee's And ENVY's Cases Share Common Issues Of Fact And Law

It is beyond dispute that Vermont Yankee's and ENVY's cases share common issues of fact and law. Indeed, these two cases involve the same contract, the same nuclear power facility, and the same alleged breach of contract. As noted above, Vermont Yankee originally held the Standard Contract at issue in this case, but assigned that contract to ENVY with notice to DOE dated August 21, 2002. Now, both Vermont Yankee and ENVY are suing the Government for damages allegedly resulting from the partial breach of that single contract and seek to recover as damages the "substantial additional costs to provide for extended on-site storage" of the SNF at the facility. Vermont Yankee Amend. Compl. ¶ 22; ENVY Compl. ¶ 21.

Vermont Yankee and ENVY may claim that their individual damages theories are different and distinct and that, therefore, the Court should not consolidate the two cases. Any such assertion would be untrue. In its complaint, Vermont Yankee asserts that "the breach diminished the value of the Power Station, such that Vermont Yankee would have received a higher price for selling the Power Station." Vermont Yankee Amend. Compl. ¶ 26. Vermont Yankee then asserts that it should recover the diminished value that it received upon its sale of the Power Station as damages in this case. It has also purported to assign its contract claims to

ENVY, but retain a vaguely defined right to recover those damages "that might accrue" from the contract breach "to the extent of the one-time fee." Exhibit 1.

Conversely, ENVY is seeking to recover as damages in its litigation all of the costs that it allegedly incurred and will incur in storing SNF as a result of DOE's delays. That is, even though (according to Vermont Yankee) ENVY has received compensation from Vermont Yankee – in the form of a reduced purchase price – for DOE's delay in beginning SNF acceptance and was allegedly able to compensate itself, at least in part, for continuing additional SNF storage costs through that reduced purchase price, ENVY is seeking to recover all of those same costs from DOE in its litigation. As a result, Vermont Yankee and ENVY are both claiming extensive damages from the United States based upon overlapping and duplicative theories of recovery. If the Court granted both plaintiffs' claims, the United States would pay damages twice for the same partial breach of contract under the same Standard Contract, based upon duplicative theories of recovery. That type of double liability would be inappropriate, and the possibility of that result is eliminated if the Court consolidates these cases. Indeed, as this Court recently recognized in partially granting the Government's motion for consolidation under identical circumstances in Boston Edison Co., 67 Fed. Cl. at 66, "[t]he possibility of an overlapping recovery deserves serious attention."

Even if Vermont Yankee or ENVY could validly assert that their cases are somehow not seeking inconsistent or duplicative damages recoveries, the fact that the plaintiffs assert different legal theories based upon the same facts does not justify the denial of a motion to consolidate. See Boston Edison, 67 Fed. Cl. at 67; Farrell v. American Flyers Airline Corp., 42 F.R.D. 341, 342 (S.D.N.Y. 1967). In Mylan Pharmaceuticals Inc. v. Henney, 94 F. Supp. 2d 36 (D.D.C.

2000), rev'd on other grounds sub nom. Pharmachemie B.V. v. Barr Laboratories, Inc., 276 F.3d 627 (D.C. Cir. 2002), two generic drug manufacturers brought separate lawsuits challenging the exclusivity determination by the Food and Drug Administration's ("FDA") in favor of another generic drug manufacturer. One manufacturer sought to enjoin the FDA from imposing an "indefinite delay" on the effective date of a particular drug, while the other manufacturer, in addition to seeking to enjoin the FDA, also sought entitlement to an exclusivity incentive for marketing its drug. The FDA sought to consolidate the two drug manufacturers' cases into a single lawsuit, and the manufacturers opposed the consolidation motion upon the grounds that they demanded different forms of relief. The court rejected this argument, concluding that consolidation was appropriate and noting that "plaintiffs' request for different forms of relief does not vitiate the propriety of consolidation, but rather, consolidation is proper to any or all matters in issue which are common." Id. at 44 (emphasis in original).

Similarly, in Karuk Tribe of California v. United States, 27 Fed. Cl. 429 (1993), an Indian tribe and individual members of another Indian tribe each sued the Government, alleging a taking of a particular Indian reservation. The Court granted the Government's motion for consolidation, explaining that, because common issues of fact and law predominate, and because there would be no undue delay or prejudice, consolidation was appropriate. Id. at 433.

Here, not only do these two cases share the exact same factual basis, they share many of the same issues of law. For example, the Court will have to determine the scope and validity of Vermont Yankee's assignment of the Standard Contract to ENVY. Although contractors typically are prohibited by statute from assigning contracts or claims against the Government to a third party, see 31 U.S.C. § 3727 & 41 U.S.C. § 15 (2004), the Nuclear Waste Policy Act

("NWPA"), 42 U.S.C. §§ 10101-10270, contains a specific assignment provision providing that "[t]he rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level radioactive waste involved." 42 U.S.C. § 10222(b)(3). Although this Court has interpreted the assignment provision of the NWPA to allow the assignment of a pre-existing claim against the Government, Rochester Gas & Electric Co. v. United States, 65 Fed. Cl. 431, 440-42 (2005),[7] the Court will still have to determine the scope and validity of the assignment in this case and, specifically, will have to determine which claims, if any, belong to Vermont Yankee and which claims, if any, belong to ENVY.

Moreover, by defining the meaning of the statutory assignment provision (which was incorporated into the Standard Contract), and by defining the scope of the assignment, the Court will be able to ensure that the two plaintiffs' damages claims do not overlap; that no duplicative damages recovery occurs; that the two plaintiffs do not prevail (to the Government's prejudice) upon conflicting interpretations of the Government's obligations under the single contract at issue here; and that any "diminution in value" award to Vermont Yankee, which Vermont Yankee seeks in its complaint, is somehow accounted for and offset against any award to ENVY, which, if it received its own damages award, would be the ultimate beneficiary of that temporary "diminution in value."

Moreover, many of the legal defenses raised by the Government apply with equal force to both Vermont Yankee and ENVY. For example, as noted above, both Vermont Yankee and ENVY are claiming damages for the costs associated with storing SNF. However, whether

---

[7] As discussed in an accompanying motion, we respectfully disagree with that decision.

either of the plaintiffs have incurred damages associated with the cost of storing SNF turns in part upon the determination of the rate and schedule of SNF acceptance. Absent consolidation, there is the potential that the Court could determine different rates of acceptance, even though the same contract is at issue in both cases, leading to inconsistent judgments in the two cases.

Similarly, it is anticipated that the Government will assert as a defense that the Standard Contract does not cover the disposal of GTCC and, consequently, that any costs associated with SNF storage would have been incurred anyway. Similarly, because DOE is not necessarily obligated to accept failed fuel under the same schedule as standard SNF, see 10 C.F.R. § 961.11, Art. VI.A.2(b), the plaintiffs cannot recover as damages costs that they would have incurred for storing failed fuel regardless of DOE's breach. Another likely defense that the Government will raise involves the canistering of the SNF. Canisters are not covered by the Standard Contract, and, so long as a utility places its SNF into such canisters, DOE will not accept that utility's SNF absent a contract modification and appropriate compensation. See 10 C.F.R. § 961.11, Art. VI.A.2(b) & App. E. Consequently, the Court's resolution of the status of canisters could affect the schedule upon which DOE was obligated to accept SNF from Vermont Yankee or ENVY. Again, different assumptions and findings would create a risk of inconsistent judgments. All of these issues directly affect both the SNF storage activities in which the contract holder would have to engage regardless of DOE's delay in beginning SNF acceptance. Accordingly, whether the claim is one for additional on-site storage costs or for the effect upon sales price resulting from the potential future need to incur additional on-site storage costs, the issues in these cases are highly duplicative and require a consistent resolution.

The factual overlap between the two cases is demonstrated in part by the fact that many of the witnesses in both cases will be the same. Presumably, the decisions that Vermont Yankee made regarding the additional storage option to be pursued will be at issue in both cases because both plaintiffs seek to recover the costs of that additional storage. Accordingly, former Vermont Yankee employees who were involved in these decisions will be called as witnesses in both cases.[8] Moreover, with respect to Vermont Yankee's diminution in value claim, it is highly likely that it will be necessary to take discovery from ENVY and depose ENVY employees to determine whether the Government's breach played any role in the price that ENVY ultimately paid for the utility. If discovery and the trial record in the other SNF cases is any indication, it is probable that the Government witnesses will be the same in both cases. The Government's witnesses will have no knowledge concerning Vermont Yankee and ENVY's specific damages. However, Government witnesses have been deposed in the other SNF cases upon issues such as the rate and schedule of SNF acceptance, including issues related to exchanges of approved delivery commitment schedules, as well as the status of GTCC radioactive waste, failed fuel, and SNF contained in canisters. Consequently, not only is there a factual overlap between the two cases, we anticipate that many of the witnesses will be the same in both cases.

Vermont Yankee and ENVY at one point in the litigation recognized that the cases may merit consolidation, because of the witnesses and documents that would be common to both cases. In a notice of directly-related case filed in Vermont Yankee when ENVY filed its complaint, counsel for Vermont Yankee and ENVY advised,

---

[8] The Government does not know how many former employees of Vermont Yankee are now employees of ENVY.

> [t]here will likely be an overlap in witnesses and documents relied upon by ENVY, [Entergy Nuclear Operations, Inc.], and Vermont Yankee. In addition to having these cases assigned to one Judge, these cases may also benefit from consolidation. Whatever judicial assignment may ensue, ENVY, ENO and Vermont Yankee will work to assure that the Government does not face inconsistent judgments from different plaintiffs involving the Power Station covered by Standard Contract Number DE-CR01-83NE44431.

Notice of Directly-Related Case, filed in Vermont Yankee Nuclear Power Corporation v. United States, No. 02-898C (Fed. Cl.), November 12, 2003. Moreover, unlike the other SNF cases in which the Government's motion to consolidate has been denied, Vermont Yankee and ENVY have the same counsel. See Boston Edison, 67 Fed. Cl. 63; Entergy Nuclear Indian, 62 Fed. Cl. 798. Accordingly, Vermont Yankee and ENVY should not have concerns about having to coordinate the prosecution of the case with counsel from another firm that may have been present in these other cases.

Finally, the interests of judicial economy are served by consolidating these cases. First, the cases are in the same procedural posture. Although a motion to dismiss Vermont Yankee's takings claim and motions for summary judgment pending regarding the rate of acceptance and the acceptance of GTCC radioactive waste are currently pending on the Court's docket, these motions have not been ruled upon and, as counsel for Vermont Yankee and ENVY acknowledged at the February 6, 2006 hearing, "some of these motions are only partially briefed, and perhaps many of which need to be updated, given the passage of time." Transcript, Feb. 6, 2006, at 5:25-6:2.[9] Moreover, Vermont Yankee and ENVY have stated a desire to determine the

---

[9] The Government has not filed these same motions in Entergy Nuclear Vermont Yankee because that case has been stayed since it was filed. If the Court wishes to consider these motions, the Government can file the same motions in Entergy Nuclear Vermont Yankee because the motions have equal applicability in that case. However, consolidation of the cases

issues of liability "before we head down the time-consuming and expensive undertaking associated with submitting damages reports and participating in damages discovery." Transcript, 6:7-7:1. As explained above, those damages reports should be based upon the same assumptions regarding the Government's obligations to Vermont Yankee and ENVY on the same Standard Contract. Second, in response to plaintiffs' desire for a determination of the issues of liability in both cases before the cases proceed, the Court issued its current scheduling order, and the parties are currently briefing these issues. The Court's consideration of the parties' motions on liability will be aided by consolidation of the cases. With consolidation of the cases, the Court need only issue one ruling on the motions, a ruling which should apply equally to both plaintiffs.

2. Neither Vermont Yankee Nor ENVY Would Be Prejudiced By Consolidation

Not only would consolidation promote judicial efficiency under the circumstances, but neither Vermont Yankee nor ENVY would be prejudiced if the Court consolidates these cases. As discussed above, both cases are in the same phase of pretrial procedure, and there is little, if any, risk of delay in either case should they be consolidated. Although the parties had briefed a series of dispositive motions in Vermont Yankee regarding the rate of acceptance, the Government's obligation to accept GTTC, and Vermont Yankee's takings claims, those motions have not been ruled upon and would likely benefit from further briefing (to address more recently issued decisions) before the Court considers them. Moreover, those motions could also be filed in ENVY because the same issues are present for resolution. However, if the Court were

---

would make those duplicative filings unnecessary.

to consolidate these cases, the Court's ruling on these pending motions would be equally applicable to both plaintiffs.

Moreover, consolidation of these two cases would not result in any confusion. Indeed, consolidation would minimize potential confusion by allowing consideration of the entire factual background of this contract in a single proceeding. As mentioned above, it is anticipated that many of the same witnesses would be utilized in both cases. In fact, most of the discovery relating to Vermont Yankee's diminished value claim – that is, its claim that ENVY paid less than it would have paid had DOE not breached the contract – will involve ENVY, including records regarding ENVY's belief as to whether it was paying a reduced price for Vermont Yankee's facility as a result of DOE's breach. And, as noted above, Vermont Yankee and ENVY are represented by the same counsel, so there will not be any difficulties created by the need for plaintiffs' counsel to communicate closely. Therefore, there would be no prejudice to either Vermont Yankee or ENVY if consolidation is granted.

### 3. The Government Will Be Heavily Prejudiced If The Two Cases Are Not Consolidated

If the Court does not grant the Government's renewed motion for consolidation, the Government would be prejudiced, as consolidation would force the Government to expend significant resources trying separately two substantially similar cases with identical facts and conflicting damages theories and to risk the possibility of inconsistent judgments based upon two cases that share the same factual predicate and the same legal issues. Consolidation would require the Government to attempt to take third-party discovery from ENVY in Vermont Yankee's case and from Vermont Yankee in ENVY's case. It would require the Government to attempt to account for Vermont Yankee's diminished value arguments in presenting its evidence

in ENVY's case and ENVY's apparent denial that it paid a reduced price for Vermont Yankee's assets in Vermont Yankee's case. It would require the Government to risk duplicative damages awards based upon the vague nature of Vermont Yankee's purported assignment of claims. The Government should not have to risk the possibility of inconsistent and duplicative damages awards or the costs of litigating those cases separately. Under these circumstances, consolidation of these two cases is appropriate.

## II. IF THE COURT DECLINES TO CONSOLIDATE THESE CASES, THE COURT SHOULD ISSUE A SUMMONS TO JOIN ENVY AS A THIRD-PARTY DEFENDANT IN VERMONT YANKEE'S CASE AND, FURTHER, SHOULD ISSUE RCFC 14(b) NOTICES TO ENVY AND VERMONT YANKEE

If the Court declines to consolidate Vermont Yankee's and ENVY's cases, defendant respectfully requests that, pursuant to RCFC 14(a), the Court issue a summons to join ENVY as a third-party defendant in Vermont Yankee. The summons is for the purpose of answering the contingent claim of the United States for the recovery of any monies that it may pay to Vermont Yankee with respect to the transaction or matter which constitutes the subject matter of the pending suit against the United States. Specifically, to the extent that the United States is required to pay any money to Vermont Yankee upon its claim that ENVY, as a means of compensating itself for the additional on-site storage costs it might incur because of DOE's alleged breach, paid a diminished price for the Power Station, the United States should recoup that money against any damages award that the United States is required to pay to ENVY upon ENVY's claims for the costs of additional on-site storage.[10]

[10] Because consideration of our request to join ENVY as a third-party defendant in the Vermont Yankee case will be unnecessary if the Court consolidates Vermont Yankee's and ENVY's cases, we respectfully request that the Court defer until 10 days after a decision upon

In addition, defendant respectfully requests that the Court issue notice to ENVY in the Vermont Yankee case, and to Vermont Yankee in the Entergy Nuclear Vermont Yankee case, pursuant to RCFC 14(b) and the Contract Settlement Act, 41 U.S.C. § 114(b). Under 41 U.S.C. § 114(b), the Court may notify any party having a possible interest in any pending suit or proceeding to appear and assert or defend its interests. Should a notified party fail to appear, "any and all claims or interests in claims of any such person against the United States, in respect to the subject matter of such suit or proceeding, shall forever be barred." 41 U.S.C. § 114(b); see Del-Rio Drilling Programs, Inc. v. United States, 17 Cl. Ct. 844, 849 (1989) ("third parties who fail to appear may nonetheless be bound in a later suit in another court by certain determinations made in this court without the third party's presence"). Notice is appropriate where third parties "hav[e] possible interests [in] any suit or proceeding of any nature." 41 U.S.C. § 114(b). "The rationale behind the issuance of a notice is the prevention of numerous proceedings and determinations on an identical set of facts." Philadelphia Suburban Corp. v. United States, 211 Ct. Cl. 354, 355 (1976). "Thus it is in furtherance of the conservation of judicial time and effort that the [Court] determines that notice shall issue where interest is apparent." Id. "Should a noticed person decline to appear . . . he cannot be forced so to do, though he may nevertheless be bound, in a later suit in another court, by certain determinations of this court." Uram v. United States, 216 Ct. Cl 418, 420 (1978). Here, for the reasons previously explained, both Vermont Yankee and ENVY will involve numerous factual issues that are either identical or will

---

this motion the Government's obligation pursuant to RCFC 14(a)(2) to provide "an appropriate pleading setting forth the claim or contingent claim which it is asserting against such third person." If the Court grants the Government's motion to consolidate, the work necessary to create such a pleading will be unnecessary.

substantially overlap. In the absence of consolidation, issuance of notice pursuant to RCFC 14(b) and the Contract Settlement Act will reduce the likelihood of the need for duplicative fact-finding proceedings and the possibility of conflicting factual findings.

CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant the Government's motion to consolidate Vermont Yankee and Entergy Nuclear Vermont Yankee. If the Court declines to consolidate these cases, we respectfully request that the Court in Vermont Yankee issue a summons to ENVY, that the Court in Vermont Yankee issue notice pursuant to RCFC 14(b) and the Contract Settlement Act to ENVY, and that the Court in Entergy Nuclear Vermont Yankee issue notice pursuant to RCFC 14(b) and the Contract Settlement Act to Vermont Yankee.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr
HAROLD D. LESTER, JR.
Assistant Director

s/ Marian E. Sullivan
MARIAN E. SULLIVAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-0365
Fax: (202) 307-2503

OF COUNSEL

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585
Washington, D.C. 20585

May 3, 2006

Attorneys for Defendant

# EXHIBIT 1

**VERMONT YANKEE**
**NUCLEAR POWER CORPORATION**
185 OLD FERRY ROAD, PO BOX 7002, BRATTLEBORO, VT 05302-7002
(802) 257-5271

August 21, 2002

Herbert D. Watkins, Contracting Officer
Office of Headquarters, Procurement Services
U. S. Department of Energy
Washington DC 20585

Re: Assignment of Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (U. S. Department of Energy Contract #DE-CR01-83NE 44431) for Vermont Nuclear Power Station

Dear Mr. Watkins:

Pursuant to Article XIV of the Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (U. S. Department of Energy Contract #DE-CR01-83NE 44431) (the "Contract"), this is to notify you that, with the consummation of the sale of Vermont Yankee Nuclear Power Station (the "Station"), Vermont Yankee Nuclear Power Corporation has transferred its title to Spent Nuclear Fuel Fuel and High-Level Radioactive Waste (as defined in the Contract) and, except as noted below, its rights and duties under the Contract to Entergy Nuclear Vermont Yankee, LLC, the new owner of the Station, effective July 31, 2002.

Vermont Yankee Nuclear Power Corporation, pursuant to the Purchase and Sale Agreement for the Station, has retained the rights to any and all damages and other remedies that might accrue under from the Department of Energy's breach of its obligations under the Contract to the extent of the one-time fee for fuel used to generate electricity prior to April 7, 1983.

Sincerely,
VERMONT YANKEE NUCLEAR POWER CORPORATION

By [signature]
Bruce W. Wiggett
President

cc: Ms. Nancy S. Malmquist, Esq., Downs Rachlin & Martin
Mr. John Ritsher, Esq., Ropes & Gray
Mr. Jay Silberg, Esq., Shaw-Pittman
Mr. Paul Gauron, Esq., Goodwin-Procter
Mr. Michael R. Kansler, Entergy Nuclear Vermont Yankee

file copy

CERTIFICATE OF FILING

I hereby certify that on the 3rd of May 2006, a copy of the foregoing "DEFENDANT'S MOTION TO CONSOLIDATE OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Marian E. Sullivan