IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| VERMONT YANKEE NUCLEAR POWER CORPORATION, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 02-898C |
| | ) | (Judge Wheeler) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UPON COUNTS I AND II OF PLAINTIFF'S FIRST AMENDED COMPLAINT AND, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT UPON DEFENDANT'S RIGHT TO RECOVER UNPAID FEES

Pursuant to Rule 56(b) of the Rules of this Court ("RCFC"), defendant, the United States, respectfully submits this motion for summary judgment and requests that this Court dismiss, in their entirety, Counts I and II of plaintiff's complaint. For the reasons explained below, plaintiff, Vermont Yankee Nuclear Power Corporation ("Vermont Yankee"), has failed to satisfy a condition to the Government's obligation to accept any of Vermont Yankee's spent nuclear fuel ("SNF") or high-level radioactive waste ("HLW").[1] There are no genuine issues of material fact that would preclude judgment as a matter of law in defendant's favor. In the alternative, to the extent that the Court does not dismiss Counts I and II of plaintiff's complaint in their entirety, defendant respectfully requests that the Court grant partial summary judgment in

[1] Defendant is filing the same motion in Entergy Nuclear Vermont Yankee, LLC v. United States, Fed. Cl. No. 03-2663C, because that case arises from the same Standard Contract at issue in this case, although it appears that Vermont Yankee, pursuant to the purchase and sale agreement between it and Entergy Nuclear Vermont Yankee ("ENVY"), has purported to retain the obligation to pay the one-time fee at issue in this motion. Regardless of whether these cases are consolidated, the obligation to pay the one-time fee should preclude a finding of liability, or, in the alternative, provide the right to an offset any damages paid as the result of the Department of Energy's ("DOE") partial breach of the Standard Contract at issue.

defendant's favor, finding that defendant is entitled to recover fees that Vermont Yankee has not paid under the Standard Contract or, in the alternative, that defendant is entitled to recoup those fees against any judgment awarded in Vermont Yankee's favor. In support of our motion, we rely upon the following brief and appendix, the accompanying proposed findings of uncontroverted fact, and the pleadings filed by the parties in this case.

## SUMMARY OF ARGUMENT

This case is one of 58 cases currently pending before this Court in which plaintiffs are alleging damages arising from a partial breach by the Department of Energy ("DOE") of the "Standard Contract For Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste" ("Standard Contract") published at 10 C.F.R. § 961.11. Although this Court has found the Government liable for a partial breach of contract in several of the pending Standard Contract cases, this case presents an issue that exists in only ten of the pending cases and that precludes a finding of liability here.

Under the Standard Contract, contract holders are required to pay two "sets" of fees. One of the fees that each contract holder must pay is a continuing quarterly fee, the amount of which is determined by reference to the amount of electricity that the contract holder generates and sells, that continues to accrue throughout the life of the Standard Contract as long as the contract holder continues to generate electricity ("the continuing fee"). When the Standard Contracts were executed in 1983, however, most, if not all, commercial nuclear utilities already possessed SNF that DOE would be required to accept pursuant to the Standard Contract. To pay for DOE's acceptance and disposal of that pre-existing SNF, each contract holder possessing such SNF was required to pay a fee, calculated by reference to a formula contained in the Nuclear Waste Policy

Act, 42 U.S.C. § 10222(a)(3), and reiterated in the Standard Contract, to compensate DOE for accepting and disposing of that pre-existing SNF ("the one-time fee").

Under the Standard Contract, the contract holder was required, within two years after contract execution, to elect one of three options for payment of the one-time fee for the pre-existing SNF. One option required the contract holder to pay the one-time fee immediately (in the early 1980s), another option allowed the contract holder to defer its payment until a date prior to the date that DOE was first to accept any of that contract holder's SNF (although it required the contract holder to pay interest incurred from 1983 through the date of actual payment), and a final option required the contract holder to make 40 quarterly pro rata payments of its one-time fee, with the 40th payment due before the first date for DOE's acceptance of that contract holder's SNF. Under any of the options for payment of the one-time fee, the contract holder was required to pay the entirety of the one-time fee before DOE began accepting any of that contract holder's SNF.

Vermont Yankee has never satisfied this condition upon which DOE's obligation to accept any of Vermont Yankee's SNF rested. In accordance with the requirements of the Standard Contract, Vermont Yankee elected to pay its pre-existing SNF fee of $39,284,623.69 through "Option 2," which required Vermont Yankee to pay its one-time fee prior to DOE's acceptance of its SNF. Vermont Yankee has never paid its one-time fee, which, with interest as of December 31, 2005, totaled more than $128,724,683. Having failed to satisfy this condition to DOE's obligation to accept any of its SNF, Vermont Yankee has no basis for seeking damages for DOE's partial breach of the Standard Contract through its failure to begin accepting Vermont Yankee's SNF. Accordingly, Vermont Yankee's complaint should be dismissed.

## ARGUMENT

### I. THE STANDARD OF REVIEW

Summary judgment is a wholly acceptable and favored procedural means for disposition of claims or issues as to which there are no genuine issues of material fact in dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). It is "a salutary method of disposition designed to secure the just, speedy and inexpensive determination of every action." Sweats Fashions, Inc. v. Pannill Knitting Company, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). "[T]here is no genuine issue of material fact for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Avia Group Int'l, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557, 1560 (Fed. Cir. 1988) (quoting Anderson, 477 U.S. at 249-50). When the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. RCFC 56(c). In this case, there is no dispute over any facts that could preclude the Government's entitlement to summary judgment.

### II. VERMONT YANKEE IS REQUIRED TO PAY ITS ONE-TIME FEE BEFORE DOE IS OBLIGATED TO BEGIN ACCEPTING VERMONT YANKEE'S SNF

Pursuant to the Standard Contract, each contract holder is required to pay continuing quarterly fees "in the amount of 1.0 mil per kilowatt-hour (1M/KWH) on electricity generated by Purchaser's nuclear power reactor(s)" and sold, designed to cover SNF generated after April 7, 1983. 10 C.F.R. § 961.11, Art. VIII.A.1 & B.1; see 42 U.S.C. § 10222(a)(2) (establishing quarterly fees). In addition to those quarterly fees, each contract holder is responsible for paying a separate fee for the disposal of any SNF and/or HLW that it had generated prior to April 7, 1983: "For SNF, or solidified high-level radioactive waste derived from SNF, which fuel was

used to generate electricity in a civilian nuclear power prior to April 7, 1983, a one-time fee will be assessed." 10 C.F.R. § 961.11, Art. VIII.A.2 (emphasis added); see 42 U.S.C. § 10222(a)(3) (establishing the one-time fee). This fee for SNF generated prior to April 7, 1983 "shall not be subject to adjustment, and the payment thereof by the Purchaser shall be made to DOE as specified in paragraph B of this Article VIII." 10 C.F.R. § 961.11, Art. A.2. (emphasis added).

Paragraph B of Article VIII provides each contract holder with three options for the payment of the fee for the disposal of SNF generated prior to April 7, 1983. Under the first option, Option 1, the contract holder agrees to pay its fee prorated evenly over 40 quarters, the last of which must be made prior to the date scheduled for DOE's first acceptance of that contract holder's SNF as identified in an approved DCS. 10 C.F.R. § 961.11, Art. VIII.B.2(a) (emphasis added). Pursuant to the second option, Option 2, the contract holder may elect to satisfy its financial obligation "in the form of a single payment anytime prior to the first delivery, as reflected in the DOE approved delivery commitment schedule . . .," plus interest. Id., Art. VIII.B.2(b). Pursuant to the third option, Option 3, the contract holder must pay his entire fee prior to June 30, 1985. Id., Art. VIII.B.2(c).

The contract holder is obligated to elect the payment option for its fee relating to the disposal of its pre-April 7, 1983 SNF within two years after contract execution: "For SNF discharged prior to April 7, 1983, and for in-core burned fuel as of 12:00 A.M. April 7, 1983, the Purchaser shall, within two (2) years of contract execution, select one of the following fee payment options: . . . ." Id., Art. VIII.B.2 (emphasis added). Vermont Yankee executed the

Standard Contract that is at issue here on June 15, 1983. App. 34.[2] Accordingly, pursuant to the provisions of Article VIII(B)(2), Vermont Yankee had until June 30, 1985, which would have been "within two years of contract execution," to notify DOE as to which of the three available payment options Vermont Yankee would elect to pay for the disposal of its pre-April 7, 1983 SNF.

On or about June 5, 1985, Vermont Yankee elected to pay its one-time fee pursuant to Option 2. PFUF ¶ 5; App. 63. Accordingly, Vermont Yankee was required to make its entire fee payment at "anytime prior to the first delivery, as reflected in the DOE approved delivery commitment schedule, and shall consist of the fee plus interest on the outstanding fee balance." 10 C.F.R. § 961.11, Art. VIII.B.2(b). Vermont Yankee subsequently submitted seven separate DCSs seeking to obtain DOE's commitment to accept SNF from Vermont Yankee beginning in 1999 and continuing in the years 2001, 2002, 2003, 2004, 2005 and 2007. PFUF ¶ 6; App. 66-73. DOE approved each of these DCSs. Id.; App. 74-81. Accordingly, in compliance with Vermont Yankee's election pursuant to Article VIII.B.2(b), Vermont Yankee was required, if it wanted DOE to begin acceptance of its SNF in 1999, to pay its one-time fee for its pre-April 7, 1983 SNF under its contract prior to the 1999 acceptance. In any event, under any of the options for payment of the one-time fee, the contract holder was required to pay the entirety of its one-time fee before DOE began acceptance of that contract holder's SNF and/or HLW. See 10 C.F.R. § 961.11, Art. VIII.B.2. In fact, section 302(a) of the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. § 10222(a)(5), expressly indicates that DOE's obligation to dispose of any

[2] "App. __" refers to the appendix to this motion. "Compl. ¶ ___" refers to Vermont Yankee's first amended complaint in this case, filed September 2, 2004.

utility's SNF is "in return for the payment of fees established by this section," conditioning DOE's acceptance obligation upon that payment. To the present day, Vermont Yankee has not paid its one-time fee. PFUF ¶ 7.

## III. BECAUSE VERMONT YANKEE HAS FAILED TO PAY ITS ONE-TIME FEE, IT HAS FAILED TO SATISFY A CONDITION TO DOE'S OBLIGATION TO BEGIN ACCEPTING VERMONT YANKEE'S SNF

### A. Payment Of The One-Time Fee Is A Condition Precedent To DOE's Obligation To Accept Any Of Vermont Yankee's SNF

Because Vermont Yankee has not yet paid its one-time fee, it has failed to satisfy a condition to DOE's obligation to begin acceptance of Vermont Yankee's SNF and/or HLW. "A fact or event may be made a condition of a contract right and duty by any form of words capable of interpretation." 3A A. Corbin, Corbin on Contracts § 639, at 51 (1960). Such conditions "are those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available." 3A A. Corbin, Corbin on Contracts § 628, at 16 (1960);[3] see 8 C. McCauliff, Corbin on Contracts § 31.2, at 49 (rev. ed. 1999); S. Williston, Contracts § 669 (3d ed. 1961) ("Since an express condition . . . depends for its validity on the manifested intention of the parties, it has the same sanctity as the promise itself. Though the court may regret the harshness of such a condition, as it may regret the harshness of a promise, it must, nevertheless, generally enforce the will of the parties."). That is, "[a] condition

[3] Although Professor Corbin uses the term "condition precedent," the American Law Institute ("ALI"), because of the confusion sometimes engendered by the distinctions between conditions subsequent and conditions precedent, prefers the more generic term "conditions." Restatement (Second) of Contracts, Ch. 9, Topic 5, Conditions and Similar Events, at 159 (1981). ALI defines a condition as "an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." Id. § 224, at 160.

precedent is one which must be performed before . . . the other party is obligated to perform." Lester v. Resolution Trust Corp., 994 F.2d 1247, 1254 (10th Cir. 1993). Moreover, "if a contractual duty is subject to a condition precedent, that condition must be satisfied before the duty arises." Landmark Land Co. v. United States, 256 F.3d 1365, 1376 (Fed. Cir. 2001) (emphasis in original).

Under the terms of the Standard Contract and the NWPA, Vermont Yankee, regardless of the one-time fee payment option that it selected, was required to pay its one-time fee before DOE began acceptance of its SNF and/or HLW. Accordingly, Vermont Yankee's obligations in paying its fee for pre-April 7, 1983 SNF "were clearly intended to be performed prior to [DOE's] obligation to" accept Vermont Yankee's SNF. Lester, 994 F.2d at 1254. Vermont Yankee elected not to pay its one-time fee in 1985, which it could have done, but instead elected to defer its one-time fee payment, in accordance with Option 2, and to satisfy that financial obligation "in the form of a single payment anytime prior to the first delivery, as reflected in the DOE approved delivery commitment schedule . . .," plus interest. 10 C.F.R. § 961.11, Art. VIII.B.2(b). Because Vermont Yankee's first scheduled "delivery" of SNF to DOE was in 1999, Vermont Yankee was required to make its Option 2 fee payment no later than the date by which it wanted DOE to begin acceptance of its SNF. Until that payment is made, DOE has no obligation to accept Vermont Yankee's SNF. Because Vermont Yankee has, to date, failed to make that payment, Vermont Yankee has failed to perform its Option 2 fee payment obligation. Vermont Yankee's Option 2 fee payment obligation is a condition to DOE's contractual duty to accept SNF under Vermont Yankee's Standard Contract. Accordingly, DOE's duty to accept SNF under Vermont Yankee's Standard Contract has yet to arise. See Landmark, 256 F.3d at 1376.

Because DOE's duty to perform has not arisen, no cause of action for breach of this duty can have accrued to Vermont Yankee under its Standard Contract.

### B. Vermont Yankee Cannot Claim Damages For A *Partial* Breach Of Contract Before It Satisfies Its Condition To DOE's Obligation To Accept Its SNF

It appears that Vermont Yankee may attempt to avoid its obligation to satisfy its condition precedent to DOE's obligation to begin acceptance of Vermont Yankee's SNF by asserting that, once DOE announced that it would not be able to begin SNF acceptance from the industry as a whole beginning in 1998, Vermont Yankee was no longer required to pay its one-time fee until some unidentified date in the future. However, until Vermont Yankee actually pays its one-time fee, DOE will not be under an obligation to begin accepting Vermont Yankee's SNF. Although Vermont Yankee might be able to avoid paying its one-time fee in response to DOE's announcement had it viewed DOE's announcement as a total breach of the Standard Contract, Vermont Yankee has not claimed a total breach of contract in this case. To the contrary, Vermont Yankee is seeking damages in this litigation only for a partial breach of contract. The distinctions between a total breach claim and a partial breach claim are essential to a determination of Vermont Yankee's rights and continuing obligations under the Standard Contract.

"When one party to a contract materially breaches his duties under the contract, the other party may proceed in one of two ways." S&R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 376 (3d Cir. 1992). "He can either consider the contract terminated and sue for total breach, or he can continue his performance and sue for partial breach." Id. That is, a claim for partial breach is "[a] claim for damages . . . based on only part of the injured party's remaining rights to

performance," Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1374 (Fed. Cir. 2005) (quoting Restatement (Second) of Contracts § 236(2) (1981)), while a claim for damages for total breach is "one for damages based on all of the injured party's remaining rights to performance." San Carlos Irrigation & Drainage Dist. v. United States, 23 Cl. Ct. 276, 279 (1991) (citations omitted), aff'd, 111 F.3d 1557 (Fed. Cir. 1997). Consequently, the damages recoverable for a partial breach of contract are necessarily less than those recoverable for a total breach. See Roboserve, Inc. v. Kato Kagaku Co., 78 F.3d 266, 279 (7th Cir. 1996) (concluding that the jury's determination that damages for partial breach of contract exceeded those for total breach was "obviously irrational"). In awarding damages for breach of contract, a fact-finder therefore has to "differentiate between a total or material breach on the one hand and a partial breach on the other, and to measure damages, if any, according to the nature of the breach." Lovink v. Guilford Mills, Inc., 878 F.2d 584, 587 (2d Cir. 1989). The distinction between partial and total breach "is particularly important in executory contracts." Id. at 586.

Aside from the different measure of damages applicable to a partial and total breach, these claims can also be distinguished based upon the remedies that they provide to an injured party. Indeed, a plaintiff's decision to continue a contract after a material breach and initiate an action for damages for partial breach is not "without consequences." PVI, Inc. v. Ratiopharm, 253 F.3d 320, 325 (8th Cir. 2001). A "total breach justifies termination of the contract and damages for complete failure of performance," but a "partial breach does not." Lovink, 878 F.2d at 587; see Pinewood Realty Ltd. P'ship v. United States, 223 Ct. Cl. 98, 104, 617 F.2d 211, 215 (1980) ("[i]f the injured party ignores the breach, and continues to perform, it has waived its right to terminate the contract, and has only retained its claim for damages for partial breach");

Hansen Bancorp, Inc. v. United States, 53 Fed. Cl. 92, 100 (2002) ("[a] breach by non-performance gives rise to a claim for damages for total breach only if it discharges the injured party's remaining duties to render such performance"), vacated and remanded on other grounds, 367 F.3d 1297 (Fed. Cir. 2004). As the Court held in Cities Service Helex, Inc. v. United States, 211 Ct. Cl. 222, 543 F.2d 1306 (1976), a contractor must make an election in response to an anticipatory breach either to view the contract as concluded or to continue contract performance:

> A material breach does not automatically and *ipso facto* end a contract. It merely gives the injured party the right to end the agreement; the injured party can choose between canceling the contract and continuing it. If he decides to close the contract and so conducts himself, both parties are relieved of their further obligations and the injured party is entitled to damages to the end of the contract term (to put him in the position he would have occupied if the contract had been completed). If he elects instead to continue the contract, the obligations of both parties remain in force and the injured party may retain only a claim for damages for partial breach.

Id. at 234, 543 F.2d at 1313; accord Barron Bancshares, Inc. v. United States, 53 Fed. Cl. 310, 323 (2002), aff'd in relevant part, 366 F.3d 1360 (Fed. Cir. 2004).[4]

Here, Vermont Yankee's decision to continue the contract and insist upon the Government's performance of its obligations after DOE announced that it could not begin SNF acceptance in 1998 has three consequences. First, because the Government's contractual obligations were not discharged as a result of Vermont Yankee's suit for partial breach, it did not

[4] Recently, some courts have opined that, in certain situations, this election may not be irrevocable to the extent that the defaulting party would not be prejudiced by the change in election. See Pacific Gas & Elec. Co. v. United States, Nos. 04-0074 & 04-0075, 2006 WL 1084005 (Fed. Cl. Apr. 25, 2006) (citing cases). Nevertheless, Vermont Yankee has not attempted to claim a total breach of contract in this case, rendering further discussion of that issue here unnecessary.

discharge the Government's ultimate obligation to accept and dispose of Vermont Yankee's SNF. Second, it obligated Vermont Yankee to continue to pay its fees into the Nuclear Waste Fund ("NWF"). Third, it limited the recovery of Vermont Yankee's damages to those for partial breach.

The only basis upon which Vermont Yankee could attempt to excuse its failure to pay its one-time fee would be its reliance upon DOE's announcement in 1996[5] that it would not be able to begin SNF acceptance in 1998, viewing DOE's 1996 announcement as some type of anticipatory repudiation of the Standard Contract. Vermont Yankee, presumably, would argue that DOE's announcement somehow excused its performance obligations under the Standard Contract. An anticipatory repudiation is a "renunciation of a contractual duty *before* the time fixed in the contract for performance." Franconia Assocs. v. United States, 536 U.S. 129, 143 (2002) (emphasis in original). It "entails a statement or voluntary affirmative act indicating that the promisor will commit a breach when performance becomes due." Id.; see Danzig v. AEC Corp., 224 F.3d 1333, 1337 (Fed. Cir. 2000) ("[a]t common law, anticipatory repudiation of a contract required an unambiguous and unequivocal statement that the obligor would not or could not perform the contract"); Tretchick v. Department of Transportation, 109 F.3d 749, 752 (Fed. Cir. 1997) (anticipatory repudiation "must be a distinct unequivocal absolute refusal to perform the promise, and must be treated and acted upon as such by the party to whom the promise was made").

[5] In Indiana Michigan, the United States Court of Appeals for the Federal Circuit stated that DOE "unequivocally announced in 1994," rather than 1996, "that it would not meet its contractual obligations beginning in 1998." Indiana Michigan, 422 F.3d at 1375. For purposes of this motion, the actual announcement date is unimportant.

An anticipatory repudiation of a contract is, in and of itself, a breach of contract that "generally gives rise to a claim for damages for total breach even though it is not accompanied or preceded by a breach by non-performance." Restatement (Second) of Contracts § 253(1) cmt. a; see Wisconsin Power & Light Co. v. Century Indem. Co., 130 F.3d 787, 793 (7th Cir.1997) ("[t]he disclaimer of a contractual duty is a breach of contract even if the time specified in the contract for performing the duty has not yet arrived"). However, an anticipatory repudiation of a contract constitutes a total breach "only if the promisee 'elects to treat it as such.'" Franconia Assocs., 536 U.S. at 143 (emphasis added) (citing Roehm v. Horst, 178 U.S. 13 (1900)). Repudiation "gives the promisee the right of electing either to treat the declaration as *brutum fulmen*, and, holding fast to the contract, to wait till the time for [the promisor's] performance has arrived, or to act upon [the renunciation] and treat it as a final assertion by the promisor that he is no longer bound by the contract." Roehm, 178 U.S. at 13. Therefore, to recover damages for an anticipatory repudiation, the injured party must "elect to treat" the repudiation as a total breach. Franconia Assocs., 536 U.S. at 143; see Indiana Michigan, 422 F.3d at 1374 ("[f]or an aggrieved party to recover damages for an anticipatory breach, it must elect to treat the repudiation as a total breach"); United States v. Dekonty Corp., 109 F.3d 749, 752 (Fed. Cir. 1991) (injured party who elects to sue for anticipatory breach of contract must "treat th[e] refusal [to perform] as a breach and commence an action at once therefor").

However, Vermont Yankee cannot claim anticipatory repudiation because it has proceeded with a partial breach claim. Indiana Michigan, 422 F.3d at 1374. "A breach by repudiation alone can only give rise to a claim for total breach . . .," effectively ending any further performance obligations by the contracting parties. Restatement (Second) of Contracts

§ 253 cmt. b (1981) (emphasis added). A party cannot seek damages for a total breach based upon anticipatory repudiation and, at the same time, seek continued performance of the contract. Restatement (Second) of Contracts § 236 cmt. b (1981). Further, "an anticipatory breach cannot be predicated on a partial breach of the contract . . . ." City of Fairfax, Va. v. Washington Metro. Area Transit Auth., 582 F.2d 1321, 1331 (4th Cir. 1978) (emphasis added), cert. denied, 440 U.S. 914 (1979); see 4 A. Corbin, Corbin on Contracts § 972, at 901 (1951) ("there seems to be no authority for saying that, for such a partial anticipatory repudiation, an action for damages can be at once maintained"). To the contrary, an anticipatory repudiation gives rise only to a claim for total breach that concludes the parties' further performance obligations. Indiana Michigan, 422 F.3d at 1374.

Here, Vermont Yankee has proceeded under a partial breach theory following DOE's failure to begin accepting its SNF in 1999, pursuant to Vermont Yankee's approved DCSs. Vermont Yankee has not declared the Standard Contract to be at an end, preserving DOE's obligation to ultimately accept its SNF. Under a partial breach theory, however, Vermont Yankee is obligated to continue its own performance under the Standard Contract. Moreover, recognizing that its performance obligations are not at an end, Vermont Yankee (and now ENVY) continued to pay its quarterly fees due pursuant to the terms of the Standard Contract. In this partial breach action, Vermont Yankee has no basis for withholding its one-time fee when it has continued to pay its quarterly fees.

Because Vermont Yankee is pursuing a partial breach theory in its suit, Vermont Yankee cannot claim that it is entitled to avoid or defer (to some future unidentified date) paying fees that it would otherwise have to pay before DOE's obligation to begin SNF acceptance would

arise. See Franconia Associates, 536 U.S. at 143 (party treats an anticipatory repudiation as a present breach "by filing suit prior to the date indicated for performance," but, otherwise, "breach would occur when . . . [the repudiating party's] responsive performance become[s] due"). Absent an anticipatory breach or repudiation of the Standard Contract, Vermont Yankee would have no basis for delaying its payment of its one-time fee until after DOE began accepting its SNF. To the contrary, Vermont Yankee was obligated under the terms of the Standard Contract to pay its one-time fee before DOE was obligated to accept any of Vermont Yankee's SNF. Because it cannot rely upon the doctrine of anticipatory repudiation if it has elected to pursue only a partial breach claim, it cannot rely upon DOE's actions preceding its failure to begin accepting Vermont Yankee's SNF to justify non-payment of its one-time fee. In fact, if this Court were to award damages to Vermont Yankee now, but Vermont Yankee were later to refuse to pay its one-time fee when DOE eventually comes to accept Vermont Yankee's SNF, it is not clear how DOE would recoup the damages that this Court awarded for DOE's prior "failure" to conduct activities that are typically conditioned upon pre-payment of that fee. Because the rules typically applicable to partial breach of contract claims preclude an award of damages before conditions precedent to the alleged breaching party's breach have been satisfied, the Court should find that, in fact, Vermont Yankee has not yet suffered a partial breach.

In two other spent nuclear fuel cases, the Court has been asked to consider the effect of plaintiff's failure to pay its one-time fee upon the Government's liability for the delays in performance of the Standard Contract. In Consumers Energy Company v. United States, 65 Fed. Cl. 364 (2005), the Court held that the one-time fee obligation was not a condition precedent, but instead was a separately enforceable promise that DOE could not now enforce because it had not

established a first delivery date for the plaintiff's SNF because the process for the submission and approval of DCSs and final delivery schedules ("FDSs") had been suspended. With all due respect, the Court's analysis seeks to excuse the plaintiff's performance obligation, despite the fact that the utility plaintiff's obligations continue because it has elected to pursue a partial breach theory, whether viewed as a condition of DOE's performance or a "separately enforceable promise." In this case, Vermont Yankee is still expecting DOE's full performance pursuant to the Standard Contract. However, with that expectation comes the obligation to fully perform its own duties under the Standard Contract. Because the theory of anticipatory repudiation is not available to Vermont Yankee, it must fulfill all of its obligations under the contract, including payment of the one-time fee. Id. at 372.

That obligation came due in 1999, pursuant to the DCSs that Vermont Yankee submitted and DOE approved. The Court in Consumers found that the obligation had not arisen because the approved DCS in that case, just as in this case, specified only a delivery year. The Court found that, because there was no delivery date specified in the DCS and the process of submitting FDS, which would have provided a specific delivery date, was suspended before a date was established, that the plaintiff's one-time fee was not due. However, in this analysis, the Court reads more into the provisions of the Standard Contract than exist. The relevant provision only requires that the one-time fee would by paid "prior to the first delivery, as reflected in the DOE approved delivery commitment schedule." 10 C.F.R. § 961.11, Art. VIII.B.2(b)(emphasis added). That approved DCS gave plaintiff the right to have the amount of SNF covered by that approved DCS accepted during that 12-month period beginning January 31st of the relevant year. As the Court acknowledged, a delivery date would have been established with the

submission and approval of a final delivery schedule ("FDS"), but the obligation to pay the one-time fee is expressly tied in the fee payment provision to the approved DCS, not the FDS. 10 C.F.R. § 961.11, Art. VIII.B.2(b). The Court, by reading into the contract a requirement to establish a specific delivery date prior to the obligation to pay the one-time fee, has altered the terms of the contract between the parties. In any event, the important fact is that the one-time fee must be paid before DOE accepts the contract holder's SNF, see id., making payment of that fee a condition to acceptance.

In System Fuels, Inc. v. United States, 65 Fed. Cl. 163 (2005), the Court found that the one-time fee obligation was a mandatory condition to performance, but that it had been excused based upon a "temporary frustration of purposes caused by the government's suspension of the DCS process." Id. at 173. Again, this finding does not reflect the fact that the plaintiff was suing for a partial breach, and, as a result, its performance obligations cannot be excused.[6] Moreover, a similar finding that Vermont Yankee's obligation is temporarily excused now may eliminate DOE's ability ever to obtain payment of this one-time fee. Pursuant to Vermont Yankee's assignment and transfer of title of all of its SNF to ENVY, DOE (assuming the validity of the assignment) now owes the performance obligation to ENVY, but Vermont Yankee holds the obligation to pay the fee. Absent invalidation of the contract assignment, it appears that, if the Court finds that payment of the one-time fee is "temporarily excused" here, DOE may have

---

[6] The decisions in Consumers and System Fuels were both issued before the Federal Circuit announced its decision in Indiana Michigan, which held, in part, that plaintiffs in the SNF cases cannot rely upon anticipatory repudiation theories in pursuit of their partial breach theories. Indiana Michigan, 422 F.3d at 1374.

no remedy to allow it to obtain the one-time fee from Vermont Yankee if, when DOE begins SNF acceptance from ENVY, Vermont Yankee fails to pay the very substantial fee that is owed.

In sum, Vermont Yankee is pursuing a partial breach theory to recover damages allegedly resulting from DOE's delays in performance under the Standard Contract while at the same time preserving its right to full performance by DOE in the future. In this situation, Vermont Yankee still has to fulfill its obligations under the Standard Contract, including payment of its one-time fee. That fee payment was due in 1999, pursuant to Vermont Yankee's approved DCSs. Until Vermont Yankee pays its fee, a condition of DOE's performance, DOE cannot be held liable for the failure to begin acceptance of Vermont Yankee's SNF.

## IV. TO THE EXTENT THAT THE COURT DOES NOT DISMISS PLAINTIFF'S COMPLAINT AND AWARDS PLAINTIFF DAMAGES FOR PARTIAL BREACH, DEFENDANT IS ENTITLED TO RECOVER THE UNPAID ONE-TIME FEE, PLUS ACCRUED INTEREST

"One of the basic principles of contract damages is that 'damages for breach of contract shall place the wronged party in as good a position as it would have been in, had the breaching party fully performed its obligation.'" Bluebonnet Sav. Bank, F.S.B. v. United States, 339 F.3d 1341, 1344-45 (Fed. Cir. 2003) (quoting Massachusetts Bay Transp. Auth. v. United States, 129 F.3d 1226, 1232 (Fed. Cir.1997)). "Thus, the non-breaching party should not be placed in a better position through the award of damages than if there had been no breach." Id. (citing White v. Delta Constr. Int'l, Inc., 285 F.3d 1040, 1043 (Fed. Cir. 2002)). "[T]he non-breaching party 'should on no account get more than would have accrued if the contract had been performed.'" White, 285 F.3d at 1043 (quoting DPJ Co. v. FDIC, 30 F.3d 247, 250 (1st Cir.1994)).

As demonstrated above, before DOE ever began accepting Vermont Yankee's SNF, Vermont Yankee would have been required to have paid its one-time fee pursuant to Article VIII.B.2(b) of the Standard Contract. The amount of that fee was originally $39,284,623.69, see App. 84, but, with interest calculated in accordance with the terms of Article VIII(B)(2), now exceeds approximately $128,724,683.62. App. 84; PFUF ¶ 8. Had DOE begun accepting Vermont Yankee's SNF in 1999, in accordance with Vermont Yankee's approved DCSs, or at any other time that Vermont Yankee alleges, Vermont Yankee first would have had to pay the entirety of its one-time fee. Because Vermont Yankee now seeks damages for DOE's failure to begin accepting its SNF and seeks to be placed in the financial position in which it would have been had DOE timely begun SNF acceptance, and to the extent that the Court determines that Vermont Yankee is entitled to damages for a partial breach of the Standard Contract, DOE should be entitled to recover the amount of Vermont Yankee's unpaid one-time fee (plus the interest calculated from April 7, 1983, as identified in Article VIII.B.2(b) of the Standard Contract) before the Court requires DOE to pay any damages for DOE's delay in performance – that is, the Court should require the satisfaction of the condition to DOE's obligation to accept Vermont Yankee's SNF before awarding Vermont Yankee's damages. If the Court were to require DOE to pay damages for failing to begin acceptance of Vermont Yankee's SNF, but failed to allow DOE to recover the monies that it would have received had it timely begun SNF acceptance, the Court would place Vermont Yankee in a better position than it would have been had there been no breach. See Bluebonnet Savings Bank, 339 F.3d at 1345.

Even if the Court did not allow the Government to force satisfaction of the condition precedent in its entirety prior to awarding damages to Vermont Yankee, the Court should allow

DOE to recoup the amount of the one-time fee against any judgment in Vermont Yankee's favor. The Supreme Court and the Federal Circuit have long recognized the Government's common-law right to offset or recoup debts owed to the Government against contract payments and damages due to the debtor. The right of offset was first recognized by the Supreme Court in United States v. Munsey Trust Co., 332 U.S. 234, 239 (1947), in which the Court held that the "government has the same right which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him." Consistent with the Supreme Court's decision in Munsey Trust, the Court of Claims similarly recognized the Government's right of offset in Madden v. United States, 178 Ct. Cl. 121, 371 F.2d 469, 473 (1967), in which the Court held that the Government's right to offset debts owed to it against damages awarded to the debtor for an equitable adjustment of contract was superior to an attorney's lien.

Since the invocation of the common law doctrine of offset in Munsey Trust and Madden, the Government's right to offset or recoup contractual debts owed to it has been sustained in numerous decisions. See, e.g., First Federal Savings & Loan Assoc. v. United States, 58 Fed. Cl. 139, 165 (2003) (Government's right to offset damages can be raised as a "defense or argument in mitigation" during the damages phase of proceedings); Cecile Industries, Inc. v. Cheney, 995 F.2d 1052, 1054 (Fed. Cir. 1993) (Debt Collection Act of 1982, 31 U.S.C. § 3716, does not abrogate or constrict "the Government's long-standing common law right to offset contract debts against contract payments"); Project Map, Inc. v. United States, 203 Ct. Cl. 52, 486 F.2d 1375, 1376 (1973) (Government could withhold amounts owed to a contractor under a contract when the contracting officer had found that plaintiff was overpaid on two other contracts, even though

the determination of overpayment was on appeal before the Board of Contract Appeals); Sinclair Oil Corp. v. United States, 291 F.3d 822, 828 (Fed. Cir. 2002) (proceeds received by a purchaser of gasoline from its settlement with a refiner would offset the gasoline purchaser's asserted refund from a DOE fund).[7]

The Government's common-law right to offset contractual debts owed to the Government against contract payments due to the debtor (and damages awarded to a plaintiff) is consistent with the contractual principle that damages for breach of contract cannot place the plaintiff in a better position than it would have been had there been no breach. The offset doctrine thus mandates that damages for breach of contract be reduced by the amount of contractual debts owed by a plaintiff to the Government to prevent unjust enrichment. "To derive the proper amount for the damages award, the costs resulting from the breach must be reduced by the costs, if any, that the plaintiffs would have experienced absent a breach." Bluebonnet, 339 F.3d at 1345 (emphasis added). Accord LaSalle Talman Bank v. United States, 317 F.3d 1363, 1366 (Fed. Cir. 2003) ("damages due to the breach are subject to offset or mitigation by the benefits of the actions taken after the breach"). In another SNF case in which the one-time fee had not been

---

[7] Offsets are permissible whether the Government is seeking to recoup or to setoff contractor debts. "Recoupment" is "a demand asserted [by a defendant] to diminish or extinguish the plaintiff's demand that arises out of the same transaction forming the basis of the plaintiff's claim," while a "setoff" "arises out of a transaction extrinsic to the plaintiff's claim." In re Gober, 100 F.3d 1195, 1207 (5th Cir. 1996) (emphasis added); see REW Enters., Inc. v. Premier Bank, N.A., 49 F.3d 163, 170 (5th Cir. 1995) (recoupment involves recovery of "part of a claim upon which one is sued" by means of a "counterclaim arising out of the same transaction"); Vari-Build, Inc. v. City of Reno, 622 F. Supp. 97, 99 (D. Nev. 1985) ("claim in recoupment must concern matters arising out of the same transaction that is the basis for the plaintiff's claim for relief"); Black's Law Dictionary 1275 (6th ed. 1990) ("[r]ecoupment is a purely defensive matter growing out of transaction constituting plaintiff's cause of action and is available only to reduce or satisfy plaintiff's claim . . .").

paid, Consumers Energy, although the Court rejected the Government's showing that the obligation to pay the one-time fee was a condition of performance that discharged the Government's liability, the Court granted the Government's request that it be allowed to offset plaintiff's one-time fee against any damages that may be awarded. Consumers Energy, 65 Fed. Cl. at 373. The Court reasoned that "[p]laintiff's recovery of damages without having to account for its obligation to pay the one-time fee, which it would have owed had there been no breach, would surely put Plaintiff in a more advantageous position." Id.[8]

In this case, to the extent that the Court awards any damages to Vermont Yankee, Vermont Yankee's damages should be reduced by the amount of its unpaid one-time fee (plus interest calculated in accordance with Article VIII.B.2(b)) pursuant to the Government's common-law right of offset. See Munsey Trust Co., 332 U.S. at 239; Cecile Indus., 995 F.2d at 1054-55; Sinclair Oil, 291 F.3d at 828. If the Court did not require recoupment of this unpaid fee, it would place Vermont Yankee in a better position than it would have been had DOE performed the Standard Contract, contrary to established precedent.[9]

---

[8] The Court in System Fuels has deferred consideration of the Government's request for an offset until the damages phase of the case. System Fuels, 65 Fed. Cl. 174 n.12.

[9] Pursuant to the Purchase and Sale Agreement between Vermont Yankee and ENVY, Vermont Yankee has retained for itself "such claims as may relate to the one-time fee with respect to fuel used to generate electricity prior to April 7, 1983," and has promised pay the one-time fee when it becomes "due and payable in accordance with the terms of the DOE Standard Contract . . . subject to any rights of set-off to which the Seller may be entitled by reason of the Department of Energy's defaults under said DOE Standard Contract." Appendix to "Defendant's Motion For Summary Judgment Regarding The Invalid Assignment Of Plaintiff's Standard Contract And Pre-Existing Claims From The Partial Breach Of That Contract" at 130-131. We do not understand what claims Vermont Yankee has reserved for itself, but it appears that any "set-off" of the one-time fee owed by Vermont Yankee would violate the prohibition in Alabama Power Company v. Department of Energy, 307 F.3d 1300 (11th Cir. 2002), that funds from the Nuclear Waste Fund ("NWF") may not be used to pay the interim storage costs

CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant summary judgment in the Government's favor and dismiss Vermont Yankee's breach of contract claims, as set forth in Counts I and II of its complaint. In the alternative, we respectfully request that the Court grant summary judgment in our favor regarding the Government's right to recover Vermont Yankee's one-time fee or to offset it against any judgment in Vermont Yankee's favor.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

currently being borne by utilities. The NWF is the Treasury account created by the NWPA into which the nuclear utilities pay fees and from which Congress appropriates monies to the Department of Energy for siting, developing, and operating a permanent nuclear waste repository. In Alabama Power, the United States Court of Appeals for the Eleventh Circuit found that, pursuant to the current language of the NWPA, DOE may not use the NWF to pay for utilities' on-site storage resulting from DOE's delay in beginning SNF acceptance or allow utilities to reduce their payments into the NWF to compensate themselves for that delay. Any "set-off" taken by Vermont Yankee from the fees that it owes to the NWF would reduce the money that it must pay to the NWF. By contrast, the Government has a mechanism whereby any money due Vermont Yankee as the result of a final judgment of this Court can be paid into the NWF to offset Vermont Yankee's outstanding one-time fee obligation, thereby ensuring that Vermont Yankee's remaining obligation to the NWF is paid in full.

s/ Marian E. Sullivan
MARIAN E. SULLIVAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0365
Fax: (202) 307-2503

May 4, 2006

Attorneys for Defendant