IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| VERMONT YANKEE NUCLEAR POWER CORPORATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 02-898C |
| | ) | (Judge Wheeler) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING THE INVALID ASSIGNMENT OF PLAINTIFF'S STANDARD CONTRACT AND PRE-EXISTING CLAIMS FROM THE PARTIAL BREACH OF THAT CONTRACT

Defendant, the United States, respectfully requests that the Court grant summary judgment in the Government's favor regarding the invalidity of plaintiff's assignment of the Standard Contract and its pre-existing claims for partial breach arising from that contract. Because the assignment by plaintiff, Vermont Yankee Nuclear Power Corporation ("Vermont Yankee"), of the Standard Contract is invalid, the Government has no privity with Entergy Nuclear Vermont Yankee ("ENVY"). In a separate motion that we are filing in ENVY's pending case, Entergy Nuclear Vermont Yankee, L.L.C. v. United States, No. 03-2663C, we are seeking dismissal of that case, which would leave Vermont Yankee to pursue its remedies under the contract. In the alternative, the Court should find that Vermont Yankee has assigned all of its rights and obligations under the Standard Contract as well as its claims arising from the partial breach of the Standard Contract to ENVY and dismiss this case.

SUMMARY OF THE ARGUMENT

The Assignment of Contracts Act, 41 U.S.C. § 15, generally governs and limits the ability of Government contractors to assign their contracts without the Government's consent, while the Assignment of Claims Act, 31 U.S.C. § 3727, generally governs and limits the ability of Government contractors to assign their claims against the Government. The Nuclear Waste Policy Act, 42 U.S.C. § 10222(b)(3), creates an exception to the limitations of the Assignment of Contracts Act, providing that the "rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level radioactive waste involved," and the Standard Contract at issue in this case incorporates that provision, although the Standard Contract also requires notice within 90 days of the assignment.

In this case, Vermont Yankee has notified the Department of Energy ("DOE") that it has assigned its Standard Contract to a new party, ENVY, but has indicated that the assignment is less than a complete assignment of its rights and obligations under the Standard Contract. Examination of the purchase and sale agreement executed by the parties confirms that, although Vermont Yankee has conveyed the title to all of its spent nuclear fuel ("SNF"), it has purportedly retained the obligation to pay the one-time fee pursuant to the Standard Contract. Vermont Yankee's attempt to separate its Standard Contract obligations from its ownership of the SNF violates the assignment provisions of the NWPA and the Standard Contract, which only allow assignment "with transfer of title to the SNF and/or HLW involved" and require assignment of the "rights and duties" under the contract. Because Vermont Yankee has transferred title to all of its SNF to ENVY, a valid assignment could only include transfer of all the rights and duties owed under the Standard Contract. Because Vermont Yankee has not assigned all of its rights

and duties, instead choosing to reserve the obligation to pay the one-time fee, its assignment is invalid. Because the contract assignment to ENVY is defective, ENVY does not have any privity of contract with DOE.

Vermont Yankee's assignment of its pre-existing claims is also invalid. Neither the NWPA nor the Standard Contract contemplates assignments of pre-existing damages claims. To the contrary, although the NWPA's statutory provision relating to the assignment of contracts may limit the prohibitions upon contract assignments identified in the Assignment of Contracts Act, Congress has expressly distinguished assignments of contracts (traditionally governed by the Assignment of Contracts Act) from assignments of damages claims (traditionally governed by the Assignment of Claims Act). Neither the NWPA nor the Standard Contract overrides the statutory provisions of the Assignment of Claims Act, and Vermont Yankee, therefore, has no basis upon which it can properly assign its pre-existing damages claims to ENVY. In fact, outside the context of the Assignment of Claims and Assignment of Contracts Acts, assignment of a contract to a third party has not historically encompassed damages claims arising from events occurring prior to the date of the contract assignment. Accordingly, here, particularly in light of the absence of a clear waiver of sovereign immunity permitting assignments of both contracts and pre-existing damages claims, the NWPA provision allowing contract holders to assign their contracts to third parties does not encompass damages claims that pre-date the contract assignment.

Even if the assignment provision of the NWPA and the Standard Contract could be interpreted as a limitation upon the broader Assignment of Claims Act, the validity of Vermont Yankee's assignment is still tied to the transfer of title for the SNF. Because the assignment is,

again, effective upon the "transfer of title to the SNF and/or HLW involved," this provision should be interpreted as prohibiting the assignment of pre-existing claims. Vermont Yankee could only assign to ENVY claims arising from the storage of fuel attendant to DOE's delay after ENVY was assigned the fuel. The Court should not permit ENVY, as the assignee of the damages claims that Vermont Yankee identified in its complaint in this case, to pursue damages claims based upon events or delays that pre-date Vermont Yankee's contract assignment to ENVY.

In the alternative, if the Court determines that, with the transfer of title to all of its SNF, Vermont Yankee has transferred all of its rights and obligations pursuant to the Standard Contract, the Court should find that the obligation to pay the one-time fee is now borne by ENVY. Moreover, if the Court finds that the assignment provision of the NWPA and the Standard Contract also allows for the assignment of claims that existed at the time of the sale, the Court should find that Vermont Yankee has assigned all of its claims to ENVY, with the transfer of title to its SNF. Without any claims against the United States arising from the partial breach of the Standard Contract, Vermont Yankee's case should be dismissed.

## ARGUMENT

### I. THE STANDARD OF REVIEW

Summary judgment is a wholly acceptable and favored procedural means for disposition of claims or issues as to which there are no genuine issues of material fact in dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). It is "a salutary method of disposition designed to secure the just, speedy and inexpensive determination of every action." Sweats Fashions, Inc. v. Pannill

Knitting Company, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). "[T]here is no genuine issue of material fact for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Avia Group Int'l, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557, 1560 (Fed. Cir. 1988) (quoting Anderson, 477 U.S. at 249-50). When the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. RCFC 56(c). In this case, there is no dispute over any facts that could preclude the Government's entitlement to summary judgment.

## II. VERMONT YANKEE'S ATTEMPT TO ASSIGN ITS STANDARD CONTRACT, BUT TO RETAIN CONTROL OVER THE FUTURE ONE-TIME FEE PAYMENT, INVALIDATES THE CONTRACT ASSIGNMENT

### A. With The Transfer Of Title To All Of Its SNF, Vermont Yankee Should Have Assigned All Of Its Rights And Obligations Pursuant To The Standard Contract

Generally, the Assignment of Contracts Act ("Contracts Act"), 41 U.S.C. § 15, bars the assignment of contracts with the Government absent the Government's consent:

> No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States are concerned.

41 U.S.C. § 15. Nevertheless, the NWPA creates a potential exception to that statutory prohibition, providing that "[t]he rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel and/or high-level radioactive waste involved." 42 U.S.C. § 10222(b)(3) (emphasis added). Like other provisions of the NWPA, the provision ensures that the rights and duties arising from the Standard Contract are held by the entity that holds title to the SNF. Vermont Yankee has transferred title to all of

its SNF to ENVY as a condition of the sale of its facility, according to its notice of assignment to DOE and the underlying purchase and sale agreement with ENVY. PFUF ¶¶ 3 and 6; App. 86 and 159.[1] To properly assign its Standard Contract, Vermont Yankee should have assigned all of its rights and duties to ENVY.

However, in making its contract assignment to ENVY based upon the transfer of title to all of its fuel, Vermont Yankee has not completely divested itself of its obligations to perform pursuant to the Standard Contract. Under the Standard Contract, in addition to quarterly fees that each contract holder must pay, each contract holder is responsible for paying a one-time fee for the disposal of the SNF and/or HLW that it had generated prior to April 7, 1983: "For SNF, or solidified high-level radioactive waste derived from SNF, which fuel was used to generate electricity in a civilian nuclear power prior to April 7, 1983, a one-time fee will be assessed." 10 C.F.R. § 961.11, Art. VIII.A.2 (emphasis added). The contract holder is required to pay the entirety of its one-time fee before DOE begins acceptance of that contract holder's SNF and/or HLW. See id., Art. VIII.B. In fact, section 302(a) of the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. § 10222(a)(5), expressly indicates that DOE's obligation to dispose of any utility's SNF is "in return for the payment of fees established by this section," conditioning DOE's acceptance obligation upon that payment. To the present day, Vermont Yankee has not paid that one-time fee.

In Rochester Gas & Electric Corp. v. United States, 65 Fed. Cl. 431 (2005), this Court recently examined this issue regarding the validity of the assignment by the utility plaintiff in

---

[1] "PFUF __" refers to "Defendant's Proposed Findings Of Uncontroverted Fact" that accompanies this motion. "App. __" refers to the appendix to this motion.

that case. The Court determined that the NWPA allowed partial assignment of the Standard Contract because the assignment provision discussed the allowability of the assignment of "rights and duties" arising under the Standard Contract, rather than simply allowing the assignment of the Standard Contract in its entirety. Id. at 438. The Court also noted the language "with transfer of title to the SNF or HLW involved" was a "condition" upon such assignments that would limit the number of assignments. Id. However, the Court was not presented with evidence regarding whether the plaintiff in Rochester Gas had transferred title to all of its SNF as part of its assignment, so it did not reach the issue presented with this motion – namely, whether Vermont Yankee may assign less than all of its contract obligations when it has assigned title to all of its SNF.

The assignment provision of the contract states that "[t]he rights and duties of the Purchaser may be assignable with transfer of title to the SNF and/or HLW involved . . . ." App. 26; 10 C.F.R. § 961.11, Article XIV ("Assignment"). If the assignment of rights and duties is not linked to the transfer of the title to the SNF, the provision does not make sense, and the modifier "involved" has no import. Further, the provision requires the assignment of the "rights and duties," not the assignment of "rights or duties" or of "rights and some of the duties." The Court, in interpreting the assignment provision, is obligated to give effect to all of the words of the contract. KMS Fusion Inc. v. United States, 36 Fed. Cl. 68, 76 (1996) (citing Fortec Constructors v. United States, 760 F.2d 1288, 1292 (Fed. Cir. 1985) ("[a]n interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless.")). Clearly, the plain language of the assignment provision

requires a complete assignment of all "rights and duties" associated with the "SNF involved" when ownership of that SNF is transferred.

The fact that both the rights and the duties of the Standard Contract must be assigned with the transfer of title to the SNF involved comports with the other language and structure of both the Standard Contract and the NWPA. The parties' obligations pursuant to the Standard Contract are tied to the SNF and/or HLW held by the Purchaser. The scope of the Standard Contract is described as follows:

> This contract applies to the delivery by Purchaser to DOE of SNF and/or HLW of domestic origin from civilian nuclear power reactors, acceptance of title by DOE to such SNF and/or HLW, subsequent transportation, and disposal of such SNF and/or HLW and, with respect to such material, establishes the fees to be paid by the Purchaser for the services to be rendered hereunder by DOE . . . . The services to be provided by DOE under this contract shall begin, after commencement of facility operations, not later than January 31, 1998 and shall continue until such time as all SNF and/or HLW from the civilian nuclear power reactors specified in Appendix A, annexed hereto and made part hereof, has been disposed of.

App. 6; 10 C.F.R. § 961.11, Article II ("Scope"). Article V.A. of the contract provides: "The Purchaser shall deliver to DOE and DOE shall, as provided in this contract, accept the SNF and/or HLW described in accordance with Article VI.A. of this contract, for disposal thereof." The NWPA authorizes DOE "to enter into contracts with any person who generates or holds title to high-level radioactive waste ['HLW'], or spent nuclear fuel, of domestic origin for the acceptance of title, subsequent transportation, and disposal of such waste or spent fuel" in exchange for the payment of fees. 42 U.S.C. § 10222(a)(1); see Roedler v. DOE, 255 F.3d 1347, 1352 (Fed. Cir. 2001) (construing the Standard Contract and instructing that, "[for] determination of contractual and beneficial intent when, as here, the contract implements a

statutory enactment, it is appropriate to inquire into the governing statute and its purpose"). Clearly, the rights and duties of the parties pursuant to the Standard Contract are tied to the ownership of the SNF. The assignment provision is properly interpreted as allowing the transfer of these rights and obligations when the SNF and/or HLW is transferred.

The facility specified in Appendix A to the Standard Contract that Vermont Yankee held with DOE is the Vermont Yankee Nuclear Power Station. App. 35. Pursuant to the purchase and sale agreement between Vermont Yankee and ENVY, Vermont Yankee sold the Vermont Yankee Nuclear Power Station and transferred title to all of the SNF stored there to ENVY. To obtain disposal services for this SNF from DOE, ENVY could be assigned the Standard Contract held by Vermont Yankee. However, because all of the SNF is now owned by ENVY, all of the rights and obligations under the Standard Contract must be owned by ENVY.

The Purchase and Sale Agreement that Vermont Yankee and ENVY executed provides that Vermont Yankee remains financially liable for the payment of the one-time fee under the Standard Contract that must be paid before DOE removes the SNF that Vermont Yankee has transferred to ENVY. PFUF ¶¶ 4-5; App. 92, 130-131. As we discussed in another motion being filed today, until Vermont Yankee pays that fee, DOE will not have to accept any SNF and HLW under the Standard Contract at issue in this case. See 42 U.S.C. § 10222(a)(5); 10 C.F.R. § 961.11, Arts. V.A.2 & V.B (requiring contract holder to pay one-time fee before DOE begins taking SNF and/or HLW). In essence, Vermont Yankee retains control over whether and when ENVY is entitled to performance from DOE under the Standard Contract for all of the fuel to which it has title and for which it has responsibility. This situation is presumably what the assignment provision was intended to prevent: a division of the rights and duties of the Standard

Contract between the owner of the SNF that was the subject of the Standard Contract and some other third party. Because some of the contract holder's obligations under the Standard Contract have been retained by Vermont Yankee while others have been "assigned" to ENVY along with responsibility for all of the fuel, the contract "assignment" is only a partial one that violates the provision of the Standard Contract and the NWPA which allows assignments.

In sum, because Vermont Yankee has transferred title to all of its SNF, it had to assign all of its rights and obligations under the Standard Contract to effect a valid contract assignment. Having failed to properly assign all of its rights and duties relating to the SNF that it previously owned, the contract assignment is invalid.

B. The Assignment Provision Of The Standard Contract And NWPA Should Not Be Construed To Allow Partial Assignments

Although the assignment provision of the NWPA and the Standard Contract may be a limitation on the prohibition on contract assignments provided by the Contract Act, that provision should not be interpreted to allow partial assignments of the Standard Contract. Under the Contract Act, assignments of contracts are specifically prohibited, absent permission of the Government. Although the NWPA creates a limited exception to that rule, providing that the "rights and duties of a party to a contract . . . may be assignable . . .," 42 U.S.C. § 10222(b)(3) (emphasis added), the statutory language does not permit only "part of the rights and duties" to be assigned to a third party. Waivers of sovereign immunity must "be strictly construed" in its scope in favor of the sovereign and "unequivocally expressed" in statutory text. Department of the Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999). Based upon the statutory language of the NWPA and that provision's exception to the general prohibition of any contractual assignments, Vermont Yankee's assignment of only a part of its contract and its

retention of some of the duties of the Standard Contract do not constitute a valid contract assignment under the NWPA.

It is a well-established principle that, under the Tucker Act, 28 U.S.C. § 1491, the United States consents to be sued upon contract claims only by those with whom it has privity of contract. See Erickson Air Crane Co. v. United States, 731 F.2d 810, 813 (Fed. Cir. 1984); United States v. Johnson Controls, Inc., 713 F.2d 1541, 1557 (Fed. Cir. 1983); Petrin v. United States, 90 Ct. Cl. 670, 672-73 (1940). The only parties, therefore, that may maintain an action in this Court founded upon a contract are those who have entered into a contract with the United States. Merritt v. United States, 267 U.S. 338, 340 (1925); Erickson Air, 731 F.2d at 813; Putnam Mills Corp. v. United States, 479 F.2d 1334, 1337 (Ct. Cl. 1973). Because Vermont Yankee entered into the Standard Contract with DOE, the United States has waived its sovereign immunity to be sued by Vermont Yankee to the extent that Vermont Yankee remains a contract holder. However, Vermont Yankee has attempted to assign its Standard Contract to ENVY, and, purportedly, ENVY is now the contract holder in privity with the Government under that contract. However, because Vermont Yankee retains the obligation to pay the one-time fee and its claims regarding the payment of this fee, the Government is in litigation with both Vermont Yankee and ENVY, a situation that the prohibition on assignments of contracts was intended to prevent.

In addition, "[t]o be an effective assignment, the assignor must divest itself of all right, interest, and control in the property assigned." In re Computer Engineering Associates v. John Desmond, 337 F.3d 38, 46 (1st Cir. 2003); see Miller v. Wells Fargo Bank Int'l Corp., 540 F.2d 548, 557-58 (2nd Cir. 1976). "[R]etention of control precludes the perfection of an assignment."

Computer, 337 F.3d at 46. The responsibility for paying the one-time fee remains with Vermont Yankee. If Vermont Yankee does not pay the fee, DOE is not obligated to begin removing the SNF under the Standard Contract at issue in this case. Vermont Yankee is maintaining complete control over whether and when ENVY obtains rights to accept of the SNF covered by the Standard Contract at issue in this case. Accordingly, aside from the issues of sovereign immunity implicated by the NWPA and the Assignment of Contracts Act, Vermont Yankee's retention of control over ENVY's future performance rights and DOE's future obligations precludes enforcement of the contract assignment. For these reasons, the Court should find that the contract assignment to ENVY is not effective and that, because ENVY is not a proper assignee of the Standard Contract, ENVY lacks privity with the Government that would permit it to maintain its suit.

Finally, even where an assignment of part of a contract is permitted, "'[i]f the obligor has not contracted to perform separately the assigned part of a right, no legal proceeding can be maintained by the assignor or assignee against the obligor over his objection, unless all the persons entitled to the promised performance are joined in the proceeding, or unless joinder is not feasible and it is equitable to proceed with joinder." Restatement (Second) of Contracts § 326(2) (1981). To the extent that the Court finds Vermont Yankee's contract assignment to ENVY valid or defers consideration of this issue, the Court should consolidate these cases. Concurrently with the filing of this motion, we have filed a motion for summary judgment regarding the failure of Vermont Yankee or ENVY to pay the one-time fee currently owed pursuant to the Standard Contract. As explained in that motion, the payment of the one-time fee under the Standard Contract at issue here is a condition precedent to the Government's

obligation to begin SNF acceptance. The failure to pay that fee should preclude a finding of liability in this case or Entergy Nuclear Vermont Yankee. Further, to the extent that the Court finds that the nonpayment of the one-time fee does not preclude a finding of liability, we will seek an affirmative recovery of that fee as a counterclaim against the contract holder or, in the alternative, will seek to offset the amount of the one-time fee against any recovery in this case. If these cases are not consolidated, our ability to recover the one-time fee payment and to tie that fee to any recovery in this case will be severely complicated.

## III. VERMONT YANKEE'S ATTEMPT TO ASSIGN DAMAGES CLAIMS THAT PRE-EXISTED ITSCONTRACT ASSIGNMENT IS ALSO INVALID

### A. The Standard Contract Does Not Permit Assignment Of Pre-Existing Claims

In its notice of assignment to DOE, Vermont Yankee stated that, although it had transferred the title to all of its SNF and assigned its rights and duties under its Standard Contract to ENVY, that it "retained the rights to any and all damages and other remedies that might accrue under from [sic] the Department of Energy's breach of its obligations under the Contract to the extent of the one-time fee for fuel used to generate electricity prior to April 7, 1983." PFUF

¶ 6; App. 159. Pursuant to the Purchase and Sale Agreement, Vermont Yankee has assigned to ENVY "any claims of the Seller related to the Department of Energy's defaults under the DOE Standard Contract accrued as of the Closing, whether related to periods prior to or following the Closing, excluding such claims as may relate to the one-time fee with respect to fuel used to generate electricity prior to April 7, 1983." PFUF ¶ 3; App. 86-87. While the Government does not understand what claims Vermont Yankee has reserved for itself, it is clear that Vermont

Yankee has improperly assigned its claims for the partial breach of the Standard Contract that pre-existed the sale of its facility.

The Standard Contract does not permit the assignment of pre-existing "claims." The contract states that "[t]he rights and duties of the Purchaser may be assignable with transfer of title to the SNF and/or HLW involved . . . ." App. 2; 10 C.F.R. § 961.11, Article XIV ("Assignment"). The meaning of the Standard Contract language is found within the NWPA, which authorizes DOE "to enter into contracts with any person who generates or holds title to high-level radioactive waste ['HLW'], or spent nuclear fuel, of domestic origin for the acceptance of title, subsequent transportation, and disposal of such waste or spent fuel" in exchange for the payment of fees. 42 U.S.C. § 10222(a)(1); see Roedler v. DOE, 255 F.3d 1347, 1352 (Fed. Cir. 2001) (construing the Standard Contract and instructing that, "[for] determination of contractual and beneficial intent when, as here, the contract implements a statutory enactment, it is appropriate to inquire into the governing statute and its purpose"). As previously discussed, the NWPA provides that "[t]he rights and duties of a party to a **contract** entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level waste involved." 42 U.S.C. § 10222(b)(3) (emphasis added). This statutory language makes it clear that the language in the Standard Contract **solely** refers to assignment of the contract, meaning the assignment of "rights and duties" that begin upon assignment. The Standard Contract language permitting assignment, in Article XIV, does not refer to the assignment of claims – that is, pre-existing claims that arose from the contract prior to the contract assignment.

In Rochester Gas, the Court found that the assignment provision of the NWPA also allowed the assignment of pre-existing claims, reasoning that "Section 302(b)(3) refers generally to the rights and duties of a party . . . generally one of the 'rights' that a party has in a contract with the [G]overnment is to bring a suit for breach of contract." Rochester Gas, 65 Fed. Cl. at 440. However, the provision only discusses the rights to a contract, not to claims. Without more, the assignment provision of the NWPA should not be interpreted to eliminate the more specific prohibition on such assignments set forth in the Claims Act.

This distinction in the meaning between the assignment of a contract and an assignment of a claim is seen in comparing the Contracts Act, 41 U.S.C. § 15, with the Assignment of Claims Act ("Claims Act"), 31 U.S.C. § 3727. The fact that Congress passed one statute regarding the assignment of contracts and another statute regarding the assignment of claims is deliberate and reveals that such assignments are to be viewed and treated differently. As previously discussed, the Contracts Act establishes that no contract with the United States may be transferred to a third party:

> No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States are concerned.

41 U.S.C. § 15. The pertinent provisions of the Claims Act place separate limitations upon an entity's ability to assign its damages claims against the Government to a third party, as follows:

> (a) In this section, "assignment" means (1) a transfer or assignment of any part of a claim against the United States Government or of an interest in the claim; or (2) the authorization to receive payment for any part of the claim.

> (b) An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued. The assignment shall specify the warrant, must be made freely, and must be attested to by 2 witnesses. The person making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment. The certificate shall state that the official completely explained the assignment when it was acknowledged. An assignment under this subsection is valid for any purpose.

31 U.S.C. § 3727 (formerly 31 U.S.C. § 203). Because Congress enacted two separate statutes pertaining to assignment, using one for "contracts" and one for "claims," the distinction demonstrates congressional intent to have the statutes play different roles in achieving a broad, common goal.

The permissibility of, restrictions upon, and effect of an assignment differ depending upon which Act is applied. Assignments of claims found to violate the Assignment of Claims Act, 31 U.S.C. § 3727, are invalid, returning the parties to the status quo ante. Colonial Navigation Company v. United States, 149 Ct. Cl. 242, 245, 181 F. Supp. 237, 240 (1960); see Fireman's Fund Ins. Co. v. England, 313 F.3d 1344, 1349 (Fed. Cir. 2002). Under the Assignment of Contracts Act, 41 U.S.C. § 15, wrongful assignments of contracts are not only invalid, but may result in annulment of the contract by the Government. Tuftco Corp. v. United States, 222 Ct. Cl. 277, 284 n.5, 614 F.2d 740, 744 n.5 (1980). Another important conceptual difference between these two statutes is that 31 U.S.C. § 3727, which expressly concerns claims, "pertains to claims for work already done," whereas 41 U.S.C. § 15, which pertains to "executory contracts, is more concerned with continuing obligations." Tuftco Corp., 222 Ct. Cl. at 284 n.4, 614 F.2d at 744 n.4 (emphasis added). Therefore, the Court should interpret the Standard Contract's assignment language based upon the NWPA's exclusive use of the word

"contract" because the term draws a distinction between the assignment of a contract and the assignment of pre-existing claims.

The Federal Circuit seems to draw the same distinction. In Ginsberg v. Austin, 968 F.2d 1198 (Fed. Cir. 1992), the Federal Circuit determined that pre-existing claims are not automatically transferred with the assignment of an executory continuing contract. The case involved the issue of whether rights to back rent (a pre-existing claim) was presumed transferred, if not expressly reserved, when a lease contract was assigned. Ginsberg v. Austin, 968 F.2d 1198, 1200 (Fed. Cir. 1992). Because the Federal Circuit could not find any Federal law dispositive of the issue, the Court analyzed "general property and contract law principles as they . . . [were] embodied in state law pronouncements." Id. (citations omitted). As a matter of property law, the state courts uniformly have held that rents when due and owing become personal property and that the "transfer of . . . real estate subject to the lease does not carry with it any right to accrued rents then unpaid. These belong to the person who was the landlord at the time of their accrual and not to the grantee, unless assigned to him." Id. at 1201 (citations omitted). The Federal Circuit determined that, on the subject of assignments, the law of contracts was consistent with property law. Id. Various authorities agree that "the assignment of rights under a continuing contract does not imply an assignment of rights of action for previous breaches of the contract . . .." Id. (citations omitted). Consequently, the Court held that, in light of the uniform and longstanding legal authority, as a matter of Federal law, a back rent claim (that is, a pre-existing claim) was not transferred with the assignment of the continuing contract and that pre-existing claims were separate from the assignment of the contract itself.

The case here is on point with Ginsberg v. Austin because, even though Vermont Yankee has purported to assign a claim for a previous breach, assignments of claims were not expressly included within the assignment provision of the Standard Contract, as evidenced by the assignment language in the NWPA. The Government has waived sovereign immunity, through the NWPA and Article XIV of the Standard Contract, against assignees for claims that arise **after** assignment of the Standard Contract, but not for claims that pre-existed the contract assignment. The Standard Contract's assignment language does not take into consideration the assignment provision of the NWPA, congressional enactment of separate assignment acts, and the Federal Circuit's ruling that claims that pre-date a contract assignment are distinct from the rights that accompany an assignment of the contract. A waiver of sovereign immunity must not be implicitly enlarged or extended to include causes of action not within the terms of the NWPA or the Standard Contract. See Klamath and Moadac Tribes v. United States, 296 U.S. 244, 250 (1935) and United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992) (waivers of sovereign immunity must be "unequivocally expressed"). Therefore, Vermont Yankee's assignment of "the right to pursue and recover damages," to the extent that they include damages that pre-date the contract assignment, is invalid.

There are also strong policy reasons that the Court should interpret the assignment language of the Standard Contract as only permitting transfer of the contract and not pre-existing claims. They are the same policy reasons underlying the enactment of the Claims Act. One of the main purposes of the Claims Act is to allow the Government to deal solely with the original contractor that allegedly incurred the claimed damages and to protect the Government's ability to defend itself against contract claims. See George Hyman Construction Co. v. United States,

30 Fed. Cl. 170, 173, aff'd, 39 F.3d 1197 (Fed. Cir. 1993); American National Bank & Trust Co. v. United States, 22 Cl. Ct. 7, 14 (1990). The Claims Act protects the Government's ability to defend itself by ensuring availability of information concerning a claim at issue. For example, the Claims Act aids the Government in defending itself by preventing claims from being assigned several different times, protecting against plaintiffs who may have no documents or information relevant to the dispute. The purpose of the Claims Act is three-fold:

> first, to prevent persons of influence from buying up claims which might then be improperly urged upon Government officials; second, to prevent possible multiple payment of claims and avoid the necessity of the investigation of alleged assignments by permitting the Government to deal only with the original claimant; and third, to preserve for the Government defenses and counterclaims which might not be available against an assignee.

Kingsbury v. United States, 215 Ct. Cl. 136, 1445, 563 F.2d 1019, 1024 (1977); see Patterson v. United States, 173 Ct. Cl. 819, 823, 354 F.2d 327, 329 (1965). Therefore, based also upon prevailing policy considerations, the Court should strictly construe the Standard Contract's assignment language.

Nevertheless, Vermont Yankee's purported assignment of its pre-existing claims is completely inconsistent with the scope of damages alleged in its amended complaint. Vermont Yankee, in its first amended complaint, describes the nature of the damages it has sustained as follows:

> Vermont Yankee was forced to incur substantial additional costs to provide for extended on-site storage of the Power Station's SNF prior to the sale of the Power Station. Moreover, Vermont Yankee incurred other substantial damages, including but not limited to regulatory costs associated with efforts to ensure sufficient on-site storage capacity or alternative off-site storage capacity to permit continued operation of its nuclear plants.

Compl. ¶ 22.[2] That is, even though it has purported to assign its damages claims for past incurred costs to ENVY, it is also claiming them in this litigation. At the same time, it appears that ENVY is also claiming such damages. ENVY Compl ¶ 21. To the extent that Vermont Yankee is seeking to recover on its claims up to the date of sale, its complaint describes the proper scope of the claims that Vermont Yankee may pursue before this Court, and any assignment of those claims to ENVY should be found invalid. Vermont Yankee cannot assign these claims for damages incurred prior to the sale of its plant and assignment of its contract to ENVY.

### B. Because The Standard Contract Does Not Permit Assignment Of Pre-Existing Damages Claims, Vermont Yankee's Assignment Is Invalid Because It Does Not Satisfy The Requirements Of The Assignment Of Claims Act

Because the Standard Contract does not permit assignment of claims, Vermont Yankee must comply with the strict requirements of the Claims Act to have a valid assignment. See American Financial Assocs., Ltd. v. United States, 5 Cl. Ct. 761, 768, 771 (1984), aff'd, 755 F.2d 912 (Fed. Cir. 1985). Vermont Yankee's assignment of pre-existing claims to ENVY is invalid because it does not meet the requirements of the Assignment of Claims Act. Under the express terms of the Claims Act, an assignment may only be made after the claim is decided and upon issuance of a warrant for payment. See 31 U.S.C. § 3727 ("An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of

[2] ENVY alleges in its complaint that, as a result of DOE's partial breach, it has been and will be "forced to incur substantial additional costs to provide for extended on-site storage of ENVY's SNF." Complaint, filed Nov. 12, 2003, ¶ 21.

the claim has been issued."). Thus, there is no provision which allows an assignee simply to pursue undecided/unresolved claims directly against the United States.

The Claims Act includes a "financing institution exception" to the bar on assignments, which permits, in limited circumstances, Government contractors to assign their rights to payment in connection with Government contracts to specified "financing institutions" in exchange for business financing. United California Discount Corp. v. United States, 19 Cl. Ct. 504, 507 (1990). However, it is obvious that ENVY does not qualify for such an exception. In addition, Vermont Yankee and ENVY have failed to comply with the notification procedure of the Claims Act, which requires financial institutions to provide a true copy of the instrument of assignment to the contracting officer. United California, 19 Cl. Ct. at 507; 31 U.S.C. § 3727(c)(3). Neither Vermont Yankee or ENVY have alleged that they provided a copy of the instrument of assignment to the contracting officer as required under the Claims Act. Vermont Yankee only alleges that, "[b]y letters dated April 23, 2002 and July 31, 2002 and in accordance with Article XIV of the Standard Contract, Vermont Yankee and ENVY notified DOE that Vermont Yankee was assigning the Standard Contract covering the Power Station to Entergy Nuclear Operations, Inc., as agent for ENVY." Vermont Yankee First Amend. Compl. ¶ 3. The notice to DOE, which accompanies this response, see App. 3-4, does not include the instrument of assignment and does not equate to a proper assignment of claims pursuant to the Claims Act. The financing institution exception is strictly construed, and a contractor must meet **all** of the requirements contained within the statute to gain the benefit of the exception. United California, 19 Cl. Ct. at 507-08; American Financial, 5 Cl. Ct. at 768. Failure of the contractor to abide by any of the Act's provisions will invalidate an attempted assignment. Uniroyal, Inc. v. United

States, 197 Ct. Cl. 258, 260, 454 F.2d 1394, 1396 (1972). Because this Court strictly construes the Claims Act notice requirements, ENVY does not hold a valid assignment pursuant to the Act.

## IV. IF THE COURT FINDS THAT VERMONT YANKEE'S ASSIGNMENTS ARE VALID, VERMONT YANKEE'S CASE SHOULD BE DISMISSED

To the extent that the Court finds that Vermont Yankee has properly assigned its contract and its pre-assignment damages claims, Vermont Yankee's case should be dismissed, given that it has assigned all viable pre-assignment damages claims to ENVY. The assignment of claims that Vermont Yankee provided to ENVY included the following:

> Subject to section 6.11(b),[3] any claims of the Seller related to the Department of Energy's defaults under the DOE Standard Contract accrued as of the Closing, whether relating to periods prior to or following the Closing, excluding such claims as may relate to the one-time fee with respect to fuel used to generate electricity prior to April 7, 1983.

PFUF ¶ 3; App. 87.

Although Vermont Yankee purports to seek recovery of costs incurred for "extended on-site storage . . . prior to the sale of the Power Station," Vermont Yankee First Amended Compl. ¶ 22, such costs are clearly encompassed in the plain language of the assignment to ENVY. Further, although Vermont Yankee seeks to recover the "regulatory costs associated with efforts to ensure sufficient on-site storage capacity or alternative off-site storage capacity to permit continued operation of its nuclear plants,"id., such alleged damages, yet again, are clearly encompassed in the assignment of claims to ENVY. Moreover, if the assignment provision of

---

[3] Section 6.11(b) provides that Vermont Yankee will pay the one-time fee when it becomes due "subject to any rights of set-off to which [Vermont Yankee] may be entitled." Because Vermont Yankee has transferred title to all of its SNF, including that fuel upon which the one-time fee is owed, it is unclear as to what claims Vermont Yankee retains with this provision.

the Standard Contract and the NWPA are interpreted to allow the assignment of pre-existing claims with the transfer of the SNF involved, Vermont Yankee has transferred title to its SNF to ENVY.

Vermont Yankee's first amended complaint also alleges that "DOE's breach diminished the value of the Power Station and, but for the breach, Vermont Yankee would have been able to sell the Power Station for a higher price." Vermont Yankee First Amended Compl. ¶ 22. Yet, nothing in Vermont Yankee's assignment to ENVY purports to allow Vermont Yankee to retain any diminished value claim. To the contrary, Vermont Yankee purported to assign "any claims of the Seller related to the Department of Energy's defaults under the DOE Standard Contract accrued as of the Closing, whether relating to periods prior to or following the Closing . . . ." PFUF ¶ 3; App. 87 (emphasis added). The only claims that were excluded from the assignment were "such claims as may relate to the one-time fee with respect to fuel used to generate electricity prior to April 7, 1983." Id. Although the alleged claims that Vermont Yankee purported to retain are rather vaguely described, Vermont Yankee's agreement to retain the obligation to pay the one-time fee under the Standard Contract cannot have anything to do with Vermont Yankee's "diminished value" claim, given that it did not, in fact, purport to pass the one-time fee payment obligation to ENVY. In fact, Vermont Yankee, in its first amended complaint, has not made any specific allegations that it has incurred particular damages associated with the one-time fee.[4] Certainly, it has no basis for maintaining a diminished value

---

[4] In any event, challenges to the manner in which the one-time fee is calculated or established belong in the United States courts of appeals for the regional circuits or the District of Columbia Circuit. 42 U.S.C. § 10139(a); see General Electric Uranium Management Corp. v. United States Department of Energy, 764 F.2d 896, 901-02 (D.C. Cir. 1985); Wisconsin Electric Power Co. v. Department of Energy, 778 F.2d 1, 2-3 (D.C. Cir. 1985); Consolidated Edison Co.

claim against the United States after assigning "any claims of the Seller [Vermont Yankee] related to [DOE's] defaults under the DOE Standard Contract accrued as of the Closing" except for claims relating to the one-time fee. To the extent that Vermont Yankee asserts that its diminished value claim arose only after the "Closing," DOE was no longer in privity of contract with Vermont Yankee, which had already assigned its contract to ENVY, precluding its standing to maintain a contract claim against the United States.

To the extent that the Court finds that Vermont Yankee's assignment of claims to ENVY was proper and enforceable, it should dismiss Vermont Yankee's complaint for failure to identify any damages claims that it has not assigned to ENVY.

## CONCLUSION

For the foregoing reasons, the Government requests that the Court find that Vermont Yankee's assignment of its Standard Contract and its claims that existed prior to the date of the sale of its plant to be invalid. Pursuant to this determination, the Court should dismiss the complaint filed by ENVY. In the alternative, if the Court determines that the assignment is

---

of N.Y., Inc. v. United States Dep't of Energy, 870 F.2d 694 (D.C. Cir. 1989); Commonwealth Edison Co. v. United States Department of Energy, 877 F.2d 1042, 1045 (D.C. Cir. 1989). To the extent that Vermont Yankee wishes to challenge the one-time fee amount, it must do so in one of those courts. The mere fact that the one-time fee provision was taken from the Nuclear Waste Policy Act and incorporated into the Standard Contract does not alter the forum in which Vermont Yankee must seek judicial review of any challenge the Secretary's fee calculations. See, e.g., City of Burbank v. United States, 273 F.3d 1370, 1380 (Fed. Cir. 2001) (under similar judicial review provision to that in the NWPA, "where disputed contract provisions are statutorily mandated . . ., the Ninth Circuit possesses exclusive jurisdiction" and that "[t]his is so even where a complainant styles her challenge as a breach of contract claim because the challenge is a collateral attack on the Act or regulation").

valid, the Government requests that the Court find that Vermont Yankee has assigned all of its contract obligations and all of its claims to ENVY and dismiss this case.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Marian E. Sullivan
MARIAN E. SULLIVAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0365
Fax: (202) 307-2503

May 4, 2006

Attorneys for Defendant