SECTION III:

Based upon electricity generated on or after April 7, 1983, a schedule should be attached specifying the gross power generated by each plant during the assigned three-month period as measured at the output terminals of the turbine generator. (See Annex A, to be completed with each submission of the remittance advice.)

a. Total of power generation from attached schedules

b. Self explanatory

c. Fee schedule rate in effect at time of payment

SECTIONS IV & V:

(Same instructions as above) DOE will invoice purchasers when underpayments or late payments occur, reference a particular payment, and state the reason for the invoice.

A. The date the purchaser received DOE invoice

B. DOE's invoice #

C. Interest paid

$. Consists of interest if late payment or fees plus interest if under payment

SECTION VI:

Explain on an attached sheet of paper, if necessary, why DOE has been overpaid and the proposed disposition of the payment, e.g., apply credit against this payment or send refund.

$ If applied against this payment, this number is negative. If refund desired, leave blank and pay gross amount due from Sections II through V.

SECTION VII:

The sum of Sections II through VI.

APPENDIX "G" (Continued)

Instruction Guide for Remittance of
Nuclear Waste Disposal Fees to
Department of Energy Via Wire Transfer

Payments made to the Department of Energy (DOE) for Nuclear Waste Disposal Fees will be affected by the Purchaser's commercial bank via the Federal Reserve Communications System (also known as Fedwire) to the Department of Treasury. If the Purchaser's commercial bank is not a Federal Reserve member, then the Purchaser's bank will use a correspondent member bank to effect the transfer of funds.

Purchaser must provide specific information to its bank so that the transfer of funds can take place. Failure to correctly provide the information could result in delay crediting of the remittance to DOE and could subject the purchaser to late charges.

A wire transfer of funds message with descriptions of specific date elements is provided in Enclosure A. Enclosure B contains instructions and a sample form of a transfer of funds that shows the specific information to be supplied by the Purchaser when requesting its commercial bank to initiate a transfer of funds.

Enclosure C shows a transfer of funds message form that may be photocopied and used each time a transfer of funds must be made. Constant information has been preprinted on the form. Only that information applicable to that particular monthly remittance (i.e., amount, date, company name) must be filled in prior to submitting the form to your bank.

If additional information is required, contact DOE representatives <u>Mark Loop or Joe Startari</u> on (301) 353-4899 or 353-5857).

Enclosure A

Guide for Funds Transfer
Messages to Treasury

The following instructions provide specific information which is required so that a funds (wire) transfer message can be transmitted to the Department of the Treasury. The funds transfer message format is shown in Exhibit 1. A narrative description of each item on the funds transfer message follows:

<u>Line 1</u>

Item 1 - Priority Code - The priority code will be provided by the sending bank. (Note: Some Federal Reserve district banks may not require this item.)

<u>Line 2</u>

Item 2 - Treasury Department Code - The nine-digit identifier "021030004" is the routing symbol of the Treasury. This item is a constant and is required for all funds transfer messages sent to Treasury.

Item 3 - <u>Type Code</u> - The type code, 10, identifies funds transfer messages. This item is a constant and is required for all funds transfer messages sent to Treasury.

Line 3

Item 4 - Sending Bank Code - This nine-digit identifier will be provided by the sending bank.

Item 5 - Class - The class field may be used at the option of the sending bank. (Note: Some Federal Reserve Districts prohibit use of this class/field.)

Item 6 - Reference Number - The reference number will be inserted by the sending bank to identify the transaction.

Item 7 - Amount - The amount must include the dollar sign and the appropriate punctuation including cents digits. This item will be provided by the Purchaser.

Line 4

Item 8 - Sending Bank Name - The telegraphic abbreviation which corresponds to item 4 will be provided by the sending bank.

Line 5

Item 9 - Treasury Department Name - This item is of critical importance. It must appear on the funds transfer message in the precise manner as stated to allow for the automated processing and classification of the funds transfer message to Treasury for credit to the Department of Energy. This item is comprised of a rigidly formatted, nonvariable sequence of 28 characters as follows:

TREAS NYC/(89000003) DOE NWF

EXHIBIT 1

(1) (2) TO 021030004 | (3) TYPE 10 |

(4) FROM 021000021 | (5) | (6) REF 3004 | (7) AMOUNT $1,305,500.00

ORIGINATING BANK AND RELATED DATA

(8) CHASE NYC

(9) TREAS NYC/(29000003) DOE-NWF

(10) DOE- NUCLEAR WASTE FEE

(11) MAY 80/ABC PURCHASER (12)

Line 6, 7, and 8

Payment Identification - The payment identification should be furnished by the remitter in the following manner:

Item 10 - The constant "DOE NUCWASTE FEE" will be inserted.

Item 11 - The month and year the fees were incurred (i.e.; May 80) followed by a slash (/).

Item 12 - The company name is inserted following the slash.

ENCLOSURE B

# TRANSFER OF FUNDS MESSAGE FORM (COMPLETED SAMPLE)

(A)

| TO | TYPE | | |
|---|---|---|---|
| 021030004 | 10 | | |
| FROM | | REF | AMOUNT |
| | | | $1,305,500.00 |

ORDERING BANK AND RELATED DATA

TREAS NYC/(89000003) DOE-NWF

DOE NUCLEAR WASTE FEE

(B)—MAY 80/ABC PURCHASER —(C)

The above example is a completed transfer of funds message form detailing those items (A thru C) filled in by the remitting company.

| Item | DESCRIPTION |
|---|---|
| A | Amount-must be properly punctuated to include cents digits. |
| B | Date - month and year followed by a slash(/) |
| C | Company Name. |

ENCLOSURE C

TRANSFER OF FUNDS MESSAGE FORM

TO 021030004 | TYPE 10

FROM | REF | AMOUNT $ .

ORIGINATING BANK AND RELATED DATA

TREAS NYC/(89000003) DOE - NWF

DOE

/

Annex A to Appendix G

STANDARD REMITTANCE OF ADVICE (RA) FOR PAYMENT OF FEES

This Annex should be completed to compute the MKWH fee for SNF burned on or after April 7, 1983.

I. Identification

A. Purchaser: ______________________

B. Period Covered

| | Last report | This report | Next report |
|---|---|---|---|

1. date submitted: ____________________
2. period covered: Start date: __________
   Finish date: __________
3. length of period covered (days): ______

C. Unit identification (Only one unit may be covered in each report.)

1. Reactor/Facility Name: ______________________________
2. Location: ______________________________
3. Type: ______________________________
4. Capacity: ______________________________
5. Date of Commencement of Operations: ______________
6. NRC License No.: ______________________________

II. Fee Calculation

| | Prior Period | This Period |
|---|---|---|
| 1. Gross Thermal Energy produced (MWH) | _____ | _____ |
| 2. Gross Electrical Energy produced (MWH) | _____ | _____ |
| 3. Gross Thermal Energy not used to generate electrical output (MWH) | _____ | _____ |
| 4. Gross electrical equivalent of thermal electricity (MWH) | _____ | _____ |
| 5. Net electrical energy produced (MWH) | _____ | _____ |
| 6. Electricity consumed/lost on site (MWH) | _____ | _____ |
| 7. Current fee rate: ____________ mill/kWh | | |
| 8. Current fee due: | | _____$ |

Prepared by: ______________________________
Phone number: ______________________________
Date: ______________________________

Annex B to Appendix G

STANDARD REMITTANCE OF ADVICE (RA) FOR PAYMENT OF FEES

This Annex should be completed only for SNF burned before midnight between April 6/7, 1983.

I. Identification

A. Purchaser: ______________________

B. Unit identification (Only one unit may be covered in each report.)

1. Reactor/Facility Name: ______________________
2. Location: ______________________
3. Type: ______________________
4. Capacity: ______________________
5. Date of Commencement of Operations: ______________________
6. NRC License No.: ______________________

II. Fee Calculation

A. Discharged nuclear fuel

| | 0-5000 | 5000-10000 | 10000 20000 | 20000 up | |
|---|---|---|---|---|---|
| 1. burnup[1] (MWDT/MTU) | | | | | |
| 2. initial loading (KgU) (with indicated burnup) | ____ | ____ | ____ | ____ | |
| 3. fee rate ($/KgU) | 80.00 | 142.00 | 162.00 | 184.00 | |
| 4. fee ($) | ____ | ____ | ____ | ____ | |
| 5. total fee (4) | | | | | ____ |

B. Nuclear fuel in the reactor core as of midnight of 6/7 April 1983

| | Assembly Identification | Initial loading (KgU) | burnup[1] as of midnight 6/7 April 1983 (MWDT/MTU) | fee |
|---|---|---|---|---|
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. | | | | |
| 12. | | | | |
| 13. | | | | |
| 14. | | | | |
| 15. | | | | |
| 16. | | | | |
| 12. | | | | |
| 13. | | | | |
| 14. | | | | |
| 15. | | | | |
| 16. | | | | |
| 17. | | | | |
| 18. | | | | |
| 19. | | | | |
| 20. | | | | |
| 21. | | | | |
| 22. | | | | |
| 23. | | | | |
| 24. | | | | |
| 25. | | | | |

C. Total fee ______

[1]Please provide (as an attachment) a clear reference to the methodology used to derive the burnup figures (computer codes, etc.) and a clear reference to all data used in the derivation of those figures.

5

**EXECUTION COPY**

VERMONT YANKEE NUCLEAR POWER STATION

PURCHASE AND SALE AGREEMENT

BY AND BETWEEN

VERMONT YANKEE NUCLEAR POWER CORPORATION, AS SELLER,

ENTERGY NUCLEAR VERMONT YANKEE, LLC, AS BUYER

AND

ENTERGY CORPORATION, AS GUARANTOR

DATED: AUGUST 15, 2001



PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

TABLE OF CONTENTS

Page


ARTICLE I DEFINITIONS ........ 1
1.1 Definitions ........ 1
1.2 Certain Interpretive Matters ........ 17

ARTICLE II PURCHASE AND SALE ........ 17
2.1 Transfer of Assets ........ 17
2.2 Excluded Assets ........ 19
2.3 Assumed Liabilities and Obligations ........ 21
2.4 Excluded Liabilities ........ 22

ARTICLE III THE CLOSING ........ 24
3.1 Closing ........ 24
3.2 Purchase Price; Payment ........ 25
3.3 Adjustment to Cash Purchase Price. ........ 25
3.4 Allocation of Purchase Price ........ 27
3.5 Prorations. ........ 28
3.6 Deliveries by the Seller ........ 29
3.7 Deliveries by the Buyer ........ 30

ARTICLE IV REPRESENTATIONS AND WARRANTIES OF THE SELLER ........ 31
4.1 Organization; Qualification ........ 31
4.2 Authority ........ 31
4.3 Consents and Approvals; No Violation ........ 31
4.4 Financial Statements. ........ 32
4.5 Reports ........ 33
4.6 Accounting Methods ........ 33
4.7 Title and Related Matters ........ 33
4.8 Real Property Agreements ........ 33
4.9 Insurance ........ 33
4.10 Environmental Matters; etc ........ 34
4.11 Labor Matters ........ 34
4.12 ERISA; Benefit Plans ........ 35
4.13 Real Property; Plant and Equipment. ........ 37
4.14 Condemnation; Public Improvements ........ 37
4.15 Certain Contracts and Arrangements. ........ 38
4.16 Legal Proceedings, etc ........ 38
4.17 Permits; Compliance with Law. ........ 38
4.18 NRC Licenses ........ 39
4.19 Regulation as a Utility ........ 39
4.20 Qualified Decommissioning Fund. ........ 39
4.21 Nonqualified Decommissioning Fund. ........ 41
4.22 Zoning Classification ........ 42






PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

4.23 Intellectual Property .......... 42
4.24 Taxes .......... 42
4.25 Operability. .......... 43
4.26 Brokers' Fees .......... 43
4.27 Disclaimer .......... 43

ARTICLE V REPRESENTATIONS AND WARRANTIES OF THE BUYER AND GUARANTOR 44
5.1 Organization .......... 44
5.2 Authority .......... 44
5.3 Consents and Approvals; No Violation .......... 45
5.4 Availability of Funds .......... 45
5.5 Legal Proceedings .......... 45
5.6 WARN Act .......... 45
5.7 "As Is Sale" .......... 46
5.8 Affiliate Guaranty .......... 46
5.9 Qualified Buyer .......... 46
5.10 Brokers' Fees .......... 46

ARTICLE VI COVENANTS OF THE PARTIES .......... 47
6.1 Conduct of Business During the Interim Period. .......... 47
6.2 Access to Information .......... 50
6.3 Expenses .......... 52
6.4 Further Assurances; Cooperation. .......... 52
6.5 Public Statements .......... 54
6.6 Notices, Consents and Approvals .......... 54
6.7 Interim Period Notice. .......... 55
6.8 Employees. .......... 57
6.9 Risk of Loss .......... 61
6.10 Decommissioning Funds. .......... 62
6.11 Spent Nuclear Fuel Fees .......... 62
6.12 Department of Energy Decontamination and Decommissioning Fees .......... 63
6.13 Cooperation Relating to Insurance and Price-Anderson Act .......... 63
6.14 Tax Clearance Certificates .......... 63
6.15 Nuclear Insurance Policies .......... 63
6.16 Private Letter Ruling Requests .......... 64
6.17 Tax Matters. .......... 64
6.18 Intentionally Omitted .......... 65
6.19 Decommissioning .......... 65
6.20 Guarantee. .......... 65

ARTICLE VII CONDITIONS .......... 69
7.1 Conditions to Obligations of the Buyer .......... 69
7.2 Conditions to Obligations of the Seller .......... 72

ARTICLE VIII CONFIDENTIALITY .......... 73




PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

ARTICLE IX INDEMNIFICATION ........ 75
9.1 Indemnification. ........ 75
9.2 Defense of Claims. ........ 76

ARTICLE X TERMINATION ........ 78
10.1 Termination. ........ 78
10.2 Procedure and Effect of No-Default Termination ........ 79

ARTICLE XI MISCELLANEOUS PROVISIONS ........ 80
11.1 Amendment and Modification ........ 80
11.2 Waiver of Compliance; Consents ........ 80
11.3 Survival of Representations, Warranties, Covenants and Obligations ........ 80
11.4 Notices ........ 80
11.5 Assignment ........ 81
11.6 Governing Law ........ 82
11.7 Attorney-Client Matters ........ 82
11.8 Counterparts ........ 83
11.9 Interpretation ........ 83
11.10 Schedules and Exhibits ........ 83
11.11 Entire Agreement ........ 83
11.12 Bulk Sales Laws ........ 83



PSA PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER