proceedings or determination. Any information obtained pursuant to this Section 6.17(c) or pursuant to any other Section hereof providing for the sharing of information or review of any Tax Return or other schedule relating to Taxes shall be kept confidential by the Parties hereto.

(d) In the event that a dispute arises between the Seller and the Buyer as to the amount of Taxes, or the amount of any allocation of Purchase Price under Section 3.4, the Parties shall attempt in good faith to resolve such dispute, and any amount so agreed upon shall be paid to the appropriate Party. If such dispute is not resolved thirty (30) days thereafter, the Parties shall submit the dispute to the Independent Accounting Firm for resolution, which resolution shall be final, conclusive and binding on the Parties. Notwithstanding anything in this Agreement to the contrary, the fees and expenses of the Independent Accounting Firm in resolving the dispute shall be borne equally by the Seller and the Buyer. Any payment required to be made as a result of the resolution of the dispute by the Independent Accounting Firm shall be made within ten (10) days after such resolution, together with any interest determined by the Independent Accounting Firm to be appropriate.

6.18 Intentionally Omitted

6.19 Decommissioning. The Buyer hereby agrees that it will complete, at its expense, the Decommissioning of the Facility once the Facility is no longer utilized for power generation, and that it will complete all Decommissioning activities in accordance with all applicable laws and requirements, including those of the NRC, the Environmental Protection Agency and the State of Vermont as may be in effect as of the date that the Facility is proposed to be declared to be fully decommissioned, except that, whether or not permitted by any law or regulation, entombment shall not be an acceptable form of Decommissioning. The Seller shall disclose to the Buyer any and all commitments or representations, oral or otherwise, to any Governmental Authority with respect to the foregoing.

6.20 Guarantee. (a) Guarantor irrevocably and unconditionally guarantees to the Seller the full and prompt payment and satisfaction on its due date of the Cash Purchase Price and the due and punctual performance by the Buyer of all covenants and agreements to be performed under this Agreement at or prior to the Closing, in each case subject to the terms and conditions of this Agreement (collectively, the "Guaranteed Obligations"). In the event any part of the Guaranteed Obligations shall not have been so paid or performed in full when due and payable or when performance is due, as the case may be, Guarantor will, immediately upon notice by the Seller or, without notice, immediately upon the occurrence of any bankruptcy, liquidation, dissolution, insolvency, or reorganization of, or other similar proceedings involving, Buyer, pay or cause to be paid to the Seller (for its benefit or for the benefit of the obligee of such Guaranteed Obligation) the amount of such Guaranteed Obligations which are then due and payable and unpaid or unperformed, as the case may be. The obligations of Guarantor hereunder shall not be affected by the invalidity, unenforceability or irrecoverability of any of the Guaranteed Obligations as against the Buyer or any other Person. All payments or performance by Guarantor under this Section 6.20 shall be made on the same basis as payments or performance by the Buyer in accordance with this Agreement notwithstanding the fact that the collection or enforcement thereof against the Buyer may be stayed or enjoined under Title 11 of the United States Code (the "Bankruptcy Code") or other applicable law.



PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

(b) Guarantor's obligation pursuant to this Section 6.20 is an unconditional guaranty of payment and not of collectibility and is in no way conditional or contingent. This Section 6.20 is irrevocable and shall remain in full force and effect until the earlier of (x) the termination date of this Agreement pursuant to Section 10.1(e), (y) the payment in full, satisfaction and discharge of all Guaranteed Obligations, and (z) the Closing. Guarantor acknowledges that the Seller has entered into the Agreement in reliance on this Section 6.20 being a continuing and irrevocable agreement and Guarantor agrees that its obligations hereunder may not be revoked either in whole or in part.

(c) The obligations and liability of Guarantor under this Section 6.20 shall be absolute, unconditional and shall remain in full force and effect without regard to, and shall not be released, suspended, discharged, terminated or otherwise affected by, any circumstance or occurrence whatsoever, including, without limitation: (a) any change in time, manner or place of payment of, or in any other term of, all or any of the Guaranteed Obligations or any other amendment to, modification of, waiver of, or any consent to departure from, this Agreement; (b) any change in ownership of Guarantor or Buyer; (c) any bankruptcy, insolvency, or reorganization of, or other similar proceedings involving Guarantor or Buyer; or (d) any other circumstances which might otherwise constitute a legal or equitable discharge of a surety or Buyer.

(d) If, as a result of bankruptcy, insolvency or reorganization of the Buyer or for any other reason, a claim is made upon the Seller at any time for repayment or recovery of any amounts received by the Seller from any source on account of any of the Guaranteed Obligations and the Seller repays or returns any amounts so received, or if the Seller becomes liable for any part of such claim by reason of any judgment or order of any court or administrative authority having competent jurisdiction, or for any settlement or compromise of any such claim, then Guarantor shall remain liable for the amounts so repaid or returned, or for the amounts for which the Seller becomes liable, as the case may be (such amounts being deemed part of the Guaranteed Obligations), to the same extent as if such amounts had never been received by the Seller, notwithstanding any termination hereof or the cancellation of any instrument or agreement evidencing the Guaranteed Obligations. Not later than five days after receipt of notice from the Seller, Guarantor shall pay to the Seller an amount equal to the amount of such repayment or return for which the Seller has so become liable. Payments hereunder by Guarantor may be required by the Seller on any number of occasions. If and to the extent that Guarantor makes any payment to the Seller or to any other person pursuant to or in respect of this Section 6.20, any claim which Guarantor may have against the Buyer by reason thereof shall be subject and subordinate to the prior payment in full of the Guaranteed Obligations.

(e) Except to the extent expressly required by this Agreement, Guarantor waives, to the fullest extent permitted by the provisions of applicable law, all of the following (including all defenses, counterclaims and other rights of any nature based upon any of the following):

(i) presentment, demand for payment and protest of nonpayment of any of the Guaranteed Obligations, and notice of protest, dishonor or nonperformance;



PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

(ii) notice of acceptance of this Section 6.20 and notice that credit has been extended in reliance on Guarantor's guarantee of the Guaranteed Obligations;

(iii) notice of any breach or default under this Agreement or of any inability to enforce performance of the obligations of the Buyer with respect to this Agreement or notice of any acceleration of maturity of any Guaranteed Obligations;

(iv) demand for performance or observance of, and any enforcement of any provision of this Agreement, the Guaranteed Obligations or any pursuit or exhaustion of rights or remedies against the Buyer in respect of the Guaranteed Obligations or any requirement of diligence or promptness on the part of the Seller in connection with any of the foregoing;

(v) any act or omission on the part of the Seller which may impair or prejudice the rights of Guarantor, including rights to obtain subrogation, exoneration, contribution, indemnification or any other reimbursement from the Buyer, or otherwise operate as a deemed release or discharge;

(vi) any statute of limitations or any statute or rule of law which provides that the obligation of a surety must be neither larger in amount not in other respects more burdensome than the obligation of the principal;

(vii) any "single action" or "anti-deficiency" law which would otherwise prevent the Seller from bringing any action, including any claim for a deficiency, against Guarantor before or after the Seller's commencement or completion of any foreclosure action, whether judicially, by exercise of power of sale or otherwise, or any other law which would otherwise require any election of remedies by the Seller;

(viii) all demands and notices of every kind with respect to the foregoing; and

(ix) to the extent not referred to above, all defenses (other than payment or performance) which the Buyer may now or hereafter have to the payment of the Guaranteed Obligations, together with all suretyship defenses, which could otherwise be asserted by Guarantor.



PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

Guarantor represents that it has obtained the advice of counsel as to the extent to which suretyship and other defenses may be available to it with respect to its obligations hereunder in the absence of the waivers contained in this Section 6.20(e).

No delay or omission on the part of the Seller in exercising any right under this Agreement shall operate as a waiver or relinquishment of such right. No action which the Seller or the Buyer may take or refrain from taking with respect to the Guaranteed Obligations shall affect the provisions of this Section 6.20 or the obligations of the Buyer hereunder. None of the Seller's rights shall at any time in any way be prejudiced or impaired by any act or failure to act on the part of the Buyer, or by any noncompliance by the Buyer with this Agreement, regardless of any knowledge thereof which the Seller may have or otherwise be charged with.

(f) This Section shall be binding upon Guarantor and its successors and permitted assigns and inure to the benefit of and be enforceable by the Seller and its successors and permitted assigns.

(g) Guarantor agrees that, until the Guaranteed Obligations are paid in full or terminated pursuant to Section 6.20(b), it will not exercise any right of reimbursement, subrogation, contribution, offset or other claims against the Buyer arising by contract or operation of law in connection with any payment made or required to be made by the Buyer under this Section 6.20. After the payment in full of the Guaranteed Obligations, Guarantor shall be entitled to exercise against the Buyer all such rights of reimbursement, subrogation, contribution and offset, and all such other claims, to the fullest extent permitted by law.

Guarantor covenants and agrees that, until the Guaranteed Obligations are paid in full or terminated pursuant to Section 6.20(b), all Liabilities now or hereafter owing by the Buyer to Guarantor, whether arising hereunder or otherwise, are subordinated to the prior payment in full of the Guaranteed Obligations and are so subordinated as a claim against the Buyer of any of its assets, whether such claim be in the ordinary course of business or in the event of voluntary or involuntary liquidation, dissolution, insolvency or bankruptcy, so that no payment with respect to any such Liability will be made or received while any breach or default in respect of the Guaranteed Obligations exists hereunder. If, notwithstanding the foregoing, any payment with respect to any such Liability is received by Guarantor in contravention of this Section 6.20, such payment shall be held in trust for the benefit of the Seller and promptly turned over to it in the original form received by Guarantor.

## ARTICLE VII
## <u>CONDITIONS</u>

7.1 <u>Conditions to Obligations of the Buyer</u>. The obligations of the Buyer to purchase the Acquired Assets and to consummate the other transactions contemplated by this Agreement shall be subject to the fulfillment at or prior to the Closing (or the waiver in writing by the Buyer) of the following conditions:



PSA PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

(a) Representations and Warranties. The representations and warranties of the Seller set forth in Article IV shall be true and correct in all material respects (except if such representation or warranty is subject to a Material Adverse Effect, or other materiality threshold, in which case such representation or warranty shall be true and correct in all respects) as though made at and as of the Closing, (except with respect to any representation or warranty expressly made as of the Effective Date, which shall be deemed made as of the Effective Date) and the Buyer shall have received certificates from an authorized officer of the Seller, dated the Closing Date, to the effect that the conditions set forth in Sections 7.1(a), (b), (d), (e) and (i) have been satisfied by the Seller;

(b) Performance by the Seller. The Seller shall have performed and complied in all material respects with all of its covenants, agreements and obligations hereunder through the Closing and the Seller shall have delivered, or caused to be delivered, to the Buyer at the Closing the Seller's closing deliveries described in Section 3.6;

(c) Buyer's Required Regulatory Approvals. The Buyer shall have received all of the Buyer's Required Regulatory Approvals, which approvals shall be in form and substance reasonably satisfactory to the Buyer in its sole discretion and such approvals shall be final;

(d) The Seller's Required Regulatory Approvals. The Seller shall have received all of the Seller's Required Regulatory Approvals and shall have effectively transferred all Transferable Permits, in each case without terms and conditions that, either singly or in the aggregate, as determined by the Buyer in its sole discretion, are reasonably likely to have a Material Adverse Effect and such approvals shall be final;

(e) Absence of Litigation. No preliminary or permanent injunction or other order or decree by any federal or state court or Governmental Authority which prevents the consummation of the sale of the Acquired Assets contemplated herein shall have been issued and remain in effect and no statute, rule or regulation shall have been enacted by any state or federal government of Governmental Authority which prohibits the consummation of the sale of the Acquired Assets;

(f) Anti-trust Matters. All applicable waiting periods (and any extensions thereof) under the HSR Act shall have expired or otherwise been terminated or it shall have been determined to the Parties' mutual satisfaction that all transactions between the Parties are exempt from the HSR Act;

(g) Deliveries. The Seller shall have complied with the delivery requirements of Section 3.6;

(h) Title Commitments. The issuer of the Title Commitment shall have made available to the Buyer at standard rates, a current ALTA (1992) Owner's Title Insurance Policy insuring title to the fee interests in the Acquired Assets consisting of Real Property and improvements thereon to be conveyed/granted to the Buyer pursuant to this Agreement in an amount equal to that portion of the Purchase Price properly allocable to such interests, subject only to Permitted Encumbrances;



PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

(i) Material Adverse Effect. Since the Effective Date, there shall not have occurred and be continuing any change, effect, event, occurrence, or state of facts that, together with any inaccuracies disclosed pursuant to Section 6.7(c) that remain uncured, constitute a Material Adverse Effect, other than those arising from facts or circumstances (i) that were within the Buyer's Knowledge on the Effective Date and were not required to be corrected or remediated before the Closing by this Agreement, or (ii) that were disclosed on any of the Schedules and were not required to be corrected or remediated before the Closing by this Agreement;

(j) Ancillary Agreements. The Ancillary Agreements shall be in full force and effect on the Closing;

(k) Opinion of the Seller's Counsel. The Buyer shall have received an opinion or opinions from the Seller's counsel dated the Closing Date, substantially in the form of Exhibit G hereto;

(l) Release of Liens. The lien of the Mortgage Indentures, and any other Encumbrances other than the Permitted Encumbrances, on the Acquired Assets shall have been released and any documents necessary to evidence such releases shall have been delivered to the title company;

(m) Requested Rulings. The Buyer shall have received the Requested Rulings;

(n) No Outage. At the Closing, no forced reduction of greater than 5% of the electrical capacity of the Facility and no unscheduled outage shall be ongoing at the Facility;

(o) Seller's Agreements. The Seller shall have received third party consents to assignment of all Seller's Agreements (other then those listed in Schedule 2.3(a)), Real Property Agreements and Transferable Permits required to transfer such Agreements or Transferable Permits, except those for which arrangements reasonably satisfactory to the Buyer have been made pursuant to Section 6.4(c) and those the failure to obtain which would not have a Material Adverse Effect, and the Seller shall deliver assignments to each of such Seller's Agreements, Real Property Agreements and Transferable Permits;

(p) IBEW Collective Bargaining Agreement. If the Old IBEW Contract was in effect on the Effective Date and the Seller has since entered into a replacement contract with the IBEW, such replacement contract shall be in a form and substance reasonably satisfactory to the Buyer;

(q) Intellectual Property. The Buyer shall have received licenses for all of the Licensed Intellectual Property, except where the failure to obtain such licenses would not have a Material Adverse Effect;

(r) Vernon Dam. The Indenture dated August 1, 1970 between Seller and New England Power Company, as assigned, relating generally to the Vernon Dam shall have been recorded in the land records of the Town of Vernon, Windham County, Vermont as an encumbrance against the Vernon Site and evidence of such recording shall have been delivered



PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

to the Buyer in form and substance reasonably satisfactory to the Buyer, and the Seller shall have assigned to the Buyer its interest as grantee thereunder with respect to the rights granted therein relating to the Vernon Dam and the site thereof, which instrument of assignment shall be in recordable form and substance reasonably satisfactory to the Buyer and shall be in full force and effect;

(s) Black Start. The Buyer, U.S. Generating Company (or its successor), GMPC and NEPCO shall have entered into an agreement, satisfying applicable NRC license or operation requirements, providing for the supply of power with respect to so-called "black start" of the Facility during periods when the Facility is not operating and the electrical supply referred to in subsection (t) below is not available which agreement shall be in substance reasonably satisfactory to Buyer and such agreement shall be in full force and effect;

(t) Cooling Water Flow. The Buyer and U.S. Generating Company (or its successor) shall have entered into an agreement dealing with cooling water flow requirements, which agreement shall be in a form and substance reasonably satisfactory to Buyer and such agreement shall be in full force and effect;

(u) Station Backup. GMPC, Seller and Buyer shall have entered into an agreement which, among other things, assigns to the Buyer the Seller's interest in an Amended Agreement dated November 27, 1989 providing for the purchase of electric energy for the operation of the Facility from GMPC for station service backup and outage power; which agreement shall be in form and substance reasonably satisfactory to Buyer and such agreement shall be in full force and effect;

(v) Interconnection. Buyer and NEPCO shall have entered into an agreement with respect to the interconnection of NEPCO's Vernon substation, the Vernon Dam and the Facility, which agreement shall be in form and substance reasonably satisfactory to the Buyer and such agreement shall be in full force and effect; and

(w) Tax Agreement with Town of Vernon. The Buyer shall have entered into a tax stabilization agreement with the Town of Vernon with respect to the Real Property located in the Town of Vernon.

The Buyer may waive any condition specified in this Section 7.1 if it executes a writing so stating on or prior to the Closing Date and such waiver shall not be considered a waiver of any other provision in this Agreement unless the writing so states.

7.2 Conditions to Obligations of the Seller. The obligations of the Seller to sell the Acquired Assets and to consummate the other transactions contemplated by this Agreement shall be subject to the fulfillment at or prior to the Closing (or the waiver in writing by the Seller) of the following conditions:

(a) Representations and Warranties of Buyer. The representations and warranties of the Buyer set forth in Article V shall be true and correct in all material respects (except if such representation or warranty is subject to a Material Adverse Effect, or other materiality threshold, in which case such representation or warranty shall be true and correct in



PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

all respects) at and as of the Closing (except with respect to any representation or warranty expressly made as of the Effective Date, which shall be deemed made as of the Effective Date) and the Seller shall have received certificates from an authorized officer of the Buyer, dated the Closing Date, to the effect that, to the Knowledge of the Buyer, the conditions set forth in Sections 7.2(a), (b), (d) and (e) have been satisfied by the Buyer;

(b) Performance by the Buyer. The Buyer shall have performed and complied in all material respects with all of its covenants, agreements and obligations hereunder through the Closing and the Buyer shall have delivered, or caused to be delivered, to the Seller the Buyer's closing deliveries described in Section 3.7;

(c) Seller's Required Regulatory Approvals. The Seller and its Sponsors shall have received the Seller's Required Regulatory Approvals, which approvals shall be in form and substance reasonably satisfactory to the Seller (or the affected Sponsor) in the sole discretion of the Seller or such Sponsor and such approvals shall be final;

(d) Buyer's Required Regulatory Approvals. The Buyer shall have received all of the Buyer's Required Regulatory Approvals in each case without terms and conditions that, either singly or in the aggregate, are reasonably likely to have a Material Adverse Effect and such approvals shall be final;

(e) Absence of Litigation. No preliminary or permanent injunction or other order or decree by any federal or state court or Governmental Authority which prevents the consummation of the sale of the Acquired Assets contemplated herein shall have been issued and remain in effect and no statute, rule, or regulation shall have been enacted by any state or federal government of Governmental Authority which prohibits the consummation of the sale of the Acquired Assets;

(f) Deliveries. The Buyer shall have complied with the delivery requirements of Section 3.7;

(g) Anti-trust Matters. All applicable waiting periods (and any extensions thereof) under the HSR Act shall have expired or otherwise been terminated or it shall have been determined to the Parties' mutual satisfaction that all transactions between the Parties are exempt from the HSR Act;

(h) NEPOOL. The Buyer shall be a member in good standing of NEPOOL;

(i) Requested Rulings. The Seller shall have received the Requested Rulings;

(j) Lien Releases. The lien of the Mortgage Indentures on the Acquired Assets shall have been released and any documents necessary to evidence such release shall have been delivered to the title company;

(k) Assumption of Union Contract. Effective upon Closing, the Buyer shall have assumed, as set forth in Section 6.8, all of the applicable obligations under any agreements between the IBEW and VYNPC as they relate to Transferred Union Employees;



PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

(l) Opinion of the Buyer's Counsel. The Seller shall have received an opinion from the Buyer's counsel dated the Closing Date, substantially in the form of Exhibit H hereto;

(m) Ancillary Agreements. The Buyer shall have entered into those Ancillary Agreements to which it is a party and each of the Sponsors shall have entered into those Ancillary Agreements to which is a party, and all Ancillary Agreements shall be in full force and effect; and

(n) Financial Matters. The financial arrangements described in Schedule 7.2(n) shall be in full force and effect and all documentation relating thereto shall be reasonably satisfactory to Seller.

The Seller may waive any condition specified in this Section 7.2 if it executes a writing so stating on or prior to the Closing and such waiver shall not be considered a waiver of any other provision in this Agreement unless the writing specifically so states.

## ARTICLE VIII
## CONFIDENTIALITY

(a) Each Receiving Party and each Representative thereof will treat and hold as confidential all Proprietary Information, refrain from using any such Proprietary Information except in connection with this Agreement, the Related Agreements and transactions contemplated hereby and thereby, and, if this Agreement is terminated prior to Closing, deliver promptly to the Disclosing Party or destroy, at the request and option of the Disclosing Party, all tangible embodiments and all copies, summaries or abstracts of any Proprietary Information received from such Disclosing Party which are in his or its possession. All Proprietary Information relating to the Acquired Assets as may be delivered to the Buyer prior to the Closing shall become Buyer's Proprietary Information and the Buyer shall be deemed to be the Disclosing Party with respect thereto upon consummation of the Closing, and the Seller shall not thereafter disclose any such Proprietary Information except to the extent allowed herein; provided, however, that, any such information which was not treated as confidential or proprietary by the Seller prior to Closing shall not become confidential or Proprietary Information of the Buyer after the Closing. In the event that the Receiving Party or any Representative thereof is requested or required (including, without limitation, (i) pursuant to any rule or regulation of any stock exchange or other self-regulatory organization upon which any of the Receiving Party's securities are listed, or (ii) by request for information or documents by any Governmental Authority or in any legal proceeding, including, without limitation, Buyer's Required Regulatory Approval and Seller's Required Regulatory Approval processes, interrogatory, subpoena, civil investigative demand, or similar process or pursuant to any freedom of information or open meeting law applicable to the Seller) to disclose any Proprietary Information, the Receiving Party will notify the Disclosing Party promptly of the request or requirement so that the Disclosing Party may seek an appropriate protective order or waive compliance with the provisions of this Article VIII. If, in the absence of a protective order or the receipt of a waiver hereunder, the Receiving Party is, on the advice of counsel, compelled to disclose any Proprietary Information to any tribunal or else stand liable for contempt or to disclose any Proprietary Information to any Person in compliance with any freedom of



PROTECTED AND CONFIDENTIAL MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

information or open meeting law, the Receiving Party may disclose the Proprietary Information to the tribunal or such Person; provided, however, that the Receiving Party shall use its Commercially Reasonable Efforts to obtain, at the request of the Disclosing Party and at the Disclosing Party's cost, a voluntary agreement or other assurance that confidential treatment will be accorded to such portion of the Proprietary Information required to be disclosed as the Disclosing Party shall designate.

(b) The obligations of the Parties contained in this Section 8 shall remain in full force and effect for three (3) years from the date hereof and will survive the termination of this Agreement, the discharge of all other obligations owed by the Parties to each other and any transfer of title to the Acquired Assets. Notwithstanding the foregoing, the Parties shall continue to keep confidential any information required by law.

(c) The Receiving Party may provide Proprietary Information to the VDPS, VPSB, the FERC, the NRC, the SEC, the United States Department of Justice, the United States Federal Trade Commission or any other Governmental Authority with jurisdiction, as necessary, to obtain any consents, waivers or approvals or as may be necessary in order to comply generally with any law, rule or regulation as may be required for the Parties to undertake the transactions contemplated hereby. The Receiving Party will seek confidential treatment for such Proprietary Information provided to any such Governmental Authority and the Receiving Party will notify the Disclosing Party as far in advance as is practicable of its intention to release to any such Governmental Authority any such Proprietary Information, so as to permit such Disclosing Party a reasonable opportunity to obtain a protective order.

(d) Notwithstanding anything set forth herein, nothing in this Agreement shall be interpreted as precluding any Party from reporting or disclosing any information (i) to the NRC concerning any perceived safety issue within the NRC's regulatory jurisdiction, (ii) to any Governmental Authority having jurisdiction, (iii) with the prior written consent of the Disclosing Party, or (iv) to its Affiliates, attorneys, financial advisors and accountants who are assisting such Party in connection with the transactions contemplated by this Agreement, provided that such Affiliates, attorneys, financial advisors and accountants acknowledge the provisions of this Section 8 and agree to be bound hereby.

## ARTICLE IX
## INDEMNIFICATION

9.1 Indemnification.

(a) The Buyer shall indemnify, defend and hold harmless the Seller, its Affiliates, and any of their officers, directors, employees, shareholders and agents (each, a "Seller Indemnitee") from and against any and all claims, demands, suits, Losses, liabilities, damages, obligations, payments, costs and expenses (including, without limitation, the costs and expenses of any and all actions, audits, investigations, hearings, suits, proceedings, assessments, judgments, settlements and compromises relating thereto and reasonable attorneys' fees and reasonable disbursements in connection therewith) (each, an "Indemnifiable Loss"), asserted against or suffered by any Seller Indemnitee, that relate to, result from or arise out of (i) any breach by the Buyer or Guarantor of any representation, warranty or covenant contained in this



PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

Agreement, provided, however, in the case of a breach of a representation or warranty contained in Article V, such Indemnifiable Losses shall in the aggregate exceed Five Hundred Thousand Dollars ($500,000) less the cost of curing untrue or incorrect representations or warranties described in Section 6.7(d) that were not cured by the Buyer or Guarantor, (ii) the Assumed Liabilities and Obligations, (iii) any loss or damages resulting from or arising out of any Inspection, (iv) any Third Party Claims against a Seller Indemnitee arising out of or in connection with the Buyer's ownership or operation of VYNPS and other Acquired Assets on or after the Closing subject to the proviso in clause (i), if applicable, or (v) Taxes attributable to taxable income resulting from the Qualified Decommissioning Funds post-Closing.

(b) The Seller shall indemnify, defend and hold harmless the Buyer, its Affiliates, and any of their officers, directors, members, employees, shareholders, Representatives and agents (each, a "Buyer Indemnitee") from and against any and all Indemnifiable Losses asserted against or suffered by any Buyer Indemnitee, that relate to, result from or arise out of (i) any breach by the Seller of any representation, warranty or covenant contained in this Agreement, provided, however, in the case of a breach of a representation or warranty contained in Article IV, such Indemnifiable Losses shall in the aggregate exceed Five Hundred Thousand Dollars ($500,000) less the cost of curing untrue or incorrect representations or warranties described in Section 6.7(c) that were not cured by the Seller, (ii) the Excluded Liabilities, (iii) noncompliance by the Seller with any bulk sales or transfer laws as provided in Section 11.12, (iv) any Third Party Claims against a Buyer Indemnitee arising out of or in connection with the Seller's ownership or operation of the Acquired Assets on or prior to the Closing (except to the extent related to Assumed Liabilities and Obligations), subject to the proviso in clause (i), if applicable, (v) any Third Party Claims against a Buyer Indemnitee arising out of or in connection with the Seller's ownership or operation of the Excluded Assets, (vi) all Taxes incurred by reason of any act of the Seller that either constitutes an act of "self-dealing" as defined in Treas. Reg. § 1.468A-5(b)(2) or results in the disqualification of the Qualified Decommissioning Fund under Treas. Reg. § 1.468A-5 or (vii) any claims or attachments of the Seller or any creditor of the Seller against the Decommissioning Funds after the Closing.

(c) The expiration or termination of any representation or warranty shall not affect the Parties' obligations under this Section 9.1 if the Indemnitee provided the Person required to provide indemnification under this Agreement (the "Indemnifying Party") with proper notice of the claim or event for which indemnification is sought prior to such expiration, termination or extinguishment.

(d) The rights and remedies of the Seller and the Buyer under this Article IX are the sole and exclusive remedies and in lieu of any and all other rights and remedies which the Seller and the Buyer may have under this Agreement or otherwise, with respect to (i) any breach of any representation or warranty set forth in this Agreement or (ii) the Assumed Liabilities and Obligations or the Excluded Liabilities, as the case may be. The indemnification obligations of the Parties set forth in this Article IX apply only to matters arising out of this Agreement, excluding the Ancillary Agreements. Any Indemnifiable Loss arising under or pursuant to an Ancillary Agreement shall be governed by the indemnification obligations, if any, contained in the Ancillary Agreement under which the Indemnifiable Loss arises. The maximum aggregate exposure for indemnity by the Seller or by the Buyer for any and all claims of breaches or



PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

inaccuracies of representations or warranties made hereunder and indemnification of claims relating thereto shall be Twenty Million Dollars ($20,000,000).

(e) Except for obligations under this Article IX, no Party (including an Indemnitee) shall be entitled to the remedy of specific performance by the other Party (including an Indemnifying Party).

(f) Notwithstanding anything to the contrary herein, no Party (including an Indemnitee) shall be entitled to recover from the other Party (including an Indemnifying Party) for any liabilities, damages, obligations, payments, losses, costs or expenses under this Agreement any amount in excess of the actual compensatory damages, court costs and reasonable attorney's and other advisor fees suffered by such Party. The Buyer and the Seller waive any right to recover punitive, incidental, special, exemplary and consequential damages arising in connection with or with respect to this Agreement. The provisions of this Section 9.1(f) shall not apply to indemnification for a Third Party Claim.

9.2 Defense of Claims.

(a) If any Indemnitee receives notice of the assertion of any claim or of the commencement of any claim, action or proceeding made or brought by any Person who is not a Party to this Agreement or any Affiliate of a Party to this Agreement (a "Third Party Claim") with respect to which indemnification is to be sought from an Indemnifying Party, the Indemnitee shall give such Indemnifying Party reasonably prompt written notice thereof, but in any event such notice shall not be given later than twenty (20) calendar days after the Indemnitee's receipt of notice of such Third Party Claim. Such notice shall describe the nature of the Third Party Claim in reasonable detail and shall indicate the estimated amount, if practicable, of the Indemnifiable Loss that has been or may be sustained by the Indemnitee. The Indemnifying Party will have the right to participate in or, by giving written notice to the Indemnitee, to elect to assume the defense of any Third Party Claim at such Indemnifying Party's expense and by such Indemnifying Party's own counsel, provided that the counsel for the Indemnifying Party who shall conduct the defense of such Third Party Claim shall be reasonably satisfactory to the Indemnitee. The Indemnitee shall cooperate in good faith in such defense at such Indemnitee's own expense. If an Indemnifying Party elects not to assume the defense of any Third Party Claim, the Indemnitee may compromise or settle such Third Party Claim over the objection of the Indemnifying Party, which settlement or compromise shall conclusively establish the Indemnifying Party's liability pursuant to this Agreement.

(b) (i) If, within twenty (20) calendar days after an Indemnitee provides written notice to the Indemnifying Party of any Third Party Claims, the Indemnitee receives written notice from the Indemnifying Party that such Indemnifying Party has elected to assume the defense of such Third Party Claim as provided in Section 9.2(a), the Indemnifying Party will not be liable for any legal expenses subsequently incurred by the Indemnitee in connection with the defense thereof; provided, however, that if the Indemnifying Party shall fail to take reasonable steps necessary to defend diligently such Third Party Claim within twenty (20) calendar days after receiving notice from the Indemnitee that the Indemnitee believes the Indemnifying Party has failed to take such steps, the Indemnitee may assume its own defense and the Indemnifying Party shall be liable for all reasonable expenses thereof.



PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

(c) Without the prior written consent of the Indemnitee, the Indemnifying Party shall not enter into any settlement of any Third Party Claim which would lead to liability or create any financial or other obligation on the part of the Indemnitee for which the Indemnitee is not entitled to indemnification hereunder. If a firm offer is made to settle a Third Party Claim without leading to liability or the creation of a financial or other obligation on the part of the Indemnitee for which the Indemnitee is not entitled to indemnification hereunder and the Indemnifying Party desires to accept and agree to such offer, the Indemnifying Party shall give written notice to the Indemnitee to that effect. If the Indemnitee fails to consent to such firm offer within twenty (20) calendar days after its receipt of such notice, the Indemnifying Party shall be relieved of its obligations to defend such Third Party Claim and the Indemnitee may contest or defend such Third Party Claim. In such event, the maximum liability of the Indemnifying Party as to such Third Party Claim will be the amount of such settlement offer plus reasonable costs and expenses paid or incurred by Indemnitee up to the date of such notice.

(d) Any claim by an Indemnitee on account of an Indemnifiable Loss which does not result from a Third Party Claim (a "Direct Claim") shall be asserted by giving the Indemnifying Party reasonably prompt written notice thereof, stating the nature of such claim in reasonable detail and indicating the estimated amount, if practicable, but in any event such notice shall not be given later than twenty (20) calendar days after the Indemnitee becomes aware of such Direct Claim, and the Indemnifying Party shall have a period of twenty (20) calendar days within which to respond to such Direct Claim. If the Indemnifying Party does not respond within such twenty (20) calendar day period, the Indemnifying Party shall be deemed to have accepted such claim. If the Indemnifying Party rejects such claim, the Indemnitee will be free to seek enforcement of its right to indemnification under this Agreement.

(e) If the amount of any Indemnifiable Loss, at any time subsequent to the making of an indemnity payment in respect thereof, is reduced by recovery, settlement or otherwise under or pursuant to any insurance coverage, or pursuant to any claim, recovery, settlement or payment by, from or against any other entity, the amount of such reduction, less any costs, expenses or premiums incurred in connection therewith (together with interest thereon from the date of payment thereof to the date or repayment at the "prime rate" as published in The Wall Street Journal) shall promptly be repaid by the Indemnitee to the Indemnifying Party.

(f) A failure to give timely notice as provided in this Section 9.2 shall not affect the rights or obligations of any Party hereunder except if, and only to the extent that, as a result of such failure, the Party which was entitled to receive such notice was actually prejudiced as a result of such failure; provided, however, that in any case any such notice must be given prior to the expiration of the relevant representation or warranty.

## ARTICLE X
## TERMINATION

10.1 Termination.

(a) This Agreement may be terminated at any time prior to the Closing by mutual written consent of the Seller and the Buyer.



PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

(b) This Agreement may be terminated by either the Seller or the Buyer by giving written notice to the other Party any time prior to Closing if any of the following has occurred: (i) any federal or state court of competent jurisdiction shall have issued an order, judgment or decree permanently restraining, enjoining or otherwise prohibiting the Closing, and such order, judgment or decree shall have become final and nonappealable, (ii) any statute, rule, order or regulation shall have been enacted or issued by any Governmental Authority which, directly or indirectly, prohibits the consummation of the Closing, or (iii) the Closing contemplated hereby shall have not occurred on or before July 31, 2002 (the "Termination Date").

(c) Except as otherwise provided in this Agreement, this Agreement may be terminated by the Buyer by giving written notice to the Seller any time prior to Closing if any of the Buyer's Required Regulatory Approvals or the Seller's Required Regulatory Approvals, the receipt of which is a condition to the obligation of the Buyer to consummate the Closing as set forth in Sections 7.1(c) and 7.1(d), shall have been finally denied or shall have been granted, subject to or contains terms or conditions that, in the case of the Buyer's Required Regulatory Approvals, would not be in form and substance reasonably satisfactory to the Buyer in its sole discretion, or, in the case of the Seller's Required Regulatory Approvals, could reasonably be expected to cause a Material Adverse Effect, as determined by the Buyer in its sole discretion.

(d) Except as otherwise provided in this Agreement, this Agreement may be terminated by the Seller by giving written notice to the Buyer any time prior to Closing, if any of the Seller's Required Regulatory Approvals or Buyer's Required Regulatory Approvals, the receipt of which is a condition to the obligation of the Seller to consummate the Closing as set forth in Sections 7.2(c) and 7.2(d), shall have been finally denied or shall have been granted, subject to or contains terms or conditions that, in the case of the Seller's Required Regulatory Approvals, would not be in form and substance reasonably satisfactory to the Seller (or the affected Sponsor) in its sole discretion and, in the case of the Buyer's Required Regulatory Approvals, could reasonably be expected to cause a Material Adverse Effect, as determined by the Seller in its sole discretion.

(e) This Agreement may be terminated by the Buyer if there have been any violations or breaches by the Seller of any covenants, representations or warranties contained in this Agreement which have resulted in a Material Adverse Effect and such violations or breaches have not been cured by the date thirty (30) days after receipt by the Seller of written notice specifying particularly such violations or breaches or such violations or breaches have not been waived by the Buyer.

(f) This Agreement may be terminated by the Seller if there has been any violations or breaches by the Buyer of any covenants, representations or warranties contained in this Agreement which have resulted in a Material Adverse Effect and such violations or breaches have not been cured by the date thirty (30) days after receipt by the Buyer of written notice specifying particularly such violations or breaches or such breaches or such violations have not been waived by the Seller.

(g) This Agreement may be terminated by the Buyer or the Seller in accordance with the provisions of Sections 6.7(c) or (d) and 6.9(b) or (c).



PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER