(h) This Agreement may be terminated by the Buyer or the Seller prior to the Closing if any "extraordinary nuclear occurrence" or "nuclear incident" or "precautionary evacuation" (as such terms are defined in the Atomic Energy Act), other than the nuclear incident at Three Mile Island in 1979, occurs at the Site or at any other licensed nuclear reactor site in the United States.

(i) Notwithstanding any provisions hereof to the contrary or inconsistent herewith, this Agreement may be terminated by the Seller, by giving written notice to the Buyer, if an order received on any of the Seller's Required Regulatory Approvals is deemed to be unsatisfactory by the Seller in its sole discretion.

(j) Notwithstanding any provision hereof to the contrary or inconsistent herewith, this Agreement may be terminated by the Buyer, by giving written notice to the Seller, if an order received on any of the Buyer's Required Approvals is deemed to be unsatisfactory by the Buyer in its sole discretion or if, prior to the Closing, Vermont legislation is enacted prohibiting operation of the Facility past its current NRC license expiration date or prohibiting the construction or use of dry storage facilities for Spent Nuclear Fuel.

10.2 Procedure and Effect of No-Default Termination. In the event of termination of this Agreement by either or both of the Parties pursuant to this Article 10, written notice thereof shall forthwith be given by the terminating Party to the other Party, whereupon, if this Agreement is terminated pursuant to any of Sections 10.1(a) through (d) and 10.1(g) through (j), the liabilities of the Parties hereunder will terminate, except as otherwise expressly provided in this Agreement, and thereafter neither Party shall have any recourse against the other by reason of this Agreement (except for recourse against any Party then in breach).

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1 Amendment and Modification. Subject to applicable law, this Agreement may be amended, modified or supplemented only by written agreement of the Seller and the Buyer and, with respect to Section 5.11 to 5.14, inclusive, and Section 6.20, only with the written consent of the Guarantor.

11.2 Waiver of Compliance; Consents. Except as otherwise provided in this Agreement, any failure of any of the Parties to comply with any obligation, covenant, agreement or condition herein may be waived by the Party entitled to the benefits thereof only by a written instrument signed by the Party granting such waiver, but such waiver of such obligation, covenant, agreement or condition shall not operate as a waiver of, or estoppel with respect to, any subsequent failure to comply therewith.

11.3 Survival of Representations, Warranties, Covenants and Obligations.

(a) The representations and warranties contained in Article IV and Article V shall survive for eighteen (18) months from the Closing Date. The expiration of the representations and warranties contained in Article IV and Article V shall not affect the Parties' obligations under Article IX if the Indemnitee provided the Indemnifying Party with proper



PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

notice of the claim or event for which indemnification is sought prior to such expiration. Notwithstanding the foregoing, all representations and warranties set forth in Sections 4.1 (Organization), 4.2 (Authority), 4.10 (Environmental Matters), 4.12 (ERISA), 4.20 (Qualified Decommissioning Fund), 4.21 (Non-Qualified Decommissioning Fund) and 4.24 (Taxes) hereof, and any claim with respect to fraud, intentional misrepresentation or a deliberate or willful breach by the Seller, shall survive the Closing until expiration of the applicable statutes of limitations after giving effect to any extensions thereof. Each Party shall be entitled to rely upon the representations and warranties of the other Party or Parties set forth herein, notwithstanding any investigation or audit conducted before or after the Closing Date or the decision of any Party to complete the Closing.

(b) Except as provided in Section 11.3(a), the covenants and obligations of the Seller and the Buyer set forth in this Agreement, including, without limitation, the indemnification obligations of the Parties under Article IX hereof, shall survive the Closing indefinitely, and each Party shall be entitled to the full performance thereof by the other Party hereto without limitation as to time or amount.

11.4 Notices. All notices and other communications hereunder shall be in writing and shall be deemed given if delivered personally or by facsimile transmission, or mailed by overnight courier or registered or certified mail (return receipt requested), postage prepaid, to the recipient Party at its address (or at such other address or facsimile number for a Party as shall be specified by like notice; provided, however, that notices of a change of address shall be effective only upon receipt thereof):

(a) If to the Seller, to:

Vermont Yankee Nuclear Power Corporation
185 Old Ferry Road
P.O. Box 7002
Brattleboro, VT 05302-7002
Fax No.: 802-258-2128
Attention: Ross P. Barkhurst

with a copies to:

Downs Rachlin & Martin PLLC
90 Prospect Street
P. O. Box 99
St. Johnsbury, VT 05819
Attention: Nancy S. Malmquist, Esq.

Ropes & Gray
One International Place
Boston, MA 02110
Fax No.: 617- 951-7050
Attention: Hemmie Chang, Esq.



PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

(b) If to the Buyer, to:

Entergy Nuclear Vermont Yankee, LLC
440 Hamilton Avenue
White Plains, NY 10601
Fax No. 914-272-3205
Attention: Mike Kansler

with a copy to:

Goodwin Procter LLP
53 State Street
Exchange Place
Boston, MA 02109
Fax No. 617-570-8150
Attention: Paul Gauron, Esq.

11.5 Assignment. This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and permitted assigns, but neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by either Party hereto, including by operation of law, without the prior written consent of the other Party, nor is this Agreement intended to confer upon any other Person except the Parties hereto any rights, interests, obligations or remedies hereunder. No provision of this Agreement shall create any third party beneficiary rights in any employee or former employee of the Seller (including any beneficiary or dependent thereof) in respect of continued employment or resumed employment, and no provision of this Agreement shall create any rights in any such Persons in respect of any benefits that may be provided, directly or indirectly, under any employee benefit plan or arrangement except as expressly provided for thereunder. Notwithstanding the foregoing, but subject to all applicable legal requirements, (a) the Buyer or its permitted assignee may assign, transfer, pledge or otherwise dispose of (absolutely or as security) its rights and interests hereunder to a trustee, lending institutions or other party for the purposes of leasing, financing or refinancing the Acquired Assets, including such an assignment, transfer or other disposition upon or pursuant to the exercise of remedies with respect to such leasing, financing or refinancing, or by way of assignments, transfers, pledges or other dispositions in lieu thereof, and (b) the Buyer or its permitted assignee may assign, transfer, pledge or otherwise dispose of (absolutely or as security) its rights and interests hereunder to a wholly owned Affiliate of the Buyer so long as such Affiliate makes the representations and warranties set forth in Article V to the same extent as the Buyer and provides financial assurances acceptable to the Seller with respect to its ability to perform its obligations hereunder; provided, however, that in any case no such assignment shall relieve or discharge the assigning Party from any of its obligations hereunder or shall be made if it would reasonably be expected to prevent or materially impede, interfere with or delay the transactions contemplated by this Agreement or materially increase the cost of the transactions contemplated by this Agreement. Each Party agrees, at the assigning Party's expense, to execute and deliver such documents as



PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

may be reasonably necessary to accomplish any such assignment, transfer, pledge or other disposition of rights and interests hereunder so long as the non-assigning Party's rights under this Agreement are not thereby altered, amended, diminished or otherwise impaired.

11.6 Governing Law. This Agreement shall be governed by and construed in accordance with the law of the State of Vermont (without giving effect to conflict of law principles) as to all matters, including, without limitation, matters of validity, construction, effect, performance and remedies. THE PARTIES HERETO AGREE THAT VENUE IN ANY AND ALL ACTIONS AND PROCEEDINGS RELATED TO THE SUBJECT MATTER OF THIS AGREEMENT SHALL BE IN THE STATE AND FEDERAL COURTS IN VERMONT, WHICH COURTS SHALL HAVE EXCLUSIVE JURISDICTION FOR SUCH PURPOSE, AND THE PARTIES HERETO IRREVOCABLY SUBMIT TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS AND IRREVOCABLY WAIVE THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF ANY SUCH ACTION OR PROCEEDING. SERVICE OF PROCESS MAY BE MADE IN ANY MANNER RECOGNIZED BY SUCH COURTS. EACH OF THE PARTIES HERETO IRREVOCABLY WAIVES ITS RIGHT TO A JURY TRIAL WITH RESPECT TO ANY ACTION OR CLAIM ARISING OUT OF ANY DISPUTE IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

11.7 Attorney-Client Matters. In any dispute or proceeding arising under or in connection with this Agreement, including, without limitation, Article VIII hereof, the Seller shall have the right, at its election, to retain the firms of Ropes & Gray and Downs Rachlin & Martin PLLC to represent it in such matter. The Buyer, for itself and its successors and assigns, hereby irrevocably acknowledges and agrees that all communications between the Seller and the Seller's counsel, including without limitation Ropes & Gray and Downs Rachlin & Martin PLLC, made in connection with the negotiation, preparation, execution, delivery, and closing under, or any dispute or proceeding arising between the Buyer and the Seller under or in connection with, this Agreement which, immediately prior to the Closing, would be deemed to be privileged communications of the Seller and its counsel and would not be subject to disclosure to the Buyer in connection with any process relating to such dispute under or in connection with this Agreement, shall continue after the Closing to be privileged communications between the Seller and such counsel, and neither the Buyer nor any Person purporting to act on behalf of or through the Buyer, shall seek to obtain the same by any process on the grounds that the privilege attaching to such communications belongs to the Buyer and not the Seller. The foregoing acknowledgment and agreement of the Buyer shall survive the Closing.

11.8 Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

11.9 Interpretation. The articles, section and schedule headings contained in this Agreement are solely for the purpose of reference, are not part of the agreement of the Parties and shall not in any way affect the meaning or interpretation of this Agreement.



PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

11.10 Schedules and Exhibits. Except as otherwise provided in this Agreement, all Exhibits and Schedules referred to herein are intended to be and hereby are specifically made a part of this Agreement.

11.11 Entire Agreement. This Agreement, the Confidentiality Agreement and the Ancillary Agreements, including the Exhibits, Schedules, documents, certificates and instruments referred to herein or therein, embody the entire agreement and understanding of the Parties hereto in respect of the transactions contemplated by this Agreement and supersede all prior agreements and understandings between the Parties (other than the Confidentiality Agreement) with respect to such transactions. There are no restrictions, promises, representations, warranties, covenants or undertakings, other than those expressly set forth or referred to herein or therein. It is expressly acknowledged and agreed that there are no restrictions, promises, representations, warranties, covenants or undertakings contained in any material made available to the Buyer pursuant to the terms of the Confidentiality Agreement.

11.12 Bulk Sales Laws. The Buyer acknowledges that, notwithstanding anything in this Agreement to the contrary, the Seller will not comply with the provision of the bulk sales laws of any jurisdiction in connection with the transactions contemplated by this Agreement. The Buyer hereby waives compliance by the Seller with the provisions of the bulk sales laws of all applicable jurisdictions.



PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

IN WITNESS WHEREOF, the Seller and the Buyer have caused this Purchase and Sale Agreement to be signed by their respective duly authorized officers as of the date first above written.

VERMONT YANKEE NUCLEAR POWER CORPORATION

By: ______________________
Name: R.H. Young
Title: Chairman

By: ______________________
Name: R.P. Barkhurst
Title: President

ENTERGY NUCLEAR VERMONT YANKEE, LLC

By: ______________________
Name: JERRY W. YELVERTON
Title: PRESIDENT AND CEO

ENTERGY CORPORATION, only for purposes of Sections 5.11 to 5.14, inclusive, 6.20

By: ______________________
Name: J. WAYNE LEONARD
Title: CEO

PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

IN WITNESS WHEREOF, the Seller and the Buyer have caused this Purchase and Sale Agreement to be signed by their respective duly authorized officers as of the date first above written.

VERMONT YANKEE NUCLEAR POWER CORPORATION

By: [signature]

Name: R.H. Young

Title: Chairman

By: [signature]

Name: R.P. Barkhurst

Title: President

ENTERGY NUCLEAR VERMONT YANKEE, LLC

By: [signature]

Name: JERRY W. YELVERTON

Title: PRESIDENT AND CEO

ENTERGY CORPORATION, only for purposes of Sections 5.11 to 5.14, inclusive, 6.20

By: [signature]

Name: J. WAYNE LEONARD

Title: CEO

PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

Execution Copy

# BILL OF SALE

THIS BILL OF SALE, dated as of July 31, 2002 (the "Bill of Sale"), by and between Vermont Yankee Nuclear Power Corporation, a Vermont Corporation (the "Seller"), to and in favor of Entergy Nuclear Vermont Yankee, LLC, a Delaware limited liability company (the "Buyer").

WITNESSETH

WHEREAS, Buyer and Seller are parties to a Purchase and Sale Agreement, dated as of August 15, 2001 (as amended, supplemented or otherwise modified from time to time, the "Purchase and Sale Agreement");

WHEREAS, capitalized terms which are used but not defined in this Bill of Sale shall have the meaning ascribed to such terms in the Purchase and Sale Agreement; and

WHEREAS, pursuant to the Purchase and Sale Agreement, the Seller and the Buyer have agreed to enter into this Bill of Sale pursuant to which certain of the Acquired Assets will be conveyed to the Buyer.

NOW, THEREFORE, in consideration of the foregoing premises and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Seller hereby sells, assigns, conveys, transfers and delivers to the Buyer, its successors and assigns, free and clear of all liens and encumbrances other than Permitted Encumbrances, all of the Seller's right, title and interest in and to the Acquired Assets other than (i) the Real Property and (ii) the Acquired Assets conveyed by the Assignment and Assumption Agreement.

TO HAVE AND TO HOLD the Acquired Assets unto the Buyer, its successors and assigns, for its and their own use and benefit, forever.

The representations and warranties set forth in Article IV of the Purchase and Sale Agreement constitute the sole and exclusive representations and warranties of the Seller in connection with the transactions contemplated thereby. There are no representations, warranties, covenants, understandings or agreements among the Parties regarding the Acquired Assets or their transfer other than those incorporated in the Purchase and Sale Agreement. Except for the representations and warranties expressly set forth in Article IV of the Purchase and Sale Agreement, the Buyer disclaims reliance on any representations, warranties or guarantees, either express or implied, by the Seller, including but not limited to any representation or warranty expressed or implied in the Offering Memorandum dated April, 2001, and materials provided in connection therewith, including any oral, written or electronic response to any information request provided to the Buyer. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PURCHASE AND SALE AGREEMENT, THE BUYER ACKNOWLEDGES AND AGREES THAT THE ACQUIRED ASSETS ARE BEING ACQUIRED "AS IS, WHERE IS" ON THE CLOSING DATE, AND IN THEIR CONDITION ON THE CLOSING DATE, AND THAT



PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

THE BUYER IS RELYING ON ITS OWN EXAMINATION OF THE ACQUIRED ASSETS, AND IS NOT RELYING ON ANY REPRESENTATION OR WARRANTY MADE BY THE SELLER OR ANY SPONSOR, OR ANY OFFICER, EMPLOYEE, CONSULTANT OR AGENT THEREOF, OR ANY BROKER OR INVESTMENT BANKER.

Notwithstanding anything herein to the contrary, the Excluded Assets are specifically excluded from the Acquired Assets and shall be retained by the Seller at and following the Closing Date.

The Seller hereby constitutes and appoints the Buyer, its successors and assigns, as the true and lawful agent and attorney-in-fact of the Seller to demand and receive any and all of the Acquired Assets which are hereby assigned, conveyed and transferred, or are intended so to be, and which are not in the possession or under the exclusive control of the Seller, and to give receipts and releases for and in respect of the same, and any part thereof, and from time to time to institute and prosecute in the name of the Seller or in the name of the Buyer, its successors or assigns, as the legal attorney-in-fact of the Seller thereunto duly authorized, for the benefit of the Buyer, its successors and assigns, any and all proceedings at law, in equity or otherwise, which the Buyer, its successors and assigns, may deem proper for the collection and enforcement of any claim or right of any kind hereby granted, sold, conveyed, transferred or assigned, or intended so to be, and to do all acts and things in relation to the Acquired Assets which the Buyer, its successors and assigns, shall deem desirable, the Seller hereby declaring that the foregoing powers are coupled with an interest and are irrevocable by the Seller. Seller acknowledges that such appointment does not require the Buyer to use any special skills or expertise in carrying out any acts under such appointment. Buyer accepts its appointment as Seller's true and lawful agent and attorney-in-fact. Buyer understands its duties under this paragraph and Vermont law regarding powers of attorney.

Nothing in this Bill of Sale, express or implied, is intended or shall be construed to confer upon or give to any person, firm or corporation other than the Buyer, its successors and assigns any remedy or claim under or by reason of this instrument or any term, covenant or condition hereof, and all of the terms, covenants, conditions, promises and agreements in this Bill of Sale shall be for the sole and exclusive benefit of the Buyer and its successors and assigns.

Neither the making nor the acceptance of this Bill of Sale shall enlarge, restrict or otherwise modify the terms of the Purchase and Sale Agreement or constitute a waiver or release by the Seller or the Buyer of any liabilities, duties or obligations imposed upon either of them by the terms of the Purchase and Sale Agreement, including, without limitation, the representations and warranties and other provisions which the Purchase and Sale Agreement provides shall survive the date hereof as provided in the Purchase and Sale Agreement. In the event that any provision of this Bill of Sale may be construed to conflict with a provision of the Purchase and Sale Agreement, the provision in the Purchase and Sale Agreement shall be deemed controlling.

PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

The Bill of Sale may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument.

IN WITNESS WHEREOF, the undersigned have caused this Bill of Sale to be signed by their respective duly authorized officers as of the date first above written.

VERMONT YANKEE NUCLEAR
POWER CORPORATION

By: Ross P Barkhurst
Name: Ross P. Barkhurst
Title: President

ENTERGY NUCLEAR VERMONT YANKEE, LLC

By: [signature]
Name: Michael R. Kansler
Title: VP and COO

Witness: John J. Bozulinic

I, John J. Bozulinck, hereby affirm that the representative of VERMONT YANKEE NUCLEAR POWER CORPORATION appeared to be of sound mind and free from duress at the time this Bill of Sale was signed, and such representative affirmed to me his awareness of the nature of this Bill of Sale and that he signed this Bill of Sale freely and voluntarily.

Commonwealth of Massachusetts
County of Suffolk, ss:

At Boston, this 30th day of July, 2002, personally appeared Ross P. Barkhurst, duly authorized agent of VERMONT YANKEE NUCLEAR POWER CORPORATION, who signed the foregoing instrument, and acknowledged the same to be his free act and deed, and the free act and deed of said corporation.

Before me, [signature]
(signature and title) Notary Public

PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

Commonwealth of Massachusetts
County of Suffolk, ss.

At Boston, this 30th day of July, 2002, personally appeared Michael R. Kansler, duly authorized agent of ENTERGY NUCLEAR VERMONT YANKEE, LLC, who signed the foregoing instrument, and acknowledged the same to be his free act and deed, and the free act and deed of said limited liability company.

Before me, [signature]
(signature and title) Notary Public

PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

Entergy

July 31, 2002

Entergy Nuclear Northeast
Entergy Nuclear Operations, Inc.
440 Hamilton Avenue
White Plains, NY 10601-5029
Tel 914 272 3207

US DEPARTMENT OF ENERGY
HEADQUARTERS PROCUREMENT SERVICES
1000 INDEPENDENCE AVE SW
WASHINGTON, DC 20585

Subject:: Assignment of Agreement U.S. DEPARTMENT OF ENERGY CONTRACT NO. DE-CR01-83NE 44431 ENTITLED "CONTRACT FOR DISPOSAL OF SPENT NUCLEAR FUEL AND/OR HIGH LEVEL RADIOACTIVE WASTE" ENTERED INTO JUNE 10, 1983
(as it may have been amended, the ""Contract")

Dear Sir or Madam:

It is possible that you received prior correspondence or other documents from Vermont Yankee Nuclear Power Corporation ("Vermont Yankee") concerning its agreement to sell the Vermont Yankee Nuclear Power Station and certain other related assets to Entergy Nuclear Vermont Yankee, LLC, a subsidiary of Entergy Corporation, and Vermont Yankee's intent, as part of this sale transaction, to assign its rights and obligations under the Contract as of the consummation of that sale (the "Closing"), provided that the Contract had not expired or been terminated prior to the closing.

In any event, the closing occurred today, July 31, 2002. Accordingly, provided that the Contract has not previously expired or been terminated, please be advised that Vermont Yankee has, as of today, assigned its right, title, and interest under the contract to Entergy Nuclear Operations, Inc. ("ENO") as agent for Entergy Nuclear Vermont Yankee, LLC. From and after today, Entergy Nuclear Vermont Yankee, LLC will assume and discharge the obligations of Vermont Yankee under the Contract in lieu of Vermont Yankee. Communications and invoices with respect to goods delivered or services rendered under the Contract after 12:01 a.m. July 31, 2002 should no longer be forwarded to Vermont Yankee. Instead, they should be directed as follows:

Entergy Nuclear Vermont Yankee, LLC
Attn.: Accounts Payable Department
P.O. Box 500
Brattleboro, Vt. 05302-0500

Communications and invoices with respect to goods delivered or services rendered under the Contract prior to today should continue to be forwarded to Vermont Yankee Nuclear Power Station, 185 Old Ferry Road, P.O. Box 7002, Brattleboro, VT. 05302-7002.

If you have any questions, please call me at 914-272-3302. Thank you for your attention to this matter.

Sincerely,

Joseph A DiChiara
Manager
Materials, Purchasing & Contracts

PROTECTED AND CONFIDENTIAL MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

**VERMONT YANKEE**
**NUCLEAR POWER CORPORATION**
185 OLD FERRY ROAD, PO BOX 7002, BRATTLEBORO, VT 05302-7002
(802) 257-5271

August 21, 2002

Herbert D. Watkins, Contracting Officer
Office of Headquarters, Procurement Services
U. S. Department of Energy
Washington DC 20585

Re: Assignment of Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (U. S. Department of Energy Contract #DE-CR01-83NE 44431) for Vermont Nuclear Power Station

Dear Mr. Watkins:

Pursuant to Article XIV of the Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (U. S. Department of Energy Contract #DE-CR01-83NE 44431) (the "Contract"), this is to notify you that, with the consummation of the sale of Vermont Yankee Nuclear Power Station (the "Station"), Vermont Yankee Nuclear Power Corporation has transferred its title to Spent Nuclear Fuel Fuel and High-Level Radioactive Waste (as defined in the Contract) and, except as noted below, its rights and duties under the Contract to Entergy Nuclear Vermont Yankee, LLC, the new owner of the Station, effective July 31, 2002.

Vermont Yankee Nuclear Power Corporation, pursuant to the Purchase and Sale Agreement for the Station, has retained the rights to any and all damages and other remedies that might accrue under from the Department of Energy's breach of its obligations under the Contract to the extent of the one-time fee for fuel used to generate electricity prior to April 7, 1983.

Sincerely,
VERMONT YANKEE NUCLEAR POWER
CORPORATION

By [signature]
Bruce W. Wiggett
President

cc: Ms. Nancy S. Malmquist, Esq., Downs Rachlin & Martin
Mr. John Ritsher, Esq., Ropes & Gray
Mr. Jay Silberg, Esq., Shaw-Pittman
Mr. Paul Gauron, Esq., Goodwin-Procter
Mr. Michael R. Kansler, Entergy Nuclear Vermont Yankee

VY-GFR-0000000002



file copy

Certificate of Filing

I hereby certify that on the 4th day of May 2006, a copy of the foregoing "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING THE INVALID ASSIGNMENT OF PLAINTIFF'S STANDARD CONTRACT AND PRE-EXISTING CLAIMS FROM THE PARTIAL BREACH OF THAT CONTRACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Marian E. Sullivan