**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on June 8, 2006)

| | |
|---|---|
| **VERMONT YANKEE NUCLEAR POWER CORPORATION,** Plaintiff, | |
| v. | No. 02-898C (Judge Wheeler) |
| **THE UNITED STATES,** Defendant. | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UPON COUNTS I AND II OF PLAINTIFF'S COMPLAINT AND, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT UPON DEFENDANT'S RIGHT TO RECOVER UNPAID FEES, AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT ON LIABILITY**

Alex D. Tomaszczuk
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, Virginia 22102-4859
(703) 770-7940
(703) 770-7901 (fax)
Counsel of Record for Plaintiff Vermont Yankee Nuclear Power Corporation

Of Counsel:

Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)

June 8, 2006

# TABLE OF CONTENTS


TABLE OF AUTHORITIES …………………………………………………………………..ii

INDEX TO APPENDIX ……………………………………...……………………………iv

FACTUAL BACKGROUND ……………………………………………………………….3

DISCUSSION ……………………………………………………………………………….6

I. VERMONT YANKEE'S PAYMENT OF THE ONE TIME FEE IS NOT YET DUE UNDER THE CLEAR AND EXPRESS TERMS OF THE CONTRACT........................6

II. PAYMENT OF THE ONE-TIME FEE IS NOT A CONDITION PRECEDENT TO DOE'S SNF ACCEPTANCE OBLIGATIONS…………………..................................9

III. THIS COURT'S ONE-TIME FEE DECISIONS IN *SFI* AND *CONSUMERS* REMAIN PERSUASIVE AUTHORITY, AND THE FEDERAL CIRCUIT'S *INDIANA MICHIGAN* DECISION IS IRRELEVANT TO THE ISSUE…...……………………...12

IV. OFFSET OF DAMAGES AGAINST THE ONE-TIME FEE IS IMPROPER …….........15

V. THE GOVERNMENT IS LIABLE FOR PARTIAL BREACH OF THE STANDARD CONTRACT AND VERMONT YANKEE IS ENTITLED TO SUMMARY JUDGMENT ON COUNT I ………………………………………………………….17

CONCLUSION ……………………………………………………………………………..20

# TABLE OF AUTHORITIES

## Cases

Alabama Power Co. v. U.S. Dep't of Energy,
307 F.3d 1300 (11th Cir. 2002) ....................16, 17

Allen & O'Hara, Inc. v. Barrett Wrecking, Inc.,
964 F.2d 694 (7th Cir. 1992) ....................11

Commonwealth Edison Co. v. United States,
56 Fed. Cl. 652 (2003) ....................8

Consumers Energy Co. v. United States,
65 Fed. Cl. 364 (2005) ....................12, 13, 14

General Elec. Uranium Mgmt. Corp. v. U.S. Dep't of Energy,
764 F.2d 896 (D.C. Cir. 1985) ....................3

Indiana Michigan Power Co. v. U.S. Dep't of Energy,
88 F.3d 1272 (D.C. Cir. 1996) ....................7, 8, 18

Indiana Michigan Power Co. v. United States,
422 F.3d 1369 (Fed. Cir. 2005) ....................12

Indiana Michigan Power Co. v. United States,
57 Fed. Cl. 88 (2003) ....................8

Maine Yankee Atomic Power Co. v. United States,
225 F.3d 1336 (Fed. Cir. 2000) ....................2, 18

Morris v. United States,
33 Fed. Cl. 733 (1995) ....................11

Northern Heel Corp. v. Compo Indus., Inc.,
851 F.2d 456 (1st Cir. 1988) ....................11

Northern States Power Co. v. Dep't of Energy,
128 F.3d 754 (D.C. Cir. 1997) ....................18

Northern States Power Co. v. United States,
224 F.3d 1361 (Fed. Cir. 2000) ....................18

Roedler v. U.S. Dep't of Energy,
255 F.3d 1347 (Fed. Cir. 2001) ....................19

Sys. Fuels, Inc. v. United States,
65 Fed. Cl. 163 (2005) ....................12, 13

Winstar Corp. v. United States,
64 F.3d 1531 (Fed. Cir. 1995)....................17

**Statutes, Rules & Regulations**

28 U.S.C. § 2517....................17

31 U.S.C. § 1304....................17

42 U.S.C. § 10131....................14

42 U.S.C. § 10222....................3, 16, 17, 18

60 Fed. Reg. 21,793 (May 3, 1995)....................18, 19

**Other Authorities**

Restatement (Second) of Contracts § 245 (1979)....................11

# INDEX TO APPENDIX


| Description | Page |
| --- | --- |
| DCS Forms, Northern States Power Company | 1 |
| Deposition of David Zabransky Deposition (April 22, 2002), Excerpts | 22 |
| 2004 DCS Instructions for Completing the Appendix C Delivery Commitment Schedule | 29 |
| 2004 Acceptance Priority Ranking & Annual Capacity Report (July 2004) (Appendices omitted) | 35 |
| Letter from Dave Zabransky to Frank B. Rives (received Dec. 1, 2004) | 43 |
| Department of Energy's Eleventh Monthly Status Report Regarding LSN Certifications and License Application Submittal (April 3, 2006) | 44 |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on June 8, 2006)

| | | |
|---|---|---|
| **VERMONT YANKEE NUCLEAR POWER CORPORATION,** Plaintiff, | ) | |
| v. | ) | No. 02-898C (Judge Wheeler) |
| **THE UNITED STATES,** Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UPON COUNTS I AND II OF PLAINTIFF'S COMPLAINT AND, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT UPON DEFENDANT'S RIGHT TO RECOVER UNPAID FEES, AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT ON LIABILITY**

Plaintiff Vermont Yankee Nuclear Power Corporation ("Vermont Yankee"), by and through the undersigned counsel, respectfully files its response in opposition to Defendant's (the "Government") May 4, 2006 "Motion For Summary Judgment Upon Counts I And II Of Plaintiff's First Amended Complaint And, In The Alternative, For Partial Summary Judgment Upon Defendant's Right To Recover Unpaid Fees."[1] Vermont Yankee also files its cross-motion for summary judgment on liability for breach of contract. The Government's motion for summary judgment is premised upon an allegation that Vermont Yankee has not complied with the requirement, under Article VIII of the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-level Radioactive Waste (the "Standard Contract"), to pay a one-time fee to cover

[1] The Government's Motion does not appear to provide any arguments in support of summary judgment on Count II of Vermont Yankee's First Amended Complaint (breach of the implied covenant of good faith and fair dealing), and therefore its motion directed to Count II should be denied on this basis alone. To the extent that the Government proffers any substantive arguments regarding Count II in its reply brief, Vermont Yankee respectfully requests the opportunity to respond to those arguments in a sur-reply or its cross-motion reply brief.

costs of disposing spent nuclear fuel ("SNF") and/or high-level radioactive waste ("HLW") generated at the Vermont Yankee Nuclear Power Station prior to April 7, 1983 (the "one-time fee").[2] The Government appears to argue that this alleged noncompliance relieved the Department of Energy ("DOE" or the "Department") from its obligation to accept Vermont Yankee's SNF and/or HLW under the Standard Contract, and that the Government cannot be held liable for breach of contract in this case. For several reasons, the Government's argument is plainly wrong.

First, the Government's argument flies in the face of the Federal Circuit's holding that the Government's partial breach of the Standard Contract "involved all the utilities that had signed the contract – the entire nuclear electric industry," Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336, 1342 (Fed. Cir. 2000), whether or not those utilities had outstanding one-time fee obligations. The Government's persistent efforts to avoid this ruling – a case that effectively establishes the Government's liability for partial breach of contract, as detailed in Section V *infra* – do not withstand scrutiny. Further, as detailed in section III *infra*, this Court has largely rejected the Government's one-time fee arguments in at least two other SNF cases already. Second, the Government's motion for summary judgment is flawed because it assumes a valid Delivery Commitment Schedule ("DCS") process. Such a process is itself a prerequisite to Vermont Yankee's alleged condition precedent of paying the one-time fee per the explicit terms of the Standard Contract. The DCS process, however, was never fully implemented as contemplated by the Standard Contract, was unilaterally suspended by DOE in March 1997, was abandoned in favor of a new DCS process in July 2004, and that was itself re-

[2] Vermont Yankee sold the Vermont Yankee Nuclear Power Station to Entergy Nuclear Vermont Yankee LLC and Entergy Nuclear Operations, Inc. ("ENVY") in 2002, but retained the obligation to pay the one-time fee for the plant. Appendix to Defendant's Motion For Summary Judgment On Count I And II ("Gov't App.") at 82 (May 4, 2006).

suspended by DOE in December 2004. In point of fact, under the terms of the Standard Contract, the one-time fee for Vermont Yankee is not yet due. Moreover, because of DOE's continuing nonperformance, the due date of the one-time fee cannot even be ascertained at this time. Meanwhile, Vermont Yankee paid and ENVY now continues to pay the on-going "1.0 mil fees" to the DOE, in an amount which now exceeds $70 million. Thus, the notion proffered by the Government that Vermont Yankee has failed to perform its obligations under the Standard Contract is meritless, and the Government's motion for summary judgment should be denied.

**Factual Background**

Section 302(a)(3) of the Nuclear Waste Policy Act (the "NWPA") requires utility contract holders to pay a one-time fee for disposal of SNF that was generated at their plant sites prior to April 7, 1983. 42 U.S.C. § 10222(a)(3); see also Gen. Elec. Uranium Mgm't Co. v. Dep't of Energy, 764 F.2d 896, 898 (D.C. Cir. 1985). Article VIII of the Standard Contract implements the NWPA's statutory requirement for the one-time fee, and in Section B.2 provides utility contract holders with three options for paying the one-time fee. Option 1 requires payment of the fee prorated evenly over 40 quarters (plus interest on the fee balance), the last payment of which must be made prior to the "first scheduled delivery date" as reflected in DOE-approved DCSs. Option 2 requires payment of the entire fee (plus interest on the fee) in a single payment "anytime prior to the first delivery" as reflected in DOE-approved DCSs. Option 3 requires payment of the entire fee anytime prior to June 30, 1985. The contract holder was required to select one of these three fee payment options within two years of contract execution. Vermont Yankee executed its Standard Contract on June 15, 1983, and was therefore required to notify DOE of its selection of a payment option on or before June 15, 1985. On or about June 5, 1985, Vermont Yankee selected Option 2. Government's Proposed Findings of Fact ¶ 5.

Therefore, Vermont Yankee was required to pay the one-time fee in a single payment "anytime prior to the first delivery [of SNF], as reflected in DOE approved delivery commitment schedule . . . plus interest on the outstanding fee balance."

In December 1992, DOE approved Vermont Yankee's DCSs that contemplated pickup of its SNF "beginning in 1999 and continuing in the years 2001, 2002, 2003, 2004, 2005 and 2007." However, many DCSs submitted after 1995 were voided by DOE. E.g., DCS Form, Northern States Power Co., Appendix to Plaintiff's Response To Defendant's Motion For Summary Judgment on Counts I And II ("Pl. App.") at 12 (Jun. 8, 2006). DOE also failed to approve or disapprove some DCSs submitted by utilities, as Article V.B.1 of the Standard Contract requires ("DOE shall approve or disapprove such schedules within three (3) months after receipt"). DCS Forms, Northern States Power Co., Pl. App. at 11-14, 19-21. David Zabransky, the Contracting Officer's Technical Representative for the Standard Contracts during the mid-1990s, has testified in the SNF litigation that he was "advised to void" DCSs and to hold DCSs without approval or disapproval by counsel. Zabransky Dep. at 38-39, 596, 603-04; Pl. App. at 23, 26-28.[3] Ultimately, DOE unilaterally suspended the DCS process in 1997. At that time, DOE started to inform many utilities that it "is not able at this time to approve your DCS submittal. Consequently, the Department hereby waives until further notice the contract requirement that you provide a revised schedule in 30 days." E.g., Letter from Beth A. Tomasoni, DOE Contracting Officer, to E.L. Watzl, Northern States Power Co. (Mar. 13, 1997), Pl. App. at 11. Mr. Zabransky has also testified that once the DCS process was suspended, it was impossible for a utility to have a DCS approved. Zabransky Dep. at 353; Pl. App. at 24.

---

[3] Mr. Zabransky's deposition was taken in the coordinated discovery proceedings that took place in 2001 and 2002 involving nearly two dozen utility plaintiffs in the SNF cases.

Seven years later, in July 2004, DOE purported to restart the DCS process. DOE sent new instructions to Standard Contract holders, directing them to submit DCSs "to inform DOE of their plans for utilizing their allocations of projected Civilian Radioactive Waste Management System (CRWMS) acceptance capacity." 2004 DCS Instructions ¶ 1, Pl. App. at 29. In doing so, DOE "recognize[d] that many Purchasers have submitted and DOE has approved DCSs based upon the January 31, 1998 operations date included in the Standard Contract. Purchasers should submit new DCSs based upon the currently planned operation date of 2010." 2004 DCS Instructions ¶ 7(a), Pl. App. at 30. In addition to these DCS instructions, DOE issued in July 2004 its "Acceptance Priority Ranking & Annual Capacity Report" ("APR/ACR"). Pl. App. at 35-42. This was the first APR/ACR that the Department had published since 1995 and was explicitly based upon a 2010 planned start of DOE's acceptance of spent fuel. See id. at 39.

Less than five months later, however, DOE abruptly reversed course and stopped the DCS process. In letters to Standard Contract holders, DOE stated that, despite having received DCS forms from utilities as DOE requested in July 2004, "recent developments relating to the FY 2005 budget along with other issues have led the Department to conclude that the resumption of the DCS process was premature." E.g., Letter from Dave Zabransky to Frank B. Rives received Dec. 1, 2004, Pl. App. at 43. DOE returned any DCS forms that utilities had submitted in response to the Department's July 2004 instructions, and concluded in this December 2004 letter that once "the Department has determined a revised date for the initial operation of the Yucca Mountain repository, it will resume the DCS process in accordance with the provisions of the Standard Contract." Id. DOE has neither resumed the DCS process nor informed Vermont

Yankee or other utilities as the "revised date for initial operation of the Yucca Mountain repository."[4]

## DISCUSSION

## I. VERMONT YANKEE'S PAYMENT OF THE ONE-TIME FEE IS NOT YET DUE UNDER THE CLEAR AND EXPRESS TERMS OF THE CONTRACT

The Government correctly cites Article VIII(B)(2)(b) of the Standard Contract in asserting that Vermont Yankee's payment of the one-time fee would be due "anytime prior to the first delivery [of SNF], as reflected in the DOE approved delivery commitment schedule . . . ." Government's Motion at 5. From this quoted portion of the contract, however, the Government makes an unwarranted leap in logic to conclude that Vermont Yankee was "required to pay the entirety of its one-time fee <u>before</u> DOE began acceptance of that contract holder's SNF and/or HLW" – in other words, that payment of the one-time fee is a "condition precedent" to DOE performance. Government's Motion at 6 (emphasis in original).

Even if acceptance of SNF were conditioned on payment of the one-time fee, as an initial matter, it is necessary to ascertain the due date for paying the one-time fee under Option 2. The Standard Contract's plain language suggests two possibilities: (1) "anytime prior to the first delivery," that is, the physical transfer of SNF, (2) "as reflected in the DOE approved delivery commitment schedule," or (3) a combination of (1) and (2). As a matter of contract construction, "prior to the first delivery" makes some sense for the due date because the following clause "as reflected in the DOE approved delivery commitment schedule," delimited by a comma, is an informational clause showing where to find the date of the first delivery. The second clause does

[4] DOE's most recent pronouncements do not even attempt to estimate when DOE might begin to dispose of plaintiff utilities' SNF. DOE has merely stated that it "anticipates completion of a new baseline schedule" in the summer of 2006. The Department of Energy's Eleventh Monthly Status Report Regarding LSN Certifications And License Application Submittal at 1 (Apr. 3, 2006); Pl. App. at 44.

not, by itself, define the payment due date. If the due date were intended to be the approved DCS date, the language would have clearly called for the obligation to be paid "in the form of a single payment anytime prior to the date of first delivery specified in the DOE approved delivery commitment schedule" (i.e., without the comma). Further, requiring payment only before physical delivery avoids abuse of the DCS process, as detailed below. The third alternative, combining the "prior to first delivery" and "as reflected in the DOE approved delivery commitment schedule" clauses, makes the most sense because it applies all of the contract language. However, this interpretation only makes sense if the "DOE approved delivery commitment schedule" is a valid, operative DCS. It would make no sense to link the one-time fee payment to a once-scheduled first delivery date that had been superseded a decade earlier. Such an unreasonable interpretation of the Standard Contract would invalidate the *quid pro quo* that the contract is supposed to reflect. See Indiana Michigan Power Co. v. Dep't of Energy, 88 F.3d 1272, 1276 (D.C. Cir. 1996).

Thus, based on the Standard Contract's plain language, the one-time fee for Vermont Yankee Nuclear Power Station cannot now be due. No "first delivery" of SNF has occurred with regard to Vermont Yankee, ENVY, or any other plaintiff utility. Nor is one scheduled. Alternatively, if payment is tied to a "first delivery" date set forth in approved DCSs, no valid DCSs exist at this time or have existed at least since 1995. To the extent that the Government relies on DCSs that DOE had approved in the early-to-mid 1990s, those DCSs were no longer in effect once DOE made official pronouncements in 1995 (if not earlier) that SNF acceptance would not take place until 2010 at the earliest. Thus, while DOE may have approved DCSs for Vermont Yankee in December 1992 that contemplated DOE pickup of Vermont Yankee's SNF "beginning in 1999 and continuing in the years 2001, 2002, 2003, 2004, 2005 and 2007," these

DCSs were premised on DOE beginning to perform by the 1998 deadline. With DOE's renunciation of the 1998 date and its acknowledgement in 1995 or earlier that it would not begin to perform before 2010, these DCSs became invalid on their face.

Furthermore, as this Court has consistently recognized, DOE refused to be bound by the DCSs it approved in the early 1990s. DOE unilaterally and unfairly gamed the DCS process – once the Department knew it would not meet its obligations under the Standard Contract – to avoid incurring liability to the nuclear industry. See Indiana Michigan Power Co. v. United States, 57 Fed. Cl. 88, 98-99 (2003) ("The Contract does not use Annual Capacity Reports and Delivery Commitment Schedules to determine an Acceptance Rate . . . The Department of Energy did not consider these forms to be binding"); Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652, 665-66 (2003). This fact, combined with DOE's partial breach of the Standard Contract, makes it impossible at this time to ascertain the due date for Vermont Yankee's payment of the one-time fee as DOE has not yet committed to a scheduled delivery date. Indeed, DOE has refused even to predict when it might begin start accepting SNF from the Standard Contract holders. Thus, based on the Standard Contract's terms, Vermont Yankee has demonstrably not failed to meet *any* deadline regarding payment of the one-time fee. The U.S. Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit") has properly criticized DOE's approach to its obligations to utility contract holders as "Here is air, give me money." Indiana Michigan Power Co. v. Dep't of Energy, 88 F.3d at 1276. The Government's current approach, that Vermont Yankee is obliged to pay its one-time fee to DOE at a time when DOE cannot even predict when it will begin to perform, is another telling example of the proverb quoted by the D.C. Circuit.

In summary, once DOE has built an operational repository or other facility to receive utilities' SNF and has established a DCS process with *bona fide* performance dates that are scheduled to occur at utility sites, Vermont Yankee will pay the one-time fee prior to the "first delivery" from the plant – consistent with the terms plainly specified in Article VIII(B)(2)(b) of the Standard Contract.

## II. PAYMENT OF THE ONE-TIME FEE IS NOT A CONDITION PRECEDENT TO DOE'S SNF ACCEPTANCE OBLIGATIONS

The Government correctly defines a condition precedent as a condition that one contracting party must perform before the other party is obligated to perform. Government's Motion at 7-8. Payment of the one-time fee is not, however, a "condition precedent" to DOE's SNF acceptance obligations. Contrary to the Government's suggestion, the plain language of Article VIII(B)(2)(b) merely provides for the *timing* of Vermont Yankee's one-time fee payment. Indeed, nothing in the text of Article VIII remotely suggests that a contract holder's failure to pay the one-time fee prior to its due date (which, in any event, for Vermont Yankee has yet to occur) would somehow obliterate DOE's obligation to accept SNF from that particular utility. Rather, Article VIII(B) of the Standard Contract specifically sets out the consequence for a utility's failure to pay the one-time fee in a timely manner as the payment of interest in late fees. As stated in Article VIII(B)(4): "Any fees not paid on a timely basis or underpaid because of a miscalculation will be subject to interest as specified in paragraph C of this Article VIII." Because the balance owed on Vermont Yankee's one-time fee has already increased (and will continue to increase) from the accumulation of interest as set forth in Article VIII(B)(2)(b), Government's Proposed Findings of Fact ¶ 8, DOE should be indifferent, as a purely economic

matter, regarding when Vermont Yankee actually makes the one-time fee payment.[5] Thus, the Government simply has no basis on which to conclude that DOE's waste acceptance obligations are somehow dependent on a utility's timely payment of the one-time fee in its entirety.

Even assuming *arguendo* that Vermont Yankee's payment of the one-time fee was a condition precedent to DOE's performance obligations under the Standard Contract, such a condition precedent was excused when DOE indicated in 1995 (if not earlier) that an operational repository would not be completed until 2010 at the earliest and failed to build an interim storage facility in the meantime. DOE's establishment of an operational repository (or interim storage facility) and a functioning DCS process, as required by the Standard Contract and Nuclear Waste Policy Act, are themselves condition precedents to Vermont Yankee's payment of the one-time fee – conditions that DOE has failed to satisfy.

Contrary to the Government's suggestions, Vermont Yankee has always been prepared and willing to pay the one-time fee pursuant to Article VIII of the Standard Contract. By 1999,

---

[5] Article X of the Standard Contract also provides certain notice and cure rights to a utility prior to DOE's issuance of a suspension. Article X states in pertinent part:

> A. In addition to any other rights DOE may have hereunder, DOE reserves the right, at no cost to the Government, to suspend this contract or any portion thereof upon written notice to the Purchaser within ninety (90) days of the Purchaser's failure to perform its obligations hereunder, and the Purchaser's failure to take corrective action within thirty (30) days after written notice of such failure to perform as provided above, unless such failure shall arise from causes beyond the control and without the fault or negligence of the Purchaser, its contractors or agents. However, the Purchaser's obligation to pay fees required hereunder shall continue unaffected by any suspension. Any such suspension shall be rescinded if and when DOE determines that Purchaser has completed corrective action.

This provision requires that DOE provide Vermont Yankee with notice and an opportunity to cure prior to suspending DOE's performance of the Standard Contract. In this case, no such notice has ever been issued to Vermont Yankee by DOE. Moreover, the fact that Vermont Yankee's payment obligations continue through any period of suspension suggests that payment is an independent duty rather than a condition precedent to DOE's performance.

the date by which the Government now argues that Vermont Yankee should have submitted its payment of the one-time fee, Government's Motion at 6, such action would have been legally futile given the Department's failure to establish an operational repository (or interim storage facility), its acknowledgement that its acceptance of SNF would not begin until 2010 at the earliest, and its abandonment of the original DCS process. See Morris v. United States, 33 Fed. Cl. 733, 751, n.16 (1995) ("The law will not require the doing of a futile act."); see also Allen & O'Hara, Inc. v. Barrett Wrecking, Inc., 964 F.2d 694, 696 (7th Cir. 1992); Northern Heel Corp., v. Compo Indus., Inc., 851 F.2d 456, 461-62 (1st Cir. 1988).[6] Thus, apart from being excused, Vermont Yankee's obligation to pay the one-time fee has never ripened because of DOE's acknowledged delay in the performance of its SNF disposal obligations.

Significantly, although as described above the Standard Contract provides clear remedies to DOE where a utility fails to perform its obligations, DOE has not sought to invoke such remedies. DOE's failure to seek any remedy further demonstrates that the Government's arguments that Vermont Yankee failed to pay the one-time fee are specious.

It also bears noting that Vermont Yankee paid on a quarterly basis, prior to the sale of Vermont Yankee Nuclear Power Station to ENVY, the 1.0 mil per kilowatt-hour fee for

---

[6] In Morris, the plaintiff contracted to buy a parcel of land from the Small Business Administration ("SBA"), with closing set for September 6, 1991. Prior to the closing date the SBA advised plaintiff that it would be unable to close until November 1991. In rejecting the Government's argument that plaintiff's failure to tender payment in accordance with the contract relieved the Government of liability, the court explained that:

> While technically Mr. Morris' tender of payment was a condition precedent to the government's obligation to convey, both parties knew and agreed that the government was unable to convey the property at the appointed time. Therefore, tender was not required to put the government in breach as the law will not require the doing of a futile act.

Morris, 33 Fed. Cl. at 751 (citations omitted); see also Restatement (Second) Contracts § 245 (1979) (where party's breach by nonperformance contributes materially to the nonoccurrence of a condition to be satisfied by the other party, the nonoccurrence is excused).

electricity generated after April 7, 1983. First Amended Complaint ¶ 24. Those on-going fee payments substantially exceeded $64 million dollars, see Compl. ¶ 10, and are probative of Vermont Yankee's willingness to pay the one-time fee were it actually due. Thus, in this case, Vermont Yankee met its payment obligations to DOE under the Standard Contract, and any suggestion to the contrary is meritless.

Finally, as discussed in Section IV *infra*, because the Government has failed to show that Vermont Yankee's one-time fee is currently due, the Court should reject the Government's claims to "recover the unpaid one-time fee, plus accrued interest" or to "recoup the amount of the one-time fee against any judgment in Vermont Yankee's favor." Government's Motion at 18-22. Given the substantial costs that Vermont Yankee has incurred due to the Government's breach, First Amended Complaint ¶ 22, it is simply not true that breach of contract damages without an offset of the one-time fee balance "would place Vermont Yankee in a better position than it would have been in had DOE performed the Standard Contract." Government's Motion at 19.

## III. THIS COURT'S ONE-TIME FEE DECISIONS IN SFI AND CONSUMERS REMAIN PERSUASIVE AUTHORITY, AND THE FEDERAL CIRCUIT'S INDIANA MICHIGAN IS IRRELEVANT TO THE ISSUE

This Court has rejected the Government's one-time fee arguments in at least two other SNF cases. System Fuels, Inc. v. United States, 65 Fed. Cl. 163 (2005) ("SFI"); Consumers Energy Co. v. United States, 65 Fed. Cl. 364 (2005) ("Consumers"). The Government's summary judgment motion in this case appears to imply that these decisions are no longer persuasive authority because of what the Government characterizes as a holding of Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005) ("Indiana Michigan"). Vermont Yankee respectfully submits that, on the one-time fee issue, this case is for all practical

purposes indistinguishable from SFI and Consumers and the Government's interpretation of Indiana Michigan is erroneous.

The SFI decision supports Vermont Yankee's position that, because DOE has repeatedly abandoned the DCS process, a due date for the payment of its one-time fee cannot be ascertained at this time. In particular, the SFI decision recognized that "it is presently impossible for a utility to acquire a 'DOE approved delivery commitment schedule' because DOE has ceased to approve any and all DCSs." 65 Fed. Cl. at 173 (citations omitted). Like the plaintiffs in SFI, Vermont Yankee's selection of Option 2 for payment of the one-time fee "was to delay payment until the point when delivery of SNF was imminent." Id. at 174. And similar to the plaintiffs in SFI, Vermont Yankee is prepared to pay the one-time fee prior to the first delivery to DOE of SNF from Vermont Yankee Nuclear Power Station. As this Court determined in SFI, "the Government's delay in disposing of SNF and HLW has temporarily frustrated the purpose behind [Plaintiffs'] selection of [Option 2]. As a result, the condition [of paying the one-time fee] has been temporarily excused pending the beginning of the disposal process, and [Plaintiffs] may proceed with [their] claim of a partial breach of contract notwithstanding [their] deferral of the one-time fee." Id.

On a similar note, this Court in Consumers ruled that payment of the one-time fee cannot be viewed as a condition of the Government's obligation to accept a plaintiff utility's SNF. 65 Fed. Cl. at 371. If DOE's unilateral suspension or abandonment of the DCS process effectively allowed the Department to postpone SNF acceptance "until whenever the DCS process resumes, it would render the government's duties under the Standard Contract illusory." Id. Moreover, the Government's position runs contrary to the public policy underlying the Nuclear Waste Policy Act. Because it is the Government's responsibility to provide for the permanent disposal

of SNF in order to protect the public health and safety and the environment, 42 U.S.C. § 10131(a)(4), "[i]ndefinite deferral of the government's obligation to accept civilian nuclear waste, because of [a] dispute over a given utility's fee payments, would only prolong a status quo of accumulated SNF stored on-site at civilian reactors." Consumers, 65 Fed. Cl. at 373.

The Government tries to dismiss the significance of this Court's SFI and Consumers decisions by what the Government characterizes as a holding in Indiana Michigan that utility plaintiffs in the SNF cases cannot rely upon anticipatory repudiation theories in pursuit of their partial breach of contract claims. This interpretation of Indiana Michigan is inaccurate and specious at best. The Federal Circuit's decision dealt strictly with the proper temporal scope of damages that plaintiff utilities may recover in a partial breach of contract action. In that case, the plaintiff-appellant sought review of this Court's post-trial determination that in a partial breach of contract action, pre-breach and post-trial damages cannot be recovered as a matter of law. Indiana Michigan, 422 F.3d at 1373. The Federal Circuit affirmed on the facts but also ruled that "partial breach claimants may recover pre-breach mitigation damages." Id. at 1374-75. It further stated that in a partial breach action, post-breach damages may be recovered as "they are incurred," leaving prospective damages for future partial breach actions. Id. at 1376-77.

In its motion, the Government attempts to apply the alleged ruling on "anticipatory repudiation" in Indiana Michigan by claiming that Vermont Yankee was in effect alleging that Government partially and anticipatorily repudiated the Standard Contract. The Government reached this result by speculating that Vermont Yankee would rely on DOE's announcement that "it would not be able to begin SNF acceptance from the industry as a whole beginning in 1998" as an excuse not to "pay its one-time fee until some unidentified date in the future." Government's Motion at 9. The Government then proceeds to engage in an irrelevant recitation

of the law that allegedly governs anticipatory repudiation and the remedies available to plaintiffs alleging a partial versus a total breach of contract. Id. at 9-15. However, Vermont Yankee's decision not to pay the one-time fee yet based on DOE's abandonment of the DCS process and the extensive delay in the DOE program, as described in Section I *supra*, is hardly equivalent to an allegation of partial anticipatory breach. Moreover, as further explained above, the reasons why Vermont Yankee need not pay the one-time fee at this time go far beyond DOE's failure to accept SNF in 1998.

In summary, the Government inaccurately interprets Indiana Michigan as a ruling on the issue of anticipatory repudiation, which itself is irrelevant to the analysis and determination of a utility's one-time fee payment obligations. Determining the scope of Vermont Yankee's one-time fee payment obligations simply requires the much narrower issue of interpreting the Standard Contract's Article VIII. Thus, SFI and Consumers remain good law and should represent persuasive authority here.

## IV. OFFSET OF DAMAGES AGAINST THE ONE-TIME FEE IS IMPROPER

The Government argues that Vermont Yankee should have to pay the one-time fee prior to being awarded damages, or in the alternative, that DOE should be allowed to recoup the one-time fee against any judgment in this case. Government's Motion at 18-22. The Government's suggestions are improper for several reasons.

First, as explained above, the one-time fee is not currently due. Therefore, Vermont Yankee should not be compelled to pay it. The cases and the common law cited in the Government's Motion are inapposite because they all pertain only to the principle of offset against debts to the debtor that are due. None of the cases or authority cited by the Government involved an offset against a debt that is *not* currently due. An offset against a non-current debt is inappropriate, and we are aware of no support for such a proposition in the law.

Second, the Government argues that if Vermont Yankee does not pay the one-time fee now, it will be put in a better position than it would have been in absent DOE's breach. This assertion is nonsensical. Vermont Yankee seeks damages to compensate for DOE's default. After Vermont Yankee receives its damages, it will not be in a better position because it will still have had to store the SNF for a longer period of time – with all the costs, responsibilities, and liabilities that this entails – than would have been the case had DOE performed. Until DOE is ready to perform as required, DOE is not entitled to the one-time fee. Further, as time passes, the one-time fee liability accrues interest on the outstanding balance pursuant to Article VIII(B)(2)(b) of the Standard Contract as noted above. Thus, DOE from the standpoint of its entitlement to the one-time fee is being kept economically whole, notwithstanding the indefinite delay in its performance.

Offset of damages against the one-time fee presents the same problem that the U.S. Court of Appeals for the Eleventh Circuit (the "Eleventh Circuit") resolved in Alabama Power Co. v. Dep't of Energy, 307 F.3d 1300 (11th Cir. 2002). The NWPA requires that spent fuel fees, including the one-time fee, must be deposited into the Nuclear Waste Fund (the "NWF") "immediately upon their realization." 42 U.S.C. § 10222(c). The funds in the NWF can only be used "for purposes of radioactive waste disposal services." 42 U.S.C. § 10222(d). In Alabama Power, the Eleventh Circuit held that the "NWPA clearly does not allow the Department [of Energy] to utilize NWF monies to pay for the interim storage costs of the Department's contract creditors." 307 F.3d at 1312. Allowing DOE to offset damages against the one-time fee would effectively use NWF dollars to pay interim storage damages, in violation of the NWPA. This would be the very situation condemned in Alabama Power.

Money damages awarded from this Court come from the Judgment Fund, not the NWF. 31 U.S.C. § 1304; 28 U.S.C. § 2517. The Government's proposed offset would relieve the Judgment Fund of any obligation to satisfy damages awards and instead impose that burden on the NWF. The Alabama Power court correctly observed that because nuclear utilities fund the NWF (and, incidentally, are liable for any shortfalls therein, 42 U.S.C. § 10222(a)(4)), payment of damages from the NWF creates an absurd result. The Eleventh Circuit evaluated DOE's position that the NWF could pay damages:

> The Department's response to this ridiculous result is that, yes, the utilities can obtain a claims court judgment, because it can be satisfied out of the NWF. This is pure sophistry. Since the utilities have to fund "the Fund," they, not the government, would have to satisfy the judgments they obtain. One can imagine what the Federal Circuit would have said in response to the Department's argument. Had the court accepted the argument (while at the same time telling the utilities they could sue in the court of claims and obtain a money judgment), the court itself would have become the fool.

Id. at 1315. While this Court in Consumers did hold that offset was appropriate, its opinion addressed neither the legal issues regarding the NWF discussed above nor the Alabama Power case. Vermont Yankee respectfully submits that the Consumers decision is in error on the offset issue for the reasons discussed above. In summary, DOE is entitled to the one-time fee but not before it begins performance. Premature payment of the one-time fee, or offset of damages against the fee liability, are inappropriate and contrary to the NWPA.

## V. THE GOVERNMENT IS LIABLE FOR PARTIAL BREACH OF THE STANDARD CONTRACT AND VERMONT YANKEE IS ENTITLED TO SUMMARY JUDGMENT ON COUNT I

There is no genuine issue of material fact that the Government breached Vermont Yankee's Standard Contract and should be held liable for the resulting damages. Generally, "[f]ailure to perform a contractual duty when it is due is a breach of the contract." Winstar Corp. v. United States, 64 F.3d 1531, 1545 (Fed. Cir. 1995) (en banc), aff'd, 518 U.S. 839 (1996). The

Government breached Vermont Yankee's Standard Contract when it failed to begin disposal of Vermont Yankee's and other utilities' spent nuclear fuel on January 31, 1998 as required by Article II of the Standard Contract. The Government has conceded that it did not commence performance on that date. At one time, DOE's "official" position was that it would not commence performance until 2010 at the earliest. Final Interpretation, 60 Fed. Reg. 21,793, 21,794 (May 3, 1995). Now, DOE no longer provides any projected performance date.

By way of background, Vermont Yankee and the Government entered into the Standard Contract, which is a valid contract. See Vermont Yankee's Contract[7]; PFF ¶¶ 1-3.[8] Under the NWPA and Article II of Vermont Yankee's Contract, the Government had a clear duty to begin accepting SNF by January 31, 1998. Nuclear Waste Policy Act, 42 U.S.C. § 10222(a)(5); Vermont Yankee's Contract, Art. II; Northern States Power Co. v. Dep't of Energy, 128 F.3d 754, 760 (D.C. Cir. 1997) ("[T]he NWPA directs DOE to undertake the duty to begin taking the SNF by January 31, 1998, whether or not it has a repository or interim storage facility."); Indiana Mich. Power Co. v. United States, 88 F.3d 1272, 1276 (D.C. Cir. 1996) (holding that the DOE's obligation to begin to dispose of SNF not later than January 31, 1998 is "without qualification or condition"); PFF ¶¶ 4-6.

Furthermore, the Federal Circuit has already determined that the Government breached every Standard Contract, when the DOE failed to begin accepting SNF on January 31, 1998. Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336, 1342 (Fed. Cir. 2000) ("The breach involved all utilities that had signed the contract – the entire nuclear electric industry.");

---

[7] "Vermont Yankee's Contract" refers to the contract between Vermont Yankee and DOE, executed on June 15, 1983. Gov't. App. at 1-62.

[8] "PFF" refers to Vermont Yankee's Proposed Findings of Uncontroverted Fact in Support of Its Cross-Motion for Summary Judgment on Liability, filed contemporaneously with this cross-motion.

PFF ¶¶ 8-9; see also Northern States Power Co. v. United States, 224 F.3d 1361 (Fed. Cir. 2000). As noted above, the Government had stated that it would not be able to begin to dispose of SNF stored by nuclear utilities, including Vermont Yankee, until at least 2010. Final Interpretation, 60 Fed. Reg. at 21,794; PFF ¶ 7; see also Roedler v. Dep't of Energy, 255 F.3d 1347, 1350 (Fed. Cir. 2002). Therefore, there is no question that the Government breached Vermont Yankee's Standard Contract. In fact, in nearly all of the cases in which it has addressed this very issue, this Court has found the Government liable for breach of the Standard Contract.[9]

[9] Northern States Power Co. v. United States, No. 98-484C (Wiese, S.J.); Florida Power & Light Co. v. United States, No. 98-483C (Baskir, J.); Commonwealth Edison Co. v. United States, No. 98-621C (Hewitt, J.); Yankee Atomic Elec. Co. v. United States, No. 98-126C (Merow, S.J.); Connecticut Yankee Atomic Power Co. v. United States, No. 98-154C (Merow, S.J.); Maine Yankee Atomic Power Co. v. United States, No. 98-474C (Merow, S.J.); Indiana Michigan Power Co. v. United States, No. 98-486C (Hodges, J.); Sacramento Mun. Util. Dist. v. United States, No. 98-488C (Braden, J.); Southern Nuclear Operating Co. v. United States, No. 98-614C (Merow, S.J.); Wisconsin Elec. Power Co. v. United States, No. 00-697 (Merow, S.J.); Tennessee Valley Auth. v. United States, No. 01-249C (Lettow, J.); Entergy Nuclear Indian Point 2, LLC v. United States, No. 03-2622C (Lettow, J.); System Fuels, Inc. v. United States, No. 03-2623C (Lettow, J.); System Fuels, Inc. v. United States, No. 03-2624C (Braden, J.); Entergy Nuclear Generation Co. v. United States, No. 03-2626C (Lettow, J.).

## CONCLUSION

For the reasons stated above, Vermont Yankee's one-time fee is not currently due, and a due date for the fee cannot be ascertained at this time. The Government's motion to dismiss Counts I and II of Vermont Yankee's First Amended Complaint should be denied, and the alternative motion for an offset should also be denied. Additionally, Vermont Yankee's cross-motion for summary judgment should be granted.

Dated: June 8, 2006

Respectfully submitted,

s/ Alex D. Tomaszczuk by s/ Jack Y. Chu
Alex D. Tomaszczuk
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, Virginia 22102-4859
(703) 770-7940
(703) 770-7901 (fax)
Counsel of Record for Plaintiff
Vermont Yankee Nuclear Power Corporation

Of Counsel:

Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037-1128
(202) 663-8000
(202) 663-8007 (fax)