**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on June 8, 2006)

| | |
|---|---|
| **VERMONT YANKEE NUCLEAR POWER CORPORATION,** Plaintiff, v. **THE UNITED STATES,** Defendant. | No. 02-898C (Judge Wheeler) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO CONSOLIDATE OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)**

Alex D. Tomaszczuk
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, Virginia 22102-4859
(703) 770-7940
(703) 770-7901 (fax)
Counsel of Record for Plaintiff Vermont Yankee Nuclear Power Corporation

Of Counsel:

Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)

June 8, 2006

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ……………………………………………………..………….ii

ARGUMENT ………………………………………………………………………………..2

I. VERMONT YANKEE AND ENVY ARE SEEKING NON-OVERLAPPING DAMAGES BASED ON DIFFERENT TIMEFRAMES ………………………………..3

A. Vermont Yankee's Damages Have Already Been Incurred…………………...….4

B. Vermont Yankee's "Diminution In Value" Claim Has No Bearing On ENVY's Damages………………………………………………………………………...5

II. THE GOVERNMENT'S OTHER REASONS FOR CONSOLIDATION ARE NOT UNIQUE TO ENVY'S CASE, AND THIS COURT HAS REPEATEDLY DECLINED TO CONSOLIDATE THE SNF CASES ON THESE GROUNDS………...7

III. THE USE OF RCFC 14 SUMMONS AND NOTICE IS INAPPROPRIATE HERE BECAUSE THE GOVERNMENT HAS NO "CONTINGENT CLAIM" AGAINST ENVY………………………………………………………………………………..9

CONCLUSION……………………………………………………………………………..13

Order From Chief Judge (Jan. 30, 2004)………………………………………………Exhibit A

# TABLE OF AUTHORITIES

## Cases

Ala. Power Co. v. Dep't of Energy,
307 F.3d 1300 (11th Cir. 2002) ....................12

Boston Edison Co. v. United States,
67 Fed. Cl. 63 (2005) ....................3, 6, 11

Commonwealth Edison Co. v. United States,
56 Fed. Cl. 652 (2003) ....................8

Energy Capital Corp. v. United States,
302 F.3d 1314 (Fed. Cir. 2002)....................7, 10

Indiana Michigan Power Co. v. United States,
422 F.3d 1369 (Fed. Cir. 2005)....................4, 10

Indiana Michigan Power Co. v. United States,
57 Fed. Cl. 88 (2003) ....................8

Karuk Tribe of Cal. v. United States,
27 Fed. Cl. 429 (1993) ....................3

Indiana Michigan Power Co. v. United States,
422 F.3d 1369 (Fed. Cir. 2005)....................4, 10

Maine Yankee Atomic Power Co. v. United States,
224 F.3d 1336 (Fed. Cir. 2000)....................9

Penda Corp. v. United States,
44 F.3d 967 (Fed. Cir. 1994)....................12

Philadelphia Suburban Corp. v. United States,
211 Ct. Cl. 354 (1976) ....................13

Southern Cal. Edison Co. v. United States,
226 F.3d 1349 (Fed. Cir. 2000)....................11

## Statutes, Rules & Regulations

RCFC 14 ....................10, 11, 12

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on June 8, 2006)

| | |
|---|---|
| **VERMONT YANKEE NUCLEAR POWER CORPORATION,**<br><br>Plaintiff,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>Defendant. | No. 02-898C<br>(Judge Wheeler) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO CONSOLIDATE OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)**

Plaintiff Vermont Yankee Nuclear Power Corporation ("Vermont Yankee"), by and through the undersigned counsel, respectfully files its response to Defendant's (the "Government") Motion To Consolidate Or, In The Alternative, For Issuance Of A Summons Pursuant To RCFC 14(a) And Notice Pursuant To RCFC 14(b) dated May 3, 2006 ("Motion to Consolidate"). The Motion to Consolidate seeks to consolidate, pursuant to RCFC 42, Vermont Yankee's action with Entergy Nuclear Vermont Yankee, LLC v. United States, No. 03-2663C ("ENVY"), a case over which the Court presides as well. In its Motion, the Government has mischaracterized and overstated the significance of any commonalities, factual or otherwise, between this case and ENVY. In addition, many of the reasons that the Government has proffered in support of consolidation are not unique to this case, but merely repeat the same arguments that it has unsuccessfully put forward in its prior efforts to consolidate all the spent nuclear fuel ("SNF") damages cases – attempts that judges of this Court have repeatedly declined to grant over the last five years. For these and other reasons stated herein, the Motion to

Consolidate should be denied. The Government's alternative motion for issuance of a summons to Vermont Yankee in ENVY and to ENVY in this case pursuant to RCFC 14(a) and for notice to Vermont Yankee and ENVY pursuant to RCFC 14(b) should also be denied, because the use of summons and notice is inappropriate here. Given the different nature of these plaintiffs' respective damages claims, the Government does not have the required "contingent claim" against Vermont Yankee.

## ARGUMENT

The propriety of consolidation depends on whether the interest of judicial economy outweighs the potential for delay, confusion, and prejudice that may result from consolidation. Karuk Tribe of Cal. v. United States, 27 Fed. Cl. 429, 433 (1993). As explained below, any judicial economy to be gained from consolidation of these cases is minimal, while the potential for prejudice is substantial. Moreover, the burden is on the Government to demonstrate that this case should be consolidated with ENVY, and that burden has not been met.

Vermont Yankee is mindful of this Court's prior decision in Boston Edison Co. v. United States, 67 Fed. Cl. 63 (2005), in which two SNF cases involving the same nuclear plant (and the sale of that plant involving the plaintiffs in those cases) were consolidated for limited purposes. Id. at 67. Recognizing that some principles from the Boston Edison decision may apply to the Court's adjudication of the instant consolidation motion, Vermont Yankee respectfully submits that the interests of judicial economy would not be served by consolidating two cases where one plaintiff's (Vermont Yankee) breach of contract damages have already been incurred – and therefore are now readily susceptible to proof at trial – while the other plaintiffs (ENVY) are moving on a different litigation schedule and strategic plan because a large portion of their

damages will not likely begin to be incurred until calendar year 2007.[1] Thus, any benefits from formal consolidation with ENVY,[2] which benefits are not significant, are outweighed, on balance, by the time, effort, costs, and other disruption to Vermont Yankee that would surely result from consolidation now.

## I. VERMONT YANKEE AND ENVY ARE SEEKING NON-OVERLAPPING DAMAGES BASED ON DIFFERENT TIMEFRAMES

The Government's primary rationale for consolidation is that Vermont Yankee's and ENVY's cases share "common issues of fact and law." Motion to Consolidate at 6. The two cases involve the same contract and same nuclear power facility, the Vermont Yankee Nuclear Power Station. But the fact that Vermont Yankee's and ENVY's cases involve the same contract and plant does not, by itself, satisfy the requirements of RCFC 42. On the contrary, it appears likely that the *trials* of Vermont Yankee's and ENVY's damages claims will be substantively different in both fact and law.

The Government repeatedly suggests that this case and ENVY "share the same factual basis" or "predicate." E.g., Motion to Consolidate at 8 and 14. However, the critical issues to be litigated – the damages incurred by Vermont Yankee on the one hand, and ENVY on the other hand – bear little resemblance. As explained below, Vermont Yankee's damages have already been incurred. ENVY's damages claim, on the other hand, will primarily be based on the Department of Energy's ("DOE") continuing failure to accept any SNF from the Vermont Yankee Nuclear Power Station and will consist of the costs incurred to provide additional storage

[1] As the Court is aware, the U.S. Court of Appeals for the Federal Circuit has held that in a partial breach of contract action, post-breach damages may be recovered as "they are incurred," leaving prospective damages for future partial breach actions. Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1376-77 (Fed. Cir. 2005).

[2] Vermont Yankee recognizes that, in the interests of efficiency, some coordination of discovery with ENVY would be appropriate. See note 5 *infra*.

for the SNF that DOE would have picked up had it not breached the Standard Contract. These damages will continue to accumulate as long as DOE fails to perform its Standard Contract obligations, because ENVY will need to take various actions in the future to mitigate the effects of DOE's breach. These actions have no bearing on Vermont Yankee, which no longer owns the Vermont Yankee Nuclear Power Station. Thus, a comparison of the two plaintiffs' damages claims would show that the underlying theories of recovery are vastly different.

### A. Vermont Yankee's Damages Have Already Been Incurred

In its First Amended Complaint, Vermont Yankee has alleged that, as a result of the Government's breach, it was "forced to incur substantial additional costs to provide for extended on-site storage of the [Vermont Yankee Nuclear] Power Station's SNF prior to the sale of the Power Station. Moreover, Vermont Yankee incurred other substantial damages, including but not limited to regulatory costs associated with efforts to ensure sufficient on-site storage capacity or alternative off-site storage capacity to permit continued operation of its nuclear plants." First Amended Complaint ¶ 22.

In other words, Vermont Yankee seeks in this action damages incurred on or before the date it sold the Vermont Yankee Nuclear Power Station to ENVY. In particular, the costs that Vermont Yankee has incurred as a result of the Government's breach include, *inter alia*, the re-racking of the spent fuel pool at Vermont Yankee Nuclear Power Station and the study of dry storage options as a result of the Government's breach – costs that were incurred *on or before* Vermont Yankee's July 31, 2002 sale of the Vermont Yankee Nuclear Power Station to ENVY. By contrast, the consideration of ENVY's damages will include the adjudication of costs related to the design, license, and construction of a dry fuel storage facility and the purchase of dry fuel storage containers. Those damages are neither necessary nor relevant to the trial of Vermont Yankee's damages here.

As the undersigned counsel for Vermont Yankee has represented to the Court, ENVY "has an interest in capturing damages through 2007" because it is "in the process of constructing dry storage and loading casks in 2007" as a result of the Government's continuing partial breach of contract. Transcript of Status Conference at 18 (Feb. 6, 2006). Thus, it seems most efficient and reasonable for ENVY to pursue its damages at trial during calendar year 2008 at the earliest. Id. at 19. By contrast, as a procedural and substantive matter, it is unlikely that Vermont Yankee would need to wait until 2008 to pursue its damages in this case at trial. Any judicial economy that the parties would gain from formal consolidation would be limited at best.

**B. Vermont Yankee's "Diminution In Value" Claim Has No Bearing On ENVY's Damages**

There is also no merit to the Government's assertion that a payment by ENVY of a "reduced" price to Vermont Yankee when it purchased Vermont Yankee Nuclear Power Station somehow constitutes partial "compensation" to ENVY for its breach of contract claim against the Government. Motion to Consolidate at 7.[3] The related suggestion that the Government should recoup from ENVY any damages that are awarded to Vermont Yankee for its diminution in value claim, id. at 15-16, is equally flawed.[4]

---

[3] The Government has indicated that the foregoing statement on compensation to ENVY was "according to Vermont Yankee." Motion to Consolidate at 7. Vermont Yankee has never made any such assertion in its action or in the instant action.

[4] This Court ruled in Boston Edison that "[t]he possibility of an overlapping recovery deserves strong consideration" because a primary objective of consolidation is to prevent separate actions from producing conflicting results. 67 Fed. Cl. at 66. Judge Lettow explained that the relevant query is "whether judicial economy would be achieved through consolidating a single issue which otherwise may well be twice litigated in two cases." Id. With respect to the Government's double recovery defense, however, there is no such "single issue" that would be litigated twice and lead to conflicting damages awards here and in ENVY – especially given the temporal and conceptual differences between Vermont Yankee's and ENVY's claims as described in this brief. Moreover, given the limited damages discovery that has occurred to date, the Government's stated concerns as to a double recovery by the plaintiffs are premature at this time and speculative at best.

First, the Government has failed to cite any legal support for the proposition that a company that purchased private property on the open market could somehow be liable to the Government for a diminution in value of that property prior to the purchase, especially if the Government (and not the purchasing party) were responsible for the diminution in value. Further, whether any one factor made a measurable difference in the price ENVY paid for the Vermont Yankee Nuclear Power Station is simply not an issue in ENVY's case against the Government, nor should resolution of that issue affect the measure of ENVY's breach of contract damages.

As demonstrated above, the damages that Vermont Yankee has claimed and the damages that ENVY has claimed are independent of one another and based on distinct timeframes and distinct damages theories. It would be prejudicial to Vermont Yankee for ENVY's claims to serve as an artificial burden on Vermont Yankee's proof of damages. Vermont Yankee is entitled to recover any and all costs incurred on or before July 31, 2002 that would not have been incurred but for the Government's breach of the Standard Contract and that can be proved with "reasonable certainty." See Energy Capital Corp. v. United States, 302 F.3d 1314 (Fed. Cir. 2002) (affirming expectancy damages award in complex breach of contract case). Consolidation would also be prejudicial to Vermont Yankee because it would unnecessarily increase Vermont Yankee's litigation costs by requiring its participation in a trial (i.e., ENVY's) on issues that are irrelevant to its damages, especially because ENVY's damages trial is not likely to occur until calendar year 2008 at the earliest.[5]

[5] While it may be necessary for the Government to pursue some overlapping discovery from Vermont Yankee and ENVY (e.g., depositions of the same witnesses), such discovery could readily be coordinated without formal consolidation of the cases. For example, in 2001 and 2002, the Government and multiple SNF plaintiffs engaged in coordinated discovery on SNF acceptance schedule issues, which discovery was completed without the consolidation of any

## II. THE GOVERNMENT'S OTHER REASONS FOR CONSOLIDATION ARE NOT UNIQUE TO ENVY'S CASE, AND THIS COURT HAS REPEATEDLY DECLINED TO CONSOLIDATE THE SNF CASES ON THESE GROUNDS

The Government complains that absent consolidation, "there is the potential that the Court could determine different rates of acceptance, even though the same contract is at issue in two cases, leading to inconsistent judgments in the two cases." Motion to Consolidate at 10-11. In its prior consolidation efforts, the Government has raised the same concerns about the risk of "inconsistent decisions" by this Court. As explained below, however, the mere possibility that various judges might reach allegedly inconsistent outcomes on the rate of SNF acceptance in the different SNF cases does not justify consolidation for Vermont Yankee with ENVY here or with any other cases.[6] Nonetheless, the Government has consistently posited an illusory (and at best, theoretical) fear that disparate rulings from this Court regarding DOE's SNF acceptance obligations would make it difficult to determine an individual utility's damages. The Government has also alleged that the determination of a "consistent and uniform contractual acceptance schedule" is necessary for the adjudication of each utility plaintiff's damages.[7] These concerns are invalid for at least several reasons.

First, at least insofar as the SNF acceptance rate issues are concerned, no inconsistent decisions have yet been issued by the various trial judges which have considered the matter.

---

cases. Vermont Yankee is prepared to participate in coordinated discovery with ENVY, subject to the adoption of a reasonable plan and schedule for such discovery.

[6] Moreover, as the Court has observed, "the risk of inconsistent results is probably handled from the fact that the same judge is deciding the cases relating to the same power plants, and I'm confident we can deal with that." Transcript of Status Conference at 44-45 (Feb. 6, 2006).

[7] For example, in July 2003, the Government filed a "Second Motion To Renew Its Motion To Consolidate" that sought formal consolidation of all the SNF cases in this Court, which motion was denied by the Chief Judge on January 30, 2004. Order in Yankee Atomic Elec. Co. v. United States, No. 98-126C (attached hereto at Exhibit A). A copy of the Government's July 29, 2003 motion was filed in this case.

Indeed, in each instance where this Court has ruled on the Government's motion for summary judgment on the acceptance rate, the Government's motion has been denied. See, e.g., Indiana Michigan Power Co. v. United States, 57 Fed. Cl. 88, 99-100 (2003);[8] Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652, 668 (2003). Second, the issue of whether or not DOE is contractually required to accept Greater-Than-Class-C ("GTCC") waste or failed fuel, Motion to Consolidate at 10-11, is irrelevant to the question of consolidation because Vermont Yankee has not made any allegations in its Complaint regarding DOE acceptance of these materials. Rather, Vermont Yankee seeks damages resulting from DOE's failure to proceed with the timely acceptance of SNF. Third, the necessity for this Court to determine a SNF acceptance schedule for Vermont Yankee that is consistent with the schedule for ENVY is itself a faulty premise because it is impossible now for DOE to accept SNF from Vermont Yankee at the Vermont Yankee Nuclear Power Station, as Vermont Yankee no longer owns the plant. Lastly, as the Federal Circuit has previously stated in the SNF litigation:

> [e]quitable adjustment of the contractual schedules for removal of the nuclear waste would provide virtually no basis for compensating [plaintiff] for any damages it may have sustained from the Department's failure to perform its contractual obligations. At present there are no schedules containing specific dates for disposing of the waste of particular companies. It is uncertain when they will be adopted and to what extent, if any, they will, or could effectively reflect the Department's breach of the contract.

Maine Yankee Atomic Power Co. v. United States, 224 F.3d 1336, 1342 (Fed. Cir. 2000). Indeed, the calculation of damages in the SNF cases does not require a "uniform contractual acceptance schedule" as the Government has suggested, but merely proof of a plaintiff's damages associated with DOE's breach that is held to the same "reasonable certainty" standard

[8] In the Indiana Michigan decision, this Court both denied the Government's motion for summary judgment on the acceptance rate *and* granted Indiana Michigan's cross-motion for adoption of a 3,000 metric ton rate. 57 Fed. Cl. at 99-100.

as the Federal Circuit routinely follows in other breach of contract cases. See, e.g., Energy Capital Corp., 302 F.3d at 1325.

The process of determining an SNF plaintiff's damages essentially entails a calculation of costs "sufficient to place the injured party in as good a position as it would have been had the breaching party fully performed." Indiana Mich. Power Co. v. United States, 422 F.3d 1369, 1373 (Fed. Cir. 2005) (citation omitted). To this end, Vermont Yankee only needs to show that enough of its SNF would have been removed so that it would have avoided additional SNF storage costs, had DOE performed its Standard Contract obligations. These factual issues, when resolved, are sufficient for the Court to render a judgment on damages. While determination of an appropriate acceptance rate may impact a given utility's damages claim, the same could be said of a host of other factors (e.g., the date DOE begins SNF acceptance at a repository). Hence, consolidation is especially inappropriate here because, as stated above, Vermont Yankee's demonstration of damages will certainly vary from ENVY's. Even here, where the claims involve the same plant, an assessment of damages resulting from additional SNF storage will be different for Vermont Yankee and ENVY because the extent to which dry storage is necessary at the Vermont Yankee Nuclear Power Station has changed over the years in light of DOE's continuing nonperformance (and is no longer relevant in this case, in any event).

## III. THE USE OF RCFC 14 SUMMONS AND NOTICE IS INAPPROPRIATE HERE BECAUSE THE GOVERNMENT HAS NO "CONTINGENT CLAIM" AGAINST ENVY

As in its previous attempts to consolidate the SNF cases, the Government requested that this Court issue a notice pursuant to RCFC 14(b) to those Standard Contract holders who had not yet chosen to sue the Government. This issue has been briefed several times by other utility plaintiffs in their briefs against consolidation, and ENVY's grounds for opposing the

Government's alternative motion are similar here. Notably, no judge of this Court has yet seen the need to issue any RCFC 14(b) notices in any spent nuclear fuel case.[9]

The Government maintains that a RCFC 14(a) summons is necessary to answer the "contingent claim of the United States for the recovery from ENVY of any monies that may be paid by the United States to Vermont Yankee with respect to the transaction or matter which constitutes the subject matter of the pending suit against the United States." Motion to Consolidate at 15. As explained in Section I.B *supra*, however, ENVY's damages claim has no bearing on Vermont Yankee and the Government has no "contingent claim" against Vermont Yankee. A summons issued under RCFC 14(a) is only appropriate "in situations where the government is seeking the recovery of a sum of money disbursed to the wrong party." Southern Cal. Edison Co. v. United States, 226 F.3d 1349, 1355 (Fed. Cir. 2000). RCFC 14 provides the procedural tools to bring in all "erroneously paid" parties, to assure that the Government may litigate its contingent claims against an erroneously over-paid party in the same proceeding initiated by an erroneously under-paid party. Id.

The use of RCFC 14(a) summons here for Vermont Yankee and ENVY is flawed because there is no erroneous payment of money here, but merely a straightforward purchase of property between two private entities that did not directly involve the Government. The Government has failed to specify any legal grounds on which a contingent claim may be brought that would meet the requirements of RCFC 14. Thus far, the Government has only made unsupported assertions about how any damages that Vermont Yankee may recover in its suit must somehow be connected to ENVY, based on the claim that Vermont Yankee sold the Vermont Yankee Nuclear

[9] In Boston Edison, Judge Lettow ruled that it was "not necessary to address the government's alternative motion for issuance of a summons pursuant to RCFC 14(a) and notice pursuant to RCFC 14(b)." 67 Fed. Cl. at 67 n.3.

Power Station to ENVY at a reduced price. Just as importantly, unlike the court in Southern California Edison, this Court will not be apportioning damages among Standard Contract holders based on a set fund. SNF plaintiffs will recover any damage awards out of the Judgment Fund and, thus, the Government's damages payment to one plaintiff is completely independent of and not contingent on another's. See Ala. Power Co. v. Dep't of Energy, 307 F.3d 1300, 1315 (11th Cir. 2002).

Moreover, even if Vermont Yankee were noticed as a third-party defendant in ENVY pursuant to RCFC 14(a)(1), it would not be bound by any adverse judgment because Vermont Yankee could not actually appeal such a judgment. See Penda Corp. v. United States, 44 F.3d 967, 971-73 (Fed. Cir. 1994). In Penda, neither the plaintiff nor the Government pursued an appeal. Penda, 44 F.3d at 972. However, the RCFC 14(a)(1) third-party defendant sought to appeal, because it feared that it would owe indemnification to the Government, or could potentially face a related suit brought by plaintiff in another court. Id. The Federal Circuit denied standing to appeal because the Court of Federal Claims' judgment involved an obligation between the Government and the plaintiff; it involved no obligation or claim by the third-party defendant. Id. The Federal Circuit concluded that "[i]t is axiomatic that a judgment is without preclusive effect against a party which lacks a right to appeal that judgment." Id. at 973. Here, a similar problem could arise. If Vermont Yankee were noticed as a third-party defendant in ENVY, under Penda no final judgment could be entered against Vermont Yankee because Vermont Yankee would not have standing to appeal any judgment against it.

Furthermore, the underlying rationale for using the notice procedures of RCFC 14(a)(1) is the "prevention of numerous proceedings and determinations on an identical set of facts" and the "furtherance of the conservation of judicial time and effort." Philadelphia Suburban Corp. v.

United States, 211 Ct. Cl. 354, 355 (1976). However, if a noticed party such as Vermont Yankee will not be bound by the results of a consolidated proceeding, then the process will simply not conserve any judicial time or resources as the Government suggests. And because, in any event, the Vermont Yankee and ENVY cases do not turn on "determinations on an identical set of facts," the purposes behind RCFC 14(a)(1) notice procedures simply do not apply here. The Government's procedural maneuverings will only lead to additional expense and a waste of judicial resources.

## CONCLUSION

For the reasons stated above, the Government has failed to meet the requirements of RCFC 42 and the Motion to Consolidate should be denied. The Government's alternative motion for issuance of a summons to Vermont Yankee in ENVY and to ENVY in this case pursuant to RCFC 14(a) and for notice to Vermont Yankee and ENVY pursuant to RCFC 14(b) should also be denied.

Dated: June 8, 2006

Respectfully submitted,

s/ Alex D. Tomaszczuk by s/ Jack Y. Chu
Alex D. Tomaszczuk
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, Virginia 22102-4859
(703) 770-7940
(703) 770-7901 (fax)
Counsel of Record for Plaintiff
Vermont Yankee Nuclear Power Corporation

Of Counsel:

Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037-1128
(202) 663-8000
(202) 663-8007 (fax)

ORIGINAL

# In the United States Court of Federal Claims

No. 98-126 C
(Filed: January 30, 2004 )

FILED
JAN 3 0 2004
U.S. COURT OF FEDERAL CLAIMS

YANKEE ATOMIC ELECTRIC CO.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

## ORDER

On July 30, 2003, Defendant filed a Second Motion to Renew its Motion to Consolidate in the set of cases before the Court informally referred to as Spent Nuclear Fuel (SNF) cases. Although the motion was officially docketed in this case, the first-filed of the SNF cases, it was captioned in the name of all of the 21 then-pending SNF cases and addressed to the Chief Judge for determination.

In the motion, the Government requests renewed consideration of its previous motions to consolidate these cases, although its instant motion seeks consolidation in particular "for the purposes of deciding schedule issues."

A brief recitation of the history of this motion is in order. Defendant first raised the issue of consolidation before a single judge by motion in January 2001. In May 2001, then-Chief Judge Baskir assigned the matter to Judge Wiese as managing judge for consideration. The parties ultimately agreed to a plan of consolidated discovery. In August 2001, Judge Wiese in turn assigned Judge Sypolt (then Weinstein) to preside over the consolidated discovery. Subsequent to the conclusion of consolidated discovery in the fall of 2002 , Defendant – in February 2003 – renewed its motion for consolidation before a single judge. Upon review of a court-requested joint status report from the parties and discussion among the judges of the court presiding over the then-21 SNF cases, the Chief Judge issued an order on April 16, 2003, identifying six of the cases as "lead" or "accelerated" cases for the resolution of certain

755

dispositive motions and directing that the remaining cases be stayed, although such stays could be lifted at the discretion of any of the presiding judges. The Order of April 16, 2003, stayed any decision on the renewed motion to consolidate before a single judge. In the meantime, opinions on dispositive motions in five of the six lead cases have been issued by the respective presiding judges. These five cases have also been scheduled for trial on damages.

Consolidation of all the SNF cases would be an extraordinary action The Chief Judge's authority to order consolidation would only be pursuant to Rule 40.1(c) ("Assignment and Transfer of Cases") of the Rules of the Court of Federal Claims (RCFC), as circumscribed by the prescriptions of RCFC 40.2 ("Related Cases), 42 ("Consolidation; Separate Trials"), and 42.1 ("Motions to Consolidate").

As of this date, the Court now has before approximately 55 SNF cases. Given the posture of the six "lead" cases designated in the Court's Order entered on April 16, 2003, and the grant of summary judgment in favor of the plaintiff on acceptance rate, entered June 27, 2003, in the lead case of *Indiana Michigan Power Co. v. United States*, # 98-486 C, the Court determines that consolidation – even as to the particular issues of rate of acceptance and schedule of acceptance – would not effectuate any greater efficient administration of justice than that of letting the six lead cases proceed with their dispositive motions and/or trial on damages. The Court hereby **DENIES** Defendant's motion to renew its motion to consolidate as well as its previous motions relating to consolidation. The Court further **LIFTS THE STAY** of the remainder of the cases to which the Order of April 16, 2003, applied.

The Clerk of the Court is directed to docket this Order in this case with an entry noting the same on the dockets of the remaining SNF cases captioned in Defendant's instant motion, with a courtesy copy to *all* SNF parties and presiding SNF judges of the Court.

Edward J. Damich

EDWARD J. DAMICH
Chief Judge