**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on June 12, 2006)

**VERMONT YANKEE NUCLEAR POWER CORPORATION,**

Plaintiff,

v.

**THE UNITED STATES,**

Defendant.

PROTECTED & CONFIDENTIAL MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER - FILED UNDER SEAL

No. 02-898C
(Judge Wheeler)

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING THE ASSIGNMENT OF PLAINTIFF'S STANDARD CONTRACT AND CLAIMS FROM THE PARTIAL BREACH OF THAT CONTRACT**

Alex D. Tomaszczuk
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, Virginia 22102-4859
(703) 770-7940
(703) 770-7901 (fax)
Counsel of Record for Plaintiff Vermont Yankee Nuclear Power Corporation

Of Counsel:

Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)

June 12, 2006

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ ii

DISCUSSION ........ 2

I. VERMONT YANKEE PERMISSIBLY PARTIALLY ASSIGNED ITS CLAIMS AND ASSIGNED ITS CONTRACT TO ENVY ........ 3

A. The NWPA Supersedes the Assignment of Contracts Act ........ 4

B. The NWPA Also Supersedes the Assignment of Claims Act ........ 6

II. VERMONT YANKEE'S ASSIGNMENT OF THE STANDARD CONTRACT IS VALID REGARDLESS OF ARRANGEMENTS IT MADE WITH ENVY REGARDING PAYMENT OF THE ONE-TIME FEE ........ 8

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

## Cases & Decisions

Ginsberg v. Austin,
968 F.2d 1198 (Fed. Cir. 1992) .......... 6

Gulf States Creosotin Co. v. Loving,
120 F.2d 195 (4th Cir. 1941) .......... 6

Ins. Co. of the West v. United States,
243 F.3d 1367 (Fed. Cir. 2001) .......... 7

Rochester Gas & Elec. Corp. v. United States,
65 Fed. Cl. 431 (2005) .......... passim

Tuftco Corp. v. United States,
222 Ct. Cl. 277 (1980) .......... 4

## Statutes, Rules & Regulations

Nuclear Waste Policy Act, § 302
42 U.S.C. § 10222 .......... passim

Assignment of Claims Act,
31 U.S.C. § 3727 .......... 1, 3, 6, 7, 8

Assignment of Contracts Act,
41 U.S.C. § 15 .......... 1, 3, 4, 5

## Other Authorities

29 Richard A. Lord, Williston on Contracts § 74:10 (4th ed. 2003) .......... 6

3 E. Allan Farnsworth, Farnsworth on Contracts § 11.3 (2d ed. 2002) .......... 6

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on June 12, 2006)

| | |
|---|---|
| **VERMONT YANKEE NUCLEAR POWER CORPORATION,**<br><br>Plaintiff,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>Defendant. | PROTECTED & CONFIDENTIAL MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER - FILED UNDER SEAL<br><br>No. 02-898C<br>(Judge Wheeler) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING THE ASSIGNMENT OF PLAINTIFF'S STANDARD CONTRACT AND CLAIMS FROM THE PARTIAL BREACH OF THAT CONTRACT**

Plaintiff, Vermont Yankee Nuclear Power Corporation ("Vermont Yankee"), by and through the undersigned counsel, respectfully files its response in opposition to Defendant's (the "Government") May 4, 2006 "Motion For Summary Judgment Regarding The Invalid Assignment Of Plaintiff's Standard Contract And Pre-Existing Claims From The Partial Breach Of That Contract" ("Government Motion"). The Government's motion for summary judgment is premised upon at least several faulty contentions regarding Vermont Yankee's July 31, 2002 sale of the Vermont Yankee Nuclear Power Station to Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc. ("ENVY"). First, the Government's reliance on the Assignment of Contracts Act (41 U.S.C. § 15) and the Assignment of Claims Act (31 U.S.C. § 3727) is misplaced because the Nuclear Waste Policy Act ("NWPA") permits a utility contract holder to assign its "rights and duties" under the Standard Contract, either wholly or partially. Second, contrary to the Government's position that it "has no privity" of contract with ENVY,

Vermont Yankee's assignment of its Standard Contract to ENVY was permissible. Third, the Government's allegations regarding Vermont Yankee's alleged noncompliance with the requirement, in Article VIII of the Standard Contract, to pay a one-time fee to cover costs of disposing spent nuclear fuel ("SNF") and/or high-level radioactive waste ("HLW") generated at the Vermont Yankee Nuclear Power Station prior to April 7, 1983 (the "one-time fee") are meritless. Payment of the one-time fee is not yet due and has no bearing on Vermont Yankee's damages action before the Court. Hence, for reasons detailed below, the Government's motion for summary judgment should be denied.

## DISCUSSION

The Government has no basis on which to challenge Vermont Yankee's assignment of certain "rights and duties" under the Standard Contract to ENVY in connection with Vermont Yankee's sale of the Vermont Yankee Nuclear Power Station to ENVY. Section 302(b)(3) of the Nuclear Waste Policy Act (the "NWPA") explicitly permits such an assignment. Vermont Yankee respectfully submits that this Court's analysis in Rochester Gas and Elec. Corp. v. United States, 65 Fed. Cl. 431 (2005) ("RG&E"), regarding the NWPA and Standard Contract assignments applies with equal force in this case. The pertinent issue is this Court's analysis of the NWPA in light of the RG&E decision and the assignment of "rights and duties" permitted under the Act and the Standard Contract.

Here, Vermont Yankee properly transferred its title to the SNF at the Vermont Yankee Nuclear Power Station to ENVY. The Government does not challenge the validity of this transfer of title. Although the Government argues otherwise, once Vermont Yankee effected this transfer, under Section 302(b)(3) of the NWPA and Article XIV of the Standard Contract it became free to assign its rights and duties under the Standard Contract. Exercising its rights

under the NWPA and the Standard Contract, Vermont Yankee assigned some claims against the Government to ENVY while retaining other claims. Vermont Yankee's valid assignment neither prejudices the rights of the Government nor provides any grounds for the dismissal of Vermont Yankee's claims in the instant action.

## I. VERMONT YANKEE PERMISSIBLY PARTIALLY ASSIGNED ITS CLAIMS AND ASSIGNED ITS CONTRACT TO ENVY

The assignment language in the Purchase and Sale Agreement between Vermont Yankee and ENVY for the Vermont Yankee Nuclear Power Station provides that certain of Vermont Yankee's claims against the Government related to the Department of Energy's ("DOE") default have been assigned to ENVY. Purchase and Sale Agreement Between Vermont Yankee and ENVY at 19 (Aug. 15, 2001); Appendix to Defendant's Motion for Summary Judgment Regarding the Invalid Assignment of Plaintiff's Standard Contract and Pre-Existing Claims from the Partial Breach of that Contract ("Gov't App.") at 87. Vermont Yankee and ENVY have adhered to this agreement in pursuing their respective breach of contract claims in this Court. Vermont Yankee's partial assignment of claims to ENVY pursuant to the Purchase and Sale Agreement is not only permissible under the NWPA and the Standard Contract, but also consistent with both the Assignment of Contracts Act and the Assignment of Claims Act.

In the Purchase and Sale Agreement between Vermont Yankee and ENVY, the parties stated that the sale of the Vermont Yankee Nuclear Power Station included "any claims of the Seller related to the Department of Energy's defaults under the DOE Standard Contract accrued as of the Closing, excluding such claims as may relate to the one-time fee with respect to fuel used to generate electricity prior to April 7, 1983." Purchase and Sale Agreement Between Vermont Yankee and ENVY at 19; Gov't App at 87. The closing date for the sale of the Vermont Yankee Nuclear Power Station occurred on July 31, 2002. Gov't App. at 158, 159.

Consistent with Article XIV of the Standard Contract, Vermont Yankee notified DOE on August 21, 2002 that it had transferred title of its SNF and HLW to ENVY.[1] Gov't App. at 159.

**A. The NWPA Supersedes the Assignment of Contracts Act**

The Assignment of Contracts Act generally prohibits the assignment of government contracts, but such assignments are valid when the assignment takes place by operation of law or when the Government consents to and recognizes the assignment. Tuftco Corp. v. United States, 222 Ct. Cl. 277 (1980). Section 302(b)(3) of the NWPA carves out a clear exception to the general anti-assignment rules that control government contracts.

The NWPA states: "The rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level radioactive waste involved." 42 U.S.C. § 10222(b)(3). In RG&E, this Court recognized that "the NWPA permits assignments of Standard Contracts notwithstanding the provisions of the Assignment of Contracts Act." RG&E, 65 Fed. Cl. at 437-38.[2] The Court noted that a specific statute (such as the NWPA) controls over a general statute (such as the Assignment of Contracts Act). Id. In RG&E, this Court found that the NWPA permits "a broad range of assignments of contractual rights and duties." Id. at 431. In doing so, this Court rejected the Government's nearly identical contention here that the NWPA should not be construed to allow partial assignments. Government's Motion at 10-11.

---

[1] Consistent with the Purchase and Sale Agreement, the undersigned counsel for Vermont Yankee represented to the Court that "the claims of [Vermont Yankee and ENVY] are somewhat different. They involve different points in time. The plant was sold. I believe the date of the sale was July of 2002. And as a result of that, the parties have different interests and different claims." Transcript of Status Conference at 22 (Feb. 6, 2006).

[2] Although RG&E dealt with a scenario where the seller of a nuclear plant sought to substitute the buyer as plaintiff and the seller also assigned all its "pre-existing claims" to the buyer – neither of which happened between Vermont Yankee and ENVY – these factual differences are immaterial.

Indeed, as noted above, Section 302 of the NWPA states that the "rights and duties of a party to a contract entered into under this section *may* be assignable with transfer of title to the spent nuclear fuel or high-level radioactive waste involved." 42 U.S.C. § 10222(b)(3) (emphasis added). Article XIV of the Standard Contract, entitled "Assignment," contains virtually identical language: "The rights and duties of the Purchaser *may* be assignable with transfer of title to the SNF and/or HLW involved; provided, however, that notice of any such transfer shall be made to DOE within ninety (90) days of transfer." Standard Contract, Article XIV (emphasis added by italics). See Gov't App. at 26.

The Government's argument that this language requires a "complete assignment" (Government Motion at 8) goes too far. As this Court explained in RG&E, the NWPA's language is permissive and does not mandate that all of the seller's rights and duties be assigned to the buyer; this Court also concluded that the Government's position that only complete assignments are permitted "distort[s] the plain meaning" of the NWPA. RG&E, 65 Fed. Cl. at 430.[3] Thus, the NWPA and the Standard Contract clearly allow partial assignments of rights and duties under the Standard Contract.

Moreover, contrary to the Government's argument, this result in no way frustrates or confuses the fundamental purpose of the Standard Contract. In exchange for the payment of fees by Vermont Yankee and ENVY under Article II of the Standard Contract, DOE is obligated to accept, transport, and dispose of the SNF at the Vermont Yankee plant. See Gov't App. at 6. These fundamental objectives remain unaffected by the assignment here. The Government's arguments to the contrary reflect just the latest round of DOE's efforts to avoid its fundamental obligations – which remain unperformed.

[3] The same analysis applies with equal force to the terms of Article XIV of the Standard Contract, which implements Section 302(b)(3) of the NWPA.

**B. The NWPA Also Supersedes the Assignment of Claims Act**

In addition to Vermont Yankee's proper assignment of the Standard Contract to ENVY, Vermont Yankee assigned certain of its claims against the Government to ENVY. Contrary to the Government's arguments, the NWPA also supersedes the Assignment of Claims Act.

Generally, it is recognized that parties may assign a breach of contract claim as part of an assignment of underlying contract rights even where the breach has already taken place. RG&E, 65 Fed. Cl. at 440-41 ("A cause of action for breach of contract had therefore already arisen, and it is not disputed that such a cause of action is assignable") (citing and quoting Gulf States Creosotin Co. v. Loving, 120 F.2d 195, 199 (4th Cir. 1941)); 29 Richard A. Lord, Williston on Contracts § 74:10 (4th ed. 2003) (noting that "a right to damages for breach of contract is assignable"); cf. Ginsberg v. Austin, 968 F.2d 1198, 1201 (Fed. Cir. 1992) (noting that the law generally will presume an assignor keeps a breach of contract cause of action except where delineated by an agreement to the contrary). The parties' actions in interpreting an assignment agreement will be probative in determining the assignment of claims. 3 E. Allan Farnsworth, Farnsworth on Contracts § 11.3 (2d ed. 2002) ("Whether the owner of a right has manifested an intention to transfer it is a question of interpretation to be answered from all circumstances, including words and other conduct.").

In RG&E, as in this case, the Government incorrectly asserts that Ginsberg would disallow the assignment of pre-existing contract damages claims. Government Motion at 17. However, Ginsberg states only that the law disallows an *implied* assignment of pre-existing rights "[i]n the absence of an agreement to the contrary . . . ." Ginsberg, 968 F.2d at 1201; accord RG&E, 65 Fed. Cl. at 441. Thus, Ginsberg clearly allows for the assignment of pre-existing claims from Vermont Yankee to ENVY, because the parties expressly agreed to such an assignment in the Purchase and Sale Agreement.

The division of breach of contract claims between Vermont Yankee and ENVY reflects a permissible partial assignment of claims under the broad plain-language of the NWPA. RG&E, 65 Fed. Cl. at 441. Because the NWPA permits the partial assignment of claims, whether Vermont Yankee assigned some or most of its claims against the Government to ENVY is ultimately beside the point. The pertinent issue is that the partial assignment from Vermont Yankee to ENVY was permissible, and therefore Vermont Yankee may pursue these retained claims against the Government. Moreover, the extent to which Vermont Yankee may have assigned any of its pre-existing claims to ENVY is a matter that this Court has already resolved in RG&E. The NWPA permits the assignment of pre-existing claims and supersedes the Assignment of Claims Act. RG&E, 65 Fed. Cl. at 440-42.

Contrary to the Government's assertion, see Government Motion at 11, 18, the Tucker Act does provide a waiver of sovereign immunity to an assignee, as well as an assignor. Cf. Insurance Co. of the West v. United States, 243 F.3d 1367, 1373 (Fed. Cir. 2001) (noting that "waivers of sovereign immunity applicable to the original claimant are to be construed as extending to those who receive assignments, whether voluntary assignments or assignments by operation of law" and the Tucker Act's waiver is not "limited to claims asserted by the original claimant"). Thus, the Government's invocation of sovereign immunity concerns is misplaced.

In summary, the NWPA permits an assignment of the Standard Contract and a partial assignment of claims. The Purchase and Sale Agreement reflects that Vermont Yankee properly assigned to ENVY certain claims for damages incurred at the Vermont Yankee Nuclear Power Station (generally, "any claims of the Seller related to the Department of Energy's defaults"), while retaining other damages claims ("excluding such claims as may relate to the one-time fee"). Vermont Yankee also properly assigned the Standard Contract to ENVY. Thus, Vermont

Yankee may maintain its claims against the Government and the motion for summary judgment should be denied.[4]

## II. VERMONT YANKEE'S ASSIGNMENT OF THE STANDARD CONTRACT IS VALID REGARDLESS OF ARRANGEMENTS IT MADE WITH ENVY REGARDING PAYMENT OF THE ONE-TIME FEE

The Purchase and Sale Agreement between Vermont Yankee and ENVY contains language providing that ENVY would not assume Vermont Yankee's liability under the Standard Contract with respect to payment of the one-time fee. Purchase and Sale Agreement Between Vermont Yankee and ENVY at 19-20, 62-63; Gov't App. at 87-88, 130-31. Whether Vermont Yankee retained its duty to pay the one-time fee or assigned it to ENVY, however, is not relevant here. The linchpin of Vermont Yankee's position – and the clear state of the law – is that the NWPA permits partial assignments, as explained in Section I *supra*. Since the law permits partial assignments in these circumstances, the Government's contention that "Vermont Yankee's attempt to assign its Standard Contract, but to retain control over the future one-time fee payment, invalidates the contract assignment" is incorrect. The one-time fee payment obligation plainly falls within the "rights and duties" that Vermont Yankee was permitted under the NWPA to assign (or not assign).

The fact that Vermont Yankee retained the obligation to pay the one-time fee also does not support the Government's contention that "Vermont Yankee retains control over whether and when ENVY is entitled to performance from DOE under the Standard Contract." Payment of the

---

[4] The Government's citation to and discussion of the "financing institution exception" to the Assignment of Claims Act is irrelevant here. First, as the Government itself notes, that exception applies where a liquidated claim is at issue. Second, the cited cases all deal with situations where a private party is providing services and receiving payment from the Government. Here, of course, those obligations are reversed: the DOE is required to provide SNF disposal services to the utilities in exchange for the payment of fees. And, of course, had DOE performed here, there would be no claim at issue.

one-time fee by Vermont Yankee does not control when ENVY is "entitled to performance from DOE under the Standard Contract." As explained in further detail in Vermont Yankee's response brief on the one-time fee issue, filed contemporaneously with this brief, payment of the one-time fee is not a condition precedent to DOE's SNF acceptance obligations.[5] Moreover, the due date for payment of the one-time fee cannot be ascertained at this time due to DOE's repeated suspension and/or abandonment of the Delivery Commitment Schedule process and the absence of even a nominal schedule for repository operations, as discussed in the one-time fee brief.

Finally, Vermont Yankee intends to pay the one-time fee *when it becomes due*. The fact that DOE has never made any effort under the Standard Contract to collect that fee speaks volumes as to the lack of merit in the Government's stated concerns now that it is somehow at risk due to the permitted assignment between Vermont Yankee and ENVY.

[5] The Government has noted that Vermont Yankee, in its notice of assignment to DOE, stated (consistent with the Purchase and Sale Agreement) that it had "retained the rights to any and all damages and other remedies that might accrue from the Department of Energy's breach of its obligations under the Contract to the extent of the one-time fee for fuel used to generate electricity prior to April 7, 1983." Government's Proposed Finding of Fact ¶ 6. To the extent that the Government advances this fact to support its position that payment of the one-time fee is connected to Vermont Yankee's damages claims, Vermont Yankee has never maintained in the instant action that its claim for damages is based on DOE's "breach of its obligations under the Contract to the extent of the one-time fee" issue. Vermont Yankee's claim is based on DOE's failure to pick up SNF from the Vermont Yankee Nuclear Power Station in exchange for Vermont Yankee's continuing payment of fees due and owing as of the date of its plant sale to ENVY.

**CONCLUSION**

For reasons explained above, Vermont Yankee's assignment of its Standard Contact to ENVY was proper under the NWPA, as was its partial assignment of claims to ENVY. Thus, Vermont Yankee may maintain its claims in this action. The Government's motion for summary judgment should be denied.

Dated: June 12, 2006

Respectfully submitted,

s/ Alex D. Tomaszczuk

Alex D. Tomaszczuk
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, Virginia 22102-4859
(703) 770-7940
(703) 770-7901 (fax)
Counsel of Record for Plaintiff
Vermont Yankee Nuclear Power Corporation

Of Counsel:

Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037-1128
(202) 663-8000
(202) 663-8007 (fax)