No. 02-898C
(Judge Wheeler)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

VERMONT YANKEE NUCLEAR POWER CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO CONSOLIDATE OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

MARIAN E. SULLIVAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, NW, 8th Floor
Washington, D.C. 20530
Telephone: (202) 307-0365
Facsimile: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of the General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington D.C. 20585

June 29, 2006

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO CONSOLIDATE OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b) . . . . . . . . . . . . . . . . 1

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I. VERMONT YANKEE AND ENVY CANNOT ELIMINATE THE DUPLICATIVE AND INTERTWINED NATURE OF THEIR CASES PENDING BEFORE THE COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. VERMONT YANKEE AND ENVY HAVE NOT IDENTIFIED ANY BASIS FOR PRECLUDING ACTION UNDER RCFC 14(b) AND 41 U.S.C. § 114(b) 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## TABLE OF AUTHORITIES

### CASES

Bluebonnet Savings Bank, F.S.B. v. United States,
339 F.3d 1341 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . 6

General Casualty Co. of Am. v. United States,
130 Ct. Cl. 520, 127 F. Supp. 805 cert. denied, 349 U.S. 938 (1955) . . . . . . . . 4

Indiana Michigan Power Co. v. United States,
422 F.3d 1369 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . 5, 10

Karuk Tribe of California v. United States,
27 Fed. Cl. 429 (1993) . . . . . . . . . . . . . . . . . . . . 2

Modern Industrial Bank v. United States,
101 Ct. Cl. 808 (1944) . . . . . . . . . . . . . . . . . . . . 4

National City Bank of Evansville v. United States,
143 Ct. Cl. 154, 163 F. Supp. 846 (1958) . . . . . . . . . . . . . . . . . . . . 4

Pacific Gas & Elec. Co. v. United States,
70 Fed. Cl. 758 (2006) . . . . . . . . . . . . . . . . . . . . 5

Penda Corp. v. United States,
44 F.3d 967 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . 14, 15, 16

Philadelphia Suburban Corp. v. United States,
211 Ct. Cl. 354 (1976) . . . . . . . . . . . . . . . . . . . . 14

Rochester Gas & Elec. Co. v. United States,
65 Fed. Cl. 431 (2005) . . . . . . . . . . . . . . . . . . . . 7

Smith v. Tobacco By-Products & Chemical Corp.,
243 F.2d 188 (C.C.P.A. 1957) . . . . . . . . . . . . . . . . . . . . 4

Southern California Edison Co. v. United States,
226 F.3d 1349 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . 13

United States v. Texas,
507 U.S. 529 (1993) . . . . . . . . . . . . . . . . . . . . 16

Uram v. United States,
216 Ct. Cl. 418 (1978) . . . . . . . . . . 14

White v. Delta Construction International, Inc.,
285 F.3d 1040 (Fed. Cir. 2002) . . . . . . . . . . 6

**STATUTES AND REGULATIONS**

10 C.F.R. § 961.11 . . . . . . . . . . 11

41 U.S.C. § 114(b) . . . . . . . . . . 13, 14, 16, 17

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| VERMONT YANKEE NUCLEAR POWER CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02-898C |
| | ) | (Judge Wheeler) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE
TO DEFENDANT'S MOTION TO CONSOLIDATE OR,
IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS
PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)

Defendant, the United States, respectfully submits this reply to the almost identical responses that Vermont Yankee Nuclear Power Corporation ("Vermont Yankee") and Entergy Nuclear Vermont Yankee, LLC ("ENVY") filed to defendant's motion to consolidate two cases, Vermont Yankee Nuclear Power Corporation v. United States, No. 02-898C (Fed. Cl.), and Entergy Nuclear Vermont Yankee, LLC v. United States, No. 03-2663C (Fed. Cl.).[1] As we explained in our motion to consolidate, both of these cases involve the assignor and assignee of the same contract with the Department of Energy ("DOE") and are currently pending before the same judge. Further, both plaintiffs are being represented by the same counsel. Consolidation will promote the efficient administration of justice and prevent the potential for inconsistent rulings between the two cases. To the extent that the Court declines to consolidate the Vermont Yankee and ENVY cases, we respectfully request that the Court issue binding notice pursuant to RCFC 14(b) and the Contract Settlement Act, 41 U.S.C. § 114(b), to ENVY in Vermont Yankee and to Vermont Yankee in ENVY.

---

[1] The Government is filing this reply brief in both the Vermont Yankee and ENVY cases.

## DISCUSSION

### I. VERMONT YANKEE AND ENVY CANNOT ELIMINATE THE DUPLICATIVE AND INTERTWINED NATURE OF THEIR CASES PENDING BEFORE THE COURT

As discussed in our motion to consolidate, the cases filed by Vermont Yankee and ENVY should be consolidated because the cases involve multiple common factual and legal issues that will need to be resolved by the Court. RCFC 42. Absent a showing of delay, confusion, or prejudice by Vermont Yankee and ENVY arising from consolidation, the Court should grant the Government's motion for the reasons of judicial economy outlined in our May 3, 2006 motion to consolidate. See Karuk Tribe of California v. United States, 27 Fed. Cl. 429, 433 (1993).

In opposition to our motion to consolidate, both Vermont Yankee and ENVY argue that their respective cases should not be consolidated because the damages that each plaintiff seeks are purportedly different and cover different timeframes. Specifically, Vermont Yankee asserts that it will seek damages that it "incurred on or before the date it sold the Vermont Yankee Nuclear Power Station to ENVY" and that the costs it will seek to recover include the costs of "re-racking of the spent fuel pool at the [] Power Station and the study of dry storage options as a result of the Government's breach." Vermont Yankee Resp. 4. ENVY asserts that it will seek to recover "the costs that ENVY has incurred and will incur as a result of the Government's breach includ[ing], inter alia, the design, license, and construction of a dry storage facility and the purchase of dry fuel containers." ENVY Resp. 4. However, plaintiffs' contentions of the non-overlapping nature of their claims is belied by the purported assignment of Vermont Yankee's claims to ENVY.

As discussed in our briefing on the motion for summary judgment regarding the invalid assignment of Vermont Yankee's Standard Contract, pursuant to the Purchase and Sale Agreement between Vermont Yankee and ENVY, Vermont Yankee has purported to sell to ENVY its damages claims that pre-date the sale. Appendix to Defendant's Motion for Summary Judgment Regarding the Invalid Assignment of Plaintiff's Standard Contract and Pre-Existing Claims from the Partial Breach of the Contract ("App."), at 87 (filed May 4, 2006).[2] Although Vermont Yankee purports to seek recovery of costs incurred for "extended on-site storage . . . prior to the sale of the Power Station," Vermont Yankee First Amended Compl. ¶ 22, such costs are clearly encompassed in the plain language of the assignment to ENVY. Further, although Vermont Yankee seeks to recover the "regulatory costs associated with efforts to ensure sufficient on-site storage capacity or alternative off-site storage capacity to permit continued operation of its nuclear plants," id., such alleged damages, yet again, are clearly encompassed in the assignment of claims to ENVY. Absent a ruling from the Court that Vermont Yankee's assignment of its pre-existing claims is invalid, it is clear that ENVY is permitted to pursue claims that pre-date its ownership of the Vermont Yankee Nuclear Power Station, contrary to the plaintiff's representations regarding the scope of the damages in their respective responses to the Government's motion to consolidate. This apparent overlap in claims necessitates consolidation to ensure that the Government need only defend against these claims once.

---

[2/] Because the Purchase and Sale Agreement between the parties has been designated as "protected material" by both Vermont Yankee and ENVY, we cannot excerpt the relevant provision of the agreement in this filing without filing this reply under seal. Rather than seeking leave to file additional documents under seal, we respectfully refer the Court to the Government's appendix to its motion for summary judgment.

Even if Vermont Yankee's assignment of its Standard Contract is interpreted not to include Vermont Yankee's claims arising prior to the date of the assignment, thereby making each plaintiffs' claims "based upon different time periods," the determination of these claims is still contingent the determination of legal and factual issues common to both cases. Prior to establishing their entitlement to damages, both plaintiffs will first need to establish the scope of the Government's obligations under the single Standard Contract at issue in both cases and how the Government's failure to meet those obligations caused the damages that both seeks, prior to the determination of any entitlement to the damages that each plaintiff seeks. Because the same contract is at issue in both cases, the scope of the Government's obligation must be the same. "It is well-established that an assignee stands in the shoes of the assignor, and that by assignment the assignee could acquire no greater rights than its assignor." National City Bank of Evansville v. United States, 143 Ct. Cl. 154, 163, 163 F. Supp. 846, 852 (1958). See, e.g., Smith v. Tobacco By-Products & Chemical Corp., 243 F.2d 188, 191 (C.C.P.A. 1957); General Casualty Co. of Am. v. United States, 130 Ct. Cl. 520, 526, 127 F. Supp. 805, 808, cert. denied, 349 U.S. 938 (1955); Modern Industrial Bank v. United States, 101 Ct. Cl. 808, 820 (1944). Accordingly, Vermont Yankee and ENVY cannot have different rights and obligations, or different contract terms and requirements, when any rights and obligations were created through the same contract. Given that only one contract is at issue in both Vermont Yankee's and ENVY's cases, the terms of that single contract must be interpreted and applied identically in the determination of the damages that each plaintiff has incurred.

Both ENVY and Vermont Yankee also contend that Vermont Yankee's claim for damages are "fixed," because these damages are based on past events, while ENVY's claim for

damages will purportedly include costs still to be incurred for the construction of the dry storage facility. Vermont Yankee Resp. 4; ENVY Resp. 4. Indeed, ENVY claims that "the rate at which ENVY's damages will continue to accrue 'is dependent upon various factors including but not limited to when DOE commences performance of its contractual obligations.'" ENVY Resp. 4 (quoting ENVY's Complaint, ¶ 25). However, the United States Court of Appeals for the Federal Circuit has unequivocally rejected the notion that plaintiffs may recover future damages in a partial breach case, like this one, and, indeed, that plaintiffs are limited to damages in these particular suits as of the date that they filed their complaints. Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1376-77 (Fed. Cir. 2005) (holding that, "[b]ecause its claim is premised upon the government's partial breach, its damages were limited to those costs incurred prior to the date of its suit."); see Pacific Gas & Elec. Co. v. United States, 70 Fed. Cl. 758 (2006)("court interprets these directives to mean that plaintiff may seek damages only through the date of an amended complaint."). To the extent either Vermont Yankee or ENVY can demonstrate damages, such damages will be limited to damages that they have already incurred. Consequently, Vermont Yankee's and ENVY's attempt to distinguish their cases based upon fixed versus future damages should be rejected.

Both Vermont Yankee and ENVY also argue that Vermont Yankee's claim for diminution in value "has no bearing on ENVY's damages." Vermont Yankee Resp. 5 & n.4; ENVY Resp. 5 & n.4. This argument ignores the import of Vermont Yankee's claim for diminution in value damages. Vermont Yankee alleges in its first amended complaint that "DOE's breach diminished the value of the Power Station and, but for the breach, Vermont Yankee would have been able to sell the Power Station for a higher price." Vermont Yankee

First Amended Complaint, ¶¶ 22 and 25.[3] Based upon this allegation, it appears Vermont Yankee believes that ENVY, in negotiating the purchase price for Vermont Yankee's facility, incorporated the cost of implementing measures necessary to address DOE's partial breach of contract, which was occurring as of the time of the sale. Therefore, if Vermont Yankee's allegation is true, ENVY has already been compensated for the costs of extended SNF storage that it now seeks in its complaint to this Court through its reduction in the amount it was willing to pay Vermont Yankee for its facility. If that is the case, ENVY's damages should be reduced by the amount is has already received because ENVY cannot recover both the costs it has incurred plus the benefit of the reduction in sales price. See Bluebonnet Savings Bank, F.S.B. v. United States, 339 F.3d 1341, 1345 (Fed. Cir. 2003) (citing White v. Delta Construction International, Inc., 285 F.3d 1040, 1043 (Fed. Cir. 2002) ("the non-breaching party should not be

---

[3/] In footnote 3 of their respective responses, Vermont Yankee and ENVY both assert that Vermont Yankee has never asserted that the reduced purchase price paid by ENVY for the Vermont Yankee plant was "compensation" to ENVY for DOE's partial breach of the Standard Contract. This contention is undercut by Vermont Yankee's allegation in its first amended complaint that the purchase price was reduced as a result of the breach. Complt. ¶ 22. If ENVY reduced the price for other reasons unrelated to the breach, Vermont Yankee's claims for diminution in value are without merit. Further, to the extent that Vermont Yankee recovers damages for this alleged diminution in value and ENVY also recovers in full for all storage costs caused by DOE's delay, the Government would effectively be paying twice for the same damages.

placed in a better position through the award of damages than if there had been no breach.").[4] Alternatively, Vermont Yankee's claims of a diminished sales price are meritless because there was no reduction in price resulting from the delay and ENVY is bearing the full costs of implementing the dry storage option at the facility. In any event, Vermont Yankee's claim for diminution in value arising from DOE's breach has created a "single issue that would be litigated twice and [could] lead to conflicting damages awards." Vermont Yankee Resp. 5 n.4; ENVY Resp. 5 n.4. Neither Vermont Yankee or ENVY explains in its opposition to the Government's motion to consolidate any basis upon which the United States should be obligated to pay both Vermont Yankee's claim and ENVY's claim, both of which are premised upon the same capital expenses. To the contrary, "[j]oining the claims . . . preserves the policies of the Anti-Assignment Acts by avoiding potential double recovery and preserving the government's defenses against [both Vermont Yankee and ENVY]." Rochester Gas & Elec. Co. v. United States, 65 Fed. Cl. 431, 443 (2005).

Both Vermont Yankee and ENVY also complain that consolidation of its case with the other case "would unnecessarily increase [Vermont Yankee's or ENVY's] litigation costs by requiring its participation in a trial on issues that are irrelevant to its damages." Vermont Yankee Resp. 6; ENVY Resp. 6. However, by necessity, ENVY will have to be involved in any

---

[4] Vermont Yankee and ENVY assert that the Government has not provided "any legal support for the proposition that a company that purchased private property on the open market should somehow be liable to the Government for diminution in value of that property prior to the purchase . . . ." Vermont Yankee Resp. 5-6; ENVY Resp. 6. The plaintiffs miss the point of the Government's inquiry. The Government seeks to determine whether ENVY has already been compensated, in whole or in part, for DOE's breach of the Standard Contract at issue in the case, through the reduction in purchase price paid for the facility. If ENVY has been compensated, it should not be compensated again for the costs it now may be incurring, because such a recovery would place ENVY in a better position than it would have occupied absent the breach.

trial relating to Vermont Yankee's diminished value claim. As evidenced by the allegations contained in Vermont Yankee's complaint identified above, Vermont Yankee's diminished value claim is wholly dependent upon whether ENVY reduced the amount of money that it paid for Vermont Yankee's facility and contract because of DOE's partial breach. Only ENVY witnesses can know the reasons that ENVY paid the amount of money that it paid for Vermont Yankee's facility. ENVY's desire to extract itself completely from Vermont Yankee's diminished value claim is simply impossible. Similarly, there will be factual issues to be explored in ENVY's case that will require testimony from former Vermont Yankee witnesses and examination of documents generated by Vermont Yankee. For example, Vermont Yankee seeks to recover the costs of studying options for dry storage, one of which ENVY is presumably implementing. It is not known whether the dry storage option selected was selected by Vermont Yankee prior to the sale of the plant, or by ENVY after the sale, but, regardless, the reasonableness of the option chosen will require testimony from both Vermont Yankee and ENVY witnesses as well as exploration of contemporaneous corporate decision documents. In addition, both plaintiffs will presumably have to call the same Vermont Yankee witnesses to testify at trial to provide testimony regarding the scope of the Government's obligation and the causal link between the failure to meet that obligation and the efforts undertaken to mitigate the Government's delay in performance.

Further, for the reasons specified in our motion, the Government will be severely prejudiced if these two cases are not consolidated. The Government will have to call the same witnesses in both cases to testify regarding the same issues relating to, among others, the rate of spent nuclear fuel acceptance under the contract, the Department of Energy's performance, and

the facilities at the Vermont Yankee Nuclear Power Station. Neither Vermont Yankee nor ENVY addresses the prejudice to the Government if the Court does not consolidate these cases, the inconvenience to these witnesses, or the necessity of duplicative testimony that would result.

Neither plaintiff disputes the Government's contention that there will be substantial overlap in the witnesses and documents in the presentation of both cases and that both plaintiffs are represented by the same counsel of record. Both Vermont Yankee and ENVY concede that the coordination of discovery between the two cases will be necessary. Vermont Yankee Resp. 6 n.5; ENVY Resp. 6 n.5. While we appreciate the recognition by Vermont Yankee and ENVY that these commonalities dictate the coordination of discovery to be conducted in these cases, these commonalities also dictate that the cases be consolidated for trial for reasons of judicial economy.[5]

In an attempt to show the potential delay to Vermont Yankee's case if it is consolidated with ENVY's case, Vermont Yankee and ENVY assert that Vermont Yankee's case is ready for trial, while ENVY's case should not proceed until ENVY has accrued additional damages in the 2007. Vermont Yankee Resp. 5; ENVY Resp. 5 (ENVY would like to "pursue its damages at trial during calendar year 2008 at the earliest," while "it is unlikely that Vermont Yankee would need to wait until 2008 to pursue its damages in this case at trial."). There are several problems with this purported showing of the potential for delay. First, we have reviewed the portions of the February 6, 2006 status conference cited by Vermont Yankee and ENVY and are unable to

---

[5/] As we noted in our opening brief, Vermont Yankee and ENVY at one point in the litigation recognized that the cases may merit consolidation, advising the Court that "there will likely be an overlap in witnesses and documents relied upon by ENVY, [Entergy Nuclear Operations, Inc.], and Vermont Yankee." Notice of Directly-Related Case, filed in Vermont Yankee, Nov. 12, 2003.

find any representation by counsel that Vermont Yankee would like to schedule trial prior to 2008. See Transcript of Status Conference ("Transcript") at 18-19 (Feb. 6, 2006).[6] To the extent that Vermont Yankee's newly expressed desire to proceed with its case while ENVY's case is held in abeyance is merely an attempt to avoid consolidation, the Court should consider this new request carefully. Second, the Government has not received a claim from Vermont Yankee, outlining the exact damages that it seeks, and, when we do receive this claim, we would need sufficient time to audit that claim and conduct complete discovery before scheduling a trial date. It is not clear that trial for Vermont Yankee could be scheduled much before 2008, given the time needed for these activities and the involvement of plaintiffs' counsel in cases scheduled for trial between now and 2008. Transcript, at 16-17. Third, as noted above, pursuant to the Federal Circuit's decision in Indiana Michigan, ENVY may only pursue at trial those damages that have been incurred through the date of its complaint. Indiana Michigan, 422 F.3d at 1376-77. While the Government has not generally opposed motions to amend complaints to extend the Court's consideration of damages past the date of the filing of the original complaint in many cases, it is not clear that the Court would allow this request, given the Court's own statements at the February 6, 2006 status conference. Transcript, at 12:20-22.

---

[6] Contrary to the current contention that Vermont Yankee can be ready for trial soon and that neither plaintiff wants to be burdened by each the prosecution of the other case, at the recent status conference, counsel for the plaintiffs explained that Vermont Yankee was dependent upon ENVY in its prosecution of the case. Transcript at 16:6-13 ("I think Vermont Yankee certainly doesn't have quite that set of issues on its plate, but it, I think, is fair to say that Vermont Yankee has at this point a very small staff and to some extent will have to coordinate any of its ongoing activities with Entergy. So I think it's fair to say that to the extent that Entergy has resource constraints that Vermont Yankee has some similar resource constraints.").

Vermont Yankee and ENVY also claim that the reasons which the Government has proffered in support of consolidation are not unique to this case, but merely repeat the same arguments that it has unsuccessfully presented in its prior efforts to consolidate all of the SNF cases. Vermont Yankee Resp. 7-9; ENVY Resp. 7-9. This contention misses the point. Vermont Yankee and ENVY are correct that, in prior proceedings, the Government unsuccessfully requested that the Court consolidate all of the SNF cases then pending before the Court. Yet, in responding to the current consolidation motion, the plaintiffs ignore that the pending motion deals only with a request to consolidate two cases that deal with the purported assignment of the same precise Standard Contract and the same facility.

Further, ENVY contends that the determination of the rate of SNF acceptance is not relevant to the adjudication of Vermont Yankee's case, but that the determination of the rate of acceptance "could affect ENVY's damages." ENVY Resp. 8. However, as both plaintiffs explain, to prove their respective damages claims, Vermont Yankee and ENVY "needs only to show that enough of [Vermont Yankee's or ENVY's] SNF would have been removed so that [Vermont Yankee or ENVY] would have avoided additional SNF storage costs, had DOE performed its Standard Contract obligations." Vermont Yankee Resp. 9; ENVY Resp. 9. The amounts of SNF that DOE was obligated to remove pursuant to the single Standard Contract at issue are the same for both plaintiffs and are the amounts of SNF contained in the delivery commitment schedules that Vermont Yankee submitted in 1992 and DOE approved. 10 C.F.R. § 961.11, Art. V.B.[7] Finally, assuming that Vermont Yankee's assignment of its pre-existing

[7] Similarly, contrary to Vermont Yankee's and ENVY's contentions, the issue of whether and when DOE was obligated to accept their Greater-Than-Class-C low-level radioactive waste ("GTCC") is squarely at issue in both cases. Regardless of whether Vermont Yankee or ENVY

claims to ENVY as part of the purchase and sale for the plant is valid, ENVY may pursue claims that pre-date the assignment of the contract. To prove these claims, ENVY must establish what obligations were owed to Vermont Yankee during this time period. Simply put, absent the determination of the scope of DOE's obligations to both plaintiffs, arising from the same contract, the Court cannot assess the proper damages owed to Vermont Yankee and ENVY.

Although ENVY claims that it may not be necessary to decide the SNF acceptance rate issue in Vermont Yankee's case, ENVY does not explain the manner in which the Court could decide the amount by which ENVY reduced its purchase price to compensate itself for extended storage costs resulting from DOE's delay unless, as a precursor to that determination, the Court determined what anticipated costs were actually incremental to any delay. To make that determination, the Court will have to identify what DOE's obligations to accept SNF from Vermont Yankee were, including when DOE was obligated to accept specific Vermont Yankee SNF and what incremental costs that would not be anticipated absent DOE's delay would be created because of the delay. Without making that determination, the Court would have no basis upon which to make any kind of determination regarding the anticipated extended storage costs that ENVY would expect to pay upon purchasing the Vermont Yankee facility. Further, without identifying those costs, the Court could not begin to analyze whether, and the amount by which, ENVY reduced its purchase price for the Vermont Yankee facility.

---

is claiming the cost of storing GTCC waste, to the extent this Court concludes that GTCC waste is covered by the Standard Contract, that would affect the overall acceptance queue. DOE's waste acceptance schedules do not include the acceptance of GTCC waste. If this Court concludes that GTCC waste is covered by the Standard Contract, however, DOE's waste acceptance schedules would have to be revised to incorporate GTCC waste, which would affect the overall waste acceptance queue generally, and Vermont Yankee's and ENVY's acceptance rights specifically.

Finally, both plaintiffs argue that "Vermont Yankee's demonstration of damages will certainly vary from ENVY's . . . because the extent to which dry storage is necessary at the Vermont Yankee Nuclear Power Station has changed over the years . . . ." Vermont Yankee Resp. 9; ENVY Resp. 9. The Government acknowledges that the categories of actual costs in Vermont Yankee's damages claim are likely to be different from those in ENVY's damages claim. Apparently, Vermont Yankee will pursue the costs of re-racking its spent fuel pool and studying the options available for dry storage at the plant, while ENVY will seek the costs incurred to date for implementing the dry storage option chosen. Vermont Yankee Resp. 4, ENVY Resp. 4. However, these activities are all undertaken to address the failure of DOE to perform in accordance with its obligations under the single Standard Contract at issue in this case and, prior to proving to the Court the actual costs that have been incurred, each plaintiff must establish the elements of liability and causation – factors that will be the same for both cases.

## II. VERMONT YANKEE AND ENVY HAVE NOT IDENTIFIED ANY BASIS FOR PRECLUDING ACTION UNDER RCFC 14(b) AND 41 U.S.C. § 114(b)

The Government's request for issuance of notice under RCFC 14(b) and 41 U.S.C. § 114(b) is appropriate. In fact, the plaintiffs do not even address the Government's request for issuance of notice under RCFC 14(b), as permitted by 41 U.S.C. § 114(b), except to note that the Court has not yet issued such notice in any pending spent nuclear fuel case.[8] Vermont Yankee

---

[8/] In their opposition briefs, the plaintiffs address the Government's request for issuance of a summons under RCFC 14(a), but do not explain their opposition to the Government's request for notice pursuant to RCFC 14(b). See Vermont Yankee Resp. 9-12; ENVY Resp. 10-12. Because it is unclear whether, under Southern California Edison Co. v. United States, 226 F.3d 1349 (Fed. Cir. 2000), ENVY's filing of its complaint in this Court would permit the United States to invoke RCFC 14(a)'s rule regarding a summons relating to a contingent claim, and because

Resp. 10; ENVY Resp. 10. Under 41 U.S.C. § 114(b), the Court may notify any party having a possible interest in any pending suit or proceeding to appear and assert or defend its interests.[9] Should a notified party fail to appear, "any and all claims or interests in claims of any such person against the United States, in respect to the subject matter of such suit or proceeding, shall forever be barred." 41 U.S.C. § 114(b). Notice is appropriate where third parties "hav[e] possible interests [in] any suit or proceeding of any nature." 41 U.S.C. § 114(b). "The rationale behind the issuance of a notice is the prevention of numerous proceedings and determinations on an identical set of facts." Philadelphia Suburban Corp. v. United States, 211 Ct. Cl. 354, 355 (1976). "Thus it is in furtherance of the conservation of judicial time and effort that the [Court] determines that notice shall issue where interest is apparent." Id. "Should a noticed person decline to appear . . . he cannot be forced so to do, though he may nevertheless be bound, in a later suit in another court, by certain determinations of this court." Uram v. United States, 216 Ct. Cl. 418, 420 (1978).

Vermont Yankee and ENVY further assert that they would not be "bound by any adverse judgment" in the other pending case because they "could not actually appeal such a judgment,"

---

consolidation of Vermont Yankee's and ENVY's cases is the simplest method of eliminating the possibility of duplicative recoveries by Vermont Yankee and ENVY, we will not pursue our request for issuance of a summons under RCFC 14(a) at this time. However, to the extent that the Court denies consolidation of these two cases, we reserve our right to renew this request. Further, to the extent that the cases are not consolidated, the Court should issue notice in the Vermont Yankee case to ENVY and the ENVY case to Vermont Yankee pursuant to RCFC 14(b).

9/ To the extent that the plaintiffs assert that section 114(b) only applies to "erroneously paid" parties, Vermont Yankee Resp. 10, ENVY Resp. 11, section 114(b) refers to the Government's right to request notice to those with "interests" in others' claims, not merely those to whom the United States has made erroneous payments. See 41 U.S.C. § 114(b).

citing Penda Corp. v. United States, 44 F.3d 967 (Fed. Cir. 1994). Vermont Yankee Resp. 11; ENVY Resp. 11. The plaintiffs have misinterpreted Penda. In that case, a nominal third-party defendant – Cadillac Inc. – attempted to appeal a judgment from this Court that found that the United States used Penda's patented invention without a license or lawful right. Penda, 44 F.3d at 968. Cadillac was the Government's indemnitor and had received notice of the action following the Government's request pursuant to RCFC 14(a)(1). Id. Although Cadillac joined the action as a third-party defendant, id. at 969, the Federal Circuit dismissed Cadillac's appeal for lack of standing. Id. at 973. The Government, against whom a judgment was issued, did not appeal the lower court's ruling. Id. at 969. The lower court did not issue a judgment against Cadillac. Id. at 970.[10] The Federal Circuit determined that Cadillac lacked standing to appeal a judgment that had not issued against it, despite the fact that it was a third-party defendant in the case. Id. at 971.

One of Cadillac's arguments as to why it had standing to appeal was based upon the possibility that the Government or Penda would attempt to assert issue preclusion against Cadillac in a subsequent proceeding. Id. at 972. The Federal Circuit rejected that argument. First, the Federal Circuit held that the Government could not assert issue preclusion against Cadillac because Cadillac and the Government were not adversarial parties before this Court. Id. at 972. Second, the Court found that Penda could not assert issue preclusion against Cadillac because Cadillac was only a nominal defendant, and the litigation concerned an obligation other than Cadillac's. Id. Last, neither the Government nor Penda could assert issue preclusion

---

[10]/ This Court lacked jurisdiction to determine Cadillac's contractual obligations to indemnify the Government. Id.

against Cadillac because Cadillac could not obtain review of the judgment because it lacked standing, and issue preclusion cannot be asserted against a party which lacks a right to appeal the judgment. Id. at 973.

The Penda case is entirely distinguishable from the cases before this Court. First, Penda does not stand for the proposition that the plaintiffs appear to suggest – namely, that notice pursuant to RCFC 14 cannot bind third parties. The Federal Circuit did not determine that RCFC 14 notice recipients can never be bound. In Penda, the issue was a third party defendant's standing to maintain an appeal, absent the United States. Penda makes no mention of the ability of a court to issue binding notice to non-parties pursuant to 41 U.S.C. § 114(b) and RCFC 14. Penda focuses on completely different issues.

Second, and importantly, should a noticed entity not appear, the Government would have no need to rely upon the common law doctrine of issue preclusion to bar future litigation by that entity. Rather, the Government would rely upon the statutory rights granted it under 41 U.S.C. § 114(b). To the extent that section 114(b) conflicts with the common law doctrine of issue preclusion, the statute's language should supercede the common law. "Statutes which invade the common law . . . are to be read with a presumption favoring retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident." United States v. Texas, 507 U.S. 529, 534 (1993). Section 114(b) evidences a clear intent to bind non-parties irrespective of their ability to appeal a judgment, or any other prerequisite for common law issue preclusion to apply. The Government wishes to enforce its statutory, not common law, right to prevent future litigation by a non-plaintiff utility which receives notice of this litigation but chooses not to appear. Accordingly, to the extent that the Court declines to consolidate the

Vermont Yankee and ENVY cases, it should provide notice in Vermont Yankee to ENVY and provide notice in ENVY to Vermont Yankee under RCFC 14(b) and 41 U.S.C. § 114(b).

## CONCLUSION

For the foregoing reasons and the reasons set forth in our motion to consolidate, we respectfully request that the Court grant the Government's motion to consolidate Vermont Yankee and ENVY. If the Court declines to consolidate these cases, we respectfully request that the Court in Vermont Yankee issue notice pursuant to RCFC 14(b) and the Contract Settlement Act to ENVY, and that the Court in ENVY issue notice pursuant to RCFC 14(b) and the Contract Settlement Act to Vermont Yankee.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr
HAROLD D. LESTER, JR.
Assistant Director

s/Marian E. Sullivan
MARIAN E. SULLIVAN
Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-0365
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

June 29, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on the 29th of June, 2006, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO CONSOLIDATE OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Marian E. Sullivan