**FILED UNDER SEAL**
**CONTAINS PROTECTED MATERIAL TO BE**
**DISCLOSED ONLY IN ACCORDANCE WITH PROTECTIVE ORDER**
**ENTERED BY U.S. COURT OF FEDERAL CLAIMS**

No. 02-898C
(Judge Wheeler)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

VERMONT YANKEE NUCLEAR POWER CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING THE INVALID ASSIGNMENT OF PLAINTIFF'S STANDARD CONTRACT AND PRE-EXISTING CLAIMS FROM THE PARTIAL BREACH OF THAT CONTRACT

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

MARIAN E. SULLIVAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, NW, 8th Floor
Washington, D.C. 20530
Telephone: (202) 307-0365
Facsimile: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of the General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington D.C. 20585

June 29, 2006

Attorneys for Defendant

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING THE INVALID ASSIGNMENT OF PLAINTIFF'S STANDARD CONTRACT AND PRE-EXISTING CLAIMS FROM THE PARTIAL BREACH OF THAT CONTRACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. VERMONT YANKEE'S RETENTION OF THE OBLIGATION TO PAY THE ONE-TIME FEE INVALIDATES THE CONTRACT ASSIGNMENT . . . . . . . 2

II. VERMONT YANKEE'S ASSIGNMENT OF CLAIMS THAT PRE-EXISTED ITS CONTRACT ASSIGNMENT IS ALSO INVALID . . . . . . . . . . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## TABLE OF AUTHORITIES

### CASES

**Page(s)**

American Financial Associates, Ltd. v. United States,
5 Cl. Ct. 761 (1984) . . . . . 14

American National Bank & Trust Co. v. United States,
22 Cl. Ct. 7 (1990) . . . . . 13

Department of the Army v. Blue Fox, Inc.,
525 U.S. 255 (1999) . . . . . 5

Dulaney v. Scudder,
94 F. 6 (5th Cir. 1899) . . . . . 5

Fortec Constructors v. United States,
760 F.2d 1288 (Fed. Cir. 1985) . . . . . 4

George Hyman Construction Co. v. United States,
30 Fed. Cl. 170 aff'd, 39 F.3d 1197 (Fed. Cir. 1993) . . . . . 12

Gulf States Creosoting Co. v. Loving,
120 F.2d 195 (4th Cir. 1941) . . . . . 9

Insurance Co. of the West v. United States,
243 F.3d 1367 (Fed. Cir. 2001) . . . . . 11

KMS Fusion Inc. v. United States,
36 Fed. Cl. 68 (1996) . . . . . 4

Miles v. Apex Marine Corporation,
498 U.S. 19 (1990) . . . . . 9

Rochester Gas & Electric Corp. v. United States,
65 Fed. Cl. 431 (2005) . . . . . 3, 8, 9

Sutton v. United States,
819 F.2d 1289 (5th Cir. 1987) . . . . . 9

United California Discount Corp. v. United States,
19 Cl. Ct. 504 (1990) . . . . . . . . . . 14

**STATUTES AND REGULATIONS**

10 C.F.R. § 961.11 . . . . . . . . . . passim

Pub. L. No. 97-258 (Sept. 13, 1982) . . . . . . . . . . 9

Pub. L. No. 97-425 (Jan. 7, 1983) . . . . . . . . . . 9

31 U.S.C. § 3727 . . . . . . . . . . 7

41 U.S.C. § 15 . . . . . . . . . . 5

42 U.S.C. § 10222(b)(3) . . . . . . . . . . passim

**MISCELLANEOUS**

R. Lord, 29 Williston on Contracts § 74:6 (4th ed. 2003) . . . . . . . . . . 2, 9 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| VERMONT YANKEE NUCLEAR POWER CORPORATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 02-898C (Judge Wheeler) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING THE INVALID ASSIGNMENT OF PLAINTIFF'S STANDARD CONTRACT AND PRE-EXISTING CLAIMS FROM THE PARTIAL BREACH OF THAT CONTRACT

Defendant, the United States, respectfully files this reply to plaintiff's response to defendant's motion for summary judgment in the Government's favor regarding the invalidity of plaintiff's assignment of the Standard Contract and its pre-existing claims for partial breach arising from that contract.

SUMMARY OF THE ARGUMENT

Plaintiff, Vermont Yankee Nuclear Power Corporation ("Vermont Yankee"), in its response, has ignored the fundamental problem with its assignment to Entergy Nuclear Vermont Yankee ("ENVY") -- namely, that it has assigned title to all of its spent nuclear fuel ("SNF") to ENVY and, therefore, should have assigned all of its rights and duties to the Standard Contract. Because it has retained the obligation to pay the one-time fee, one of the duties under the Standard Contract, Vermont Yankee's assignment to ENVY is invalid.

In addition, Vermont Yankee has not properly analyzed the problem with its assignment of its claims to ENVY, which includes an assignment of claims that existed at the time of the purported assignment. Because the assignment of claims is not addressed by the assignment

provisions of either the Nuclear Waste Policy Act ("NWPA") or the Standard Contract, the Assignment of Claims Act controls and prohibits the assignment of pre-existing claims by Vermont Yankee to ENVY. As Professor Williston has recognized, "[t]he assignment of rights under a continuing contract does not imply an assignment of rights of action for previous breaches of contract." R. Lord, 29 Williston on Contracts § 74:6 (4th ed. 2003). Since the NWPA only permits the assignment of "[t]he rights and duties of a party to a contract," 42 U.S.C. § 10222(b)(3), Vermont Yankee's attempted assignment of its claims arising from the partial breach of the Standard Contract should also be deemed invalid.

## ARGUMENT

### I. VERMONT YANKEE'S RETENTION OF THE OBLIGATION TO PAY THE ONE-TIME FEE INVALIDATES THE CONTRACT ASSIGNMENT

As we demonstrated in our opening brief, the validity of the contract assignment by Vermont Yankee is controlled by the transfer of title to its SNF. The assignment provision of the Standard Contract between Vermont Yankee and the United States Department of Energy ("DOE") states that "[t]he rights and duties of the Purchaser may be assignable with transfer of title to the SNF and/or HLW involved . . . ." App. 26; 10 C.F.R. § 961.11, Article XIV ("Assignment") (emphasis added).[1] This provision flows directly from the NWPA, which provides that "[t]he rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel and/or high-level radioactive waste involved." 42 U.S.C. § 10222(b)(3) (emphasis added). Because Vermont Yankee has transferred title to all of its SNF to ENVY, it should have assigned all of its rights and duties to

[1] "App. ___" refers to the appendix to the Government's opening brief.

ENVY. Vermont Yankee did not effect this complete assignment, instead choosing to retain the obligation to pay the one-time fee for the SNF that it discharged prior to April 7, 1983. [2] Because Vermont Yankee has not transferred all of its duties to ENVY with its SNF, its contract assignment is invalid.

In its response, Vermont Yankee has ignored the Government's analysis of this problem with its assignment and, instead, simply relies upon the decision in Rochester Gas & Electric Corp. v. United States, 65 Fed. Cl. 431, 438 (2005), in which this Court determined that the NWPA allowed partial assignments of the Standard Contract because the assignment provision discussed the allowability of the assignment of "rights and duties" arising under the Standard Contract, rather than simply allowing the assignment of the Standard Contract in its entirety. Pl. Br. 4.[3] The Court recognized, however, that the language "with transfer of title to the SNF or HLW involved" was a "condition" upon such assignments that would limit the number of assignments, and that "assignments of pre-existing claims under a Standard Contract must take place only with the transfer of title to SNF or HLW." Id. at 438 & 441 n.10. As explained in the Government's opening brief, the Court in Rochester Gas was not presented with any evidence

[2] We note that, although both ENVY and Vermont Yankee notified DOE of the contract assignment, see App. 158 & 159, as required by Article XIV of the Standard Contract, neither mentioned in those notices that ENVY had not assumed responsibility for the one-time fee. See id. We did not learn of that fact until we obtained a copy of the Purchase and Sale Agreement in this litigation.

[3] The Government is aware of situations in which utilities have transferred title to less than all of their SNF when individual fuel assemblies have been sent to off-site storage facilities or for testing or analysis (e.g., GE Morris facility, Morris, Illinois). This brief does not address the situation in which a contract holder transferred title to some, but not all, of its SNF to a third party.

regarding the transfer of title of the SNF involved in that case and, therefore, did not reach the issue presented by the Government's motion in this case.

If the Court does not interpret the assignment provision of the Standard Contract or the NWPA to require the assignment of all rights and duties under the Standard Contract upon transfer of title to all of the fuel, the provision does not make sense, and the modifier "involved" has no import. Similarly, the provision allows for assignment of "rights and duties," not the assignment of rights and some duties (but not others) that Vermont Yankee has attempted here. As we noted in our opening brief, the Court, in interpreting the assignment provision, is obligated to give effect to all of the words of the contract. KMS Fusion Inc. v. United States, 36 Fed. Cl. 68, 76 (1996) (citing Fortec Constructors v. United States, 760 F.2d 1288, 1292 (Fed. Cir. 1985) ("[a]n interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless.")). The Government's interpretation comports with the other language and structure of both the Standard Contract and the NWPA, which tie the parties' obligations to the SNF and/or HLW held by the Purchaser. For example, the scope of the Standard Contract provides that services under the Standard Contract "shall continue until such time as all SNF and/or HLW from the civilian nuclear power reactors specified in Appendix A, annexed hereto and made part hereof, has been disposed of." App. 6; 10 C.F.R. § 961.11, Article II ("Scope"). Similarly, Article V.A. of the contract provides: "The Purchaser shall deliver to DOE and DOE shall, as provided in this contract, accept the SNF and/or HLW described in accordance with Article VI.A. of this contract, for disposal thereof." App. 10. The NWPA authorizes DOE "to enter into contracts with any person who generates or holds title to high-level radioactive waste ['HLW'], or spent nuclear fuel, of domestic origin for

the acceptance of title, subsequent transportation, and disposal of such waste or spent fuel" in exchange for the payment of fees. 42 U.S.C. § 10222(a)(1). Clearly, the rights and duties of the parties pursuant to the Standard Contract are tied to the ownership of the SNF. The assignment provision is properly interpreted as allowing the transfer of these rights and obligations when title to the SNF and/or HLW is transferred.

To the Government's motion regarding its incomplete assignment, Vermont Yankee simply responds that the assignment provision of the Standard Contract and the NWPA have been interpreted to allow for partial assignments and that its assignment to ENVY is proper on that basis. Pl. Br. 4-5. Although the assignment provision of the NWPA and the Standard Contract may be a limitation on the prohibition on contract assignments provided by the Assignment of Contracts Act ("Contracts Act"), 41 U.S.C. § 15, that provision should not be interpreted to allow partial assignments of the Standard Contract, particularly in the manner employed by Vermont Yankee. Under the Contracts Act, assignments of contracts are specifically prohibited, absent permission of the Government. Id.; Dulaney v. Scudder, 94 F. 6 (5th Cir. 1899). Although the NWPA creates a limited exception to that rule, providing that the "rights and duties of a party to a contract . . . may be assignable . . .," 42 U.S.C. § 10222(b)(3) (emphasis added), the statutory language does not permit only "part of the rights and duties" to be assigned to a third party. Waivers of sovereign immunity must "be strictly construed" in its scope in favor of the sovereign and "unequivocally expressed" in statutory text. Department of the Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999). Because Vermont Yankee's incomplete assignment bifurcates DOE's obligation to begin performance and the payment of the one-time

fee, the assignment provision of the NWPA and the Standard Contract should be strictly construed as a limited waiver of the general prohibition on the assignment of contracts.

Vermont Yankee, in its response, describes the "fundamental purpose" of the Standard Contract as follows: "[i]n exchange for the payment of fees by Vermont Yankee and ENVY under Article II of the Standard Contract, DOE is obligated to accept, transport, and dispose of the SNF at the Vermont Yankee plant." Pl. Br. 5. As Vermont Yankee acknowledges, the Government's performance obligations under the Standard Contract are tied to the SNF stored at the Vermont Yankee plant, which is now owned by ENVY. However, Vermont Yankee controls the performance of those obligations with its retention of the obligation to pay the one-time fee because Vermont Yankee opted to pay this fee "in the form of a single payment anytime prior to the first delivery, as reflected in the DOE approved delivery commitment schedule . . . ." App. 20; Art. VIII.B.2(b).[4] The incomplete assignment by Vermont Yankee of all of its duties under the Standard Contract has divorced the Government's performance obligations from the fee payment obligations still owed under the contract.

Vermont Yankee dismisses this concern about the bifurcation of the performance obligations by arguing that its retention of the obligation to pay the one-time fee is "not relevant," Pl. Br. 8, and that the payment of the one-time fee is not a condition precedent to performance by DOE under the contract. Pl. Br. 9. However, Vermont Yankee also states its intention "to pay the one-time fee *when it becomes due*." Id. (emphasis in original). Putting

[4] By letter dated June 5, 1985, Vermont Yankee notified DOE of its choice of "option 2" for the payment of the one-time fee for SNF discharged prior to April 7, 1983. Appendix to Defendant's Motion For Summary Judgment Upon Counts I and II of Plaintiff's First Amended Complaint And, In The Alternative, For Partial Summary Judgment Upon Defendant's Right To Recover Unpaid Fees, at 63 (filed May 4, 2006).

aside the analysis of whether this obligation is a condition precedent that eliminates the Government's liability to Vermont Yankee in its pending action for breach of contract, which will be dealt with in the Government's response to Vermont Yankee's liability motion, the contract clearly states that the one-time fee is due "prior to the first delivery." App. 20. Pursuant to Vermont Yankee's assignment to ENVY, the Government owes all of the performance obligations to ENVY as the holder of title to the SNF at the Vermont Yankee Nuclear Power Station, which is the subject of the Standard Contract at issue in this case. However, Vermont Yankee still owes its one-time fee for the portion of this fuel that was discharged prior to April 7, 1983, which is now owned by ENVY. Because the Government has no performance obligation to Vermont Yankee, the Government has no way to ensure that Vermont Yankee will pay its one-time fee, if the assignment is allowed to stand. Contrary to Vermont Yankee's assertion that this partial assignment does not prejudice the Government, Pl. Br. 3, Vermont Yankee's incomplete assignment of its contract duties eliminates the mechanism contained in the Standard Contract to ensure payment of this fee and creates a practical concern that cannot be overcome by Vermont Yankee's assurances of its "intentions" to fulfill its obligations under the contract.

Vermont Yankee, in its response, admits that it has transferred title to all of its SNF to ENVY, Pl. Br. 2, and that it has retained the obligation to pay the one-time fee. Pl. Br. 8. Based upon these undisputed facts, the Court should invalidate Vermont Yankee's assignment to ENVY. Because this contract assignment is invalid, ENVY has no privity with the Government, and its complaint should be dismissed.

## II. VERMONT YANKEE'S ASSIGNMENT OF CLAIMS THAT PRE-EXISTED ITS CONTRACT ASSIGNMENT IS ALSO INVALID

Vermont Yankee also has improperly assigned to ENVY claims for the partial breach of contract that pre-existed the sale of its plant and assignment of its Standard Contract to ENVY. While the Standard Contract provides for the assignment of the "rights and duties" arising under the Standard Contract, it does not provide for the assignment of claims. Therefore, the assignment of any such claims is controlled by the Assignment of Claims Act ("Claims Act"), 31 U.S.C. § 3727, which prohibits the assignment of claims except in circumstances outlined in the Claims Act. Because none of those circumstances apply in this case, Vermont Yankee is not allowed to assign it claims to ENVY and must pursue any claims on its own.

In response to the Government's motion, Vermont Yankee, again relying upon the decision in Rochester Gas, asserts that partial assignments of claims are valid and, therefore, the scope of that assignment is valid. Pl. Br. 7. As shown in our opening brief, the Standard Contract does not permit the assignment of pre-existing "claims." The contract states that "[t]he rights and duties of the Purchaser may be assignable with transfer of title to the SNF and/or HLW involved . . . ." App. 26; 10 C.F.R. § 961.11, Article XIV ("Assignment"). The meaning of the Standard Contract language is found within the NWPA, which authorizes DOE "to enter into contracts with any person who generates or holds title to high-level radioactive waste ['HLW'], or spent nuclear fuel, of domestic origin for the acceptance of title, subsequent transportation, and disposal of such waste or spent fuel" in exchange for the payment of fees. 42 U.S.C. § 10222(a)(1). As previously discussed, the NWPA provides that "[t]he rights and duties of a party to a **contract** entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level waste involved." 42 U.S.C. § 10222(b)(3) (emphasis added).

This statutory language makes it clear that the language in the Standard Contract **solely** refers to assignment of the contract, meaning the assignment of "rights and duties" that begin upon assignment. The Standard Contract language permitting assignment, in Article XIV, does not refer to the assignment of claims – that is, pre-existing claims that arose from the contract prior to the contract assignment.

In Rochester Gas, the Court found that the assignment provision of the NWPA also allowed the assignment of pre-existing claims, reasoning that "Section 302(b)(3) refers generally to the rights and duties of a party . . . generally one of the 'rights' that a party has in a contract with the [G]overnment is to bring a suit for breach of contract." Rochester Gas, 65 Fed. Cl. at 440 (citing Gulf States Creosoting Co. v. Loving, 120 F.2d 195, 199 (4th Cir. 1941) and R. Lord, 29 Williston on Contracts § 74:10 (4th ed. 2003)). Based upon its analysis, the Court reasoned that "the background common law (putting aside the Assignment of Claims Act) for what constitutes a 'right' that could be the subject of an assignment includes the right of a contract-holder expressly to assign its pre-existing claims." Id. at 441 (emphasis in original). However, this general common law proposition regarding the scope of rights that may be assigned is not sufficient to overcome the specific prohibition on assignments of claims against the Government contained in the Claims Act.

Significantly, the NWPA and an amendment to the Claims Act were enacted in the same legislative session, with the Claims Act amendment enacted three months prior to the NWPA. Compare Pub. L. No. 97-258 (Sept. 13, 1982) and Pub. L. No. 97-425 (Jan. 7, 1983). Given the basic statutory interpretation principle that Congress is presumed to know the existing statutory landscape when it enacts new legislation, see Miles v. Apex Marine Corporation, 498 U.S. 19,

32 (1990); Sutton v. United States, 819 F.2d 1289, 1295 (5th Cir. 1987), credence should be given to the fact that the assignment provision of the NWPA mentions only "contracts" and not claims, although Congress had just enacted an amendment to the Claims Act. Moreover, the case cited by the Court in Rochester Gas, Gulf States Creosoting Co. v. Loving, 120 F.2d 195 (4th Cir. 1991), involved the assignment of a breach of contract claim after the work had been performed on a contract between private parties and does not involve the assignment of claims against the Government, which are specifically barred by the Claims Act. Finally, both the Court in Rochester Gas and Vermont Yankee rely upon the treatise provision which states, in a non-governmental context, "a right to damages for breach of contract is assignable." R. Lord, 29 Williston on Contracts § 74:10 (4th ed. 2003). However, the same treatise also contains the following guidance regarding the assignment of pre-existing claims on continuing contracts: "The assignment of rights under a continuing contract does not imply an assignment of rights of action for previous breaches of the contract, though it transfers a right to all payments becoming due in the future, even for work done prior to the assignment." R. Lord, 29 Williston on Contracts § 74:6 (4th ed. 2003). Here, the NWPA only permits the assignment of the "rights and duties of a party to a contract," 42 U.S.C. § 10222(b)(3), not the "rights of action for previous breaches" under the contract. Without more than the general reference to common law, the assignment provision of the NWPA should not be interpreted to eliminate the more specific prohibition on such assignments set forth in the Claims Act.

Vermont Yankee also notes that its assignment of its pre-existing claims should be allowed because Vermont Yankee and ENVY "expressly agreed to such an assignment in the Purchase and Sale Agreement." Pl. Br. 6. Vermont Yankee's reliance upon its own agreement

with ENVY as authorization for such an assignment is misplaced. The relevant authorization must be located in the Standard Contract between DOE and Vermont Yankee, not an agreement between Vermont Yankee and ENVY. As explained above and in our opening brief, the provision on assignment in the Standard Contract and the NWPA cannot be interpreted to allow the assignment of pre-existing claims.

Vermont Yankee also dismisses the Government's showing regarding the need for a waiver of sovereign immunity, asserting that "the Tucker Act does provide a waiver of sovereign immunity to an assignee as well as an assignor." Pl. Br. 7 (citing Insurance Co. of the West v. United States, 243 F.3d 1367, 1373 (Fed. Cir. 2001)). Vermont Yankee misunderstands the sovereign immunity concerns created by its improper assignment. The Government has waived sovereign immunity, through the NWPA and Article XIV of the Standard Contract, against assignees for claims that arise **after** assignment of the Standard Contract, but not for claims that pre-existed the contract assignment. The Government does not contest ENVY's ability to bring suit for breach of contract as a proper assignee of Vermont Yankee's Standard Contract for claims that arise after the date of the assignment. However, the Government has not waived sovereign immunity to be sued by ENVY for the claims that can only be properly brought by Vermont Yankee, with whom the Government had privity until the date of the assignment.

Vermont Yankee's response to the Government's motion regarding the assignment has not served to clarify the scope of the claims that Vermont Yankee intends to pursue before the Court, given its assignment of its claims to ENVY. Vermont Yankee acknowledges that "certain of Vermont Yankee's claims against the Government related to the Department of Energy's default have been assigned to ENVY" and quotes the portion of the purchase and sale agreement

that provides for the sale of "any claims of the Seller related to the Department of Energy's defaults under the DOE Standard Contract accrued as of the Closing, [whether relating to periods prior to or following the closing,] excluding such claims as may relate to the one-time fee with respect to fuel used to generate electricity prior to April 7, 1983." Pl. Br. 3.[5] However, Vermont Yankee also asserts that it "has never maintained in the instant action that its claim for damages is based on DOE's 'breach of its obligations under the Contract to the extent of the one-time fee' issue. Vermont Yankee's claim is based on DOE's failure to pick up SNF from Vermont Yankee Nuclear Power Station in exchange for Vermont Yankee's continuing payment of fees due and owing as of the date of its plant sale to ENVY." Pl. Br. 9 n.5. However, the only fee "due and owing as of the date of its plant sale to ENVY" was the one-time fee owed by Vermont Yankee. Pursuant to the purchase and sale agreement, ENVY assumed the obligation to make the quarterly fee payments upon the date of the sale. App. 130-31 (Sec. 6.11 – "The Buyer shall pay and discharge all fees and expenses associated with electricity generated at [Vermont Yankee Nuclear Power Station] from and after closing, and the Seller shall have no liability or responsibility therefor."). Therefore, it appears that Vermont Yankee's claims for partial breach of contract are limited to those related to the payment of the one-time fee, and the Government simply does not know what those claims are or how they would differ from the claims that ENVY will raise relating to DOE's delay in beginning acceptance of the SNF that ENVY now owns at the Vermont Yankee Nuclear Power Station.

[5] Vermont Yankee's quotation of this provision from the Purchase and Sale agreement did not include the phrase in brackets. App. 87.

As discussed in our opening brief, there are also strong policy reasons that the Court should interpret the assignment language of the Standard Contract as only permitting transfer of the contract and not pre-existing claims. They are the same policy reasons underlying the enactment of the Claims Act -- namely, that the Government should be only required to deal with the original contractor that allegedly incurred the claimed damages, which presumably is the entity possessing the documentary and testimonial support for the claims, and protect the Government's ability to defend itself against contract claims. See George Hyman Construction Co. v. United States, 30 Fed. Cl. 170, 173, aff'd, 39 F.3d 1197 (Fed. Cir. 1993); American National Bank & Trust Co. v. United States, 22 Cl. Ct. 7, 14 (1990).

The patent inconsistency between Vermont Yankee's purported assignment of its pre-existing claims and the scope of damages alleged in its amended complaint gives rise to these concerns. Vermont Yankee, in its first amended complaint, describes the nature of the damages that it has sustained as follows:

> Vermont Yankee was forced to incur substantial additional costs to provide for extended on-site storage of the Power Station's SNF prior to the sale of the Power Station. Moreover, Vermont Yankee incurred other substantial damages, including but not limited to regulatory costs associated with efforts to ensure sufficient on-site storage capacity or alternative off-site storage capacity to permit continued operation of its nuclear plants.

Compl. ¶ 22. That is, even though it has purported to assign its damages claims for past incurred costs to ENVY, it is also claiming them in this litigation. At the same time, it appears that ENVY is also claiming such damages. ENVY Compl ¶ 21. Pursuant to the Claims Act and the public policy reasons behind its enactment, the Government only should be required to defend against these claims once in a single proceeding. The Court should find that Vermont Yankee's

assignment of its pre-existing claims is invalid and require Vermont Yankee to pursue any proper claims for breach of contract that arose prior to the sale of its plant.

Moreover, Vermont Yankee has failed to provide proper notice to DOE of its assignment to ENVY of its pre-existing claims or its retention of the obligation to pay the one-time fee, further complicating the enforceability of the assignment. The assignment provision of the contract requires that DOE be notified within 90 days of any transfer of title to SNF. App. 26. Vermont Yankee, by letter dated August 21, 2002, notified DOE as follows:

> Vermont Yankee Nuclear Power Corporation has transferred its title to Spent Nuclear Fuel and High-Level Radioactive Waste (as defined in the Contract) and, except as noted below, its rights and duties under the Contract to Entergy Nuclear Vermont Yankee, LLC, the new owner of the Station, effective July 31, 2002.
>
> Vermont Yankee Nuclear Power Corporation, pursuant to the Purchase and Sale Agreement for the Station, has retained the rights to any and all damages and other remedies that might accrue under from the Department of Energy's breach of its obligations under the Contract to the extent of the one-time fee for fuel used to generate electricity prior to April 7, 1983.

App. 159. While this notice may indicate, by implication, that Vermont Yankee has retained less than all of its claims for breach of contract arising prior to the sale of its plant, it does not provide adequate notice to DOE regarding the scope of the claims that Vermont Yankee will prosecute versus those assigned to ENVY.[6] Nor does it provide adequate notice regarding the "rights and duties" that Vermont Yankee has retained. To ensure that the purposes of the Contracts Act and the Claims Act are accomplished (i.e. to prevent the multiple payment of claims), the "notice provisions [of these acts] must be strictly construed." American Financial

[6] Similarly, ENVY notified DOE of the contract assignment without any reference to the assignment of prior damages claims. App. 158.

Associates, Ltd. v. United States, 5 Cl. Ct. 761, 768 (1984). Failure to comply with the notice provisions of the Contracts Act and the Claims Act can invalidate the assignment. United California Discount Corp. v. United States, 19 Cl. Ct. 504, 507-08 (1990). Vermont Yankee's failure to provide adequate notice regarding the scope of its assignment to ENVY, and to require the Government to identify that scope only through litigation, should serve to invalidate that assignment.

Finally, to the extent that the Court agrees with Vermont Yankee that it is entitled to assign damages claims pre-dating its contract assignment, Vermont Yankee has no basis for maintaining any action against the United States. Specifically, Vermont Yankee's assignment, on its face, assigns all of its claims regarding the costs of storage to ENVY. Further, Vermont Yankee has failed to answer the Government's showing that, given its assignment of claims, it cannot maintain a suit for diminution in value. The assignment of claims that Vermont Yankee provided to ENVY included the following:

> Subject to section 6.11(b),[7] any claims of the Seller related to the Department of Energy's defaults under the DOE Standard Contract accrued as of the Closing, whether relating to periods prior to or following the Closing, excluding such claims as may relate to the one-time fee with respect to fuel used to generate electricity prior to April 7, 1983.

App. 87. Vermont Yankee's first amended complaint alleges that "DOE's breach diminished the value of the Power Station and, but for the breach, Vermont Yankee would have been able to sell

[7] Section 6.11(b) provides that Vermont Yankee will pay the one-time fee when it becomes due "subject to any rights of set-off to which [Vermont Yankee] may be entitled." App. 131. Because Vermont Yankee has transferred title to all of its SNF, including that fuel upon which the one-time fee is owed, it is unclear what claims Vermont Yankee intended to retain through this provision.

the Power Station for a higher price." Vermont Yankee First Amended Compl. ¶ 22. Yet, nothing in Vermont Yankee's assignment to ENVY purports to allow Vermont Yankee to retain any diminished value claim. To the contrary, Vermont Yankee purported to assign "any claims of the Seller related to the Department of Energy's defaults under the DOE Standard Contract accrued as of the Closing, whether relating to periods prior to or following the Closing . . . ." App. 87 (emphasis added). The only claims that were excluded from the assignment were "such claims as may relate to the one-time fee with respect to fuel used to generate electricity prior to April 7, 1983." Id. Yet, Vermont Yankee has never paid the one-time fee. Although the alleged claims that Vermont Yankee purported to retain are rather vaguely described, Vermont Yankee's agreement to retain the obligation to pay the one-time fee under the Standard Contract, apparently at some date in the future, cannot have anything to do with Vermont Yankee's "diminished value" claim, given that it did not, in fact, purport to pass the one-time fee payment obligation to ENVY. In fact, Vermont Yankee, in its first amended complaint, has not made any specific allegations that it has incurred particular damages associated with the one-time fee. Certainly, it has no basis for maintaining a diminished value claim against the United States after assigning "any claims of the Seller [Vermont Yankee] related to [DOE's] defaults under the DOE Standard Contract accrued as of the Closing" except for claims relating to the one-time fee. To the extent that Vermont Yankee asserts that its diminished value claim arose only after the "Closing," DOE was no longer in privity of contract with Vermont Yankee, which had already

assigned its contract to ENVY, precluding its standing to maintain a contract claim against the United States.[8]

## CONCLUSION

For the foregoing reasons, the Government requests that the Court find that Vermont Yankee's assignment of its Standard Contract and its claims that existed prior to the date of the sale of its plant to be invalid. Pursuant to this determination, the Court should dismiss the complaint filed by ENVY. In the alternative, if the Court determines that the assignment is valid, the Government requests that the Court find that Vermont Yankee has assigned all of its contract obligations and all of its claims to ENVY and dismiss this case.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

---

[8] Although Vermont Yankee purports to seek recovery of costs incurred for "extended on-site storage . . . prior to the sale of the Power Station," Vermont Yankee First Amended Compl. ¶ 22, such costs are clearly encompassed in the plain language of the assignment to ENVY. Further, although Vermont Yankee seeks to recover the "regulatory costs associated with efforts to ensure sufficient on-site storage capacity or alternative off-site storage capacity to permit continued operation of its nuclear plants," id., such alleged damages, yet again, are clearly encompassed in the assignment of claims to ENVY.

s/ Marian E. Sullivan
MARIAN E. SULLIVAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0365
Fax: (202) 307-2503

June 29, 2006

Attorneys for Defendant

Certificate of Filing

I hereby certify that on the 29th day of June 2006, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING THE INVALID ASSIGNMENT OF PLAINTIFF'S STANDARD CONTRACT AND PRE-EXISTING CLAIMS FROM THE PARTIAL BREACH OF THAT CONTRACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Marian E. Sullivan