IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| VERMONT YANKEE NUCLEAR POWER CORPORATION, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 02-898C |
| | ) | (Judge Wheeler) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO
PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT
IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT ON LIABILITY

For its responses to the Proposed Findings of Uncontroverted Fact submitted by plaintiff, Vermont Yankee Nuclear Power Corporation ("Vermont Yankee"), defendant answers as follows:

1. On or about June 15, 1983, Vermont Yankee executed the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste, 10 C.F.R § 961.11 ("Standard Contract"), with the Department of Energy ("DOE"). Complaint ¶¶ 2, 10.

RESPONSE: Admits that Vermont Yankee executed the Standard Contract on or about June 15, 1983. See Appendix To Defendant's Motion For Summary Judgment Upon Counts I and II Of Plaintiff's First Amended Complaint And, In The Alternative, For Partial Summary Judgment Upon Defendant's Right To Recover Unpaid Fees, at 34 (filed May 4, 2006).

2. In exchange for the payment of fees into the Nuclear Waste Fund, DOE promised to begin removal of spent nuclear fuel ("SNF") from the Vermont Yankee Nuclear Power Station no later than January 31, 1998. Standard Contract, 10 C.F.R. § 961.11, Art. II; Maine Yankee Atomic Power Co. v. United States, 225 F. 3d 1336, 1338 (Fed. Cir. 2000). Generally, DOE was "under a statutory 'obligation . . .reciprocal to the utilities' obligation to pay, to start disposing of

the SNF no later than January 31, 1998.'" Northern States Power Co. v. United States, 224 F.3d 1361, 1366 (Fed. Cir. 2000) (quoting Indiana Mich. Power Co. v. United States, 88 F. 3d 1272, 1277 (D.C. Cir. 1996) ("Indiana Michigan")).

RESPONSE: Denies the facts set forth in the first sentence of paragraph 2; as explained in our accompanying brief, the Standard Contract did not require the Department of Energy to begin accepting spent nuclear fuel ("SNF") and/or high-level radioactive waste ("HLW") from every contracting party by January 31, 1998, but instead required the Department to begin accepting SNF and/or HLW from the contract holders as a collective whole by that date, in accordance with the contract requirements allocating positions in the acceptance queue on an "oldest fuel first" basis and in exchange for the payment of fees. The facts set forth in the second sentence of paragraph 2 are conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

3. "[T]he [Nuclear Waste Policy Act] directs DOE to undertake the duty to begin taking the SNF by January 31, 1998, whether or not it has a repository or interim storage facility." Northern States Power Co. v. United States, 128 F..3d 754, 760 (D.C. Cir. 1997).

RESPONSE: The facts set forth in paragraph 3 are conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

4. "DOE's duty to take the materials by the 1998 deadline is also an integral part of the Standard Contract, which provides that the Department 'shall begin' disposing of the SNF by January 31, 1998." Id. at 758 (citing and quoting the Standard Contract, 10 C.F.R. § 961.11, Art. II).

RESPONSE: The facts set forth in paragraph 4 are conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

5. The duty to begin taking SNF by January 31, 1998 was "without qualification or condition." Indiana Michigan, 88 F.3d at 1276.

RESPONSE: Denies. Even if DOE's obligation to begin accepting SNF and/or HLW from the nuclear utility contract holders as a collective whole may have been "without qualification or condition," DOE's obligation to begin accepting SNF and/or HLW from any particular contract holder was conditioned upon the contract holder's satisfaction of numerous conditions, including payment of all required fees, submission of appropriate delivery commitment schedules and final delivery schedules, and fulfillment of all other contract obligations. In fact, the court to which Vermont Yankee cites to support its propose "fact" recognized the conditional nature of the Government's obligation: "[u]nder the plain language of the statute, the utilities anticipated paying fees 'in return for [which] the Secretary' had a commensurate duty." Indiana Michigan, 88 F.3d at 1276 (quoting 42 U.S.C. § 10222 (a)(5)(B)). As outlined in our accompanying briefing, Vermont Yankee has not satisfied its obligation to pay its one-time fee on the Standard Contract, a fact that Vermont Yankee does not dispute. See

Plaintiff's Response To Defendant's Proposed Findings Of Uncontroverted Fact On The One-Time Fee Motion, ¶ 7 and Response (filed June 8, 2006).

6. On May 3, 1995, DOE formally admitted that it would be unable to begin to dispose of SNF until 2010. Final Interpretation, 60 Fed. Reg. 21,793, 21,794 (May 3, 1995).

RESPONSE: Admits the facts set forth in paragraph 6 to the extent supported by the Final Interpretation cited, which is the best evidence of its contents; otherwise denies the allegations contained in the second sentence of paragraph 6; avers that DOE represented that it currently anticipated that it would not be able to begin SNF and/or HLW acceptance until 2010, rather than it "would be unable to begin" by that date.

7. DOE's failure to begin accepting, transporting, and disposing of SNF from the Vermont Yankee Nuclear Power Station constitutes a breach of contract. Maine Yankee, 225 F.3d at 1343 (Fed. Cir. 2000).

RESPONSE: Denies. As we explain in our accompanying brief, the Standard Contract did not require to begin accepting SNF and/or HLW from every single contract holder by January 31, 1998. Because of the date of the first reported discharge of SNF from plaintiff's reactor, an acceptance queue developed using an "oldest fuel first" allocation system would not provide the plaintiff in this case with acceptance allocations until 1999. See Supplemental Appendix to Defendant's Reply To Plaintiff's Response To Defendant's Motion For Summary Judgment Upon Counts I and II of Plaintiff's First Amended Complaint And, In The Alternative, For Partial Summary Judgment Upon Defendant's Right To Recover Unpaid Fees, And Defendant's Response To Plaintiff's Cross-Motion For Summary Judgment On Liability, at 37 and 46 (filed July 7, 2006).

8. "The breach involved all the utilities that had signed the contract - the entire nuclear electric industry." Id. at 1342.

RESPONSE: The facts set forth in paragraph 8 are conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester. Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Marian E. Sullivan
MARIAN E. SULLIVAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0365
Fax: (202) 307-2503

July 6, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 6th day of July, 2006, a copy of the foregoing "DEFENDANT'S RESPONSES TO PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT ON LIABILITY" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Marian E. Sullivan