**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on July 26, 2006)

| | |
|---|---|
| **VERMONT YANKEE NUCLEAR POWER CORPORATION,**<br><br>Plaintiff,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>Defendant. | No. 02-898C<br>(Judge Wheeler) |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS**
**CROSS-MOTION FOR SUMMARY JUDGMENT ON LIABILITY**

Plaintiff Vermont Yankee Nuclear Power Corporation ("Vermont Yankee"), by and through the undersigned counsel, respectfully files this reply in support of its June 8, 2006 cross-motion for summary judgment on liability.

## ARGUMENT

In its July 6, 2006 response to Vermont Yankee's cross-motion for summary judgment on liability, Defendant (the "Government") does not appear to dispute that in violation of Article II of the Standard Contract, the Department of Energy ("DOE") breached its contractual obligation to begin accepting spent nuclear fuel ("SNF") from nuclear utilities by January 31, 1998. There is no merit to the Government's argument that Vermont Yankee suffered no damages as a result of DOE's nonperformance simply because DOE was not allegedly obligated to begin accepting SNF from Vermont Yankee in January 1998. The Government's response fails to recognize that DOE's breach injured all Standard Contract holders (including Vermont Yankee), not just those utilities who were at the front of the SNF acceptance queue established by DOE. Once DOE breached the Standard Contract by failing to begin accepting SNF from utilities as of January

1998, this delay created a domino effect resulting in DOE being unable to accept Vermont Yankee's (and all other nuclear utilities') SNF in a timely manner under the Standard Contract. Due to this lengthy and continuing delay, Vermont Yankee has incurred substantial damages to store SNF that DOE was contractually obligated to take. The Government's continued reliance on the discredited and discontinued Delivery Commitment Schedule ("DCS") process to rationalize DOE's nonperformance also flies in the face of decisions on liability that this Court and the U.S. Court of Appeals for the Federal Circuit have issued in the spent fuel damages cases. Thus, for reasons detailed below, Vermont Yankee respectfully requests that the Court grant its cross-motion for summary judgment on liability.

## I. All Utilities In The Acceptance Queue Suffered Damages Due To DOE's Nonperformance

The Government's response brief is fundamentally based on the faulty premise that DOE's failure to begin SNF acceptance from the commercial nuclear industry by January 31, 1998 could not create an injury to each and every member of the commercial nuclear industry, because only utilities that had approved DCSs for 1998 could have suffered damages from the Government's breach of the Standard Contract. Instead, the Government suggests that because Vermont Yankee had approved DCSs for DOE pick-up starting in 1999, "DOE's first obligation to accept SNF and/or HLW [from Vermont Yankee] would have occurred between January 31, 1999 and January 30, 2000" and "DOE's delay in beginning SNF acceptance by January 31, 1998 . . . does not render DOE liable to Vermont Yankee. Nor does it establish that Vermont Yankee has incurred any damages as a result of DOE's alleged breach of the Standard Contract." Defendant's Reply To Plaintiff's Response To Defendant's Motion For Summary Judgment Upon Counts I And II Of Plaintiff's Complaint And, In The Alternative, For Partial Summary Judgment Upon Defendant's Right To Recover Unpaid Fees, And Defendant's Response To

Plaintiff's Cross-Motion For Summary Judgment On Liability ("Government's Response") at 26 (Jul. 6, 2006). As explained below, however, the Government's reliance on the DCS process as a method of limiting its liability to Vermont Yankee and other utilities violates the purpose of the Standard Contract and ignores how DOE has unilaterally and repeatedly manipulated the DCS process since the 1990s.[1]

DOE's failure to begin accepting SNF from utilities on January 31, 1998, as required by the Standard Contract, necessarily affected when and how SNF would be accepted from all utilities in the acceptance queue – not just those at the front who could have expected to have their SNF picked up in 1998 under the defunct DCS process. Any utilities whose SNF deliveries were originally planned to fall sometime after January 1998 would have their deliveries delayed by the amount of time at least equal to DOE's delay in beginning its overall performance. For example, had DOE begun performance in 1998 (even using the Government's favored rate of acceptance), DOE would have begun accepting SNF from the Vermont Yankee Nuclear Power Station no later than 1999 – in the second year of the waste management system's operation. E.g., 1991 Annual Capacity Report ("ACR") at 9 (referencing Vermont Yankee for allocation in second year of operation) (excerpt attached hereto at Exhibit A). Based on the 2004 APR/ACR, which assumes that DOE will begin to accept SNF in 2010, DOE would begin picking up the SNF at the Vermont Yankee Nuclear Power Station no later than 2011. See 2004 APR/ACR at 2 & 3 (referencing "Entergy Nuclear Vermont Yankee, LLC" for allocation in second year of operation), Appendix to Plaintiff's Response To Defendant's Motion For Summary Judgment On Counts I And II at 39-40 (Jun. 8, 2006). Thus, the Government's assumed 12-year delay in

[1] As the Court is aware, the details of DOE's unilateral manipulation of the DCS process are discussed in the first 12 pages of Vermont Yankee's June 8, 2006 response to the Government's motion for summary judgment on the one-time fee (and in several of this Court's decisions cited in Section II *infra*).

beginning acceptance of SNF (i.e., 2010 instead of 1998), not surprisingly, results in a concomitant 12-year delay in picking up the SNF at the Vermont Yankee Nuclear Power Station. In other words, once DOE failed to accept SNF under the Standard Contract in 1998, any delay for a utility at the front of the acceptance queue leads to corresponding delays for all other utilities later in the queue (i.e., a "domino" effect).[2]

Utilities such as Vermont Yankee, faced with this scenario, had no choice but to prepare for this consequence of DOE's breach by incurring costs necessary to mitigate the damages that would otherwise occur. Given the lead times that are required for nuclear utilities to plan, design, and construct alternative methods of storing their SNF, Vermont Yankee necessarily had to incur those costs, rather than wait until DOE actually failed to pick up SNF at Vermont Yankee Nuclear Power Station. As Judge Lettow found in Tennessee Valley Authority v. United States, 60 Fed. Cl. 665 (2004) ("TVA"), plaintiff utilities may take affirmative steps to avoid unnecessary loss due to the Government's ongoing, partial breach of the Standard Contract, even if DOE was not specifically obligated to accept that utility's SNF in 1998. Id. at 674-5. Indeed, Vermont Yankee has incurred significant costs that include, *inter alia*, the re-racking of the spent fuel pool and the study and evaluation of dry fuel storage options at the Vermont Yankee Nuclear Power Station. Declaration of John J. Boguslawski (Jul. 26, 2006) (attached hereto at Exhibit B). Hence, the Government cannot reasonably maintain here that Vermont Yankee, despite its relative position in the acceptance queue, has suffered no damages as a result of DOE's nonperformance beginning in January 1998.

[2] Unfortunately, since DOE issued the 2004 APR/ACR, DOE has abandoned the 2010 date to start accepting SNF. On July 19, 2006, DOE announced that the "best-achievable" date to begin receipt of spent nuclear fuel is now *March 31, 2017*. Even this date, signifying a breach of at least nineteen years, is one that DOE characterizes as "aggressive" and assumes among other highly optimistic assumptions "the absence of litigation related delays."

**II. This Court's Most Recent Decisions Further Reject The Government's DCS Arguments And Preclude A Date Of Breach After January 31, 1998**

DOE unquestionably breached its Standard Contract with Vermont Yankee (which contract was subsequently assigned to Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc.), Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336, 1343 (Fed. Cir. 2000),[3] and it did so no later than the statutorily and contractually required start date of January 31, 1998. Because Vermont Yankee was a petitioner in Northern States Power Co. v. Dep't of Energy, 128 F.3d 754 (D.C. Cir. 1997) ("Northern States I"), the Government is collaterally estopped from arguing otherwise. See Systems Fuels, Inc. v. United States, 65 Fed. Cl. 163, 176 (2005) ("the government is collaterally estopped from arguing that the partial breach took place after January 31, 1998"); cf. Boston Edison Co. v. United States, 64 Fed. Cl. 167, 185 (2005) (Lettow, J.) ("The court rejects Boston Edison's collateral estoppel claim *unless* it shows in future proceedings that it was a party in a case where the date of breach was a critical and necessary element of the judgment." (emphasis added)).

Even apart from collateral estoppel, as explained above, the "domino effect" of DOE's failure to take the necessary steps to start disposing of SNF by January 31, 1998 resulted in the Government's breach of Vermont Yankee's Standard Contract. Subsequently, DOE actually failed to start disposing of the nuclear utility industry's SNF by the statutory and contractual deadline (an express contractual requirement of *every* Standard Contract). In other words, the Government's breach extends far beyond a mere failure to meet the January 31, 1998 deadline.

---

[3] The Government's attempts to evade the Maine Yankee decision by characterizing it as not dispositive in this case are misguided. As Judge Braden ruled in System Fuels, Inc. v. United States, 66 Fed. Cl. 722, 729 (2005), citing the Maine Yankee decision as binding precedent, "The United States Court of Appeals for the Federal Circuit has settled the legal issue of whether the Government's failure to begin accepting nuclear waste by January 31, 1998, constituted a breach of contract."

Moreover, this Court has consistently refused to adopt the Government's position that the DCS process somehow serves as a defense against DOE's nonperformance. The Government's criticisms of this Court's first two decisions regarding the DCS process, Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652 (2003), and Indiana Michigan Power Co. v. United States, 57 Fed. Cl. 88 (2003), merely rehash arguments that later decisions rejected as well. Most recently, Judge Lettow characterized the government's DCS-based schedule arguments as "dubious" in light of the holdings of the D.C. and Federal Circuits that "'the NWPA imposes an unconditional obligation on [DOE] to begin disposal of the SNF by January 31, 1998.'" Entergy Nuclear Generation Co. v. United States, 64 Fed. Cl. 336, 343 n.8 (quoting Northern States I, 128 F.3d at 761 (D.C. Cir. 1997), and citing Maine Yankee Atomic Power Co., 225 F.3d at 1343 and Indiana Michigan Power Co. v. Dep't of Energy, 88 F.3d 1272, 1275-76 (D.C. Cir. 1996)). Judge Lettow further observed that, for this and other reasons, other judges of this Court had not accepted the government's DCS-based arguments. See Entergy Nuclear Generation Co., 64 Fed. Cl. at 343 n.8 (citing, for example, Sacramento Mun. Util. Dist. v. United States, 63 Fed. Cl. 495, 503-05 (2005)); see also Entergy Nuclear Indian Point 2, LLC v. United States, 64 Fed. Cl. 515, 524 ("ENIP2") (referring to the "questionable premise that previously filed DCSs could determine the date of the breach" and again noting that other judges of the Court had not accepted the Government's arguments that the DCS process governs liability and recovery of damages). Furthermore, the Standard Contract would be illusory if DOE, through the DCS process, had unfettered discretion to determine unilaterally its own obligations under the contract. ENIP2, 64 Fed. Cl. at 525.

In summary, it is at best far-fetched for the Government to claim that the issue of liability for breach of contract in this case could be controlled by a process that DOE could (and did) unilaterally switch on and off at its whim.

## CONCLUSION

Decisions by this Court and multiple appellate courts have consistently rejected the Government's arguments regarding the DCS process and, in turn, conclusively established the Government's liability for breach of the Standard Contract. Hence, Plaintiff respectfully requests that the Court grant its cross-motion for summary judgment on liability.

Dated: July 26, 2006

Respectfully submitted,

s/ Alex D. Tomaszczuk by s/ Jack Y. Chu
Alex D. Tomaszczuk
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, Virginia 22102-4859
(703) 770-7940
(703) 770-7901 (fax)
Counsel of Record for Plaintiff
Vermont Yankee Nuclear Power Corporation

Of Counsel:

Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037-1128
(202) 663-8000
(202) 663-8007 (fax)