IN THE UNITED STATES COURT OF FEDERAL CLAIMS

VERMONT YANKEE NUCLEAR POWER CORPORATION,

and

ENTERGY NUCLEAR VERMONT YANKEE, LLC, et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

Nos. 02-898C & 03-2663C
(Judge Wheeler)

DEFENDANT'S MOTION TO REMOVE THE SEAL UPON PENDING MOTIONS, FOR AN ORDER DIRECTING THAT PLAINTIFFS RE-EXAMINE THEIR DESIGNATION OF MATERIAL AS SUBJECT TO THE PROTECTIVE ORDER, AND FOR ENTRY OF A REVISED PROTECTIVE ORDER

Defendant, the United States, respectfully requests that the Court remove the seal upon "Defendant's Motion for Summary Judgment upon Counts I and II of Plaintiff's Complaint and, In the Alternative, for Partial Summary Judgment Upon Defendant's Right To Recover Unpaid Fees" and "Defendant's Motion for Summary Judgment Regarding the Invalid Assignment of Plaintiff's Standard Contract and Pre-Existing Claims from the Partial Breach of that Contract," filed May 4, 2006, and the associated filings.[1] Defendant further respectfully requests that the Court direct that plaintiffs, Vermont Yankee Nuclear Power Corporation ("Vermont Yankee") and Entergy Nuclear Vermont Yankee ("ENVY"), examine all of the materials that they have produced to date, determine which documents are properly subject to the protective order, and

---

[1] The sealed motions, associated proposed findings of fact, responses, and replies are docket entries 106, 107, 108, 109, 118, 119, and 123 in Vermont Yankee, and docket entries 55, 56, 57, 58, 68, 69, and 73 in Entergy Nuclear Vermont Yankee.

produce any properly protected documents with the proper protective order markings. Counsel for defendant has attempted to confer with counsel for plaintiffs regarding this matter by letter dated August 2, 2006, but, to date, has received no response. Because the Court indicated, during the telephonic status conference with the parties convened on August 16, 2006, that the Court could issue decisions on these pending motions shortly, the Government seeks to resolve this issue to preclude further inconvenience to the Court caused by the need to protect information and documents that are not properly designated as "protected material" and, further, to eliminate the burden upon the Government of having to maintain all documents that the plaintiffs have produced as protected. Finally, defendant respectfully requests that the Court enter the attached protective order, which has been revised to correct two deficiencies in the existing protective order in this and other spent nuclear fuel ("SNF") cases.

## BACKGROUND

By orders dated February 15, 2006 and March 22, 2006, the Court entered protective orders in this case. Those protective orders provide that a party may designate as "confidential" information that is "confidential, financial, trade secret, privileged, competitively-sensitive information, or records falling within the scope of the Privacy Act, 5 U.S.C. § 552a." Protective Order ¶ 2 (entered Feb. 15, 2006 and March 22, 2006). For information that is deemed "confidential," a party may designate it as subject to the protective order by labeling the document "confidential," prior to its production to the other party. Id. The use of information deemed to be "confidential" is restricted to counsel for the parties or "other persons as reasonably necessary for the litigation of this action," id. ¶ 4, and the protective order requires

that any documents designated as "confidential material" or containing information that has been designated as "confidential material" be filed under seal. Id. ¶ 6.

On February 10, 2006, the Government propounded requests for the production of documents to obtain the documents necessary to file its motions for summary judgment. In response to these production requests, Vermont Yankee and ENVY produced a total of approximately 240 documents. Those 240 documents include correspondence between the Department of Energy ("DOE") and Vermont Yankee or ENVY and documents related to the assignment of the contract between Vermont Yankee and ENVY. See, e.g., A. 1-3.[2] Much of the correspondence with DOE is the same or very similar to correspondence between DOE and other Standard Contract holders regarding matter of contract administration. See, e.g., A. 4-5. Although many of these documents do not appear to contain any information that is "confidential" as that term is defined in the protective order, plaintiffs have designated all documents that they have produced as subject to the protective order.[3]

On May 5, 2006, the Government filed its motions for summary judgment and associated proposed findings of fact. The Government filed these motions under seal because the appendices to these motions contained documents that plaintiffs had designated as protected

---

[2] "A.__" refers to the appendix to this motion. We have attached examples of correspondence between DOE and Vermont Yankee obtained from the Government's database of documents. These same documents were produced by Vermont Yankee, marked with a protective order legend.

[3] Vermont Yankee has marked every document that it has produced with a protective order legend, "Protected and Confidential Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order." ENVY has indicated on the cover letter that accompanied its response to the Government's request for production of documents that the entire production is subject to the protective order.

material. Pursuant to the terms of the protective order, these motions and proposed findings of fact must be filed under seal. Prior to the filing of these motions, the Government sought and obtained leave to file these documents under seal, as required by the Court's General Order 42A. Orders, dated May 4, 2006. The need to obtain leave from the Court to file these motions under seal delayed the filing of the Government's motions by a day and created additional administrative work.

On June 8, 2006, plaintiffs filed their response briefs to the Government's motion for summary judgment regarding the one-time fee, but did not file these briefs under seal. In a conversation with counsel for the Government prior to the filing of this motion, plaintiffs' counsel represented that, in his opinion, this response did not need to be filed under seal. However, plaintiffs' counsel sought and obtained leave to file plaintiffs' responses to the Government's motion for summary judgment regarding the invalid assignment under seal. Order, dated June 12, 2006. The need to obtain leave from the Court to file these responses under seal delayed the filing of plaintiffs' responses by four days. Plaintiffs' response briefs were filed on June 12, 2006, and the Government's reply briefs were filed on June 29, 2006.

After the briefing was complete, and based upon our concerns about the breadth of the plaintiffs' designations of material as protected, we searched the Internet for the Purchase and Sale Agreement between Vermont Yankee and ENVY, which is contained in the appendices to the Government's sealed motions for summary judgment regarding the invalid assignment, and discussed extensively in the parties' briefs. We located this document, in its entirety, on the Internet among the records of the Vermont Public Service Board at

http://publicservice.vermont.gov/dockets/6545/6545.html. A. 6-9.[4] Based upon this discovery, and our belief that the other materials in the appendices to the Government's motions were not properly designated as subject to the protective order, we wrote to plaintiffs' counsel asking that the designation of all materials as subject to the protective order be re-examined by plaintiffs. A. 10-13. To date, plaintiffs' counsel has not responded to the Government's request.

## ARGUMENT

### I. THE SEAL UPON THE CURRENT MOTIONS SHOULD BE REMOVED BECAUSE NONE OF THE DOCUMENTS IN THE GOVERNMENT'S APPENDICES ARE PROPERLY DESIGNATED AS PROTECTED MATERIAL

The Court should remove the seal upon the Government's motions for summary judgment and the corresponding response and reply briefs and make these documents publicly available because none of the material in the Government's appendices to these motions is properly designated as subject to the protective order. Plaintiffs have acknowledged this fact with regard to the Government's motion for summary judgment on the one-time fee by not filing their responses to that motion under seal. Moreover, we have discovered that the only document in the Government's appendix to its motion for summary judgment regarding the invalid assignment of the Standard Contract that we initially thought could properly constitute protected material – the purchase and sale agreement – is a publicly available document and, therefore, is not properly a "protected" document. See THK America, Inc. v. NSK Co., Ltd., 157 F.R.D. 637, 464 (N.D. Ill. 1993) ("[d]ocuments distributed to the public may not . . . be designated as

[4] The Government has included only an excerpt of the sales agreement in the appendix to this motion because the agreement itself is a 90-page document.

'confidential'"). Therefore, the protective order designation that the plaintiffs invoked regarding these documents should be removed, and the seal upon these motions should be removed.

## II. GIVEN THE INCONVENIENCE TO THE COURT AND THE GOVERNMENT, THE COURT SHOULD ORDER PLAINTIFFS TO RE-EXAMINE THEIR DESIGNATIONS OF PROTECTED MATERIAL

In addition to removing the seal from the pending motions, the Government requests that the Court require plaintiffs to re-examine their designation of material as subject to the protective order.[5] Apparently, Vermont Yankee and ENVY have simply designated every document as subject to the protective order and have not made the requisite determinations as to which documents should properly be protected from disclosure. This wholesale designation of documents as subject to the protective order does not comply with the letter or the spirit of the protective order.

Consistent with (and as required by) paragraph 9 of the existing protective order pursuant to which the plaintiffs produced their documents, it is the burden of the party seeking to protect documents and to limit their distribution to establish good cause for that protection. See, e.g., Forest Prods. Northwest v. United States, 435 F. 3d 1355, 1361 (Fed. Cir. 2006); Miles v. Boeing Co., 154 F.R.D. 112, 114 (E.D. Pa. 1994); Reliance Ins. Co. v. Barron's, 428 F. Supp. 200, 202 (S.D.N.Y. 1977). See generally 8 C. Wright, A. Miller & R. Marcus, Federal Practice & Procedure § 2043, at 556-57 (2d ed. 1994) ("[b]esides showing that the information qualifies for protection, the moving party must also show good cause for restricting dissemination on the

---

[5] Technically, paragraph 9 of the protective order requires Vermont Yankee and ENVY, as the party seeking to protect information, to file a motion with the Court to obtain an order providing for the continued protection of such documents. In the spirit of attempting to resolve this issue swiftly and preclude further inconvenience to the Court or the parties, the Government has taken the initiative to seek the Court's resolution of this matter.

ground that it would be harmed by its disclosure."). "To overcome the presumption" that documents should be publicly available and establish "good cause" for subjecting documents to a protective order, "the party seeking the protective order must . . . demonstrat[e] a particular need for protection." Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3rd Cir. 1986). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26 (c) test." Id.; see United States v. Hooker Chemical & Plastics, 90 F.R.D. 421, 425 (W.D. N.Y. 1981) (refusing to issue protective order based upon "conclusory" allegations of the harm of disclosure). "Moreover, harm must be significant, not a mere trifle." Cipollone, 785 F.2d at 1121. Clearly, documents that are publicly available should not be designated as subject to the protective order. THK America, 157 F.R.D. at 646. Further, it is counsel's "responsibility to ensure that the proper confidential designations are assigned to the documents produced."

Id. at 644. One proper remedy for the over-designation of documents as subject to the protective order is for the party to undertake the effort to re-classify the documents at issue. Quotron Systems, Inc. v. Automatic Data Processing, Inc., 141 F.R.D. 37, 40 (S.D.N.Y. 1992).

The over-designation of material as subject to the protective order has already resulted in inconvenience to the Court and the parties -- the need to obtain an order to file and maintain those materials under seal. Absent action by the plaintiffs to revise their apparent practice of simply stamping every document as subject to the protective order, the inconvenience to the Court and the parties will only increase. To reduce this inconvenience, Vermont Yankee and ENVY should be required to determine whether each document to be designated contains confidential information and that there would be clear, specific harm from the disclosure of that

information. Once this re-examination is complete, plaintiffs should be required to reproduce all of the documents produced to date, with the protective order legend removed from those documents not properly designated as protected material. If plaintiffs are not required to re-produce all of the documents in their entirety, the Government will have to incur additional expense replacing the revised document images in its database.

## III. THE GOVERNMENT REQUESTS THAT THE COURT ENTER THE ATTACHED REVISED PROTECTIVE ORDER

The Government, prompted by recent events in this and other SNF cases regarding the protective order, has reviewed the "standard" protective order entered in this and several other SNF case to date. Based upon this review, we request that the Court revise the protective order to make the following changes: (1) in paragraph 10 of the standard protective order, we seek to modify the language that previously read "[w]ithin ninety (90) days after the conclusion of this litigation" to "[w]ithin ninety (90) days after the conclusion of the spent nuclear fuel litigation in this Court" to ensure that, when plaintiffs files subsequent suits for damages allegedly incurred in the future as a result of DOE's delay in accepting SNF, the Government will still have copies of the documents that plaintiffs previously produced and will not have to seek reproduction of those documents; and (2) in paragraph 2 of the standard protective order, we added the requirement that the following or similar legend be placed on each page of any protected document: "PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDERS IN SPENT NUCLEAR FUEL LITIGATION." Although Vermont Yankee has endorsed the documents with a substantially similar legend in this case, this second change is necessary because ENVY and other SNF plaintiffs, pursuant to the existing protective orders, have merely identified, often

without great specificity, categories of documents that they want protected. To ensure that these documents were not inadvertently provided to other parties, the Government has been required to incur significant expense attempting to identify which documents are to be protected and endorsing documents with protective order legends. With a requirement that protected documents being produced actually contain a protective legend, we can eliminate much of this expense. We request that the Court enter the attached protective order.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court remove the seal from the Government's pending motions for summary judgment, direct that plaintiffs undertake a review of the documents produced to date, and re-produce the documents without the protective order legend. Defendant also respectfully requests that the Court enter the attached revised protective order.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Marian E. Sullivan
MARIAN E. SULLIVAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0365
Fax: (202) 307-2503

August 30, 2006

Attorneys for Defendant

# APPENDIX

# INDEX TO THE APPENDIX

Document Page

Letter from John T. Pearson, Vice President, Vermont Yankee Nuclear Power Corporation, to Christopher Jedrey, Contracting Officer, Department of Energy, dated June 5, 1985 . . . . . . . . . 1

Letter from John T. Pearson, Vice President, Vermont Yankee Nuclear Power Corporation, to Christopher Jedrey, Contracting Officer, Department of Energy, dated June 10, 1985 . . . . . . . . 2

Letter from M. Detmer, Contracting Officer, Department of Energy, to Glenn Morgan, Vermont Yankee Nuclear Power Corporation, dated March 4, 1992 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Excerpt of Purchase and Sale Agreement between Vermont Yankee Nuclear Power Corporation and Entergy Nuclear Vermont Yankee, LLC, dated August 15, 2001 . . . . . . . . . . . . . . . . . . . . . 6

Letter from Marian Sullivan, Department of Justice, to Alex Tomaszczuk, Pillsbury, Winthrop, Shaw Pittman, LLP, dated August 2, 2006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ATTACHMENT -- AMENDED PROTECTIVE ORDER

**VERMONT YANKEE NUCLEAR POWER CORPORATION**

RD 5, Box 169, Ferry Road, Brattleboro, VT 05301

(802) 257-5271

June 5, 1985
FMD 85-

U.S. Department of Energy
Procurement and Assistance Management
Directorate
Office of Procurement Operations
Washington, DC 20585

Subject: Contract No. DE-CR01-83NE44431 for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste - Payment for SNF Discharged Prior to April 7, 1983 and for In-Core Burned Fuel as of 12:00 AM April 7, 1983.

Attention: Christopher T. Jedrey

Dear Sir:

Pursuant to Article VIII B.2 of the above Contract, you are hereby notified that Vermont Yankee Nuclear Power Corporation (Vermont Yankee), the Purchaser under said Contract, has selected Option 2 of Article VIII B.2 which requires a one-time payment anytime prior to the first delivery of spent nuclear fuel and/or high level waste to DOE.

Consistent with that obligation, Vermont Yankee may desire to make a partial payment(s) toward that one-time fee should funds become available to Vermont Yankee for such purposes. We assume that DOE would welcome the opportunity to collect a portion of the one-time fee perhaps earlier than anticipated, if the opportunity arises. We would appreciate it if you would call either myself or Mr. W.J. Daley at your earliest convenience to discuss this matter.

Sincerely,

John T. Pearson

John T. Pearson
Vice President, Finance and Administration, Treasurer

JTP/d

c: W.F. Conway
W.P. Murphy
R.M. Grube
J.M. Buchheit

VERMONT YANKEE
NUCLEAR POWER CORPORATION

RD 5, Box 169, Ferry Road, Brattleboro, VT 05301

(802) 257-5271

June 10, 1985

U.S. Department of Energy
Procurement and Assistance Management
Directorate
Office of Procurement Operations
Washington, DC 20585

Subject: Contract No. DE-CR01-83NE44431 for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste - Payment for SNF Discharged Prior to April 7, 1983 and for In-Core Burned Fuel as of 12:00 AM April 7, 1983.

Attention: Christopher T. Jedrey

Dear Sir:

Enclosed please find the form provided by your office for the one-time fee payment option selection. I had previously notified you of Vermont Yankee's selection in my letter of June 5, 1985 (copy enclosed).

Please let me know if you have any questions.

Sincerely,

John T. Pearson

John T. Pearson
Vice President, Finance and
Administration, Treasurer

JTP/d
Encl. 2
c: W.F. Conway
R.M. Grube

ONE-TIME FEE PAYMENT OPTION SELECTION

Name of Purchaser: Vermont Yankee Nuclear Power Corporation

Contract Number: DE-CR01-83NE 44431

Date: June 6, 1985

| Option Choice | | |
|---|---|---|
| 1 | ___ | Forty quarterly payments (Article VIII.B.2.a), with final payment prior to first scheduled SNF delivery. Expected date of first payment (optional): ___________ |
| 2 | X | One payment prior to first scheduled SNF delivery (Article VIII.B.2.b). Expected date of payment (optional): ___________ |
| 3 | ___ | One payment with no interest (Article VIII.B.2.c). Payment due on or before June 28, 1985. |

Signature: [signature] John T. Pearson

Title: Vice President, Finance & Adm., Treasurer

Send to:

U.S. Department of Energy
Office of Procurement Operations
Attn: Mr. Christopher Jedrey
Contracting Officer
Room 1J-059 MA-453.2
Washington, D.C. 20585



COF-013-0264

**Department of Energy**
Washington, DC 20585

MAR 04 1992

Mr. Glenn J. Morgan
Vermont Yankee Nuclear Power Corporation
R.D. 5, Box 169, Perry Road
Brattleboro, VT 05301

Dear Mr. Morgan:

The Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (10 CFR Part 961) provides that, beginning January 1, 1992, Purchasers shall submit to the Department of Energy (Department) Delivery Commitment Schedules (DCS). The DCS provides the Purchaser with the opportunity to inform the Department of plans regarding its allocation of projected Federal waste acceptance capacity. This information will assist the Department in meeting its contractual waste acceptance responsibilities and in the development of the Federal waste management system (FWMS).

The allocations in the 1991 Annual Capacity Report (ACR) should be the basis for the DCS submittals. An allocation is a specified acceptance capacity (measured in metric tons of uranium) in a particular year for an individual Purchaser. The 1991 Acceptance Priority Ranking has been used as the basis for the allocation of waste acceptance capacity to specific Purchasers in the 1991 ACR. These reports have been recently issued by the Department and sent to all Purchasers. Once a Purchaser has an allocation, any equivalent quantity of spent nuclear fuel (SNF) owned by the Purchaser can be designated for delivery within the limits of that allocation. A Purchaser may submit DCSs for as many of their allocations as they choose, throughout the 10 year period identified in the ACR. The Department requests that the Purchasers submit DCSs for as many allocations as possible to assist in the Department's planning of the FWMS. The enclosed DCS instructions are intended to assist the Purchaser in completing the DCS.

The Standard Contract provides that Purchasers shall submit DCSs to DOE at least 63 months prior to delivery. The Department recognizes that both the Purchaser's and Department's ability to commit to a specific delivery date over 63 months in the future is limited. Therefore, the Department suggests that the Purchasers designate only the year of delivery on the DCS. The actual date of delivery will be proposed by the Purchasers in their Final Delivery Schedule submittal. Two entries were added to the DCS form, identification number and contact person, to allow the Department to communicate more effectively with the Purchaser concerning their DCS submittal.

After a DCS has been approved, Purchasers may either use the DCS as the reference document for submittal of the Final Delivery Schedule, which is required 12 months prior to delivery, or use the DCS as the basis for exchanges with other Purchasers. Specific guidelines for submission of exchange requests are under development, but will not have an impact on the submission of DCSs for approval.

HQ0002083

The enclosed DCS form will be submitted to the Office of Management and Budget (OMB) for approval shortly. The Department will transmit to the Purchasers the OMB approved DCS form as soon as possible.

If you have any questions concerning these instructions, please contact Nick Graham of my staff on (202) 586-9634 or Alan Brownstein of the Department's Office of Civilian Radioactive Waste Management on (202) 586-4973.

M. Detmer
Contracting Officer
Office of Placement and
Administration

Enclosure

**EXECUTION COPY**

VERMONT YANKEE NUCLEAR POWER STATION

PURCHASE AND SALE AGREEMENT

BY AND BETWEEN

VERMONT YANKEE NUCLEAR POWER CORPORATION, AS SELLER,

ENTERGY NUCLEAR VERMONT YANKEE, LLC, AS BUYER

AND

ENTERGY CORPORATION, AS GUARANTOR

DATED: AUGUST 15, 2001

TABLE OF CONTENTS


| | | Page |
|---|---|---|
| ARTICLE I DEFINITIONS | | 1 |
| 1.1 | Definitions | 1 |
| 1.2 | Certain Interpretive Matters | 17 |
| ARTICLE II PURCHASE AND SALE | | 17 |
| 2.1 | Transfer of Assets | 17 |
| 2.2 | Excluded Assets | 19 |
| 2.3 | Assumed Liabilities and Obligations | 21 |
| 2.4 | Excluded Liabilities | 22 |
| ARTICLE III THE CLOSING | | 24 |
| 3.1 | Closing | 24 |
| 3.2 | Purchase Price; Payment | 25 |
| 3.3 | Adjustment to Cash Purchase Price. | 25 |
| 3.4 | Allocation of Purchase Price | 27 |
| 3.5 | Prorations | 28 |
| 3.6 | Deliveries by the Seller | 29 |
| 3.7 | Deliveries by the Buyer | 30 |
| ARTICLE IV REPRESENTATIONS AND WARRANTIES OF THE SELLER | | 31 |
| 4.1 | Organization; Qualification | 31 |
| 4.2 | Authority | 31 |
| 4.3 | Consents and Approvals; No Violation | 31 |
| 4.4 | Financial Statements. | 32 |
| 4.5 | Reports | 33 |
| 4.6 | Accounting Methods | 33 |
| 4.7 | Title and Related Matters | 33 |
| 4.8 | Real Property Agreements | 33 |
| 4.9 | Insurance | 33 |
| 4.10 | Environmental Matters; etc | 34 |
| 4.11 | Labor Matters | 34 |
| 4.12 | ERISA; Benefit Plans | 35 |
| 4.13 | Real Property; Plant and Equipment. | 37 |
| 4.14 | Condemnation; Public Improvements | 37 |
| 4.15 | Certain Contracts and Arrangements. | 38 |
| 4.16 | Legal Proceedings, etc | 38 |
| 4.17 | Permits; Compliance with Law. | 38 |
| 4.18 | NRC Licenses. | 39 |
| 4.19 | Regulation as a Utility | 39 |
| 4.20 | Qualified Decommissioning Fund. | 39 |
| 4.21 | Nonqualified Decommissioning Fund. | 41 |
| 4.22 | Zoning Classification | 42 |

4.23 Intellectual Property ........ 42
4.24 Taxes ........ 42
4.25 Operability. ........ 43
4.26 Brokers' Fees ........ 43
4.27 Disclaimer ........ 43

ARTICLE V REPRESENTATIONS AND WARRANTIES OF THE BUYER AND GUARANTOR 44
5.1 Organization ........ 44
5.2 Authority ........ 44
5.3 Consents and Approvals; No Violation ........ 45
5.4 Availability of Funds ........ 45
5.5 Legal Proceedings ........ 45
5.6 WARN Act ........ 45
5.7 "As Is Sale" ........ 46
5.8 Affiliate Guaranty ........ 46
5.9 Qualified Buyer ........ 46
5.10 Brokers' Fees ........ 46

ARTICLE VI COVENANTS OF THE PARTIES ........ 47
6.1 Conduct of Business During the Interim Period ........ 47
6.2 Access to Information ........ 50
6.3 Expenses ........ 52
6.4 Further Assurances; Cooperation ........ 52
6.5 Public Statements ........ 54
6.6 Notices, Consents and Approvals. ........ 54
6.7 Interim Period Notice. ........ 55
6.8 Employees. ........ 57
6.9 Risk of Loss. ........ 61
6.10 Decommissioning Funds. ........ 62
6.11 Spent Nuclear Fuel Fees. ........ 62
6.12 Department of Energy Decontamination and Decommissioning Fees ........ 63
6.13 Cooperation Relating to Insurance and Price-Anderson Act ........ 63
6.14 Tax Clearance Certificates ........ 63
6.15 Nuclear Insurance Policies ........ 63
6.16 Private Letter Ruling Requests ........ 64
6.17 Tax Matters ........ 64
6.18 Intentionally Omitted ........ 65
6.19 Decommissioning ........ 65
6.20 Guarantee ........ 65

ARTICLE VII CONDITIONS ........ 68
7.1 Conditions to Obligations of the Buyer ........ 68
7.2 Conditions to Obligations of the Seller ........ 71

ARTICLE VIII CONFIDENTIALITY ........ 73

ARTICLE IX INDEMNIFICATION ..... 74
9.1 Indemnification ..... 74
9.2 Defense of Claims ..... 76

ARTICLE X TERMINATION ..... 77
10.1 Termination ..... 77
10.2 Procedure and Effect of No-Default Termination ..... 79

ARTICLE XI MISCELLANEOUS PROVISIONS ..... 79
11.1 Amendment and Modification ..... 79
11.2 Waiver of Compliance; Consents ..... 79
11.3 Survival of Representations, Warranties, Covenants and Obligations ..... 79
11.4 Notices ..... 80
11.5 Assignment ..... 81
11.6 Governing Law ..... 82
11.7 Attorney-Client Matters ..... 82
11.8 Counterparts ..... 82
11.9 Interpretation ..... 82
11.10 Schedules and Exhibits ..... 83
11.11 Entire Agreement ..... 83
11.12 Bulk Sales Laws ..... 83

U.S. Department of Justice

Civil Division

PDK:DMC:HDL:MES
154-02-898 & 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

Telephone:
(202) 307-0365

*Washington, D.C. 20530*

August 2, 2006

VIA FACSIMILE AND UNITED STATES MAIL

Alex D. Tomaszczuk
Pillsbury, Winthrop, Shaw Pittman, LLP
1650 Tysons Blvd.
McLean, Virginia 22102-4859

Re: *Vermont Yankee Nuclear Power Corp. v. United States*, No. 02-898C (Fed. Cl.), *& Entergy Nuclear Vermont Yankee, LLC, & Entergy Nuclear Operations, Inc. v. United States*, No. 03-2663C (Fed. Cl.)

Dear Mr. Tomaszczuk:

The purpose of this letter is to advise you of our serious concerns regarding the extremely broad designations by the plaintiffs, Vermont Yankee Nuclear Power Corporation ("Vermont Yankee") and Entergy Nuclear Vermont Yankee, LLC ("ENVY"), of documents as subject to the protections provided by the protective orders entered in these two cases, and we ask that you immediately address these problems. We anticipate that, absent action by Vermont Yankee and ENVY to remedy the problems discussed below, we will file a motion with the Court advising the Court of the plaintiffs' over-designations of materials as protected and seek appropriate relief.

The protective order that the Court entered in these cases provides that a party may designate as "confidential" information that is "confidential, financial, trade secret, privileged, competitively-sensitive information, or records falling within the scope of the Privacy Act, 5 U.S.C. § 552a." Protective Order ¶ 2 (entered Feb. 15, 2006). For information that is deemed "confidential," a party may designate it as subject to the protective order by labeling the document "confidential," prior to its production to the other party. Id. The use of information deemed to be "confidential" is restricted to counsel for the parties or "other persons as reasonably necessary for the litigation of this action," id. ¶ 4, and the protective order requires that any documents designated as "confidential material" or containing information that has been designated as "confidential material" be filed under seal. Id. ¶ 6.

As I expect you are aware, every document that Vermont Yankee or ENVY has produced to date has been endorsed with a protective order legend, making each of those documents subject to the protections and the burdens of the protective orders in these cases. However, the vast majority of the documents that Vermont Yankee and ENVY have produced are not properly designated as protected. Examples of documents that Vermont Yankee and ENVY have improperly designated as protected include copies of letters from the contracting officer to Vermont Yankee and all of the other Standard Contract holders (VY-GFR-000000575); other correspondence between Vermont Yankee or ENVY and the contracting officer (e.g., VY-GFR-000000001 and -000000570); and correspondence between Vermont Yankee and the Nuclear Regulatory Commission (VY-GFR-000000003). We have also determined that documents related to the sale of the Vermont Yankee Nuclear Power Station by Vermont Yankee to ENVY, which Vermont Yankee and ENVY have designated as protected, are publicly available. For example, the Purchase and Sale Agreement (VY-GFR-000000014) can be found on the internet (http://publicservice.vermont.gov/dockets/6545/6545.html). These documents clearly should not be designated as subject to the protective order because they are publicly available or do not contain any information that is "confidential" as defined by the protective order.

Apparently, Vermont Yankee and ENVY have simply stamped every document with the protective order legend and have not made the requisite determinations as to which documents should properly be protected from disclosure. This wholesale designation of documents as subject to the protective order does not comply with the letter or the spirit of the protective order. Instead, Vermont Yankee and ENVY are required to determine whether each document to be designated contains confidential information and that there would be clear, specific harm from the disclosure of that information. See Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1122 (3rd Cir. 1986); Miles v. Boeing Co., 154 F.R.D. 112, 114 (E.D. Pa. 1994); Proctor & Gamble Co. v. Nabisco Brands, Inc., 111 F.R.D. 326, 329 (D. Del. 1986). Clearly, documents that are publicly available should not be designated as subject to the protective order. THK America, Inc. v. NSK Co., Ltd., 157 F.R.D. 637, 646 (N.D. Ill. 1993). The proper remedy for the over-designation of documents as subject to the protective order is for the party to undertake the effort to re-classify the documents at issue. Quotron Systems, Inc. v. Automatic Data Processing, Inc., 141 F.R.D. 37, 40 (S.D.N.Y. 1992).

Vermont Yankee's and ENVY's improper designation of materials as subject to the protective order has created great inconvenience for the Court and the Government. As you know, the Government was required to delay the filing of its motions for summary judgment until the Court entered an order allowing the Government to file motions under seal. Moreover, your firm had difficulty accessing these sealed filings from the Court's ECF system, and I was asked to provide additional copies of these sealed filings on disk. It appears now, however, that these efforts were all unnecessary because all of the documents in the Government's appendices to its motions, including the Purchase and Sale Agreement between Vermont Yankee and ENVY, appear to be publicly available or do not contain "confidential material." Moreover, the inconvenience that this wholesale designation of every document as protected has already caused

will only become greater as these cases proceed through depositions and trial because steps will have to be undertaken to seal entire portions of the record that discuss these protected documents.

To eliminate these over-designations and preclude future inconvenience, we ask that you take the following steps immediately: 1) file a notice with the Court advising that none of the material in the Government's appendix to the pending motions for summary judgment regarding the assignment of the Standard Contract are protected material and that these motions and the responses and replies to these motions should not remain under seal; 2) undertake a review of all materials that Vermont Yankee and ENVY have produced to date to determine whether any of the documents produced should be endorsed with the protective order legend and produce the documents to the Government in electronic format again without the protective order legend; and 3) provide assurances that Vermont Yankee and ENVY understand the proper parameters of the protective order and the scope of materials that may properly be subjected to its restrictions and that efforts will be made to ensure that the types of over-designations identified in this letter will not reoccur. If Vermont Yankee and ENVY do not complete these efforts by August 7, 2006, we plan to seek an order from the Court providing this relief.[1]

As you know, the Government asked the Court to enter the protective order in this and other SNF cases to allow for the production of documents by both parties that are necessary to the litigation of these matters. When properly followed, the protective order provides necessary protections in this and the other pending SNF cases. However, we cannot continue to countenance the abuses of this protective order described above.

---

[1] Technically, paragraph 9 of the protective order requires Vermont Yankee and ENVY, as the party seeking to protect information, to file a motion with the Court to obtain an order providing for the continued protection of such documents. In the spirit of attempting to resolve this issue swiftly, we may take the initiative to seek the Court's resolution of this matter. However, it will be the plaintiffs' burden to establish "good cause" for protecting each document that they have designated as protected. See, e.g., Forest Prods. Northwest v. United States, No. 05-5007, 2006 WL 1817073, at *5 (Fed. Cir. July 5, 2006); Miles, 154 F.R.D. at 114. "To overcome the presumption" that documents should be publicly available and establish "good cause" for subjecting documents to a protective order, "the party seeking the protective order must . . . demonstrat[e] a particular need for protection." Cipollone, 785 F.2d at 1121. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Id. "Moreover, harm must be significant, not a mere trifle." Id.

Thank you for your prompt attention to this matter. Please call me if you have any questions at (202) 307-0365.

Sincerely,

MARIAN E. SULLIVAN
Trial Attorney
Commercial Litigation Branch

# ATTACHMENT

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| VERMONT YANKEE NUCLEAR POWER CORPORATION, | ) | |
| and | ) | |
| ENTERGY NUCLEAR VERMONT YANKEE, LLC, et al., | ) | Nos. 02-898C & 03-2663C |
| | ) | (Judge Wheeler) |
| Plaintiffs, | ) | |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

AMENDED PROTECTIVE ORDER

Discovery and other proceedings in this case and the other cases pending before the Court concerning the Standard Contract, 10 C.F.R. Part 961 (hereinafter referred to as the "spent nuclear fuel cases") may require the parties to disclose confidential information (as defined herein) of the parties. Accordingly, it is hereby ORDERED BY THE COURT:

1. The term “Confidential Material” shall refer to confidential, financial, trade secret, privileged, competitively-sensitive information, or records falling within the scope of the Privacy Act, 5 U.S.C. § 552a, disclosed in discovery or other proceedings in this case. Subject to the provisions of Paragraph 8 below, material shall be deemed Confidential Material when so designated in the manner described in Paragraph 2 below. After disclosure of any “Confidential Material,” all copies made of that material, and all notes made therefrom and all references made thereto, of any kind whatsoever, shall also constitute “Confidential Material.”

2. The designation of Confidential Material may be made by the disclosing party by placing or affixing on each page of documents disclosed the following language:

"PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDERS IN SPENT NUCLEAR FUEL LITIGATION."

3. Each person receiving Confidential Material shall maintain such Confidential Material in his or her possession in a manner sufficient to protect such material against unauthorized disclosure.

4. Confidential Material shall be used by the receiving party solely for the purpose of conducting litigation in the spent nuclear fuel cases pending in the United States Court of Federal Claims and not for any business or other purpose whatsoever, except as provided in this protective order. Confidential Material shall be disclosed only to attorneys for plaintiffs in those spent nuclear fuel cases in which the Court has entered a protective order, attorneys for the United States, persons regularly employed in such attorneys' offices, or, subject to the provisions of Paragraph 5 below, other persons as reasonably necessary for the litigation of this action. Nothing contained in this protective order shall prevent or in any way limit or impair the right of counsel for the United States to disclose to any agency of the United States (including other divisions and branches of the Department of Justice) any document or information regarding any potential violation of law or regulation or, subject to procedures that maintain the confidentiality of Confidential Material consistent with this agreement and protective order, prevent or limit in any way the use of such documents and information by an agency in any proceeding regarding any potential violation of law or regulation.

5. With the exception of attorneys for plaintiffs in spent nuclear fuel cases in which the Court has entered a protective order, attorneys for the United States, and persons regularly employed in such attorneys' offices, any person to whom Confidential Material is to be disclosed

by the receiving party shall first be advised by an attorney for the receiving party or parties that pursuant to this protective order such person may not divulge any such Confidential Material to any other person not authorized under Paragraph 4 above to have access to such Confidential Material. The attorney shall secure from each person a declaration in the form attached hereto, stating that such person has read this protective order and agrees to be bound by it. Such declaration shall be maintained in the possession of the attorney securing the declaration until further order of the Court.

6. Subject to order of the Court, that portion of any pleading, motion, deposition transcript, or other document submitted or presented to or filed with the Court containing Confidential Material shall be placed under seal and shall not be available to persons other than the Court and authorized employees of the Court, the attorneys of record for the parties to this spent nuclear fuel case, and persons authorized by this protective order. In the event that any Confidential Material is used in any deposition or Court proceeding herein, the parties shall attempt to further stipulate as to the procedures for use of Confidential Material in such proceedings. If necessary, any dispute regarding the procedures for use of Confidential Material in deposition or Court proceedings shall be submitted to the Court for resolution.

7. Nothing in the foregoing provisions of this protective order shall be deemed to preclude plaintiffs, the United States, or third parties from seeking and obtaining, on an appropriate showing, additional protection with respect to the confidentiality of documents or other discovery material or from seeking and obtaining leave to disclose documents or other discovery material beyond the terms of this protective order.

8. If a party determines that a previously produced document inadvertently was not identified as containing protected information, the producing party shall give notice in writing

that the document is to be treated as containing protected information, and thereafter the designated document shall be treated in accordance with this protective order or returned to the producing party if the material is identified as privileged.

9. Nothing in the foregoing provisions of this protective order shall be deemed to preclude plaintiffs or the United States from objecting to the designation of documents or other discovery material as Confidential Material. In such event, the party designating the documents or other discovery materials as Confidential Material shall have the burden to file a motion for a protective order with the Court demonstrating that there is good cause to designate the documents or materials as such and that they properly are subject to treatment under this protective order.

10. Within ninety (90) days after the conclusion of the spent nuclear fuel litigation, the parties shall undertake reasonable and prudent efforts to return all original Confidential Material to the disclosing party and to destroy all copies of and all notes, summaries, and references relating to such Confidential Material and, further, the parties shall certify to the Court that such reasonable and prudent efforts have been undertaken; EXCEPT THAT each party may maintain one copy of any Confidential Material in its master file for this case, including one copy of any notes or summaries relating to such Confidential Material, provided that any copies of any Confidential Material or notes or summaries relating to such Confidential Material are clearly stamped with the legend identified in paragraph 2 of this protective order or a similar legend indicating that the materials are subject to this protective order.

11. For information sought that is or may be covered by the Privacy Act, defendant, in response to any discovery properly propounded pursuant to the Rules of the United States Court of Federal Claims, is hereby authorized, pursuant to 5 U.S.C. § 552a(b)(11), to release to

opposing counsel in these cases records which are relevant to this action, and which may be subject to the Privacy Act, without obtaining prior written consent of the individual to whom such records pertain. Such disclosures shall be deemed authorized by law.

IT IS SO ORDERED.

THOMAS C. WHEELER
Judge

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| VERMONT YANKEE NUCLEAR POWER CORPORATION, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ENTERGY NUCLEAR VERMONT YANKEE, LLC, et al., | ) | Nos. 02-898C & 03-2663C |
| | ) | (Judge Wheeler) |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF____________________________________**

1. My name is _______________________________________.

2. My business address is _______________________________

   ________________________________________________.

3. My present employer is ______________________________

   _________________________________________________.

4. My present occupation or job description is __________

   ________________________________________________.

5. I have received a copy of the Protective Order entered by the Court in connection with the above-captioned matter.

6. I have carefully read and understand the provisions of the Protective Order.

7. I certify that I am eligible to have access to the Confidential Material under paragraph 4 of the Protective Order.

8. I will comply with all of the provisions of the Protective Order.

9. I will hold all Confidential Material and any duplicates, notes, abstracts or summaries thereof in confidence, will not disclose such information to anyone not specifically entitled to access under the Protective Order, and will use the information solely for purposes of this litigation, except as provided by the Protective Order.

10. At the conclusion of this litigation, I will return all originals of all Confidential Materials and any duplicates, notes, abstracts or summaries thereof, whether prepared by me or anyone else, to counsel for the party by whom I am employed or retained.

Further declarant sayeth naught.

______________________________
(signature)

DATED:______________________

Certificate of Filing

I hereby certify that on the 30th day of August 2006, a copy of the foregoing "DEFENDANT'S MOTION TO REMOVE THE SEAL UPON PENDING MOTIONS, FOR AN ORDER DIRECTING THAT PLAINTIFFS RE-EXAMINE THEIR DESIGNATION OF MATERIAL AS SUBJECT TO THE PROTECTIVE ORDER, AND FOR ENTRY OF A REVISED PROTECTIVE ORDER" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Marian E. Sullivan