Exhibit 1

STATE OF MISSISSIPPI §
§
COUNTY OF HINDS §

AFFIDAVIT OF DAN KEUTER

The undersigned, Dan Keuter, being first duly sworn on oath, states as follows:

1. "My name is Dan Keuter. I am over the age of twenty-one years, am of sound mind, and have personal knowledge of the statements made herein and that the facts are true and correct. I am competent to make this Affidavit."

2. "I am currently VP, Planning and Innovation for Entergy Operations, Inc."

3. "This Affidavit is filed in support of Entergy Nuclear Vermont Yankee, LLC's ("Entergy") response in opposition to Vermont Yankee Nuclear Power Corporation's ("VYNPC") Motion to Compel Complete Production of Documents as filed on November 7, 2007. Specifically, the purpose of this affidavit is to outline efforts taken by me to investigate the existence of documents for the purpose of responding to document requests served by VYNPC. I have further been asked to comment on the nature of decommissioning studies acquired during the negotiations for the VY acquisition."

4. "In July, 2007, I reviewed requests served by VYNPC seeking to obtain documents relating to various issues surrounding the Vermont Yankee acquisition. I was asked to determine if I knew the location of, or had in my possession, documents responsive to VYNPC's requests. In response, I reviewed my files, including electronic

media, for documents which might in any way pertain to the VY acquisition or more specifically pertain to the requests presented by VYNPC. All documents that I located were turned over to Entergy's counsel. The documents provided to counsel included at least five banker's boxes of due diligence materials in addition to documents stored in electronic format."

5. "On or about October 15, 2007, I received notice that counsel for VYNPC believed Entergy failed to produce certain documents. The categories of documents identified were as follows: 1) documents reflecting internal analysis or discussion regarding the decommissioning of Vermont Yankee 2) documents reflecting Entergy's independent analysis during the due diligence process 3) final versions of valuation models and documentation reflecting how we calculated inputs for Entergy's valuation models and 4) corresponding emails between Entergy and TLG personnel that VYNPC received in a production from TLG."

6. "In conjunction with this notice, I was asked to revisit my files and determine whether I had any additional documents relating to VY that would specifically fall within any of the categories of information identified by counsel for VY."

7. "After reconsideration of materials known to me or that were in my possession, I informed Entergy's counsel that I had provided all documents that related to the acquisition of VY or that were otherwise responsive to the categories of information presented to me."

8. "Subsequent to that time, it came to my attention that certain documents existed in an electronic folder placed on a network drive. Upon further investigation, I

learned that these documents were located on a prior computer, and were placed in this folder when I received a new computer. Out of abundance of caution and in an effort to ensure that all documents associated with VY were disclosed, I presented these documents to counsel to determine if the documents were part of the previous production. I personally did not determine whether the documents were electronic duplicates of documents I previously produced."

9. "In response to contentions that Entergy has failed to produce decommissioning analyses relating to the VY acquisition, it is important to note that Entergy utilized the services of TLG to provide a decommissioning analysis for VY. At the time of this analysis, TLG was, and remains, an Entergy owned corporation. Further, Entergy's past experience relating to prior purchases of nuclear generating assets resulted in management requiring fewer analyses of this nature in the VY acquisition. Given that the analysis was being performed by an Entergy owned corporation combined with the higher level of confidence in evaluating potential purchases of nuclear generating assets, there was no need to generate as many internal models or documentation that were generated during our acquisition of Pilgrim."

10. "As a final matter, the purchase of VY was not a regulated activity and was the fifth nuclear generating asset purchase by Entergy. Other than documents relating to the final purchase, there was no business reason to retain preliminary documents once the final purchase documents were generated, so that any such documents that were maintained were maintained at the discretion of management or the individuals in possession of the documents. This would include email correspondence which is

purged automatically by the Entergy email system unless manually archived by the recipient."

Further affiant saith not.

Dan Keuter, VP,
Planning and Innovations

SUBSCRIBED AND SWORN TO before me on this 5th day of December 2007.

Lillian J. Kinnard
Notary Public
State of Mississippi
County of Hinds

Commission Expires: Jan 27, 2008

STATE OF ARKANSAS §
§
COUNTY OF POPE §

AFFIDAVIT OF CURT BREGAR

The undersigned, Curt Bregar, being first duly sworn on oath, states as follows:

1. "My name is Curt Bregar. I am over the age of twenty-one years, am of sound mind, and have personal knowledge of the statements made herein and that the facts are true and correct. I am competent to make this Affidavit."

2. "I am currently the Nuclear Safety Assurance Director at Arkansas Nuclear One."

3. "This Affidavit is filed in support of Entergy Nuclear Vermont Yankee, LLC's ("Entergy") response in opposition to Vermont Yankee Nuclear Power Corporation's ("VYNPC") Motion to Compel Complete Production of Documents as filed on November 7, 2007. Specifically, the purpose of this affidavit is to identify efforts taken by me to investigate the existence of documents for the purpose of responding to document requests served by VYNPC."

4. "In July, 2007, I reviewed requests served by VYNPC seeking to obtain documents relating to various issues surrounding the Vermont Yankee acquisition. I was asked to determine if I knew the location of, or had in my possession, documents responsive to VYNPC's requests. In response, I reviewed my personal files, which consisted primarily of electronic media, for documents which might in any way pertain to

VY. All documents that I located were turned over to Entergy's counsel in electronic format."

5. "On or about October 15, 2007, I received notice that counsel for VYNPC believed Entergy failed to produce certain documents. The categories of documents identified were as follows: 1) documents reflecting internal analysis or discussion regarding the decommissioning of Vermont Yankee 2) documents reflecting Entergy's independent analysis during the due diligence process 3) final versions of valuation models and documentation reflecting how we calculated inputs for Entergy's valuation models and 4) corresponding emails between Entergy and TLG personnel that VYNPC received in a production from TLG."

6. "In conjunction with this notice, I was asked to revisit my files and determine whether I had any additional documents relating to VY that would specifically fall within any of the categories of information identified by counsel for VY."

7. "After reconsideration of materials known to me or that were in my possession, I informed Entergy's counsel that I had provided all documents that related to the acquisition of VY or that were otherwise responsive to the categories of information presented to me."

Further affiant saith not.

Curt Bregar,
Director of Nuclear Safety Assurance

SUBSCRIBED AND SWORN TO before me on this 6th day of December 2007.

Kathy C. Rogers
County Of Pope
Notary Public - Arkansas
My Commission Exp. 07/15/2015

Kathy C. Rogers

Notary Public
State of Arkansas
County of Pope

Commission Expires: July 15, 2015

Exhibit 3

STATE OF MISSISSIPPI §
§
COUNTY OF HINDS §

AFFIDAVIT OF FRANK B. RIVES

The undersigned, Frank B. Rives, being first duly sworn on oath, states as follows:

1. "My name is Frank B. Rives. I am over the age of twenty-one years, am of sound mind, and have personal knowledge of the statements made herein and that the facts are true and correct. I am competent to make this Affidavit.

2. "I have been employed by the Entergy system ("Entergy") and its predecessor, the Middle South system, in various positions since 1982. My business address is 1340 Echelon Parkway, Jackson, Mississippi 39213."

3. "I am currently Director, Nuclear Fuels, for Entergy Services, Inc. I am responsible for overall direction of the nuclear fuel procurement program and of nuclear fuel cycle planning for the nuclear reactors in the Entergy system. My responsibilities include the development and implementation of the Company's/Entergy's nuclear fuel procurement strategy, the negotiation of contracts for nuclear fuel, and the financial analysis and planning involving these important aspects of the Company's/Entergy's utility business."

4. "This Affidavit is filed in support of Entergy Nuclear Vermont Yankee, LLC.'s ("Entergy") response in opposition to Vermont Yankee Nuclear Power

Corporation's ("VYNPC") Motion to Compel Complete Production of Documents filed on November 7, 2007. Specifically, the purpose of this affidavit is to outline efforts taken by me, in addition to the identification of actions by other Entergy staff, to investigate the existence of documents for provision to Entergy's counsel for the purpose of responding to document requests served by VYNPC."

5. "All documents that come into my possession relating to spent fuel issues for Entergy's nuclear fleet are scanned into an electronic database. The database also contains information relating to decommissioning and plant operation to the extent that the information is also relevant to issues pertaining to fuels. After reviewing requests served upon Entergy by VYNPC, I undertook to search the above referenced data base for documents and information related to spent fuel issues concerning VY. From my search, I collected and turned over to counsel all documents that were located relating to VY."

6. "I also have personal knowledge relating to documents collected by former Entergy employee, Ben Franklin. When he left his employment with the company, Mr. Franklin left behind documents relating to his work.

7. Subsequent to my initial production to counsel relating to this litigation, Mr. Franklin provided me an additional contract for the purchase of high density storage racks that I do not believe was previously produced. This document was not produced in response to VYNPC's original request as I inadvertently did not recheck outstanding data requests in this case to which this document might have needed to be a supplement. I have since provided this document to counsel for consideration in this

litigation. Otherwise, I am not currently aware of other responsive documents within my possession, custody or control."

Further affiant saith not.

Frank B. Rives

SUBSCRIBED AND SWORN TO before me on this 7th day of December 2007.

Notary Public
State of Mississippi
County of Hinds

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES FEB. 17, 2009
BONDED THRU STEGALL NOTARY SERVICE

Commission Expires: ______________

Exhibit 4

STATE OF MISSISSIPPI §
§
COUNTY OF HINDS §

AFFIDAVIT OF LEA TURNIPSEED

The undersigned, Lea Turnipseed, being first duly sworn on oath, states as follows:

1. "My name is Lea Turnipseed. I am over the age of twenty-one years, am of sound mind, and have personal knowledge of the statements made herein and that the facts are true and correct. I am competent to make this Affidavit."

2. "I am currently a Senior Staff Accountant in the Entergy Accounting Policy group."

3. "This Affidavit is filed in support of Entergy Nuclear Vermont Yankee, LLC's ("Entergy") response in opposition to Vermont Yankee Nuclear Power Corporation's ("VYNPC") Motion to Compel Complete Production of Documents as filed on November 7, 2007. Specifically, the purpose of this affidavit is to identify efforts taken by me to investigate the existence of documents for the purpose of responding to document requests served by VYNPC."

4. "In July, 2007, I was asked to determine if I knew the location of, or had in my possession, documents responsive to discovery requests provided by VYNPC relating to the acquisition of Vermont Yankee. In response, I reviewed my files, which consisted primarily of electronic media, for documents which might in any way pertain to

the acquisition of VY. I was unable to locate any documents responsive to this request, but expressed that I believed such would be maintained by other individuals who were involved in the acquisition."

5. "On or about October 15, 2007, I received notice that counsel for VYNPC believed Entergy failed to produce certain documents. The categories of documents identified were as follows: 1) documents reflecting internal analysis or discussion regarding the decommissioning of Vermont Yankee 2) documents reflecting Entergy's independent analysis during the due diligence process 3) final versions of valuation models and documentation reflecting how we calculated inputs for Entergy's valuation models and 4) corresponding emails between Entergy and TLG personnel that VYNPC received in a production from TLG."

6. "In conjunction with this notice, I was asked to revisit my files and determine whether I had any additional documents relating to VY that would specifically fall within any of the categories of information identified by counsel for VY."

7. "After reconsideration of materials known to me or that were in my possession, I informed Entergy's counsel that my position had not changed and that I was not in possession or control of documents related to the acquisition of VY or that were otherwise responsive to the categories of information presented to me."

Further affiant saith not.

Lea Turnipseed

Lea Turnipseed

SUBSCRIBED AND SWORN TO before me on this 6th day of December 2007.

M. KATHLEEN SULLIVAN, RANKIN COUNTY, MS
NOTARY PUBLIC
My Commission Expires February 9, 2011

M. Kathleen Sullivan
Notary Public
State of Mississippi
County of Hinds

Commission Expires: ____________

 **Exhibit 5**

STATE OF MISSISSIPPI §
§
COUNTY OF HINDS §

AFFIDAVIT OF DAVID GIBBS

The undersigned, David Gibbs, being first duly sworn on oath, states as follows:

1. "My name is David Gibbs. I am over the age of twenty-one years, am of sound mind, and have personal knowledge of the statements made herein and that the facts are true and correct. I am competent to make this Affidavit."

2. "I am currently employed by Entergy Systems Inc. in the department of Finance and Administration."

3. "This Affidavit is filed in support of Entergy Nuclear Vermont Yankee, LLC's ("Entergy") response in opposition to Vermont Yankee Nuclear Power Corporation's ("VYNPC") Motion to Compel Complete Production of Documents as filed on November 7, 2007. Specifically, the purpose of this affidavit is to outline efforts taken by me to investigate the existence of documents for the purpose of responding to document requests served by VYNPC."

4. "In July, 2007, I was asked to review documents in my possession for the purpose of responding to document requests by VYNPC relating to various issues surrounding the Vermont Yankee acquisition. I was asked to determine if I knew the location of, or had in my possession, documents responsive to VYNPC's requests. In response, I reviewed my personal files and those under my control as maintained by

employees under my supervision for documents which might in any way pertain to the VY acquisition. The information located consisted of electronic media. All documents that I located were turned over to Entergy's counsel. All documents in my possession or within my control relating to VY were in electronic format."

5. "On or about October 15, 2007, I received notice that counsel for VYNPC believed Entergy failed to produce certain documents. The categories of documents identified were as follows: 1) documents reflecting internal analysis or discussion regarding the decommissioning of Vermont Yankee 2) documents reflecting Entergy's independent analysis during the due diligence process 3) final versions of valuation models and documentation reflecting how we calculated inputs for Entergy's valuation models and 4) corresponding emails between Entergy and TLG personnel that VYNPC received in a production from TLG."

6. "In conjunction with this notice, I was asked to revisit my files and determine whether I had any additional documents relating to VY that would specifically fall within any of the categories of information identified by counsel for VY."

7. "After reconsideration of materials known to me or that were in my possession, I informed Entergy's counsel that I had provided all documents that related to the acquisition of VY or that were otherwise responsive to the categories of information presented to me."

8. "As an additional matter, it is important to note that it is a common and standard practice at Entergy to modify existing valuation models in contrast to saving a hard copy of a model each time a variable in the model is changed. There is also not a

business reason to maintain preliminary versions of models in the due diligence and bid formulation process leading to the potential purchase of an unregulated plant such as Vermont Yankee. Where such were maintained, they were maintained only at the request of management or in the discretion of the individuals who were in possession of such documents."

David Gibbs

SUBSCRIBED AND SWORN TO before me on this 6 day of December 2007.

M. KATHLEEN SULLIVAN, RANKIN COUNTY, MS
NOTARY PUBLIC
My Commission Expires February 9, 2011

Notary Public
State of Mississippi
County of Hinds

Commission Expires: ______________

Exhibit 6

STATE OF ARKANSAS §
§
COUNTY OF Jefferson §

AFFIDAVIT OF CONNIE WELLS

The undersigned, Connie Wells, being first duly sworn on oath, states as follows:

1. "My name is Connie Wells. I am over the age of twenty-one years, am of sound mind, and have personal knowledge of the statements made herein and that the facts are true and correct. I am competent to make this Affidavit."

2. "I am currently employed by ESI as Senior Staff Analyst for Transmission Compliance."

3. "This Affidavit is filed in support of Entergy Nuclear Vermont Yankee, LLC's ("Entergy") response in opposition to Vermont Yankee Nuclear Power Corporation's ("VYNPC") Motion to Compel Complete Production of Documents as filed on November 7, 2007. Specifically, the purpose of this affidavit is to identify efforts taken by me to investigate the existence of documents for the purpose of responding to document requests served by VYNPC."

4. "In July, 2007, I was asked to determine if I knew the location of, or had in my possession, documents responsive to discovery requests provided by VYNPC relating to the acquisition of Vermont Yankee. In response, I reviewed my files, which consisted primarily of electronic media, for documents which might in any way pertain to the acquisition of VY. I was unable to locate any documents responsive to this request,

or locate any other documentation within my custody or control relating to VY. However, I notified counsel that there may be documents responsive to this request in the project records files at Echelon."

5. "On or about October 15, 2007, I received notice that counsel for VYNPC believed Entergy failed to produce certain documents. The categories of documents identified were as follows: 1) documents reflecting internal analysis or discussion regarding the decommissioning of Vermont Yankee 2) documents reflecting Entergy's independent analysis during the due diligence process 3) final versions of valuation models and documentation reflecting how we calculated inputs for Entergy's valuation models and 4) corresponding emails between Entergy and TLG personnel that VYNPC received in a production from TLG."

6. "In conjunction with this notice, I was asked to revisit my files and determine whether I had any additional documents relating to VY that would specifically fall within any of the categories of information identified by counsel for VY."

7. "After reconsideration of materials known to me or that were in my possession, I informed Entergy's counsel that my position had not changed and that I was not in possession or control of documents related to the acquisition of VY or that were otherwise responsive to the categories of information presented to me."

Further affiant saith not.

Connie Wells

SUBSCRIBED AND SWORN TO before me on this 6th day of December 2007.

Briana McNeill
Notary Public
State of Arkansas
County of Jefferson

Commission Expires: 05/01/2016

BRIANA McNEILL
NOTARY PUBLIC
12347667
COM. EXP. 5/1/2016
JEFFERSON COUNTY, ARK

 **Exhibit 7**

STATE OF LOUISIANA §
§
PARISH OF ORLEANS §

AFFIDAVIT OF BARRETT GREEN

The undersigned, BARRETT GREEN, being first duly sworn on oath, states as follows:

1. "My name is Barrett Green. I am over the age of twenty-one years, am of sound mind, and have personal knowledge of the statements made herein and that the facts are true and correct. I am competent to make this Affidavit."

2. "I have been employed by the Entergy system ("Entergy") in various positions since 1997. My business address is 2001 Timberloch Place, The Woodlands, Texas 77380."

3. "I am currently Vice President, Commercial Analytics. I am responsible for Entergy's Investment Approval Process, Valuation Practice and Point of View (commercial assumptions) development."

4. "This Affidavit is filed in support of Entergy Nuclear Vermont Yankee, LLC.'s ("Entergy") response in opposition to Vermont Yankee Nuclear Power Corporation's ("VYNPC") Motion to Compel Complete Production of Documents filed on November 7, 2007. Specifically, the purpose of this affidavit is to provide information to the court relating to the distinctions between the nature and quantity of documents generated during the acquisition of Vermont Yankee Nuclear Power Station ("VY") and

those generated during the acquisition of previous plants such as Pilgrim Nuclear Power Station ("Pilgrim"). This explanation is necessary due to allegations by VYNPC that documents have been withheld by Entergy on the basis that certain documents were produced in separate litigation surrounding Pilgrim."

5. "The testimony provided in this affidavit is based upon a historical knowledge gained through my employment with Entergy regarding matters surrounding the Pilgrim acquisition and my personal participation in Entergy's acquisition of VY."

6. "The Pilgrim acquisition constituted Entergy's first purchase of a nuclear generating asset. Due to Entergy's limited experience in assessing and assimilating nuclear plants, part of the analysis conservatively assumed that the plant would be operated for only five years instead of the remaining life of the original 40-year license. This allowed for the plant to be shutdown in five years and decommissioned, or, if continued operation was deemed to be feasible and more profitable after Entergy was in possession of the plant, Entergy could continue to operate to the end of the license period. This 'optionality' was considered to be an upside to the base case and was a subjective factor in the assessment of the investment opportunity."

7. "Because of the short assumed lifetime for Pilgrim, the decommissioning event was a relatively large component of the cash flows of the plant on both an absolute and present value basis. As such, it merited substantial analysis due to both its materiality to the project and Entergy's relative inexperience in analyzing the decommission event in this context (outside a cost of service regulatory environment)."

8. "Due to the importance of the decommissioning component for Pilgrim, multiple modeling scenarios were created by the nuclear organization that were operationally oriented with an emphasis on decommissioning. Once the models sponsored by the nuclear organization were presented to corporate finance, more traditional cash flow models were developed to facilitate executive decision making and for presentation to the board."

9. "The determination of the value of the Pilgrim transaction was dependent on many variables and assumptions, one of which was the purchase price. In the case of the Pilgrim proposal that Entergy crafted for submission to the counterparty, a purchase price was assumed based on the discretion of the deal team and executive management and other components of the offer were adjusted."

10. "In contrast to the Pilgrim acquisition, Entergy had substantially more experience in evaluating and purchasing nuclear generating assets, and the advisors to the sellers (i.e., Investment Bankers or Auction Managers) had become more experienced in running a process for the sale of nuclear generating assets. The financial models and evaluation methods utilized for the VY purchase reflected different standards that were continuing to evolve as Entergy's experience in acquiring nuclear generating assets increased. The assumption of a much longer remaining life for VY pushed the decommission event much further into the future, and on a present value basis it provided a much smaller impact to value. As such, the decommissioning event received less analysis relating to the VY acquisition, both because it was a less material component of the value and because Entergy had substantially more experience in

analyzing the decommissioning event in this context (outside a cost of service regulatory environment). For this reason, the nuclear organization was asked to present fewer scenarios relating to operational and decommissioning costs that were then factored into a financial model submitted to the board for consideration."

11. "As in the Pilgrim transaction, the determination of the value of the VY transaction was dependent on many variables and assumptions, one of which was the purchase price. However, in contrast to the Pilgrim proposal, in the VY proposal that Entergy crafted for submission to the counterparty, the deal team and executive management used the purchase price as one of the last variables to be set, so that it was treated more as an output than an assumption."

12. "For the above reasons, it is improper for VYNPC to use the Pilgrim transaction as a basis to assert that Entergy is withholding documents relating to VY. The distinctions between the Pilgrim and VY transactions, including Entergy's experience and evolving methods, are such that it is an unreasonable assumption that the existence of documents relating to one transaction equates to the existence of identical documents relating to a subsequent transaction."

Further affiant saith not.

Barrett Green

SUBSCRIBED AND SWORN TO before me on this 6th day of December 2007.

Mark Grafton Otts
Notary Public
State of Louisiana
Parish of Orleans
Attorney Bar Roll No. 10280
My Commission expires at my death.