IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| VERMONT YANKEE NUCLEAR POWER CORPORATION,<br><br>and<br><br>ENTERGY NUCLEAR VERMONT YANKEE, LLC, et al.,<br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | Nos. 02-898C & 03-2663C<br>(Judge Wheeler) |

**RESPONSE BY PLAINTIFFS ENTERGY NUCLEAR VERMONT YANKEE, LLC AND ENTERGY NUCLEAR OPERATIONS, INC. TO DEFENDANT'S RENEWED MOTION FOR JOINDER**

Plaintiffs Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc. (collectively for these purposes, "Entergy" or "ENVY") respectfully respond to Defendant's Motion for Joinder, filed on March 19, 2008. For the reasons described below, Entergy opposes the government's renewed motion for joinder.

As the government acknowledges, the joinder that the government seeks under RCFC 19(a) would only be appropriate "if, without joinder, a party would have substantial risk of inconsistent liabilities." 3/19/08 Def. Mot. at 4. The Court has already carefully considered the concerns raised in the government's most recent motion, and the current limited joinder order and coordinated discovery in which the parties are presently engaged are more than sufficient to guard against any risk of inconsistent liabilities. Moreover, Entergy anticipates that any eventual risk of inconsistent liabilities on the part of the government will, in the very near future, be fully addressed—indeed eliminated—as a pretrial matter. The argued predicate for the government's

renewed motion will therefore cease to exist. Joinder at this stage of the proceedings would therefore, Entergy respectfully suggests, result in inefficiencies and increased costs for all parties and for the Court, and would not further the interests of "pragmatism" and "practicality" that the government acknowledges to be the "watchwords" of the Rule 19 inquiry. 3/19/08 Def. Mot. at 5, *quoting Schutten v. Shell Oil Company,* 421 F.2d 869, 874 (5th Cir. 1970). Accordingly, Entergy respectfully requests that the government's most recent joinder motion again be denied without prejudice, or, in the alternative, stayed pending resolution of assignment of claims issues that Entergy expects to be presented to the Court after the conclusion of depositions that are currently scheduled to occur next week.

**DISCUSSION**

It is true that portions of the claims that plaintiff Vermont Yankee Nuclear Power Company ("VYNPC") currently purports to pursue in Case No. 02-898C are the same as the pre-closing damages that Entergy will seek to recover in Case No. 03-2663. Indeed, the Court previously predicted such a scenario, and encouraged the parties to consider motions for partial summary judgment or motions *in limine* "to address as a pretrial matter the disagreements between the Plaintiffs regarding the assignment of claims and any overlapping claims." (March 1, 2007 Order and May 23, 2007 Order, docket items 94 & 97, at p. 3 ¶ 3.). That approach, rather than the government's renewed joinder proposal, would be the most efficient and pragmatic method by which to address the government's concerns.

Since the Court's scheduling orders last spring, VYNPC and the government have had the opportunity to develop an extensive factual record regarding the Vermont Yankee Purchase and Sale (P&S) Agreement and assignment of claims issues, through multiple depositions and

document discovery.[1] Additional depositions of Entergy regarding P&S Agreement issues under Rule 30(b)(6) are currently scheduled to be completed by April 16, 2008. Upon the completion of those depositions, Entergy anticipates following the Court's sensible suggestion to address, as a pretrial matter, the disagreements between VYNPC and Entergy regarding assignment of claims and any overlapping claims, and to file an appropriate motion regarding such issues.

A. *VYNPC's purported "pre-closing" claims.* Since the Court's scheduling orders in March and May of 2007, VYNPC has made clear, through various filings and discovery requests, that it seeks contractual damages for pre-closing expenditures related to storage of spent nuclear fuel that were substantially caused by DOE's failures. More specifically, VYNPC seeks recovery of costs expended in 2000-2001 in connection with a racking project that increased the capacity of the spent fuel pool at the plant, which was necessitated by DOE's breach and the continued operation of the plant. This is so despite this Court's eminently correct ruling that "[p]ursuant to Article II, Section 2.1(n) of the P&S Agreement, Vermont Yankee assigned that right, *i.e.,* the 'pre-existing claim,' to ENVY." *Vermont Yankee Nuclear Power Corporation v. United States*, 73 Fed. Cl. 236, 241-42 (2006).

VYNPC seems simply to ignore the fact that the only possible claims it reserved for itself under the P&S Agreement were those "related to the one time fee with respect to fuel used to generate electricity prior to April 7, 1983." P&S Agreement, section 2.1(n).[2] There is, of course, no plausible argument that dollars actually spent to expand the storage capacity of the

[1] Although VYNPC continues to complain about alleged difficulties in securing discovery from ENVY, those complaints are (a) quite unfounded, and (b) in any event concern valuation and due diligence materials that ENVY was under absolutely no legal or other obligation to maintain prior to January 30, 2004, but which nevertheless go to (if anything) the merits of VYNPC's purported diminution in value claims, not the metes and bounds of assignment issues.

[2] The P&S Agreement is a part of the record in this case, in filings upon which the Court ruled in *Vermont Yankee Nuclear Power Corporation v. United States*, 73 Fed. Cl. 236 (2006)

spent fuel pool in 2000-2001 to support continued operation of the plant were in any way "related to the one time fee with respect to fuel used to generate electricity prior to April 7, 1983," and therefore retained by VYNPC. VYNPC is not, therefore, the proper party to be seeking the pre-closing damages from the government—ENVY is. This Court clearly has the ability to determine the proper party to assert competing or overlapping private claims,[3] and Entergy anticipates asking the Court for such a ruling in the very near future. Such a ruling will eliminate any possibility of inconsistent liabilities on the part of the government with regard to pre-closing damage claims.

B. *VYNPC's purported "diminution-in-value" claims*. When it filed its motion for leave to file an amended complaint on January 30, 2004, VYNPC for the first time asserted claims related to the sale of the Vermont Yankee plant and, more specifically, claims associated with the alleged "diminution in value" of the plant. ENVY does not agree with all of the government's various characterizations of VYNPC's "diminution-in-value" claims and associated arguments for joinder, and in particular, for example, with the notion that "under Vermont Yankee's theory of damages, ENVY has already been compensated, at least in part, for DOE's delay." 3/19/08 Def. Mot. at 10. However characterized, however, VYNPC's purported "diminution in value" claims do not warrant joinder, because, again, VYNPC has not retained the right to pursue such claims. Any purported risk of double recovery will therefore be eliminated when the Court rules upon the remaining, discrete, assignment issues left open in the case. *See Vermont Yankee*, 73 Fed. Cl. at 242. Moreover, the government's assertions of

[3] *E.g., Great American Ins. Co. v. United States,* 397 F.2d 289 Ct. Cl. 1968); *American Renovation & Construction Co. v. United States*, 65 Fed. Cl. 254, 261-62 (2005); *Whitney Benefits, Inc. v. United States*, 25 Cl. Ct. 232, 233-34 (1992)

overlapping claims in this regard are, in any event, legally misplaced, and the requested joinder should be denied for that additional reason as well.

1. First, as with the pre-closing claims, VYNPC's purported diminution-in-value claims cannot plausibly be said to be "related to the one time fee with respect to fuel used to generate electricity prior to April 7, 1983," and therefore retained by VYNPC. VYNPC is not, therefore, a proper party to be seeking such damages from the government. As with the pre-closing claims, the most efficient way to address the double recovery concerns raised in the government's most recent motion (assuming without conceding that such concerns had some basis—see below) is, as the Court has suggested, to resolve the precise scope of the assignment as a threshold, pretrial matter.

These circumstances are quite unlike those in *Boston Edison*, where the transfer to the buyer expressly excluded "any claims of Seller related or pertaining to the [DOE's] defaults under the DOE Standard Contract accrued as of the Closing Date." *Boston Edison Co. v. United States*, ---Fed. Cl.---, Nos. 99-447C & 03-2626C, 2008 WL 445820 (Feb. 20, 2008). The seller in *Boston Edison* was therefore held to have retained its diminution in value claims, which the Court further held to have accrued prior to the closing date. The present circumstances, by contrast, are more akin to *Delmarva Power & Light Co. v. United States*, 79 Fed. Cl. 205 (2007), where the seller of the power station in that case assigned to the buyer:

> All claims of Seller relating to or pertaining to the Department of Energy's defaults under the Department of Energy Standard Contract . . . accrued prior to, on or after the Closing date, and all other claims of Seller against the Department of Energy with respect to, arising out of or in connection with the Purchased Assets . . .

*Id.* at 216. Based on this language, the Court held in *Delmarva Power & Light* that "[n]o dispute can be marshaled that the plain language of this provision expressly assigns the right to

pursue breach of contract claims against DOE for its failure to take SNF." *Id.* at 216. The transfer language from *Delmarva Power & Light* is remarkably similar to that here, save for the "carve out" regarding claims relating to the "one time fee." VYNPC will not, however, be able even to articulate a coherent theory of why the same sort of diminution in value claims pursued in *Boston Edison,* and VYNPC purports to pursue here, relate to the "one time fee." Resolution of the remaining assignment issues not already resolved by the Court will therefore eliminate VYNPC's right to pursue the diminution in value claims about which the government complains, and eliminate any purported double recovery concerns on the part of the government.

2. Second, diminution in value claims, even assuming for the moment that they could be asserted by VYNPC here, do not present a risk of inconsistent liabilities on the part of the government, and therefore do not warrant additional joinder. With respect to the alleged overlap of claims, it appears that what the government contemplates is an argued reduction of ENVY's actual, incurred, out-of-pocket damages, assuming recovery by VYNPC pursuant to its diminution in value theory. The argued reduction would not be upon the basis of any loss avoided due to ENVY not having to perform its own contractual obligations, but, rather, due to arguments about alleged benefits conferred by DOE's breach. The law, however, does not allow for such reductions.

There are a host of problems with the government's position. For example, to the extent there is a "diminished asset" here, that asset still suffers from a "diminished" value, and ENVY has not in any way been "compensated" by acquiring the still-burdened asset. Moreover, to the extent there was an argued benefit to ENVY, that benefit resulted from a collateral source (*i.e.,* the sale of the plant), and the government is therefore not entitled to reduce its liability upon that basis. *E.g.,* 3 *Dobbs: Law of Remedies, §* 3.8(1) (2d ed. 1993).

Damages are offset by avoided losses only if the offset is related to a party's required performance under the contract and is not speculative. In particular, "any cost or other loss that [the non-breaching party] has avoided by not having to perform" must be subtracted from his damages. Restatement (Second) of Contracts § 347 (1981) (emphasis added). For example, "when a building contractor is wrongfully prevented from completing construction, the cost of completion that is saved is deducted from the contract price to which the contractor would have earned by full performance." Corbin on Contracts, Vol. 11, §57.10. And "when an employee is wrongfully discharged, the value of the employee's time and opportunity to work elsewhere is deducted from the promised wages that the employee would have earned if the discharge had not occurred." *Id.* In other words, "[t]he only saving that is to be deducted is the saving of expense with respect to performance by the plaintiff that the defendant's breach has made unnecessary." *Id.*; *see also* Restatement (Second) of Contracts § 347 cmt. d (1981) ("Loss avoided is subtracted only if the saving results from the injured party not having to perform rather than from some unrelated event." (emphasis added)). *Cf., Dominion Resources, Inc. v. United States*, 77 Fed. Cl. 151, 157 (2007) (argued damage reductions for "benefits" conferred not applicable where no "substitute transaction" implicated).

Here, purported losses avoided by ENVY due to alleged "diminution-in-value" of the plant, even accepting for the moment that such diminution could actually be shown, would not have resulted from ENVY's contractual performance being rendered unnecessary by DOE's breach. The only relevant contractual "performance" by ENVY, of course, is the payment of fees, which ENVY continues dutifully to submit to DOE every quarter. Even if VYNPC were to recover, no "offset" against ENVY would be allowed, no risk of double recovery against the government is presented, and no joinder is therefore warranted. In short, the contention by the

government that there are duplicative or overlapping claims as a result of VYNPC's diminution in value theory is misdirected, and does not warrant "joinder" beyond that already ordered by the Court.

## CONCLUSION

For the reasons stated above, Entergy respectfully requests that the government's motion be denied without prejudice, or, in the alternative, stayed pending resolution of assignment of claims issues that Entergy expects to be presented to the Court in the near future, after the conclusion of depositions scheduled to occur next week.

Date: April 7, 2008

Respectfully submitted,

s/ Brad Fagg
Brad Fagg
MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-5191 (Phone)
(202) 739-3001 (Fax)

*Counsel of Record for Plaintiffs Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc.*

Of Counsel:

L. Jager Smith, Jr.
WISE CARTER CHILD
& CARAWAY, P.A.
1340 Echelon Parkway
Jackson, MS 39213
(601) 368-5572 (Phone)
(601) 368-5816 (Fax)

**CERTIFICATE OF FILING**

I hereby certify that on this 7th day of April, 2008, a copy of the foregoing Plaintiffs' Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc.'s Response to Defendant's Renewed Motion for Joinder was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic case filing system. Parties may access this filing through the Court's system.

s/ Brad Fagg