IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| VERMONT YANKEE NUCLEAR POWER CORPORATION, and ENTERGY NUCLEAR VERMONT YANKEE, LLC, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | ) | Nos. 02-898C & 03-2663C (Judge Wheeler) |

**PLAINTIFF VERMONT YANKEE NUCLEAR POWER CORPORATION'S OPPOSITION TO DEFENDANT'S MOTION FOR JOINDER OF PLAINTIFFS ENTERGY NUCLEAR VERMONT YANKEE, LLC AND ENTERGY NUCLEAR OPERATIONS, INC.**

Plaintiff Vermont Yankee Nuclear Power Corporation ("VYNPC") opposes the Government's motion to join VYNPC's claims brought in *Vermont Yankee Nuclear Power Corporation v. United States*, No. 02-898C (Fed. Cl.) with the claims brought by plaintiffs Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc. (collectively "ENVY") in *Entergy Nuclear Vermont Yankee, LLC, et al. v. United States*, No. 03-2623C (Fed. Cl.).

Joinder of the claims brought by VYNPC and ENVY would be both inappropriate and unnecessary, for several independent reasons. First and foremost, the Government incorrectly argues that Rule 19 of the Rules of the United States Court of Federal Claims ("RCFC") "requires" the Court to join the claims in these two cases. Rule 19 requires joinder in cases where failure to join a nonparty would "leave any of the persons already parties subject to a *substantial* risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the [nonparty's] claimed interest." RCFC 19(a)(ii) (emphasis added). Here, no "substantial"

risk of incurring multiple or inconsistent obligations exists, because the respective claims are pending in two cases at the same court and *before the same judge*.

Second, the Government incorrectly alleges that the VYNPC and ENVY claims substantially overlap. The VYNPC and ENVY claims in the main are very different types of claims, covering different time periods and requiring very different types of evidence for proof at trial. VYNPC's claims are mainly for diminution in value to the Vermont Yankee Nuclear Power Station ("Power Station") resulting from the Department of Energy's ("DOE") breach of the Standard Contract. VYNPC received less when it sold the Power Station than it would have received absent DOE's breach. All of VYNPC's damages claims were fixed as of the time of the sale. ENVY's claims, in contrast, are mainly for actual expenses incurred *after* the sale due to DOE's breach. VYNPC's damages are based on the manner in which DOE's breach impacted the amount ENVY would pay for the Power Station due to ENVY's anticipation, at the time of the sale, of amounts it would incur to store spent nuclear fuel ("SNF"), and other risks associated with purchasing the plant with little confidence about when, if ever, DOE would finally collect SNF. ENVY's damages are based on expenses that it has actually incurred since purchasing the Power Station. The time periods involved and the type of evidence needed to present the VYNPC and ENVY claims are completely different. Full joinder of the claims for purposes of trial would make for highly confusing and inefficient proceedings, for no good reason.

Finally, joinder is not necessary to protect defendant against the possibility of duplicative or inconsistent obligations. This is not the only set of buyer and seller SNF cases that has been filed in this Court. Although defendant has expressed similar concerns in other diminished value cases brought before this Court, this Court has never found it necessary to join the buyer and seller claims or otherwise fully consolidate the buyer and seller cases. To the contrary, this Court has repeatedly rejected the Government's requests for full consolidation of

these cases. For example, in *Boston Edison Co. v. United States*, 67 Fed. Cl. 63 (2005), the Court rejected the Government's request for full consolidation, and granted consolidation only for limited purposes. While the Court acknowledged that "the possibility of an overlapping recovery deserves serious consideration" in the context of buyer and seller SNF cases, *id.* at 66, the Court ultimately determined that the Government would be sufficiently protected from the possibility of overlapping recovery without full consolidation. The reason for this is apparent. Buyer and seller SNF cases regarding the same facility are related cases that are typically assigned to a single judge. A single judge can ensure that findings, judgments, and obligations in two related cases are consistent without necessarily subjecting the court and the multiple parties to a single unduly complicated trial. That was the case in the trial on the merits in *Boston Edison*, and that is certainly the case here.

## DISCUSSION

### I. NO SUBSTANTIAL RISK OF DUPLICATIVE DAMAGES OR INCONSISTENT OBLIGATIONS EXISTS IN THESE CASES THAT ARE PENDING BEFORE THE SAME JUDGE

In attempting to convince the Court that joinder is required here, defendant emphasizes the "mandatory" nature of joinder under RCFC 19, comparing it with the discretionary nature of the rules governing consolidation. Defendant's Motion for Joinder of Plaintiffs Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc. ("Mot.") 4. Although RCFC 19 mandates joinder if certain conditions exist, those conditions do not exist here. Defendant does not explain how there can be a "substantial risk of duplicative damages," Mot. 8, where the claims it seeks to join are being litigated in the same court and before the same judge, in proceedings that have been partially consolidated. The unstated but implicit assumption underlying defendant's argument – that the single judge assigned to the VYNPC and ENVY cases cannot ensure that judgments in the two cases are consistent – is absurd. This is

exactly what the judge in *Boston Edison* did, and the Government cannot explain what would render this Court incapable of doing the same thing.

Although defendant cites many cases addressing Rule 19, none of the cases involve situations where the same judge is presiding over the two cases at issue. Indeed, none of the cases even involve two cases that are pending in the same court. *See, e.g., Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 706 (3d Cir. 1996) (similar action was pending in state court, which could subject defendant to multiple or inconsistent obligations); *Estrella v. V & G Mgmt. Corp.*, 158 F.R.D. 575, 577 (D.N.J. 1994) (numerous lawsuits had also been filed in state court regarding the same bus accident); *Whyham v. Piper Aircraft Corp.*, 96 F.R.D. 557, 560 (M.D. Pa. 1982) (defendant could be subject to future suits which would subject it to multiple or inconsistent obligations; necessary and indispensable parties were not litigants in other cases before the court); *Schutten v. Shell Oil Co.*, 421 F.2d 869, 873-74 (5th Cir. 1970) (a judgment could result in inconsistent obligations for defendant, where indispensable parties could not be joined in federal action without defeating diversity of citizenship jurisdiction); *Window Glass Cutters League of America, AFL/CIO v. American St. Gobain Corp.*, 47 F.R.D. 255, 258 (W.D. Pa. 1969) (defendant likely faced two separate arbitration proceedings under separate union contracts; necessary additional defendant was not already before the court).

As the Third Circuit has stated, in a case cited by the Government, Rule 19(a)(2)(ii) "was enacted to protect parties from a 'substantial' risk of multiple or inconsistent obligations, not merely a possible risk." *Sindia Expedition, Inc. v. Wrecked and Abandoned Vessei, Known as "The Sindia"*, 895 F.2d 116, 122 (3d Cir. 1990). The Government's risk of inconsistent obligations can hardly be considered to be "substantial," where the same court, and the same judge, is presiding over both cases. Indeed, courts have held that where suits are pending before the same judge, or when the current presiding judge is aware of the alternative proceedings,

joinder is unnecessary. *See Lowry Economic Redevelopment Authority v. United States*, 71 Fed. Cl. 549, 552 (2006) (Wheeler) (holding that although the pending case and another pending suit could conclude with inconsistent results, "Defendant has achieved its purpose of alerting the Court to the common issues in these cases . . ., and therefore its fears of a double recovery by plaintiffs are premature. To the extent Defendant is found liable in the earlier of the two cases to be decided, the Government is free to brief the Court in the remaining case appropriately."); *Western Maryland Railway Co. v. Harbor Ins. Co.*, 910 F.2d 960, 963-64 (D.C. Cir. 1990) (joinder unnecessary where the two cases "are pending before the same district judge, and he has treated the cases consistently . . . . The district judge can guarantee in both cases that the . . . . total obligations extend only to the aggregate limits.").

In arguing that Rule 19(a)(ii) "requires" joinder of the VYNPC and ENVY claims, defendant is either ignoring the rule that only a "substantial" risk of inconsistent obligations requires joinder, or arguing that the risk is substantial notwithstanding that the claims are before the same judge. Both arguments are wrong. Rule 19(a)(ii) does not require joinder of claims based on merely possible or hypothetical risks. In the cases cited by defendant, the risk of inconsistent judgments was real because the claimants were not all in the same court. Here, to the extent that there are any alleged inconsistencies between the VYNPC and ENVY claims, defendant provides no support or explanation for the absurd proposition that this Court is incapable of addressing the inconsistencies and determining which claims are correct.

## II. BECAUSE VYNPC AND ENVY ARE PURSUING CLAIMS THAT LARGELY ENTAIL DIFFERENT TIME PERIODS, DIFFERENT THEORIES, AND DIFFERENT EVIDENCE NEEDED FOR PROOF, JOINDER WOULD BE PREJUDICIAL

In arguing for joinder of the VYNPC and ENVY claims, defendant incorrectly alleges that the VYNPC and ENVY claims substantially overlap. VYNPC is pursuing claims that are based on the Government's partial breach of the Standard Contract through July 31, 2002, the

date that VYNPC sold the Power Station to ENVY. In contrast, ENVY's damages claims are based in large part on the Government's continuing breach subsequent to the sale. These different time periods are reflected by the different nature of the VYNPC and ENVY claims; the fundamental differences in the types of claims presented by VYNPC and ENVY would render joinder prejudicial to VYNPC.

VYNPC is pursuing claims that accrued as of its sale of the Power Station on July 31, 2002, to the extent related to fuel used to generate electricity prior to April 7, 1983. By far the most significant portion of VYNPC's claim is the diminution in value damages suffered when it sold the Power Station to a buyer who was aware of DOE's breach of the Standard Contract and undoubtedly accounted for the breach in determining the price it was willing to pay. On July 31, 2002, VYNPC received less for the sale of the Power Station than it would have received had DOE not breached the Standard Contract.

All of VYNPC's claims for damages became fixed at the time of the sale, meaning that nothing occurring after the sale could undo the harm to VYNPC caused by DOE's partial breach of the Standard Contract during the period from January 31, 1998 through July 31, 2002. That is because VYNPC's damages resulted from events that took place, and from the facts as they were known, prior to and through the time of the sale.

ENVY's claims, in contrast, are primarily for costs it has incurred since it purchased the Power Station and, ultimately, for costs that it will continue to incur for the foreseeable future due to the indeterminate time and circumstances of DOE's future performance. ENVY is pursuing what has become known as a "cancelled check" claim, based on costs as they were actually incurred. This is a fundamentally different claim from the claim being pursued by VYNPC, because the ENVY claim focuses on the costs actually incurred, and the evidence will need to address the engineering reasons leading to these costs, whether these costs were

necessary and reasonably incurred, and whether costs were incurred for products or services beyond the storage needs caused by the DOE's breach. Thus, while events occurring after July 31, 2002 are completely irrelevant to VYNPC's claims, such post-sale events are critical and central to the claims that ENVY is asserting.

Because the claims asserted by VYNPC and ENVY are, in large part, fundamentally different, joinder of the cases for a single trial would not facilitate judicial economy. Rather, joinder would create an unwieldy trial and would prejudice the plaintiffs by forcing them to litigate issues that are irrelevant to their claims. VYNPC would be required to be involved in the discovery and litigation of all these cancelled check costs incurred by ENVY, when VYNPC had no involvement in the incurrence of those costs. If joinder is granted, all the evidence developed in those proceedings would somehow be "relevant" to the VYNPC case in some unknown fashion, thus requiring VYNPC to expend substantial costs and time to be involved in the ENVY case proof. VYNPC should not be required to attend what is likely to be very lengthy discovery and trial activity focusing on events that took place after the July 31, 2002 sale, and which therefore have no bearing on VYNPC's claims.

ENVY's case entails its attempt to recover for SNF storage costs and other mitigation costs that have for the most part been incurred subsequent to July 31, 2002 sale. It would be needlessly expensive and time consuming for VYNPC's discovery and trial proceedings to entail documents and testimony regarding ENVY's expenditures during the last five years, which have absolutely nothing to do with VYNPC's claims. The presentation of such evidence in the same proceedings that must address the facts *relevant* to VYNPC's claims – the parties' actions related to and leading up to the sale of the Power Station on July 31, 2002 – would be extremely convoluted for the parties and for the Court, for no good reason. Yet, if the Court joins these fundamentally different claims for purposes of trial, that is exactly what will happen.

## III. DEFENDANT'S CONCERNS ABOUT AVOIDING INCONSISTENT JUDGMENTS CAN BE ADDRESSED WITHOUT JOINDER OF CLAIMS

Although SNF cases often raise common issues of law and fact, this Court has consistently found that the prejudice that would be caused by complete consolidation outweighs any benefits of such consolidation. For this reason, this Court has resisted the Government's frequent requests for consolidation. For example, on January 30, 2004, the Chief Judge denied the Government's "Second Motion to Renew its Motion to Consolidate," in which the Government sought consolidations of all SNF cases then pending before the Court. *See* Exhibit 1. Moreover, in SNF cases involving nuclear facilities that have been sold, the Court has never joined the respective buyer and seller claims or otherwise completely consolidated their cases. For example, in *Consolidated Edison Company of New York, Inc. v. United States*, No. 04-0033C, this Court has twice denied the Government's motions to consolidate claims of the buyer and seller. *See* November 4, 2004 Order in *Consolidated Edison Company of New York, Inc. v. United States*, No. 04-0033C (transferring related cases brought by buyer and seller to same judge, but denying the Government's motion to consolidate) (Exhibit 2); November 2, 2005 Order in *Consolidated Edison Company of New York, Inc. v. United States*, No. 04-0033C (denying the Government's renewed motion to consolidate) (Exhibit 3).

Although defendant cites *Boston Edison Co., supra,* for the proposition that consolidation is appropriate to prevent separate actions from producing conflicting results, Mot. 9, defendant fails to point out that the court in *Boston Edison* consolidated the buyer and seller cases *for limited purposes*, and did *not* grant full consolidation or joinder of claims. Rather, the court granted in part and denied in part the Government's motion to consolidate, and consolidated the buyer and seller cases for the limited purpose of addressing issues concerning contract formation, contract implementation through the date of sale, the seller's diminution in value claim and the Government's attendant offset claim against the buyer. In the recently

issued decision on the merits, *Boston Edison Co. v. United States*, 80 Fed. Cl. 468 (2008), only the seller's claims were decided – the Court did not conduct a single trial to cover all of the buyer and seller claims, as the Government seems to be seeking here.

Nothing that happened in the *Boston Edison* case supports the proposition that joinder is appropriate here. In fact, while defendant cites to the court's statement during closing arguments in *Boston Edison* that "'[the Government] shouldn't have to pay twice for the something either just because the plant was sold,'" Mot. 9-10, this certainly does not support the proposition that the claims here must be joined. In fact, the statement reflects exactly the opposite – that a judge on the Court of Federal Claims is perfectly capable of handling two related cases and recognizing when findings in one case have implications for the other. That is exactly what happened in *Boston Edison* – the Court decided that the Government's assertion of a setoff, to prevent double recovery, would not be addressed in the *Boston Edison* action, but would be addressed in Entergy's case. "Any offset the government might pursue against Entergy should be addressed in an action or actions brought by Entergy to recover amounts expended by Entergy to mitigate DOE's breach of Pilgrim's Standard Contract." *Boston Edison Co*., 80 Fed. Cl. at 495.

This Court has similarly recognized that it can account for the implications that findings in one case have in another, stating that "the risk of inconsistent results is probably handled from the fact that the same judge is deciding the cases relating to the same power plants, and I'm confident that we can deal with that." Hear'g Tr. 44:25-45:3 (Feb. 6, 2006). See *also Vermont Yankee Nuclear Power Corp. v. United States*, 73 Fed. Cl. 236, 242 (2006) ("Certainly the Court will be sensitive to Defendant's legitimate concern that the Government not be subjected to a double payment of the same damages to two different plaintiffs.").

The Court has consolidated the cases here for purposes of deciding summary judgment motions and discovery; this has worked effectively. A limited consolidation of certain aspects of the cases for purposes of trial, similar to *Boston Edison*, may be appropriate as well. For example, events leading up to the sale of the Nuclear Station and the extent to which VYNPC assigned claims to Entergy might efficiently be resolved in one proceeding. However, there is no reason to force plaintiffs asserting fundamentally different damages claims, covering different timeframes, and entailing different types of evidence for proof, to present their damages cases in a single trial.

## CONCLUSION

For the reasons set forth above, defendant's motion to join the VYNPC and ENVY claims should be denied.

Date: April 7, 2008

Respectfully submitted,

s/Richard J. Conway
Richard J. Conway
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
(202) 420-2200 (Phone)
(202) 420-2201 (Fax)

*Counsel of Record for Plaintiff Vermont Yankee Nuclear Power Corporation*

Of Counsel:

Scott Arnold
Nicholas W. Mattia, Jr.
Bradley D. Wine
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
(202) 420-2200 (Phone)
(202) 420-2201 (Fax)

**CERTIFICATE OF FILING**

I hereby certify that on this 7th day of April, 2008, a copy of the foregoing "PLAINTIFF VERMONT YANKEE NUCLEAR POWER CORPORATION'S OPPOSITION TO DEFENDANT'S MOTION FOR JOINDER OF PLAINTIFFS ENTERGY NUCLEAR VERMONT YANKEE, LLC AND ENTERGY NUCLEAR OPERATIONS, INC." was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic case filing system. Parties may access this filing through the Court's system.

s/Scott Arnold
Scott Arnold

# EXHIBIT 1

ORIGINAL

# In the United States Court of Federal Claims

No. 98-126 C
(Filed: January 30, 2004)

FILED
JAN 30 2004
U.S. COURT OF FEDERAL CLAIMS

*************************************
YANKEE ATOMIC ELECTRIC CO., *
Plaintiff, *
v. *
THE UNITED STATES, *
Defendant. *
*************************************

## ORDER

On July 30, 2003, Defendant filed a Second Motion to Renew its Motion to Consolidate in the set of cases before the Court informally referred to as Spent Nuclear Fuel (SNF) cases. Although the motion was officially docketed in this case, the first-filed of the SNF cases, it was captioned in the name of all of the 21 then-pending SNF cases and addressed to the Chief Judge for determination.

In the motion, the Government requests renewed consideration of its previous motions to consolidate these cases, although its instant motion seeks consolidation in particular "for the purposes of deciding schedule issues."

A brief recitation of the history of this motion is in order. Defendant first raised the issue of consolidation before a single judge by motion in January 2001. In May 2001, then-Chief Judge Baskir assigned the matter to Judge Wiese as managing judge for consideration. The parties ultimately agreed to a plan of consolidated discovery. In August 2001, Judge Wiese in turn assigned Judge Sypolt (then Weinstein) to preside over the consolidated discovery. Subsequent to the conclusion of consolidated discovery in the fall of 2002 , Defendant – in February 2003 – renewed its motion for consolidation before a single judge. Upon review of a court-requested joint status report from the parties and discussion among the judges of the court presiding over the then-21 SNF cases, the Chief Judge issued an order on April 16, 2003, identifying six of the cases as "lead" or "accelerated" cases for the resolution of certain

B 755

dispositive motions and directing that the remaining cases be stayed, although such stays could be lifted at the discretion of any of the presiding judges. The Order of April 16, 2003, stayed any decision on the renewed motion to consolidate before a single judge. In the meantime, opinions on dispositive motions in five of the six lead cases have been issued by the respective presiding judges. These five cases have also been scheduled for trial on damages.

Consolidation of all the SNF cases would be an extraordinary action The Chief Judge's authority to order consolidation would only be pursuant to Rule 40.1(c) ("Assignment and Transfer of Cases") of the Rules of the Court of Federal Claims (RCFC), as circumscribed by the prescriptions of RCFC 40.2 ("Related Cases), 42 ("Consolidation; Separate Trials"), and 42.1 ("Motions to Consolidate").

As of this date, the Court now has before approximately 55 SNF cases. Given the posture of the six "lead" cases designated in the Court's Order entered on April 16, 2003, and the grant of summary judgment in favor of the plaintiff on acceptance rate, entered June 27, 2003, in the lead case of *Indiana Michigan Power Co. v. United States*, # 98-486 C, the Court determines that consolidation – even as to the particular issues of rate of acceptance and schedule of acceptance – would not effectuate any greater efficient administration of justice than that of letting the six lead cases proceed with their dispositive motions and/or trial on damages. The Court hereby **DENIES** Defendant's motion to renew its motion to consolidate as well as its previous motions relating to consolidation. The Court further **LIFTS THE STAY** of the remainder of the cases to which the Order of April 16, 2003, applied.

The Clerk of the Court is directed to docket this Order in this case with an entry noting the same on the dockets of the remaining SNF cases captioned in Defendant's instant motion, with a courtesy copy to *all* SNF parties and presiding SNF judges of the Court.

Edward J. Damich

EDWARD J. DAMICH
Chief Judge

# EXHIBIT 2

# In the United States Court of Federal Claims

**Nos. 03-2622C and 04-0033C**

(Filed November 4, 2004)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * )<br>)<br>**ENTERGY NUCLEAR INDIAN POINT 2, LLC,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**THE UNITED STATES,** )<br>)<br>Defendant. )<br>)<br>* * * * * * * * * * * * * * * * * * * * * * * * | Spent nuclear fuel cases; directly-related cases; RCFC 40.2(a); transfer; consolidation; RCFC 42 and RCFC 42.1 |
| * * * * * * * * * * * * * * * * * * * * * * * * )<br>)<br>**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**THE UNITED STATES,** )<br>)<br>Defendant. )<br>)<br>* * * * * * * * * * * * * * * * * * * * * * * * | |

Alex D. Tomaszczuk, Shaw Pittman LLP, Washington, D.C., for Entergy Nuclear Indian Point 2, LLC, plaintiff in No. 03-2622C. Of counsel were Jay E. Silberg, Devon E. Hewitt, Michael G. Lepre, Daniel S. Herzfeld, and Jack Y. Chu, Shaw Pittman LLP, Washington, D.C.

Richard J. Conway, Dickstein Shapiro Morin & Oshinsky LLP, Washington, D.C., for Consolidated Edison Company of New York, Inc., plaintiff in No. 04-0033C. Of counsel were David M. Nadler, Nicholas W. Mattia, Jr., Bradley D. Wine, and Jeffery P. Becherer, Dickstein Shapiro Morin & Oshinsky LLP, Washington, D.C., and Brent L. Bradenburg, Assistant General Counsel, Consolidated Edison Company of New York, Inc., New York, N.Y.

Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With him on the briefs were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, and Joshua E. Gardner, Trial Attorney, Commercial Litigation Branch. Of counsel was Jane K. Taylor, Office of General Counsel, United States Department of Energy, Washington, D.C.

## ORDER

LETTOW, Judge.

Pending before the Court is Defendant's Notice Of Directly-Related Cases, Defendant's Motion To Reassign Consolidated Edison And Entergy Nuclear To A Single Judge, and Defendant's Motion To Consolidate, all filed August 5, 2004. Responses to this Notice and to these motions were filed by counsel for Entergy Nuclear Indian Point 2, LLC, plaintiff in No. 03-2622C, and by counsel for Consolidated Edison Company of New York, Inc., plaintiff in No. 04-0033C, and the government has filed a reply to the responses of the plaintiffs.

For the reasons set out below, the court treats the motion to reassign as a motion to transfer and grants that motion. The accompanying motion to consolidate is denied.

## BACKGROUND

Consolidated Edison Company of New York, Inc. ("ConEd") owned the Indian Point nuclear power complex, consisting of the Indian Point 1 and Indian Point 2 plants. On September 6, 2001, ConEd sold Indian Point 2 to Entergy Nuclear Indian Point 2, LLC ("ENIP"). Compl. in No. 04-0033C at 2, ¶ 4. In connection with that sale, ConEd assigned to ENIP a contract ConEd had entered with the government for the disposition of spent nuclear fuel derived from the Indian Point 2 nuclear power plant. *Id.* The contract is a so-called "Standard Contract" and is substantively identical to the contracts each of the country's nuclear-plant operators had to accept with the Department of Energy as a prerequisite to obtaining renewal of their licenses to operate the plants. *See Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1337 (Fed. Cir. 2000).[1] The assignment of the contract was authorized by a provision in the Nuclear Waste Policy Act ("NWPA"), Pub. L. No. 97-425, Title III, § 302, 96 Stat. 2259 (Jan. 7, 1983)

[1]The Standard Contract is set out at 10 C.F.R. § 961.11.

(codified at 42 U.S.C. § 10222), that in pertinent part, provides: "(3) The rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level radioactive waste involved." 42 U.S.C. § 10222(b)(3).[2]

Under the assigned Standard Contract for pick up and disposition of spent nuclear fuel, the government was to begin accepting spent nuclear fuel for disposal "not later than January 31, 1998." *Maine Yankee*, 225 F.3d at 1337 (quoting 42 U.S.C. § 10222(a)(5)(B)). The government was not able to satisfy that contractual obligation, and it continues to be unable to provide a means of disposal for spent nuclear fuel to this day. *See Indiana Michigan Power Co. v. United States*, 60 Fed. Cl. 639, 640-41 (2004); *Tennessee Valley Auth. v. United States*, 60 Fed. Cl. 665, 667-68 (2004). That failure prompted all or virtually all of the country's owners and operators of nuclear power plants to bring suit against the government for breach of contract in this court. *See Indiana Michigan*, 60 Fed. Cl. at 641 n.1. ENIP and ConEd were among the plaintiffs bringing forward such claims.

ENIP filed its action in this court on November 5, 2003, and the case was assigned randomly to a judge of the court in accord with Rule 40.1 of the Rules of the Court of Federal

---

[2]This assignment provision in the NWPA is sufficiently broad that it arguably may apply to claims that have not yet been reduced to judgment, as well as to future rights and duties, depending upon the facts of a particular assignment, and thus may serve as an exception to the otherwise applicable proscription of the Assignment of Claims Act, 31 U.S.C. § 3727 (the "Anti-Assignment Act"). That Act in pertinent part provides:

> (a) In this section, "assignment" means –
> (1) a transfer or assignment of any part of a claim against the United States Government or of an interest in the claim; or
> (2) the authorization to receive payment for any part of the claim.
>
> (b) *An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued.* The assignment shall specify the warrant, must be made freely, and must be attested to by 2 witnesses. The person making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment. The certificate shall state that the official completely explained the assignment when it was acknowledged. An assignment under this subsection is valid for any purpose.

31 U.S.C. § 3727 (emphasis added).

Claims ("RCFC").[3] ConEd filed its action two months and eight days later, on January 13, 2004.

Even though ConEd's action involved the same contract as that underlying the ENIP suit, ConEd's complaint was not accompanied by a "Notice of Directly-Related Case(s)" as required by RCFC 40.2(a)(1).[4] As a consequence, the *ConEd* action was also assigned randomly to a judge of the court, and, not surprisingly, the assignment was made to a different judge than the one to whom the *ENIP* case was assigned. If the directly-related-case notice had been filed with the *ConEd* complaint, the *ConEd* case by rule would have been assigned "to the judge to whom the earliest-filed directly-related case is assigned."[5]

---

[3]Rule 40.1(a) provides that:

> After the complaint has been served on the United States, or after recusal or disqualification of a judge to whom a case has been assigned, the case *shall be assigned* (or reassigned) forthwith to a judge *at random*.

(Emphasis added.)

[4]RCFC 40.2(a)(1) provides that:

> At the time a complaint is filed, the filing attorney (or *pro se* plaintiff) shall file and serve on all parties who have appeared a Notice of Directly-Related Case(s). Cases are deemed directly related when an earlier-filed case and the action being filed:
> (A) involve the same parties and are based on the the same or similar claims; or
> (B) involve the same contract, property or patent.

Because ConEd had assigned to ENIP its contract with the Department of Energy for the disposal of spent nuclear fuel, as alleged in the *ConEd* complaint, *see supra*, at 2, the *ConEd* case and the *ENIP* case involve the "same contract" and the "same property" within the meaning of RCFC 40.2(a)(1).

[5]RCFC 40.2(a)(2) states that:

> Where a Notice of Directly-Related Cases is filed along with the new complaint, the clerk shall assign the case to the judge to whom the earliest-filed directly-related case is assigned. If the judge to whom the related case is assigned determines that the case in question is not in fact directly related, the judge will return the case to the clerk for random assignment.

The *ENIP* case moved steadily through the preliminary stages of litigation. An answer was filed on February 23, 2004, and thereafter the parties filed cross-motions for summary judgment on liability and have been briefing those cross-motions. The *ConEd* case has not progressed beyond the filing of the complaint. A motion for stay was filed by the government, and that motion remains pending. No answer has yet been filed. In the midst of briefing the cross-motions for summary judgment in *ENIP*, the government filed its motion to reassign *ConEd* and to consolidate *ENIP* and *ConEd*.

In its response to the government's motion to reassign and to consolidate, ENIP acknowledges that the two cases relate to the same contract and thus are directly-related under RCFC 40.2(a). ENIP accordingly has not opposed a transfer such that both cases are before the same judge, but it does contest consolidation. ConEd is silent respecting transfer, but it opposes consolidation. The government's reply endeavors to shore up its position that the cases should be consolidated.

## ANALYSIS

### *Transfer*

In support of its motion for reassignment, the government contends that the *ENIP* and *ConEd* cases are directly-related within the meaning of RCFC 40.2 because they involve the same contract. The government points out that, as filer of the second of the two cases, ConEd had an obligation to file with its complaint a notice of directly-related cases as specified in RCFC 40.2(a)(1)(B). Because ConEd did not make this filing, its case was randomly assigned to a different judge than the judge to whom the first-filed case was assigned. The government contends that reassignment of the ConEd case is necessary to provide a remedy for ConEd's omission and the resulting improper assignment.

In the circumstances, transfer is appropriate under RCFC 40.2(a). ConEd offers no explanation why it failed to follow the rule that requires submission of a notice of directly-related cases along with the complaint where a second complaint is filed that addresses the same contract or property. For the purposes of RCFC 40.2(a)(1)(B), "same contract" means just what it says, no less and no more. Precisely the same contract must be involved, not just a contract that is similar or that has identical or comparable terms but relates to one or more different parties. In this respect, RCFC 40.2(a)(1) has, and should be accorded, the same interpretation as RCFC 20(a), which allows joinder of plaintiffs who raise claims "arising out of the same transaction." *See Franconia Assocs. v. United States*, 61 Fed. Cl. 335, 337 (2004).

The procedural remedy in this instance is specified by RCFC 40.2(a)(3) which provides as follows:

> (3) Where the existence of directly-related cases becomes apparent only after initial assignment, the Notice of

> Directly-Related Cases shall be filed in all related cases, captioned in the name of the earliest-filed case. Solely for the purpose of filing this notice, counsel in the later-filed case may appear in the earlier-filed case. The Notice may be accompanied by a motion to transfer and a suggestion for consolidation under RCFC 42.1. *The judge in the earliest-filed case*, after consultation with the judge in the later-filed case, *will grant or deny the motion to transfer*.

(Emphasis added.) As required by RCFC 40.2(a)(3), the undersigned judge has consulted with the judge in the later-filed case in the course of deciding the pending motions. Here, in filing the notice of directly-related cases, the government complied with RCFC 40.2(a)(3). However, it accompanied this notice with a motion "to reassign" rather than a motion to transfer the second case. As a matter of form, the motion thus was improper on technical grounds.[6] It will be treated as a motion to transfer, and that motion will be granted.

This court's rules regarding assignment and transfer of cases are written in explicit terms to protect the process by which cases are randomly assigned. Adherence to these rules by counsel and the parties is essential. As soon as counsel becomes aware of an earlier-filed, directly-related case, they must file a notice with the court. The court cannot be put in the position of monitoring its entire docket to learn of such cases *sua sponte*, nor will the court countenance circumvention of its rules.

*Consolidation*

Consolidation of cases for trial or for other purposes is governed by RCFC 42(a).[7] In

---

[6]Only the chief judge of this court may "reassign" a case, and he or she may do so only in the circumstances specified in RCFC 40.1(c).

[7]RCFC 42(a) provides:

> (a) Consolidation. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Procedurally, it was proper for the government to couple its motion to consolidate with its motion to transfer. RCFC 42.1 provides:

acting on a motion or suggestion for consolidation, the

> court must consider whether specific risks of prejudice and possible confusion are "overborne by the risk of inconsistent adjudication of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives."

*Cienega Gardens v. United States*, 62 Fed. Cl. 28, 31 (2004) (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990); *Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982)). *See also Karuk Tribe v. United States*, 27 Fed. Cl. 429, 433 (1983). "The court has a broad discretion to determine whether consolidation is appropriate." *Cienega*, 62 Fed. Cl. at 32 (citing *Johnson*, 899 F.2d at 1284; *Skirvin v. Mesta*, 141 F.2d 668, 672-73 (10th Cir. 1944)). Actions may be consolidated notwithstanding opposition from some or all of the parties. *Id.* (citing *St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 989 (5th Cir. 1983); *Midwest Cmty. Council, Inc. v. Chicago Park Dist.*, 98 F.R.D. 491, 500 (N.D. Ill. 1983)). The court should take the positions of the parties into account in its analysis but need not accord the parties' views dispositive weight. *Cienega Gardens*, 62 Fed. Cl. at 32.

The government requests that the cases be consolidated pursuant to RCFC 42(a) because the *ENIP* and *ConEd* cases share common issues of fact and law and because consolidation would promote judicial economy and obviate a substantial risk of inconsistent judgments.

ENIP opposes consolidation on the grounds that consolidation will not promote judicial economy but rather may lead to delay of the cases and prejudice its right to pursue its action. ENIP observes that the two cases are in different procedural postures, with its case being considerably more advanced than ConEd's action. In *ENIP*, the parties have filed cross-motions for summary judgment on liability, and ENIP represents that "the [g]overnment has not contested its liability for breach of contract in *ENIP*, but only the date at which liability accrued." ENIP's Resp. at 5. Briefing on those cross-motions is nearing completion. By contrast, in *ConEd*, the

---

> Motions to consolidate shall be directed to the judge to whom the relevant cases are assigned. In the event the relevant cases are assigned to different judges, a motion to transfer may be made pursuant to RCFC 40.1, with a suggestion of the appropriateness of consolidation.

Where a motion or "suggestion" to consolidate is made with a motion to transfer as RCFC 42.1 provides, the judge to whom the earliest-filed directly-related case is assigned has the obligation to decide both the motion to transfer and the suggestion for consolidation.

parties are still at a very preliminary stage. Neither an answer nor any potentially dispositive motions have been filed.

ENIP also contends that the plaintiffs in the cases are pursuing quite different theories for recovery even though the two cases arise from the same contract. ENIP seeks damages for the government's partial breach of its obligation to pick up and dispose of spent nuclear fuel from the Indian Point 2 nuclear plant. ENIP's Resp. at 5. By contrast, ConEd relies on a theory of recovery based upon the diminution in sale value of the plant due to the government's breach of its pick up and disposal obligation. ConEd's Resp. at 3-4. Because these divergent theories for recovery are at issue, ENIP claims that there would be no saving of time or judicial resources through consolidation but rather trial or other resolution of the issues could be unduly complicated to the prejudice of both plaintiffs.

ConEd opposes consolidation on similar grounds. It also adds that it would be prejudiced by consolidation – because action on its suit may well be delayed. ConEd Resp. at 14 ("plac[ing] [ConEd] in the queue behind numerous other SNF [spent nuclear fuel] cases" would prejudice the plaintiff). ConEd also asserts that its case is much less complex factually than ENIP's, principally because its claims would not involve any issues about ongoing management of spent nuclear fuel or the rate of governmental acceptance of such fuel for disposal. *Id.* at 14-15 & n.5.

The government's reply emphasizes that the cases necessarily show common factual issues because the same contract and same nuclear power plant (and spent fuel) are involved. Def.'s Reply at 2. The government also avers that "the scope and validity of ConEd's assignment of its interest in the Standard Contract to ENIP is squarely at issue in both cases." *Id.* at 3. Finally, the government also contends that, even though ENIP and ConEd are asserting claims for damages that are inconsistent in part, their damage claims overlap to some extent and pose a possibility that judgments in the cases may be duplicative or inconsistent. *Id.* at 4-5.

The strongest factor weighing against consolidation at this juncture is the divergent procedural posture of the cases. The *ENIP* suit is much more advanced, with cross-motions for summary judgment having been filed and nearing the point at which briefing will be complete. *ConEd* has not progressed much, if at all, past the very initial stages. Two other factors are less compelling and more closely in balance. First, the cross-motions in *ENIP* raise some issues in common with *ConEd*, particularly those associated with the assignment of the Standard Contract. In that respect, ConEd may be put at a disadvantage because it has not had, and, absent consolidation, will not have, any opportunity to be heard on those issues. However, ConEd vigorously opposes consolidation, apparently out of a desire not to be bound by any decision in the *ENIP* case. Second, the government makes the valid point that denial of consolidation is not appropriate on the sole ground that ENIP and ConEd are asserting *different* damages theories based upon the *identical* theory of liability." Def.'s Reply at 5 (emphasis in the original) (citing *Mylan Pharms. Inc. v. Henney*, 94 F.Supp.2d 36, 44 (D.D.C. 2000), *rev'd on other grounds sub nom. Pharmachemie B.V. v. Barr Labs, Inc.*, 276 F.3d 627 (D.C. Cir. 2002)). In this respect, the

different approaches to damages by ENIP and ConEd reduce the likelihood of overlapping or inconsistent damage awards, but a discernible risk of such inconsistency nonetheless remains.

Overall, the balance of factors currently tips against consolidation, largely because the *ENIP* case is procedurally at a significantly more advanced stage. Judicial efficiency would not be served by consolidation at this time, and ENIP might be prejudiced by the delay that would ensue from consolidation. The court is nonetheless cognizant of the facts that further development of both cases may reduce the procedural disparity and that consolidation may be appropriate at some future time. Accordingly, consolidation will be denied without prejudice.

## CONCLUSION

The government's motion to transfer is granted. The Clerk shall transfer Docket No. 04-0033C, *Consolidated Edison Company of New York, Inc. v. United States*, to the undersigned judge. The accompanying motion to consolidate is denied without prejudice to renewal at an appropriate time.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge

# EXHIBIT 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 04-0033C

(Filed: November 2, 2005)

| | |
|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., | ) |
| Plaintiff, | ) |
| v. | ) |
| UNITED STATES, | ) |
| Defendant, | ) |

ORDER

Pending before the Court is Defendant's Renewed Motion to Consolidate, filed on September 23, 2005. Defendant seeks to consolidate this case with *Entergy Indian Point 2 v. United States*, No. 03-2622C.

Also pending before the court is the parties' Joint Motion to Stay Filing of Joint Preliminary Status Report, filed on November 1, 2005. The parties are currently scheduled to file a joint preliminary status report on November 7, 2005. The parties request that the court stay the parties' obligation to file a joint preliminary status report until 45 days after the court resolves defendant's above-mentioned motion to consolidate.

Defendant's Motion to Consolidate is hereby DENIED. The parties' Joint Motion to Stay Filing of Joint Preliminary Status Report is GRANTED in part and DENIED in part. The parties shall file a joint preliminary status report on or before December 7, 2005.

It is so ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge