# EXHIBIT 1

ORIGINAL

# In the United States Court of Federal Claims

No. 98-126 C
(Filed: January 30, 2004)

FILED
JAN 30 2004
U.S. COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC CO., | * |
| Plaintiff, | * |
| v. | * |
| THE UNITED STATES, | * |
| Defendant. | * |

## ORDER

On July 30, 2003, Defendant filed a Second Motion to Renew its Motion to Consolidate in the set of cases before the Court informally referred to as Spent Nuclear Fuel (SNF) cases. Although the motion was officially docketed in this case, the first-filed of the SNF cases, it was captioned in the name of all of the 21 then-pending SNF cases and addressed to the Chief Judge for determination.

In the motion, the Government requests renewed consideration of its previous motions to consolidate these cases, although its instant motion seeks consolidation in particular "for the purposes of deciding schedule issues."

A brief recitation of the history of this motion is in order. Defendant first raised the issue of consolidation before a single judge by motion in January 2001. In May 2001, then-Chief Judge Baskir assigned the matter to Judge Wiese as managing judge for consideration. The parties ultimately agreed to a plan of consolidated discovery. In August 2001, Judge Wiese in turn assigned Judge Sypolt (then Weinstein) to preside over the consolidated discovery. Subsequent to the conclusion of consolidated discovery in the fall of 2002, Defendant – in February 2003 – renewed its motion for consolidation before a single judge. Upon review of a court-requested joint status report from the parties and discussion among the judges of the court presiding over the then-21 SNF cases, the Chief Judge issued an order on April 16, 2003, identifying six of the cases as "lead" or "accelerated" cases for the resolution of certain

B 755

dispositive motions and directing that the remaining cases be stayed, although such stays could be lifted at the discretion of any of the presiding judges. The Order of April 16, 2003, stayed any decision on the renewed motion to consolidate before a single judge. In the meantime, opinions on dispositive motions in five of the six lead cases have been issued by the respective presiding judges. These five cases have also been scheduled for trial on damages.

Consolidation of all the SNF cases would be an extraordinary action The Chief Judge's authority to order consolidation would only be pursuant to Rule 40.1(c) ("Assignment and Transfer of Cases") of the Rules of the Court of Federal Claims (RCFC), as circumscribed by the prescriptions of RCFC 40.2 ("Related Cases), 42 ("Consolidation; Separate Trials"), and 42.1 ("Motions to Consolidate").

As of this date, the Court now has before approximately 55 SNF cases. Given the posture of the six "lead" cases designated in the Court's Order entered on April 16, 2003, and the grant of summary judgment in favor of the plaintiff on acceptance rate, entered June 27, 2003, in the lead case of *Indiana Michigan Power Co. v. United States*, # 98-486 C, the Court determines that consolidation – even as to the particular issues of rate of acceptance and schedule of acceptance – would not effectuate any greater efficient administration of justice than that of letting the six lead cases proceed with their dispositive motions and/or trial on damages. The Court hereby **DENIES** Defendant's motion to renew its motion to consolidate as well as its previous motions relating to consolidation. The Court further **LIFTS THE STAY** of the remainder of the cases to which the Order of April 16, 2003, applied.

The Clerk of the Court is directed to docket this Order in this case with an entry noting the same on the dockets of the remaining SNF cases captioned in Defendant's instant motion, with a courtesy copy to *all* SNF parties and presiding SNF judges of the Court.

Edward J. Damich

EDWARD J. DAMICH
Chief Judge

# EXHIBIT 2

# In the United States Court of Federal Claims

**Nos. 03-2622C and 04-0033C**

(Filed November 4, 2004)

* * * * * * * * * * * * * * * * * * * * * * * *

**ENTERGY NUCLEAR INDIAN POINT 2, LLC,**

Plaintiff,

v.

**THE UNITED STATES,**

Defendant.

* * * * * * * * * * * * * * * * * * * * * * * *

* * * * * * * * * * * * * * * * * * * * * * * *

**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,**

Plaintiff,

v.

**THE UNITED STATES,**

Defendant.

* * * * * * * * * * * * * * * * * * * * * * * *

Spent nuclear fuel cases; directly-related cases; RCFC 40.2(a); transfer; consolidation; RCFC 42 and RCFC 42.1

Alex D. Tomaszczuk, Shaw Pittman LLP, Washington, D.C., for Entergy Nuclear Indian Point 2, LLC, plaintiff in No. 03-2622C. Of counsel were Jay E. Silberg, Devon E. Hewitt, Michael G. Lepre, Daniel S. Herzfeld, and Jack Y. Chu, Shaw Pittman LLP, Washington, D.C.

Richard J. Conway, Dickstein Shapiro Morin & Oshinsky LLP, Washington, D.C., for Consolidated Edison Company of New York, Inc., plaintiff in No. 04-0033C. Of counsel were David M. Nadler, Nicholas W. Mattia, Jr., Bradley D. Wine, and Jeffery P. Becherer, Dickstein Shapiro Morin & Oshinsky LLP, Washington, D.C., and Brent L. Bradenburg, Assistant General Counsel, Consolidated Edison Company of New York, Inc., New York, N.Y.

Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With him on the briefs were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, and Joshua E. Gardner, Trial Attorney, Commercial Litigation Branch. Of counsel was Jane K. Taylor, Office of General Counsel, United States Department of Energy, Washington, D.C.

## ORDER

LETTOW, Judge.

Pending before the Court is Defendant's Notice Of Directly-Related Cases, Defendant's Motion To Reassign Consolidated Edison And Entergy Nuclear To A Single Judge, and Defendant's Motion To Consolidate, all filed August 5, 2004. Responses to this Notice and to these motions were filed by counsel for Entergy Nuclear Indian Point 2, LLC, plaintiff in No. 03-2622C, and by counsel for Consolidated Edison Company of New York, Inc., plaintiff in No. 04-0033C, and the government has filed a reply to the responses of the plaintiffs.

For the reasons set out below, the court treats the motion to reassign as a motion to transfer and grants that motion. The accompanying motion to consolidate is denied.

## BACKGROUND

Consolidated Edison Company of New York, Inc. ("ConEd") owned the Indian Point nuclear power complex, consisting of the Indian Point 1 and Indian Point 2 plants. On September 6, 2001, ConEd sold Indian Point 2 to Entergy Nuclear Indian Point 2, LLC ("ENIP"). Compl. in No. 04-0033C at 2, ¶ 4. In connection with that sale, ConEd assigned to ENIP a contract ConEd had entered with the government for the disposition of spent nuclear fuel derived from the Indian Point 2 nuclear power plant. *Id.* The contract is a so-called "Standard Contract" and is substantively identical to the contracts each of the country's nuclear-plant operators had to accept with the Department of Energy as a prerequisite to obtaining renewal of their licenses to operate the plants. *See Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1337 (Fed. Cir. 2000).[1] The assignment of the contract was authorized by a provision in the Nuclear Waste Policy Act ("NWPA"), Pub. L. No. 97-425, Title III, § 302, 96 Stat. 2259 (Jan. 7, 1983)

[1]The Standard Contract is set out at 10 C.F.R. § 961.11.

(codified at 42 U.S.C. § 10222), that in pertinent part, provides: "(3) The rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level radioactive waste involved." 42 U.S.C. § 10222(b)(3).[2]

Under the assigned Standard Contract for pick up and disposition of spent nuclear fuel, the government was to begin accepting spent nuclear fuel for disposal "not later than January 31, 1998." *Maine Yankee*, 225 F.3d at 1337 (quoting 42 U.S.C. § 10222(a)(5)(B)). The government was not able to satisfy that contractual obligation, and it continues to be unable to provide a means of disposal for spent nuclear fuel to this day. *See Indiana Michigan Power Co. v. United States*, 60 Fed. Cl. 639, 640-41 (2004); *Tennessee Valley Auth. v. United States*, 60 Fed. Cl. 665, 667-68 (2004). That failure prompted all or virtually all of the country's owners and operators of nuclear power plants to bring suit against the government for breach of contract in this court. *See Indiana Michigan*, 60 Fed. Cl. at 641 n.1. ENIP and ConEd were among the plaintiffs bringing forward such claims.

ENIP filed its action in this court on November 5, 2003, and the case was assigned randomly to a judge of the court in accord with Rule 40.1 of the Rules of the Court of Federal

---

[2]This assignment provision in the NWPA is sufficiently broad that it arguably may apply to claims that have not yet been reduced to judgment, as well as to future rights and duties, depending upon the facts of a particular assignment, and thus may serve as an exception to the otherwise applicable proscription of the Assignment of Claims Act, 31 U.S.C. § 3727 (the "Anti-Assignment Act"). That Act in pertinent part provides:

> (a) In this section, "assignment" means –
> (1) a transfer or assignment of any part of a claim against the United States Government or of an interest in the claim; or
> (2) the authorization to receive payment for any part of the claim.
>
> (b) *An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued.* The assignment shall specify the warrant, must be made freely, and must be attested to by 2 witnesses. The person making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment. The certificate shall state that the official completely explained the assignment when it was acknowledged. An assignment under this subsection is valid for any purpose.

31 U.S.C. § 3727 (emphasis added).

Claims ("RCFC").[3] ConEd filed its action two months and eight days later, on January 13, 2004.

Even though ConEd's action involved the same contract as that underlying the ENIP suit, ConEd's complaint was not accompanied by a "Notice of Directly-Related Case(s)" as required by RCFC 40.2(a)(1).[4] As a consequence, the *ConEd* action was also assigned randomly to a judge of the court, and, not surprisingly, the assignment was made to a different judge than the one to whom the *ENIP* case was assigned. If the directly-related-case notice had been filed with the *ConEd* complaint, the *ConEd* case by rule would have been assigned "to the judge to whom the earliest-filed directly-related case is assigned."[5]

---

[3]Rule 40.1(a) provides that:

> After the complaint has been served on the United States, or after recusal or disqualification of a judge to whom a case has been assigned, the case *shall be assigned* (or reassigned) forthwith to a judge *at random*.

(Emphasis added.)

[4]RCFC 40.2(a)(1) provides that:

> At the time a complaint is filed, the filing attorney (or *pro se* plaintiff) shall file and serve on all parties who have appeared a Notice of Directly-Related Case(s). Cases are deemed directly related when an earlier-filed case and the action being filed:
> (A) involve the same parties and are based on the the same or similar claims; or
> (B) involve the same contract, property or patent.

Because ConEd had assigned to ENIP its contract with the Department of Energy for the disposal of spent nuclear fuel, as alleged in the *ConEd* complaint, *see supra*, at 2, the *ConEd* case and the *ENIP* case involve the "same contract" and the "same property" within the meaning of RCFC 40.2(a)(1).

[5]RCFC 40.2(a)(2) states that:

> Where a Notice of Directly-Related Cases is filed along with the new complaint, the clerk shall assign the case to the judge to whom the earliest-filed directly-related case is assigned. If the judge to whom the related case is assigned determines that the case in question is not in fact directly related, the judge will return the case to the clerk for random assignment.

The *ENIP* case moved steadily through the preliminary stages of litigation. An answer was filed on February 23, 2004, and thereafter the parties filed cross-motions for summary judgment on liability and have been briefing those cross-motions. The *ConEd* case has not progressed beyond the filing of the complaint. A motion for stay was filed by the government, and that motion remains pending. No answer has yet been filed. In the midst of briefing the cross-motions for summary judgment in *ENIP*, the government filed its motion to reassign *ConEd* and to consolidate *ENIP* and *ConEd*.

In its response to the government's motion to reassign and to consolidate, ENIP acknowledges that the two cases relate to the same contract and thus are directly-related under RCFC 40.2(a). ENIP accordingly has not opposed a transfer such that both cases are before the same judge, but it does contest consolidation. ConEd is silent respecting transfer, but it opposes consolidation. The government's reply endeavors to shore up its position that the cases should be consolidated.

**ANALYSIS**

*Transfer*

In support of its motion for reassignment, the government contends that the *ENIP* and *ConEd* cases are directly-related within the meaning of RCFC 40.2 because they involve the same contract. The government points out that, as filer of the second of the two cases, ConEd had an obligation to file with its complaint a notice of directly-related cases as specified in RCFC 40.2(a)(1)(B). Because ConEd did not make this filing, its case was randomly assigned to a different judge than the judge to whom the first-filed case was assigned. The government contends that reassignment of the ConEd case is necessary to provide a remedy for ConEd's omission and the resulting improper assignment.

In the circumstances, transfer is appropriate under RCFC 40.2(a). ConEd offers no explanation why it failed to follow the rule that requires submission of a notice of directly-related cases along with the complaint where a second complaint is filed that addresses the same contract or property. For the purposes of RCFC 40.2(a)(1)(B), "same contract" means just what it says, no less and no more. Precisely the same contract must be involved, not just a contract that is similar or that has identical or comparable terms but relates to one or more different parties. In this respect, RCFC 40.2(a)(1) has, and should be accorded, the same interpretation as RCFC 20(a), which allows joinder of plaintiffs who raise claims "arising out of the same transaction." *See Franconia Assocs. v. United States*, 61 Fed. Cl. 335, 337 (2004).

The procedural remedy in this instance is specified by RCFC 40.2(a)(3) which provides as follows:

> (3) Where the existence of directly-related cases becomes apparent only after initial assignment, the Notice of

> Directly-Related Cases shall be filed in all related cases, captioned in the name of the earliest-filed case. Solely for the purpose of filing this notice, counsel in the later-filed case may appear in the earlier-filed case. The Notice may be accompanied by a motion to transfer and a suggestion for consolidation under RCFC 42.1. *The judge in the earliest-filed case*, after consultation with the judge in the later-filed case, *will grant or deny the motion to transfer*.

(Emphasis added.) As required by RCFC 40.2(a)(3), the undersigned judge has consulted with the judge in the later-filed case in the course of deciding the pending motions. Here, in filing the notice of directly-related cases, the government complied with RCFC 40.2(a)(3). However, it accompanied this notice with a motion "to reassign" rather than a motion to transfer the second case. As a matter of form, the motion thus was improper on technical grounds.[6] It will be treated as a motion to transfer, and that motion will be granted.

This court's rules regarding assignment and transfer of cases are written in explicit terms to protect the process by which cases are randomly assigned. Adherence to these rules by counsel and the parties is essential. As soon as counsel becomes aware of an earlier-filed, directly-related case, they must file a notice with the court. The court cannot be put in the position of monitoring its entire docket to learn of such cases *sua sponte*, nor will the court countenance circumvention of its rules.

*Consolidation*

Consolidation of cases for trial or for other purposes is governed by RCFC 42(a).[7] In

---

[6]Only the chief judge of this court may "reassign" a case, and he or she may do so only in the circumstances specified in RCFC 40.1(c).

[7]RCFC 42(a) provides:

> (a) Consolidation. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Procedurally, it was proper for the government to couple its motion to consolidate with its motion to transfer. RCFC 42.1 provides:

acting on a motion or suggestion for consolidation, the

> court must consider whether specific risks of prejudice and possible confusion are "overborne by the risk of inconsistent adjudication of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives."

*Cienega Gardens v. United States*, 62 Fed. Cl. 28, 31 (2004) (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990); *Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982)). *See also Karuk Tribe v. United States*, 27 Fed. Cl. 429, 433 (1983). "The court has a broad discretion to determine whether consolidation is appropriate." *Cienega*, 62 Fed. Cl. at 32 (citing *Johnson*, 899 F.2d at 1284; *Skirvin v. Mesta*, 141 F.2d 668, 672-73 (10th Cir. 1944)). Actions may be consolidated notwithstanding opposition from some or all of the parties. *Id.* (citing *St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 989 (5th Cir. 1983); *Midwest Cmty. Council, Inc. v. Chicago Park Dist.*, 98 F.R.D. 491, 500 (N.D. Ill. 1983)). The court should take the positions of the parties into account in its analysis but need not accord the parties' views dispositive weight. *Cienega Gardens*, 62 Fed. Cl. at 32.

The government requests that the cases be consolidated pursuant to RCFC 42(a) because the *ENIP* and *ConEd* cases share common issues of fact and law and because consolidation would promote judicial economy and obviate a substantial risk of inconsistent judgments.

ENIP opposes consolidation on the grounds that consolidation will not promote judicial economy but rather may lead to delay of the cases and prejudice its right to pursue its action. ENIP observes that the two cases are in different procedural postures, with its case being considerably more advanced than ConEd's action. In *ENIP*, the parties have filed cross-motions for summary judgment on liability, and ENIP represents that "the [g]overnment has not contested its liability for breach of contract in *ENIP*, but only the date at which liability accrued." ENIP's Resp. at 5. Briefing on those cross-motions is nearing completion. By contrast, in *ConEd*, the

---

> Motions to consolidate shall be directed to the judge to whom the relevant cases are assigned. In the event the relevant cases are assigned to different judges, a motion to transfer may be made pursuant to RCFC 40.1, with a suggestion of the appropriateness of consolidation.

Where a motion or "suggestion" to consolidate is made with a motion to transfer as RCFC 42.1 provides, the judge to whom the earliest-filed directly-related case is assigned has the obligation to decide both the motion to transfer and the suggestion for consolidation.

parties are still at a very preliminary stage. Neither an answer nor any potentially dispositive motions have been filed.

ENIP also contends that the plaintiffs in the cases are pursuing quite different theories for recovery even though the two cases arise from the same contract. ENIP seeks damages for the government's partial breach of its obligation to pick up and dispose of spent nuclear fuel from the Indian Point 2 nuclear plant. ENIP's Resp. at 5. By contrast, ConEd relies on a theory of recovery based upon the diminution in sale value of the plant due to the government's breach of its pick up and disposal obligation. ConEd's Resp. at 3-4. Because these divergent theories for recovery are at issue, ENIP claims that there would be no saving of time or judicial resources through consolidation but rather trial or other resolution of the issues could be unduly complicated to the prejudice of both plaintiffs.

ConEd opposes consolidation on similar grounds. It also adds that it would be prejudiced by consolidation – because action on its suit may well be delayed. ConEd Resp. at 14 ("plac[ing] [ConEd] in the queue behind numerous other SNF [spent nuclear fuel] cases" would prejudice the plaintiff). ConEd also asserts that its case is much less complex factually than ENIP's, principally because its claims would not involve any issues about ongoing management of spent nuclear fuel or the rate of governmental acceptance of such fuel for disposal. *Id.* at 14-15 & n.5.

The government's reply emphasizes that the cases necessarily show common factual issues because the same contract and same nuclear power plant (and spent fuel) are involved. Def.'s Reply at 2. The government also avers that "the scope and validity of ConEd's assignment of its interest in the Standard Contract to ENIP is squarely at issue in both cases." *Id.* at 3. Finally, the government also contends that, even though ENIP and ConEd are asserting claims for damages that are inconsistent in part, their damage claims overlap to some extent and pose a possibility that judgments in the cases may be duplicative or inconsistent. *Id.* at 4-5.

The strongest factor weighing against consolidation at this juncture is the divergent procedural posture of the cases. The *ENIP* suit is much more advanced, with cross-motions for summary judgment having been filed and nearing the point at which briefing will be complete. *ConEd* has not progressed much, if at all, past the very initial stages. Two other factors are less compelling and more closely in balance. First, the cross-motions in *ENIP* raise some issues in common with *ConEd*, particularly those associated with the assignment of the Standard Contract. In that respect, ConEd may be put at a disadvantage because it has not had, and, absent consolidation, will not have, any opportunity to be heard on those issues. However, ConEd vigorously opposes consolidation, apparently out of a desire not to be bound by any decision in the *ENIP* case. Second, the government makes the valid point that denial of consolidation is not appropriate on the sole ground that ENIP and ConEd are asserting *different* damages theories based upon the *identical* theory of liability." Def.'s Reply at 5 (emphasis in the original) (citing *Mylan Pharms. Inc. v. Henney*, 94 F.Supp.2d 36, 44 (D.D.C. 2000), *rev'd on other grounds sub nom. Pharmachemie B.V. v. Barr Labs, Inc.*, 276 F.3d 627 (D.C. Cir. 2002)). In this respect, the

different approaches to damages by ENIP and ConEd reduce the likelihood of overlapping or inconsistent damage awards, but a discernible risk of such inconsistency nonetheless remains.

Overall, the balance of factors currently tips against consolidation, largely because the *ENIP* case is procedurally at a significantly more advanced stage. Judicial efficiency would not be served by consolidation at this time, and ENIP might be prejudiced by the delay that would ensue from consolidation. The court is nonetheless cognizant of the facts that further development of both cases may reduce the procedural disparity and that consolidation may be appropriate at some future time. Accordingly, consolidation will be denied without prejudice.

**CONCLUSION**

The government's motion to transfer is granted. The Clerk shall transfer Docket No. 04-0033C, *Consolidated Edison Company of New York, Inc. v. United States*, to the undersigned judge. The accompanying motion to consolidate is denied without prejudice to renewal at an appropriate time.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge

# EXHIBIT 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 04-0033C

(Filed: November 2, 2005)

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,

Plaintiff,

v.

UNITED STATES,

Defendant,

ORDER

Pending before the Court is Defendant's Renewed Motion to Consolidate, filed on September 23, 2005. Defendant seeks to consolidate this case with *Entergy Indian Point 2 v. United States*, No. 03-2622C.

Also pending before the court is the parties' Joint Motion to Stay Filing of Joint Preliminary Status Report, filed on November 1, 2005. The parties are currently scheduled to file a joint preliminary status report on November 7, 2005. The parties request that the court stay the parties' obligation to file a joint preliminary status report until 45 days after the court resolves defendant's above-mentioned motion to consolidate.

Defendant's Motion to Consolidate is hereby DENIED. The parties' Joint Motion to Stay Filing of Joint Preliminary Status Report is GRANTED in part and DENIED in part. The parties shall file a joint preliminary status report on or before December 7, 2005.

It is so ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge