IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| VERMONT YANKEE NUCLEAR POWER CORP. | ) | |
| and | ) | |
| ENTERGY NUCLEAR VERMONT YANKEE, LLC and ENTERGY NUCLEAR OPERATIONS, INC. | ) | Nos. 02-898C; 03-2663C |
| | ) | (Judge Wheeler) |
| Plaintiffs, | ) | |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant, | ) | |

DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSES TO MOTION FOR JOINDER

Defendant, United States, respectfully replies to plaintiff Vermont Yankee Nuclear Power Corp.'s ("Vermont Yankee") and plaintiff Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc.'s (collectively, "ENVY") responses to the Government's motion to join the claims of Vermont Yankee brought in Vermont Yankee Nuclear Power Corp. v. United States, No. 02-898C (Fed. Cl.), with the claims of ENVY brought in Entergy Nuclear Vermont Yankee, LLC, *et al.* v. United States, No. 03-2623C (Fed. Cl.). For the reasons set forth below, plaintiffs, in their responses, have failed to refute that the Government now faces a substantial risk of incurring duplicative damages obligations should these two cases not be joined. Therefore, as the Government set forth in its motion, the requirements of mandatory joinder have been met, and joinder of ENVY to Vermont Yankee is required.

## DISCUSSION

### I. ENVY'S ARGUMENTS AGAINST JOINDER DO NOT ADDRESS THE FACTS OF *VERMONT YANKEE* AND *ENTERGY NUCLEAR* THAT CAUSE A SUBSTANTIAL RISK TO THE GOVERNMENT OF INCURRING DUPLICATIVE DAMAGES OBLIGATIONS

ENVY does not dispute the fact that both it and Vermont Yankee are claiming damages for precisely the same alleged breach-related costs. Specifically, ENVY does not dispute that both plaintiffs claim as damages the pre-sale costs to rerack the spent fuel pool at the Vermont Yankee Nuclear Power Station ("Power Station"). ENVY Resp. at 2-4. Nor does ENVY dispute, in any meaningful way, id. at 4, that Vermont Yankee's dimunition in value claim necessitates factual findings that ENVY lowered its bid price to account for the Power Station's post-sale spent nuclear fuel ("SNF") storage costs -- the exact costs that ENVY claims as damages in Entergy Nuclear. Def.'s Mot. at 6-8, 10. ENVY's arguments against joinder do not address the common facts and overlapping claims of these two cases. Rather, plaintiff relies on its assumptions regarding the merits of yet-to-be filed dispositive motions and a legal theory that the Court previously rejected to argue that joinder is not necessary.

First, instead of explaining how it would be prejudiced by joinder, ENVY argues that the Government does not face a risk of incurring duplicative damages awards in Vermont Yankee and Entergy Nuclear because ENVY will soon move for summary judgment on the scope of the purchase and sale ("P&S") agreement's assignment of claims provisions, the resolution of which, ENVY believes, "will eliminate any possibility of inconsistent liabilities on the part of the government . . . ." ENVY Resp. at 3-4. ENVY spends the majority of its response arguing the merits of these yet-to-be filed motions. Id. at 3-6. ENVY's confidence in the pre-supposed outcome of future dispositive motions, however, rings hollow, considering this Court's

previously stated view that the scope of the P&S agreement's assignment of claims provision is a factual matter that must be resolved at trial:

> At this stage of the case, the Court is not able to determine as a matter of law whether all of Vermont Yankee's claims have been assigned to ENVY . . . . The precise nature and components of the Vermont Yankee and ENVY claims must await further development and trial on the merits."

Vermont Yankee Nuclear Power Corp. v. United States, 73 Fed. Cl. 236, 243 (2006) (emphasis added). This Court has clearly indicated that the scope of the assignment of claims provision should be determined at trial.[1] ENVY's confidence in the merits of its future dispositive motions, while certainly to be expected, simply cannot alleviate the substantial risk to the Government of incurring duplicative damages obligations were these two cases not joined.[2]

In addition, both plaintiffs in their responses ignore the issue of appeal with respect to the Government's need for joinder. Even if the Court enters consistent rulings in both cases, as Vermont Yankee argues (see § II, infra), that consistency could disappear if an issue is appealed in only one case -- and reversed. There is no way to ensure that the same issues proceed on appeal, and bind all parties in the same manner, unless the two cases are joined.

---

1/ ENVY suggests that the Court previously stated in its scheduling order that the dispute regarding the scope of the assignment of claims provision is a legal matter that should be resolved via pre-trial motions. ENVY Resp. at 2. In the referenced order, however, the Court clearly qualifies its instruction regarding pre-trial motions by directing the parties to file such motions only "[if] the material facts are not in dispute . . . ." March 1, 2007 Order and May 23, 2007 Order, Entergy Nuclear docket items 94 & 97, at p.3 ¶ 3.

2/ ENVY also suggests in the alternative that the Court should stay resolution of the pending motion until the Court rules on ENVY's yet-to-be filed dispositive motions. ENVY Resp. at 2. Should the Court decide to stay the present motion for that purpose, the Government requests that all discovery in the two cases be likewise stayed.

Second, regarding Vermont Yankee's dimunition in value claim, ENVY ignores the obvious factual overlap between that claim and ENVY's separate claim for post-sale SNF storage costs. Instead, ENVY argues that the Court should not fear entering duplicative damages awards because the Government is legally precluded by the collateral source rule from seeking an offset from any post-sale SNF storage costs awarded as damages to ENVY in Entergy Nuclear, to account for any dimunition in value awarded as damages to Vermont Yankee in Vermont Yankee. ENVY Resp. at 6-8. The Court, however, has flatly rejected this argument:

> Entergy nonetheless seeks to deflect or obviate any future offset claim that the government might make by contending that any benefit in the form of a lower purchase price that it derived from DOE's breach is a source collateral to the defendant . . . . The collateral-source principle is not applicable, however. "Consequential damages . . . are those damages that 'result as a secondary consequence of the defendant's non-performance.'" The dimunition in value to . . . [the nuclear facility] was not a secondary but rather a direct consequence of DOE's breach.

Boston Edison Co. v. United States, 80 Fed. Cl. 468, 495-96 (2008) (citations omitted, emphasis added) (quoting 3 Dan B. Dobbs, Law of Remedies § 12.4(1) at 62). ENVY's argument that the Court need not fear awarding duplicative damages because the collateral source rule will, in any event, prevent the Government from seeking an offset against ENVY is simply wrong. As such, ENVY fails to address the substantial risk to the defendant of incurring duplicative damages awards from Vermont Yankee's dimunition in value claim, should these two cases not be joined. See Boston Edison Co. v. United States, 67 Fed. Cl. 63, 66-67 (2005) ("'One of the primary objectives of consolidation is to prevent separate actions from producing conflicting results.' The dimunition-in-value claim is of most importance in this respect" (citations omitted).).

## II. VERMONT YANKEE'S ARGUMENTS AGAINST JOINDER ARE SUPERFICIAL AND IGNORE THE FACTUAL REASONS WHY ENVY MUST BE BOUND TO *VERMONT YANKEE*

Vermont Yankee ignores the obvious intertwined nature of the plaintiffs' claims and the attendant substantial risk to the Government of incurring duplicative damages awards, and puts forth a superficial temporal distinction between the related claims to argue against joinder. Further, by arguing that joinder is not necessary where the same judge presides over both cases and that this Court has otherwise refused to completely consolidate buyer-seller SNF cases, Vermont Yankee again ignores the relevant reasons why there is a pressing need in this case for ENVY to be bound to the Court's findings and conclusions in Vermont Yankee.

First, Vermont Yankee argues that joinder is not warranted because both cases are currently pending before the same judge who "can ensure that findings, judgments, and obligations in two related cases are consistent . . . ." Vermont Yankee Resp. at 3-5. This argument ignores the important effect of joinder that can only be realized through joinder of ENVY to Vermont Yankee: that the Court's findings and conclusions in Vermont Yankee are binding on ENVY. See Martin v. Wilks, 490 U.S. 755, 762 (1989) ("[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings.") (footnote ommitted). Although both cases are before the same judge, they cannot be fully harmonized where one decision does not have preclusive effect over the other. The importance of binding ENVY to the decision in Vermont Yankee is obvious: ENVY's claim for post-sale SNF storage costs -- which are duplicative of Vermont Yankee's dimunition in value claim, Def.'s Mot. at 6-8, 10, may only be partially resolved in Entergy Nuclear because ENVY has not specifically included damages for post-retirement SNF storage

costs in its current partial-breach claim. Id. at 7. Unless the Court's findings and conclusions regarding Vermont Yankee's dimunition in value claim have preclusive effect on any future claims brought by ENVY for post-retirement SNF storage costs, the substantial risk to the Government of incurring duplicative damages awards remains, even though the current cases are before the same judge. In addition, as explained supra, even if the Court treats each case consistently, that consistency could be destroyed on appeal unless the two actions are joined.

Vermont Yankee cites this Court's opinion in Lowry Economic Redevelopment Authority v. United States, 71 Fed. Cl. 549 (2006), for the proposition that joinder is unnecessary "when the current presiding judge is aware of the alternate proceedings . . . ." Vermont Yankee Resp. at 4-5. Vermont Yankee's reliance on Lowry, however, is misplaced because (1) the plaintiffs there did not "seek 'overlapping,' or 'duplicative' costs from the United States," id. at 551; (2) the cases were at fundamentally different procedural postures, id. at 550; and (3) most importantly, all of those plaintiffs' claims arising under that disputed contract could be finally resolved in the two pending cases, id., and therefore the preclusive effect of one decision on future, yet-to-be filed claims by a non-party under the same contract was not an issue.[3]

---

3/ Plaintiff's citation to Western Maryland Railway Co. v. Harbor Ins. Co., 910 F.2d 960 (D.C. Cir. 1990), is likewise inapt. In Harbor Insurance, the appellate court vacated the trial court's dismissal of two separate declaratory judgment actions brought by railway companies against their insurance carriers to determine the railways' rights under common insurance policies for indemnification against asbestosis claims brought by their employees. Id. at 961. The same insurance carriers were defendants in both actions. Id. at 962. The trial court concluded that, because the railways' recoveries for their employees' asbestosis claims would be capped by the common policies' aggregate limits, joinder of all railways to one action was necessary to preclude the insurers from incurring duplicative obligations. Id. The trial court held that joinder of a necessary party was not feasible, and therefore dismissed both actions, because to join all the railways into one action would destroy diversity jurisdiction. Id. In reversing the trial court, the appellate court explained that the non-party railway was not necessary because all of the railways' recoveries would be capped at the policies' aggregate limits, and, therefore, the

Second, Vermont Yankee argues that the two cases do not pose a substantial risk of duplicative damages awards because the plaintiffs are pursuing different damages theories covering different time periods -- the pre- and post-sale periods. Vermont Yankee Resp. at 5-7. This is a superficial temporal distinction that belies the obvious, significant overlap of the claims asserted in each case. As an initial matter, Vermont Yankee simply ignores the fact that both it and ENVY are claiming as damages the exact same pre-sale spent fuel pool rerack costs. Def.'s Mot. at 5-6; ENVY Resp. at 2 ("It is true that portions of the claims that . . . [Vermont Yankee] currently purports to pursue . . . are the same as the pre-closing damages that . . . [ENVY] will seek to recover . . . .").

In addition, Vermont Yankee's arbitrary temporal distinction ignores the fact that its dimunition in value claim would be derived from the same partial-breach incurred-costs damages "pie" from which ENVY's post-sale SNF storage costs damages claim would come. See Def.'s Mot. at 6-7, 8 n.5; Vermont Yankee Resp. at 2 ("[Vermont Yankee's] damages are based on the manner in which DOE's breach impacted the amount ENVY would pay for the Power Station

---

trial court could grant complete relief to all the railways under the common policies in the two pending actions:

> Assuming, therefore, that the aggregate limits do apply to the . . . [asbestosis] claims, . . . the district judge can guarantee in both cases that the insurers' total obligations extend only to the aggregate limits.

Id. at 964-65 (emphasis added). Unlike Harbor Insurance, the Court here cannot grant complete relief to all parties under the Standard Contract in the two pending actions because claims for post-retirement SNF storage costs could potentially be brought by ENVY in future, separate actions -- i.e., the Standard Contract has no "aggregate limit" for damages claims -- but only the "limit" of causation. The preclusive effect of joinder is therefore necessary to prevent any future claims brought by ENVY from producing damages awards duplicative of any amounts awarded in Vermont Yankee.

due to ENVY's anticipation, at the time of the sale, of amounts it would incur to store . . . [SNF] . . . .") (emphasis added). Indeed, Vermont Yankee's assertion that discovery in the two cases is segregated among pre- and post- sale events[4] is belied by its own actions during discovery: in a recent Rule 30(b)(6) deposition of ENVY, Vermont Yankee clearly expressed its desire to obtain extensive information regarding ENVY's post-sale incurred SNF storage costs information in order to corroborate ENVY's pre-sale assumptions regarding those anticipated costs.[5] A 6-7, 14-17.[6] As such, this argument against joinder runs directly counter to the true nature of the plaintiffs' claims, as well as Vermont Yankee's actions in pursuing its dimunition in value claim.

Finally, Vermont Yankee asserts that, "in SNF cases involving nuclear facilities that have been sold, the Court has never joined the respective buyer and seller claims or otherwise completely consolidated their cases." Vermont Yankee Resp. at 9. This characterization of prior proceedings in similar actions misses the point with regard to the motion before the Court. The Government in this case currently faces a significant risk of incurring duplicative damages obligations from separate claims for the identical pre- and post-sale SNF storage costs. Def.'s Mot. at 5-7, 10. Vermont Yankee's discussion of previous joinder rulings is specious because, as

---

4/ See Vermont Yankee Resp. at 7 ("[Vermont Yankee] should not be required to attend what is likely to be very lengthy discovery and trial activity focusing on events that took place after the July 31, 2002 sale, and which therefore have no bearing on . . . [Vermont Yankee's] claim.").

5/ Vermont Yankee's actions in this regard certainly evicerate plaintiff's assertion that "[i]t would be needlessly expensive and time consuming for . . . [Vermont Yankee's] discovery and trial proceedings to entail documents and testimony regarding ENVY's expenditures during the last five years, which have absolutely nothing to do with . . . [Vermont Yankee's] claims." Vermont Yankee Resp. at 7.

6/ "A.___" is a reference to the attached appendix.

Vermont Yankee concedes, "[b]y far the most significant portion of . . . [Vermont Yankee's] claim is the dimunition in value damages suffered when it sold the Power Station to a buyer who . . . undoubtedly accounted for the breach in determining the price it was willing to pay." Vermont Yankee Resp. at 6. The "most significant portion" of the alleged damages in Vermont Yankee is the exact claim that the Court in Boston Edison determined required joinder (along with the Government's attendant offset against the nuclear facility's buyer). Boston Edison, 67 Fed Cl. at 67.

While Vermont Yankee notes that the Government in Boston Edison was required to pursue its offset against the nuclear facility's buyer in a separate action with that plaintiff, Vermont Yankee again misses the point: when the Government seeks an offset against ENVY for any dimunition in value damages awarded in Vermont Yankee, the findings and conclusions supporting such an award must have preclusive effect on ENVY -- in Entergy Nuclear or any future action for post-retirement SNF storage costs. Otherwise, the significant risk to the Government of incurring duplicative damages awards will persist. This is why the Court in Boston Edison granted joinder regarding the seller utility's dimunition in value claim, and, although the Government there will have to seek an offset against the buyer utility in a separate action, the Court's findings and conclusions in Boston Edison regarding the seller's dimunition in value claim will be binding on the buyer utility. This is precisely what the Government is seeking in the present motion.

CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant the Government's motion to join plaintiffs Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc., to Vermont Yankee, or, in the alternative, issue binding notice to Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Joshua E. Gardner
JOSHUA E. GARDNER
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7583
Fax: (202) 307-2503

OF COUNSEL

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LO RE
Senior Trial Counsel

JOSEPH E. ASHMAN
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

April 21, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on APRIL 21, 2008, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSES TO MOTION FOR JOINDER" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Joseph E. Ashman