Nos. 02-898C & 03-02663C
Judge Wheeler

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

VERMONT YANKEE NUCLEAR POWER CORPORATION

and

ENTERGY NUCLEAR VERMONT YANKEE, LLC
and ENTERGY NUCLEAR OPERATIONS, INC.

Plaintiffs,

v.

UNITED STATES OF AMERICA

Defendant.

---

**ENTERGY NUCLEAR VERMONT YANKEE, LLC AND ENTERGY NUCLEAR OPERATIONS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING OWNERSHIP OF AND RIGHT TO PURSUE CLAIMS OR, IN THE ALTERNATIVE, MOTION *IN LIMINE* TO PRECLUDE VERMONT YANKEE NUCLEAR POWER CORPORATION FROM INTRODUCING EVIDENCE REGARDING CLAIMS NOT RETAINED**

---

Of Counsel:

L. Jager Smith, Jr.
WISE CARTER CHILD
& CARAWAY, P.A.
1340 Echelon Parkway
Jackson, MS 39213
Telephone: (601) 368-5572
Facsimile: (601) 368-5816

Brad Fagg
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-5191 Telephone
(202) 739-3001 Facsimile
COUNSEL OF RECORD FOR
ENTERGY NUCLEAR VERMONT YANKEE LLC
and ENTERGY NUCLEAR OPERATIONS, INC.

June 11, 2008

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 2

STATEMENT OF FACTS ..... 3

A. VYNPC Broadly Assigned to Entergy Pre-Existing and Post-Acquisition Claims against the Government for Breach of the DOE Standard Contract. ..... 3

B. VYNPC Retained Only Those Potential Claims That Specifically Relate to Its Retained Liability for Payment of the "One-Time Fee." ..... 4

C. Entergy's Claims in Case No. 03-2663C ..... 5

D. VYNPC's Purported Claims in Case No. 02-898C ..... 5

ARGUMENT ..... 7

A. This Court Has Jurisdiction to Determine VYNPC's Right to Pursue VYNPC's Purported Claims against the Government. ..... 7

B. Standards for Partial Summary Judgment and Motions In Limine. ..... 8

C. VYNPC Assigned Its Claims for Pre-Closing Incurred Costs, and Therefore Cannot Now Pursue those Claims ..... 10

D. VYNPC Cannot Show That the Pre-Closing Costs It Now Pursues Are Related to the One-Time Fee. ..... 12

1. The meaning of the "claims . . . applicable to the one-time fee" reservation. ..... 12

2. VYNPC's interpretation renders the "one-time fee" provision of the PSA meaningless. ..... 13

3. VYNPC's interpretation renders the assignment provisions of the PSA meaningless. ..... 16

E. VYNPC Cannot Show That the Diminution-In-Value Claim That It Now Pursues Is Related to the One-Time Fee. ..... 17

CONCLUSION ..... 18

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*American Renovation & Construction Co. v. United States*, 65 Fed. Cl. 254 (2005) ........ 7

*Barmag Barmer Maschinenfabrik AG v. Murata Machine, Ltd.*, 731 F.2d 831 (Fed. Cir. 1984) ........ 8

*Baskett v. United States*, 2 Cl. Ct. 356 (1983) ........ 9

*Boston Edison Co. v. United States*, 80 Fed. Cl. 468 (2008) ........ 11, 17

*C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539 (Fed. Cir. 1993) ........ 10

*City of Tacoma v. United States*, 31 F.3d 1130 (Fed. Cir. 1994) ........ 12

*Commonwealth Edison Co. v. Allied-General Nuclear Services*, 731 F. Supp. 850 (N. D. Ill., 1990) ........ 8, 12

*Connecticut General Life Insurance Co. v. Chicago Title & Trust Co.*, 714 F.2d 48 (7th Cir. 1983) ........ 8

*Dalton v. Cessna Aircraft Co.*, 98 F.3d 1298 (Fed. Cir. 1996) ........ 14, 17

*Delmarva Power & Light Co. v. United States*, 79 Fed. Cl. 205 (2007), *appeal pending*, No. 2008-5010 (Fed. Cir.) ........ 9, 10, 11, 12

*Energy Oils, Inc. v. Montana Power Co.*, 626 F.2d 731 (9th Cir. 1980) ........ 8

*Fortec Constructors v. United States*, 760 F.2d 1288 (Fed. Cir. 1985) ........ 17

*General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978 (Fed. Cir. 1997) ........ 8

*Great American Insurance Co. v. United States*, 184 Ct. Cl. 520, 525 ........ 7

*Hercules, Inc. v. United States*, 292 F.3d 1378 (Fed. Cir. 2002) ........ 10

*Holley v. United States*, 124 F.3d 1462 (Fed. Cir. 1997) ........ 7

*Hotchkiss v. National City Bank*, 200 F. 287 (S.D.N.Y. 1911) ........ 8

*HRE, Incorporated v. United States*, 142 F.3d 1274 (Fed. Cir. 1998) ........ 12

*INSLAW, Inc. v. United States*, 35 Fed. Cl. 295 (1996) ........ 8, 9

## TABLE OF AUTHORITIES
(continued)

**Page**

*International Graphics, Div. of Moore Business Forms, Inc. v. United States*, 5 Cl. Ct. 100 (1984) ........ 9

*International Union, United Automobile, Aerospace & Agriculture Implement Workers of America, U.A.W. v. Skinner Engine Co.*, 188 F.3d 130 (3d Cir. 1999)........ 8

*L.S.S. Leasing Corp. v. United States*, 695 F.2d 1359 (11th Cir. 1982) ........ 8

*McAbee Construction Co. v. United States*, 97 F.3d 1431 (Fed. Cir. 1996)........ 12

*Medlin Construction Group v. Harvey*, 449 F.3d 1195 (Fed. Cir. 2006) ........14, 17

*Muniz v. United States*, 972 F.2d 1304 (Fed. Cir. 1992) ........ 8

*Norman v. United States*, 56 Fed. Cl. 255 (2003)........ 9

*Pauley Petroleum v. United States*, 219 Ct. C 591 F.2d 1308 (1979) ........ 7

*Seville Construction, Inc. v. United States*, 35 Fed. Cl. 242 (1996) ........ 17

*Taylor v. United States*, 73 Fed. Cl. 532 (2006)........ 4

*United States v. Johnson Controls, Inc.*, 713 F.2d 1541 (Fed. Cir. 1983) ........ 17

*Vermont Yankee Nuclear Power Corp. v. United States*, 73 Fed. Cl. 236 (2006)........2, 9, 11

*Whitney Benefits, Inc. v. United States*, 25 Cl. Ct. 232 (1992)........ 7

### STATE CASES

*Porter v. Commercial Casualty Insurance Co.*, 292 N.Y. 176, 54 N.E.2d 353 (1944) ........ 8

## TABLE OF AUTHORITIES
(continued)

**Page**

### FEDERAL STATUTES AND REGULATIONS

10 C.F.R. § 961.11 .......... 13

### MISCELLANEOUS

8A Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, *Federal Practice and Procedure 2d* §§ 2103, 2110 (1994 ed.) .......... 14

*Restatement (Second) of Contracts*, § 203(a) (1982) .......... 17

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **VERMONT YANKEE NUCLEAR POWER CORPORATION,**<br><br>and<br><br>**ENTERGY NUCLEAR VERMONT YANKEE, LLC, *et al.*,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>Defendant. | ) | **Nos.: 02-898C & 03-2663C**<br><br>**Judge Wheeler** |

**ENTERGY NUCLEAR VERMONT YANKEE, LLC AND ENTERGY NUCLEAR OPERATIONS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING OWNERSHIP OF AND RIGHT TO PURSUE CLAIMS OR, IN THE ALTERNATIVE, MOTION *IN LIMINE* TO PRECLUDE VERMONT YANKEE NUCLEAR POWER CORPORATION FROM INTRODUCING EVIDENCE REGARDING CLAIMS NOT RETAINED**

Plaintiffs Entergy Nuclear Vermont Yankee LLC and Entergy Nuclear Operations, Inc. (collectively, for these purposes, "Entergy") move under RCFC 56 for partial summary judgment regarding Entergy's rights to bring certain claims against the government for breach of the Standard Contract for Disposal of Spent Nuclear Fuel. More particularly, Entergy requests that the Court confirm that the plaintiff in Case No. 02-898C, Vermont Yankee Nuclear Power Corporation ("VYNPC"), did not retain any claims for damages against the Department of Energy ("DOE"), except certain limited potential claims relating to the "one-time fee," which are not being sought by VYNPC. In the alternative, Entergy moves under RCFC 16 for an order *in limine* precluding VYNPC from introducing evidence regarding claims not retained by VYNPC.

## INTRODUCTION

These spent nuclear fuel damages cases involve claims for contractual damages incurred at the Vermont Yankee Nuclear Power Station (the "Power Station") as a result of DOE's failure to commence accepting spent nuclear fuel under the DOE Standard Contract applicable to that plant. Both the former owner of the nuclear Power Station, VYNPC, and current owner, Entergy, seek damages arising from pre-sale activities. Entergy also seeks certain post-sale damages, and VYNPC seeks purported "diminution in value" damages. The Court has previously ruled that VYNPC validly assigned pre-closing damages to Entergy, *Vermont Yankee Nuclear Power Corp. v. United States*, 73 Fed. Cl. 236, 242 (2006), but stopped short of ruling that VYNPC had assigned all of its potentially viable claims. The Court noted that further development of the record was needed before the Court could determine as a matter of law whether all of VYNPC's claims had been assigned to Entergy, or whether the claims of VYNPC and Entergy overlapped. *Id.* At the Court's direction, therefore, the parties undertook extensive coordinated discovery regarding such matters, as well as regarding the parties' underlying claims. Representatives of VYNPC and Entergy have been deposed at length regarding the assignment issues, and voluminous documentation has been produced.

It is now clear as a matter of law that VYNPC did not retain the claims it purports to pursue in Case No. 02-898C. VYNPC broadly assigned in the Purchase and Sale Agreement ("PSA") all claims against DOE "accrued as of the closing . . . relating to periods prior to or following the closing." The only exceptions or "carve outs" were potential claims relating to the "one-time fee with respect to fuel used to generate electricity prior to April 7, 1983." When read in the context of the entire PSA, at the time it was entered in 2001, it is clear that this carve out was meant only to preserve potential remedies reciprocal to the liability for the one-time fee that was being retained by VYNPC. As the legal landscape has evolved, however, spent nuclear fuel

damage claims pursued in this Court involve no such remedies. More to the point, the claims for actual incurred pre-closing expenditures and for purported "diminution in value" of the plant that VYNPC seeks in Case No. 02-898C cannot plausibly be said to relate to the "one-time fee with respect to fuel used to generate electricity prior to April 7, 1983." As a matter of law, VYNPC did not retain the claims it purports to pursue, and therefore should not be allowed to pursue such claims, or at a minimum, should be precluded from adducing evidence in support of them. Summary judgment, or in the alternative, an *in limine* order, is appropriate.

## STATEMENT OF FACTS

### A. VYNPC BROADLY ASSIGNED TO ENTERGY PRE-EXISTING AND POST-ACQUISITION CLAIMS AGAINST THE GOVERNMENT FOR BREACH OF THE DOE STANDARD CONTRACT.

VYNPC entered into the PSA on August 15, 2001, and completed the sale of the Power Station to Entergy on July 31, 2002. In Section 2.1 of the PSA, VYNPC agreed to "sell, assign, convey, transfer and deliver" to Entergy substantially all of VYNPC's property interests associated with the Power Station (the "Acquired Assets"). (Exhibit A at 17-18). Among the Acquired Assets relevant to this motion are:

> (b) All Inventories and Nuclear Fuel wherever located and all Spent Nuclear Fuel and other Nuclear Materials located at the Site to which [VYNPC] has title.
>
> . . .
>
> (n) Subject to Section 6.11(b), any claims of [VYNPC] related to [DOE's] defaults under the DOE Standard Contract accrued as of the closing, whether relating to periods prior to or following the Closing, excluding such claims as may relate to the one-time fee with respect to fuel used to generate electricity prior to April 7, 1983.

PSA § 2.1(b), (n) (Exhibit A at 18, 19). (Section 6.11(b) refers to the one-time fee liabilities retained by VYNPC, discussed further below.)

In its October 19, 2006 decision, the Court held that VYNPC had the power to assign—and validly did assign—claims for "pre-existing" damages that arose before the date of the sale of the Power Station. 73 Fed. Cl. at 241-42. That determination is now the law of the case. *E.g.*, *Taylor v. United States*, 73 Fed. Cl. 532, 538 (2006). Left open was the question of whether VYNPC retained any viable claims against the DOE at all, or, more particularly, whether VYNPC retained claims it purports to pursue in Case No. 02-898C.

### B. VYNPC RETAINED ONLY THOSE POTENTIAL CLAIMS THAT SPECIFICALLY RELATE TO ITS RETAINED LIABILITY FOR PAYMENT OF THE "ONE-TIME FEE."

Expressly excluded from the PSA's definition of Acquired Assets were the "Excluded Assets" identified in Section 2.2 of the PSA. VYNPC retained, *inter alia*, as Excluded Assets: "the claims of [VYNPC] related or pertaining to [DOE's] defaults under the DOE Standard contract to the extent applicable to the one-time fee with respect to fuel used to generate electricity prior to April 7, 1983," and "[a]ny asserted or unasserted rights or claims that relate to the Excluded Assets or the Excluded Liabilities." PSA § 2.2 (f), (i) (Exhibit A at 20).

Additionally, VYNPC and Entergy expressly agreed that VYNPC would retain "[a]ny Liability . . . under the DOE Standard Contract with respect to the one-time fee for fuel burned prior to April 7, 1983." PSA § 2.4(m) (Exhibit A at 24). VYNPC is ultimately responsible for paying the one-time fee when it becomes due, "subject to any rights of set-off to which [VYNPC] may be entitled by reason of [DOE's] defaults under said DOE Standard Contract."[1] PSA § 6.11(b) (Exhibit A at 63).

---

[1] When VYNPC entered into the Standard Contract, it elected to defer payment of the one-time fee until a date prior to the date that the Government was first to accept the Power Station's SNF, with interest accruing from April 7, 1983 to the date of payment. *Vermont Yankee*, 73 Fed. Cl. at 238. To date, VYNPC has not paid the one-time fee.

### C. ENTERGY'S CLAIMS IN CASE NO. 03-2663C.

Entergy asserts claims for partial breach of contract against DOE, arising from DOE's failure to commence accepting spent nuclear fuel under the DOE Standard Contract. Those claims include both pre-existing and post-closing damages. Approximately $7 million in costs were incurred in connection with a pre-closing racking project during 2000-2001 at the Power Station.. In addition, after acquiring the plant, Entergy has had to construct a dry storage facility at the Power Station, and expended tens of millions of dollars on the project. Entergy will demonstrate at trial that these racking and dry storage activities would not have been necessary if DOE had complied with its obligations under the Standard Contract, and that such damages are therefore recoverable by Entergy under the applicable standards.

### D. VYNPC'S PURPORTED CLAIMS IN CASE NO. 02-898C.

Notwithstanding VYNPC's broad assignment of all potential claims to Entergy except those relating to the one-time fee, VYNPC's First Amended Complaint baldly asserts "claims for damages in accordance with the claims [VYNPC] reserved the rights to pursue in its purchase and sale agreement with [Entergy], including pursuit of damages for the diminished selling value of the Power Station." First Am. Compl. ¶ 3.

VYNPC's First Amended Complaint does not specify how the "claims [it] reserved the rights to pursue" might include pre-existing claims for spent fuel storage expenditures or purported "diminution in value" claims, nor does it specify where in the PSA VYNPC reserved such rights. The First Amended Complaint nonetheless goes on to assert that "[a]s a direct consequence of DOE's disregard of its contractual obligations," VYNPC has suffered damages including "substantial additional costs to provide for extended on-site storage of the Power Station's SNF prior to the sale of the Power Station," "regulatory costs associated with efforts to ensure sufficient on-site storage capacity or alternative off-site storage capacity to permit

continued operation of [VYNPC's] nuclear plants," as well as "diminished value of the Power Station" on the theory that, but for DOE's breach, VYNPC "would have been able to sell the Power Station for a higher price." First Am. Compl. ¶¶ 22, 26.

VYNPC has made *no* claims for damages that can plausibly be said to relate to the one-time fee. As the course of discovery has made clear, VYNPC is plunging ahead with pursuit of claims for pre-existing actual spent fuel storage expenditures. For example, VYNPC's Fourth Request for Production of Documents to Entergy requested "all purchase orders, work orders, and contracts related to any racks acquired for storage of SNF at, or reracking performed at, the Vermont Yankee Nuclear Power Station during the years 2000 and 2001." (Exhibit B at 7, ¶ 1). VYNPC is also plunging ahead with purported diminution-in-value claims. For example, VYNPC's First Request for Production of Documents to Entergy requested "[a]ll documents assessing the effect of DOE's delay in the acceptance of SNF on the value of the Nuclear Station." (Exhibit C at 7, ¶ 26). VYNPC, in other words, is proceeding as if it had retained, rather than expressly assigned, claims against DOE "accrued as of the closing . . . relating to periods prior to . . . the closing." PSA § 2.1(n) (Exhibit A at 19).

Finally, in response to a motion by the government, VYNPC eschewed the pursuit of any recovery under a "takings" theory. (D.I. 189). The Court dismissed those claims, with prejudice. (D.I. 190, April 22, 2008.) Accordingly, whatever rights VYNPC may have to pursue claims against DOE are contractual, and are in turn defined by the metes and bounds of the PSA's assignment provisions.

## ARGUMENT

### A. THIS COURT HAS JURISDICTION TO DETERMINE VYNPC'S RIGHT TO PURSUE VYNPC'S PURPORTED CLAIMS AGAINST THE GOVERNMENT.

Although ordinarily this Court would not have jurisdiction to adjudge disputes between private parties, Entergy's motion does not require the Court to adjudicate purely private rights. In deciding this motion, the Court will be determining the ownership of the public right that is at the core of these cases—*i.e.*, the right to bring certain claims against the government in connection with the DOE Standard Contract applicable to the Power Station. *See Am. Renovation & Constr. Co. v. United States*, 65 Fed. Cl. 254, 261-62 (2005). "[T]he Court possesses ancillary and pendent jurisdiction that allows it to adjudicate issues that are incidental to the court's general jurisdictional authority to render money judgments." *Id.* at 260 (citing *Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997); *Pauley Petroleum v. United States*, 219 Ct. Cl. 24, 591 F.2d 1308 (1979)). Where, as here, the government is a stakeholder of a sum of money subject to competing claims, this Court clearly has jurisdiction to determine the respective rights of the parties to the money. *See Whitney Benefits, Inc. v. United States*, 25 Cl. Ct. 232, 233 (1992); *Great Am. Ins. Co. v. United States*, 184 Ct. Cl. 520, 525; 397 F.2d 289, 292 (1968).

Additionally, interests of judicial economy further support the propriety of this Court's resolving the assignment issues and plaintiffs' competing claims against the government. This Court is familiar with the facts and applicable law and has previously considered the PSA that forms the basis for this motion. *See Whitney Benefits*, 25 Cl. Ct. at 234 (interests of judicial economy support jurisdiction over competing private claims). There is no jurisdictional bar to the Court's resolution of this motion to decide whether VYNPC has the right to pursue its asserted claims against the government.

**B. STANDARDS FOR PARTIAL SUMMARY JUDGMENT AND MOTIONS *IN LIMINE*.**

1. Partial summary judgment should be granted when, as to a particular issue, no genuine issues of material fact are in dispute, and the moving party is entitled to judgment as a matter of law. *INSLAW, Inc. v. United States*, 35 Fed. Cl. 295, 302-03 (1996); RCFC 56(c). A "material" fact is one that affects the decision, so that "the finding of that fact is relevant and necessary to the proceedings." *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 980 (Fed. Cir. 1997). A "genuine" issue requires the nonmovant to present sufficient evidence "such that a reasonable fact finder could decide the question in favor of the nonmoving party." *Id.* Where, as here, the Court's determination of the issues depends on an interpretation of a contract, summary judgment is particularly appropriate. *See Muniz v. United States*, 972 F.2d 1304, 1309 (Fed. Cir. 1992) (questions of contract interpretation are questions of law that may be resolved by summary judgment).

For an alleged factual dispute to preclude summary judgment, the issue must be "genuine." *Barmag Barmer Maschinenfabrik AG v. Murata Mach, Ltd.* 731 F.2d 831, 835 (Fed. Cir. 1984). Where a party does not offer a "plausible interpretation" of a contractual provision, the "testimony of [the party's] negotiators concerning their belief as to what the contract meant cannot create a triable issue." *Commonwealth Edison Co. v. Allied-Gen. Nuclear Servs.*, 731 F. Supp. 850, 857 (N. D. Ill., 1990) (Posner, J.);[2] *see also Int'l Union, United Auto., Aerospace & Agric. Implement Workers of America, U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 144-45 (3d Cir. 1999) (testimony by management personnel as to what they believed an agreement meant

[2] Citing *Porter v. Commercial Cas. Ins. Co.*, 292 N.Y. 176, 183-84, 54 N.E. 2d 353, 356 (1944); *Hotchkiss v. Nat'l City Bank*, 200 F. 287, 293 (S.D.N.Y. 1911) (L. Hand, J.), *aff'd*, 201 F. 664 (2d Cir. 1912), *aff'd*, 231 U.S. 50 (1913); *Energy Oils, Inc. v. Mont. Power Co*., 626 F.2d 731, 737 n.11 (9th Cir. 1980); *L.S.S. Leasing Corp. v. United States*, 695 F.2d 1359, 1364 (11th Cir. 1982); *Conn. Gen. Life Ins. Co. v. Chicago Title & Trust Co.*, 714 F.2d 48, 50 (7th Cir. 1983).

could not be used to create ambiguity and thereby avoid summary judgment). As this Court has observed, "[a]ttorney argument asserting a genuine issue of material fact is insufficient to oppose successfully a motion for summary judgment." *Delmarva Power & Light Co. v. United States*, 79 Fed. Cl. 205, 217 (2007), *appeal pending*, No. 2008-5010 (Fed. Cir.).

That VYNPC validly assigned any contract claims to Entergy has been established as the law of this case, *Vermont Yankee*, 73 Fed. Cl. at 242, and the relevant language of the PSA is not in dispute. VYNPC cannot point to any facts or evidence that would allow the narrow contractual reservation of claims "related to the one-time fee" to be stretched to encompass the pre-existing damage and diminution-in-value claims now pursued by VYNPC. Arguments from VYNPC's lawyers or witnesses that the claims that VYNPC now pursues were retained cannot alter the plain language of the PSA. There are no genuine issues of material fact that would preclude the relief Entergy requests here.

2. In the alternative, a motion *in limine* is appropriate "to prevent a party before trial from encumbering the record with irrelevant, immaterial or cumulative matters. Such a motion enables a court to rule in advance on the admissibility of documentary or testimonial evidence and thus expedite and render efficient a subsequent trial." *Norman v. United States*, 56 Fed. Cl. 255, 267 (2003); *Int'l Graphics, Div. of Moore Bus. Forms, Inc. v. United States*, 5 Cl. Ct. 100, 104 (1984). "In this manner the court filters out irrelevant evidence and performs its function of "'simplifying issues for trial.'" *INSLAW*, 35 Fed. Cl. at 303, *quoting Baskett v. United States*, 2 Cl. Ct. 356, 359 (1983). Precluding a party from introducing evidence in support of claims that it has no legal right to pursue falls comfortably within the scope of the Court's *in limine* power.

### C. VYNPC ASSIGNED ITS CLAIMS FOR PRE-CLOSING INCURRED COSTS, AND THEREFORE CANNOT NOW PURSUE THOSE CLAIMS

VYNPC seeks to recover damages for spent fuel storage costs incurred prior to the closing of the sale of the Power Station. First Am. Compl. ¶¶ 22, 26; Exhibit B at 7, ¶ 1. The clear and unambiguous terms of the PSA, however, establish that the pre-existing claims that VYNPC now seeks to pursue were assigned to Entergy. Contract interpretation "begins with the plain language of the written agreement." *Hercules, Inc. v. United States*, 292 F.3d 1378, 1380-81 (Fed. Cir. 2002); *see also C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1543 (Fed. Cir. 1993) ("A contract is read in accordance with its express terms and the plain meaning thereof."). Section 2.1(n) of the PSA expressly assigns "any claims of [VYNPC] related to [DOE's] defaults under the DOE Standard Contract accrued as of the closing, whether relating to periods prior to or following the Closing, excluding such claims as may relate to the one-time fee with respect to fuel used to generate electricity prior to April 7, 1983." PSA § 2.1(n) (Exhibit A at 19) Under the plain and unambiguous language of the PSA, VYNPC validly assigned the pre-closing damages that it now claims to Entergy.

This Court has not hesitated to enforce provisions in contracts for the sale of power stations that assign to the buyer the rights to pursue damages for breach against DOE. In *Delmarva Power & Light Co. v. United States*, 79 Fed. Cl. 205 (2007), the seller of the power station assigned to the buyer:

> All claims of Seller relating to or pertaining to the Department of Energy's defaults under the Department of Energy Standard Contract . . . *accrued prior to, on or after the Closing date*, and all other claims of Seller against the Department of Energy with respect to, arising out of or in connection with the Purchased Assets . . .



1-WA/2988762.1

*Id.* at 216 (emphasis added). Based on this language, the Court held that "[n]o dispute can be marshaled that the plain language of this provision expressly assigns the right to pursue breach of contract claims against DOE for its failure to take SNF." *Id.* at 216.

VYNPC has often invoked *Boston Edison Co. v. United States*, 80 Fed. Cl. 468 (2008), *appeal pending*, No. 2008-5066 (Fed. Cir.), as being analogous to this case. *See. e.g.,* Transcript of Proceedings on January 30, 2008, at 6 (statement by VYNPC counsel that "[i]t's the same kind of case here as it was before Judge Lettow."). That reliance is misplaced. In *Boston Edison,* the assignment language expressly reserved to the seller the rights to "any claims of Seller related or pertaining to the [DOE's] defaults under the DOE Standard Contract accrued as of the Closing Date." *Id.* at 477, 496. The Court held that because "[t]he language of the assignment clause, however, expressly preserve[d] Boston Edison's claims arising *as of* the date of the closing," the case was distinguishable from *Delmarva*, "where plaintiffs had no cause of action after assigning their claims against the DOE in a transfer of the Standard Contract." *Id.* at 496 (emphasis in original).

Here, the PSA clearly assigned the right to pursue preexisting damages, as in *Delmarva,* and quite unlike *Boston Edison.* Section 2.1(n) of the PSA assigned "*any claims* of [VYNPC] related to [DOE's] defaults under the DOE Standard Contract, *accrued as of the closing . . . relating to periods prior to or following the Closing*." PSA § 2.1(n) (emphasis added) (Exhibit A at 19). Unlike the Seller in *Boston Edison*, VYNPC did not retain the rights to any claims that accrued as of the sale, but instead broadly transferred its rights, regardless of when they accrued, using language substantially the same as in *Delmarva*.

This Court previously held that VYNPC's assignment of claims for pre-existing damages to Entergy under the PSA was valid. *Vermont Yankee,* 73 Fed. Cl. at 241-242. As a matter of

law, the plain language of the PSA expressly assigns to Entergy the right to pursue VYNPC's claimed costs accrued as of the closing date. VYNPC cannot survive summary judgment by invoking extrinsic evidence to argue ambiguity where the contract itself is clear. *E.g., HRE, Incorporated v. United States*, 142 F.3d 1274, 1276 (Fed. Cir. 1998) ("well-settled rule that when the provisions of a contract are clear, 'the court may not resort to extrinsic evidence to interpret them.'"), *quoting, McAbee Constr. Co. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996); *see also City of Tacoma v. United States*, 31 F.3d 1130, 1134 (Fed. Cir. 1994) ("Outside evidence may not be brought in to create an ambiguity where the language is clear."); *Commonwealth Edison*, 731 F. Supp. at 857 ("testimony of [the party's] negotiators concerning their belief as to what the contract meant cannot create a triable issue.")

### D. VYNPC CANNOT SHOW THAT THE PRE-CLOSING COSTS IT NOW PURSUES ARE RELATED TO THE ONE-TIME FEE.

VYNPC's only prayer to maintain its claim for pre-closing damages is to argue that such damages were retained under the PSA. Section 2.2(i) and its conforming provisions reserve to VYNPC claims only "to the extent [they are] applicable to the one-time fee with respect to fuel used to generate electricity prior to April 7, 1983." PSA § 2.2(i) (Exhibit A at 20). That limited reservation is the only substantive difference between the operative PSA language in this case and that in *Delmarva*. VYNPC must be able to demonstrate that its claims are "applicable to the one-time fee with respect to fuel used to generate electricity prior to April 7, 1983." VYNPC cannot, as a matter of law, do so, and thus cannot distinguish *Delmarva*.

1. *The meaning of the "claims . . . applicable to the one-time fee" reservation.* The actual meaning of reserving claims relating to the one-time fee to VYNPC in Section 2.2(i) is apparent when the PSA is viewed as a whole. VYNPC retained reciprocal claims truly "applicable to the one-time fee," such as claims affecting the amount or terms of payment of the

one-time fee.[3] PSA §§ 2.4(m), 6.11(b) (Exhibit A at 24, 63). Significantly, however, that is not the sort of claim that VYNPC seeks to pursue in Case No. 02-898C. VYNPC has not to date even paid the one-time fee. The language of the PSA simply cannot be reconciled with VYNPC's efforts to force square pegs (its claims for pre-existing damages and diminution in value claims) into a round hole (the contractual reservation of claims "applicable to the one-time fee with respect to fuel used to generate electricity prior to April 7, 1983").

Beyond the fatal impediment of the plain contractual language, VYNPC's efforts suffer from further deficiencies. First, VYNPC incorrectly contends that *all* spent nuclear fuel storage mitigation activities result from the mere presence of historic pre-1983 discharges at the plant. The pre-1983 fuel has, since it was discharged, occupied discrete and finite space in the original spent fuel pool, without necessitating additional storage or mitigation measures. It is only as the plant continues to operate, and to discharge additional fuel, that additional storage space or alternatives are required. VYNPC overreaches in its effort to claim damages for such subsequent, post-1983 mitigation efforts. Second, and relatedly, VYNPC's arguments prove too much, and VYNPC cannot reconcile its arguments with any meaningful interpretation of the clear assignment of pre-existing and future claims to Entergy in the PSA.

2. *VYNPC's interpretation renders the "one-time fee" provision of the PSA meaningless.* In attempting to articulate a position that would allow it to pursue its claims,

[3] VYNPC's corporate representative testified that a trust, from ratepayer funds, had been established to cover payment of the one-time fee when it became due, and that VYNPC wanted to retain that trust because it believed it could make money by investing the amounts to receive a higher rate of return than the interest that would accrue in favor of the government under the DOE Standard Contract. *See* Exhibit D at 139:23-140:18; 10 C.F.R. § 961.11, Article VIII.B.2.(b) (contractual interest rate). Since it was retaining the trust, VYNPC also had to retain the obligation that goes with it—the obligation to pay the one-time fee "when due, subject to any rights of set-off to which [VYNPC] may be entitled by reason of the DOE's defaults." PSA § 6.11(b) (Exhibit A at 63). VYNPC therefore also had to retain (as one of the "Excluded Liabilities") "[a]ny Liability of [VYNPC] under the DOE Standard Contract with respect to the one-time fee for fuel burned prior to April 7, 1983." PSA § 2.4(m) (Exhibit A at 24).

VYNPC has effectively read the "one-time fee" term out of the PSA.. That is an untenable position. *E.g.*, *Medlin Constr. Group v. Harvey*, 449 F.3d 1195, 1201 (Fed. Cir. 2006) ("[b]ecause the government's interpretation would render that portion of the contract meaningless and superfluous, it is not reasonable."); *Dalton v. Cessna Aircraft Co.*, 98 F.3d 1298, 1305 (Fed. Cir. 1996) ("settled principles of contract interpretation" require construction of the contract "so as not to render portions of it meaningless.").

VYNPC is unable to specify what it interprets the "one-time fee" term to mean. When asked directly how the damages it seeks relates to the one-time fee, VYNPC's corporate representative[4] was unable to provide a coherent answer:

> Q How does re-racking relate to the one-time fee?
>
> A The one-time fee with respect to the pre-'83 fuel?
>
> Q Exactly.
>
> A Well, the pre-'83 fuel is the oldest fuel.
>
> Q Sure.
>
> A I mean, the plant started up commercially in 1972. There are a substantial number of fuel assemblies that were used to generate electricity prior to April 7th, 1983. Had the DOE met its obligations and – and come in on schedule and to take away the spent fuel, that fuel would have been the first to go, freeing up space for some of the newer fuel coming out of the reactor and needing storage. That didn't happen.
>
> Q So it's Vermont Yankee's understanding that because the failure to accept the pre-1983 fuel results in the need to re-rack, that re-rack relates to claims associated with the one-time fee payment?
>
> A With respect – with respect to the pre-1983 fuel, yes.

(Exhibit D at 43:5-44:1. *See also id.* at 46:11-48:11; 53:25-54:11).

---

[4] Testimony provided by VYNPC pursuant to RCFC 30(b)(6) must be construed as that of the corporation. *E.g.,* 8A C. Wright, A. Miller, R. Marcus, *Federal Practice and Procedure 2d* §§ 2103, 2110 (1994 ed.)

Because VYNPC is unable to address the "one-time fee" term in a coherent way, it instead focuses on the references to "pre-1983 fuel." But, that argument fares no better. VYNPC asserts that all spent fuel-related mitigation activities, and associated costs, may be claimed by VYNPC merely because pre-1983 fuel exists at the plant:

> Q The language here in Clause N says may relate to the one-time fee. Do you see that?
>
> A As may relate to the one-time fee with respect to fuel usage to generate electricity prior, yes.
>
> Q Okay. What's may relate mean as Vermont Yankee understands that term?
>
> A Has some – has some correlation to the fuel usage to generate electricity prior to April 7th, 1983, some association.
>
> Q So, again, if Entergy puts the pre-1983 spent fuel into dry storage, doesn't that relate to the fuel that was generated prior to April 7th 1983?
>
> A It could.

(Exhibit D at 101:10-23). Ultimately, VYNPC took the position that it did not matter whether any pre-1983 spent fuel was actually loaded into the new racks installed during the 2000-2001 pre-closing period, or whether the oldest spent nuclear fuel would have been the actual fuel to have left the site first, had DOE performed.[5] (Exhibit D at 176:21-177:15).

The need for additional storage obviously did not arise back in 1983. Rather, such mitigation activities, which occurred in 2000-2001 with regard to the racking project and in subsequent years with regard to dry storage, only became necessary because the plant continues to operate and to generate spent nuclear fuel that needs to go somewhere, and because DOE did

[5] The claims that VYNPC now pursues were not contemplated at the time of the PSA. VYNPC's corporate representative testified that, at the time of the sale, VYNPC itself had made no analysis of what was "related" to the one-time fee, and it was not until after the sale—indeed not until VYNPC amended its complaint in this lawsuit—that VYNPC hired experts to determine what claims VYNPC could argue were related to the one-time fee. (Exhibit D at 40:14-41:7; 124:7-12.)

not commence performance in 1998. It defies logic and common sense to assert that additional storage activities undertaken decades after the pre-1983 fuel was generated are attributable to that pre-1983 fuel. Yet, that is the only position that VYNPC can even offer in support of its claims for contractual damages in this case.

3. *VYNPC's interpretation renders the assignment provisions of the PSA meaningless.* In order to contort the language of the PSA into something that would allow it to pursue the pre-closing damages that it seeks, VYNPC necessarily asserts that all damages, whenever incurred, are potentially fair game for VYNPC. Under VYNPC's interpretation, the many millions of dollars *that Entergy is spending today* could be argued to have "some correlation to the fuel usage to generate electricity prior to April 7th, 1983." (Exhibit D at 101:10-23)

When asked to explain which claims VYNPC contemplated that Entergy would obtain under the broad assignment language of Section 2.1(n) of the PSA, and in particular whether VYNPC was entitled even to the dry storage costs that *Entergy* incurred after the sale, VYNPC's corporate representative had no answer:

> Q So, under Vermont Yankee's understanding could it claim as damages the costs of loading spent fuel to dry storage after the date of the closing?
>
> A Can I consult with my attorney on that?
>
> Q No.
>
> [VYNPC COUNSEL]: You need to answer his question.
>
> A I don't know. It's not one we've talked about.
>
> Q So, Vermont Yankee has no understanding one way or the other as to whether it could claim costs associated with the dry storage of pre-1983 spent fuel?
>
> A With regard to the costs that Entergy's incurring now, no. I don't know.
>
> Q You don't know?

A. No.

Q. And, more importantly, Vermont Yankee doesn't know, correct?

A. Correct.

(Exhibit D at 100:2-20). VYNPC also did not know what pre-closing claims might have been meant to be assigned to Entergy:

Q Okay. What claims prior to the closing did Vermont Yankee contemplate that Entergy would be retaining?

A I don't know.

(Exhibit D at 111:25-112:5). While VYNPC's representative on some occasions seemed to suggest that VYNPC's claims would be limited to those "accrued at the time of closing," (Exhibit D at 105:14-24), the contractual language itself of course makes no such distinction, in that accrued claims are assigned "whether relating to periods prior to or following the Closing." PSA § 2.1(n) (Exhibit A at 19).

The controlling contract interpretation principles are clear: a contract must be construed so as not to render portions of it as meaningless. *E.g.*, *Medlin*, 449 F.3d at 1201; *Dalton*, 98 F.3d at 1305; *Fortec Constructors v. United States*, 760 F.2d 1288, 1292 (Fed. Cir. 1985); *United States v. Johnson Controls*, Inc. 713 F.2d 1541, 1555 (Fed. Cir. 1983); *Seville Construction, Inc. v. United States*, 35 Fed. Cl. 242 (1996); *see Restatement (Second) of Contracts*, § 203(a) (1982). VYNPC's position cannot be squared with that elemental proposition.

### E. VYNPC CANNOT SHOW THAT THE DIMINUTION-IN-VALUE CLAIM THAT IT NOW PURSUES IS RELATED TO THE ONE-TIME FEE.

In addition to the pre-closing costs discussed above, VYNPC has also made a claim for "diminished value," on the theory that, but for DOE's breach, VYNPC "would have been able to sell the Power Station for a higher price." First Am. Compl. at ¶ 26. All of the above analysis

regarding the PSA and pre-existing claims is fully and equally applicable to the diminution in value claims. Unlike the *Boston Edison* case, VYNPC did not retain any viable pre-closing contractual claims — except for potential “one-time fee” claims, which diminution-in-value claims clearly are not. There is no plausible basis upon which VYNPC can correctly contend that a claim for alleged diminution in the value of the plant is in any way “applicable to the one-time fee with respect to fuel used to generate electricity prior to April 7, 1983.” PSA Section 2.2(i) (Exhibit A at 20). Accordingly, there is no reason to subject the parties, or the Court, to the substantial additional expense and waste of resources that continued prosecution of those claims by VYNPC would entail.

## CONCLUSION

For the reasons stated above, Entergy respectfully requests that the Court grant partial summary judgment in favor of Entergy. Specifically, Entergy requests that the Court confirm Entergy's rights to bring pre-existing claims against the government for breach of the Standard Contract for Disposal of Spent Nuclear Fuel, and confirm that VYNPC did not retain any claims for damages against the DOE, except certain limited potential claims relating to the "one-time fee," which are not implicated in these cases or currently being sought by VYNPC. In the alternative, Entergy moves under RCFC 16 for an order *in limine* precluding VYNPC from introducing any evidence regarding claims not retained by VYNPC.

Respectfully submitted,

Dated: June 11, 2008

/s/ Brad Fagg
BRAD FAGG
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004
Telephone: (202) 739-5191
Facsimile: (202) 739-3001

*Counsel of Record for Plaintiffs Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc.*

Of Counsel:

L. Jager Smith, Jr.
WISE CARTER CHILD
& CARAWAY, P.A.
1340 Echelon Parkway
Jackson, MS 39213
Telephone: (601) 368-5572
Facsimile: (601) 368-5816

**CERTIFICATE OF FILING**

I hereby certify that on this 11th day of June, 2008, a copy of the foregoing was served filed electronically with the Court. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Brad Fagg