# EXHIBIT C

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| VERMONT YANKEE NUCLEAR POWER CORPORATION,<br><br>and<br><br>ENTERGY NUCLEAR VERMONT YANKEE, LLC, et al.,<br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Nos. 02-898C & 03-2663C<br>(Judge Wheeler) |

**PLAINTIFF VERMONT YANKEE NUCLEAR POWER CORPORATION'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFFS ENTERGY NUCLEAR VERMONT YANKEE, LLC AND ENTERGY NUCLEAR OPERATIONS, INC.**

PLEASE TAKE NOTICE that, pursuant to Rule 34 of the Rules of the United States Court of Federal Claims, Plaintiff Vermont Yankee Nuclear Power Corporation ("Vermont Yankee") hereby requests that Plaintiffs Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc. produce for inspection and copying the documents described below at the offices of Dickstein Shapiro LLP, 1825 Eye Street NW, Washington, D.C. 20006, or at such place as may be agreed upon by all counsel, within 30 days after service of this notice.

## GENERAL DEFINITIONS

1. "Communication" means:

a. Any oral statement or utterance of any kind, whether in person, by telephone, by electronic mail, or by any other means of communication,

and any gesture intended to convey information, including any nonverbal expressions of assent, denial, doubt, lack of knowledge, or the like; and

b. Any writing, document, or other graphic material of any kind and description, whether inscribed by hand or by mechanical, electronic, microfilm, photographic, or other means, including electronic mail, as well as phonic (such as tape recordings) or visual reproductions of oral communications.

2. "Document" means the original (or any copy when the original is not available) and, unless otherwise stated, any non-identical copy (whether different from the original because of notes made on such copy or otherwise), all drafts, modifications, and amendments thereto, all correspondence transmitting such documents or explaining or commenting upon the contents thereof, and all working or supporting papers of every kind and description, whether inscribed by hand or by mechanical, electronic, magnetic, microfilm, photographic, or other means, as well as phonic (such as tape recordings) or visual reproductions of oral statements, conversations, or events, and including, but not limited to, correspondence, telegrams, notes, minutes, address and telephone directories, agendas, computer or electronic mail (e-mail), internal messages and memoranda, diaries or desk pads, calendars, reports, estimates, invoices, compilations, studies, tables and tabulations, tallies, diagrams, plans, maps, photographs, computer-stored or computer-readable data, bulletins, computer

printouts, audited and un-audited financial statements, accounting records, journals, answers to questionnaires, applications, check registers, checks, teletype, receipts, messages, and any other memorandum, recordation, or communication of any type. The term "Document" includes each and every dissimilar version thereof, including all drafts and versions bearing marginal comments, and also includes the file and folder tabs associated with each original and copy.

3. "Including" means including, but not limited to.

4. "Relate(s) to," "relating to," and "referring to" mean to concern, mention, reference, pertain to, reflect, comment upon, discuss, rely upon, relate to, refer to, utilize as input data or source material, support, undermine, critique, or in any manner be connected with the given subject, action, communication, or matter.

## SPECIFIC DEFINITIONS

5. "Government" means any agency or sub-agency of the United States Federal Government, including the United States Department of Energy and the Nuclear Regulatory Commission.

6. "DOE" means the United States Department of Energy.

7. "You," "your," "yourselves," and "Entergy" mean the plaintiffs Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc., as well as their present or former officers, employees, agents, attorneys, or representatives and every person acting upon their behalf in the context of the matters at issue in this action.

8. "Nuclear Station" means the Vermont Yankee Nuclear Power Station purchased by Entergy Nuclear Vermont Yankee, LLC on July 31, 2002.

9. "Sale" means the sale of the Nuclear Station that took place July 31, 2002.

10. "SNF" means spent nuclear fuel.

11. "Standard Contract" means the "Standard Contract For Disposal Of Spent Nuclear Fuel And/or High-Level Radioactive Waste," the terms of which are published at 10 C.F.R. § 961.11, and which Vermont Yankee entered with the Government in 1983.

12. "Vermont Yankee" means Vermont Yankee Nuclear Power Corporation, including its agents, legal counsel, advisors and consultants involved in the Sale.

## INSTRUCTIONS

1. Each request for documents and the portions thereof is to be responded to separately, but responses to one request for documents, or portions thereof may be incorporated by reference in responses to other requests for documents, or portions thereof.

2. If, in responding to this Request for Production, You discover any ambiguities when construing a request or definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

3. Whenever in this Request for Production, You are asked to produce a Document which is deemed by You to be properly withheld:

   a. If You are withholding the Document under claim of privilege (including the work product doctrine), please provide the information set forth in Fed. R. Civ. P. 26(b)(5) and Discovery Guidelines 9(c)(ii)(b), including the type of Document, the general subject matter of the Document, the date of the Document, and such other information as is sufficient to identify the Document, including, where appropriate, the author addressee, custodian, and any other recipient of the Document, and where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other, in a manner that, without

revealing the information claimed to be protected, will enable this party to assess, the applicability of the privilege or protection claimed by You;

b. If You are withholding the Document for any reason other than: (1) that it is beyond the scope of discovery, or (2) that a request is unduly burdensome, in addition to the information requested in paragraph 3(a), above, please state the reason for withholding the Document.

4. When a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a Document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a Document has been redacted or altered in any fashion, identify as to each Document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted Document.

5. If production of any requested Document is objected to on the grounds that production is unduly burdensome, describe the burden or expense of the proposed discovery.

6. All Documents produced pursuant to these requests are to be produced in the form, order and manner in which they are maintained in Your files, or shall be

organized and labeled to correspond with the categories in these requests. If the requested Documents are maintained in a file, the file folder is included in the Request for Production.

7. Any Document that bears any marks, including by way of illustration only and without limitation, initials, stamped indicia, comments or notations of any character, that are not a part of the original text or any reproduction thereof, is to be considered a separate Document.

8. Each Document production request is continuing in nature and is to be modified or supplemented to include any additional later discovered responsive information, knowledge, data or documents.

## DOCUMENT REQUESTS

1. All documents relating to decommissioning of the Nuclear Station, including all decommissioning studies, regardless of whether they were developed by Entergy, Vermont Yankee, outside contractors, or Entergy-affiliated entities, including but not limited to TLG Services.

2. All investigations, analyses, and/or studies of additional or alternative storage options for SNF at the Nuclear Station prepared on or before the July 31, 2002 Sale, whether prepared by or on behalf of Vermont Yankee, or by or on behalf of Entergy.

3. All spent fuel management studies relating to the Nuclear Station prepared by or on behalf of Vermont Yankee or Entergy on or before the July 31, 2002 Sale.

4. All documents relating to the following areas of information regarding the spent fuel pool at the Nuclear Station: capacity, including license capacity; historical changes in capacity; and current inventory (including data relating to the type and composition of material in the spent fuel pool, as well as details about burn-up and enrichment of the material in the pool).

5. All documents relating to any studies or analyses conducted on or before July 31, 2002 relating to the total storage capacity of the pool at the Nuclear Station and when that capacity would be reached.

6. All documents relating to any studies or analyses conducted on or before July 31, 2002 relating to the valuation, operations, and/or decommissioning of the Nuclear Station.

7. All documents prepared on or before July 31, 2002, whether prepared by or on behalf of Vermont Yankee or Entergy, relating to any potential or actual re-racking at the Nuclear Station, including but not limited to estimates, contracts, studies, and records of expenditures.

8. The Standard Contract entered into between Vermont Yankee and DOE.

9. All documents relating to Entergy's understanding of the extent to which, as a result of the Sale, Vermont Yankee assigned to Entergy its claims arising from DOE's breach of the Standard Contract.

10. All documents relating to communications regarding the extent to which, as a result of the Sale, Vermont Yankee assigned to Entergy its claims arising from DOE's breach of the Standard Contract.

11. All documents relating to proposed, submitted, approved, or disapproved Delivery Commitment Schedules for the Nuclear Station.

12. All communications between Vermont Yankee and DOE relative to the Standard Contract and/or Delivery Commitment Schedules for the Nuclear Station.

13. All documents relating to DOE's responsibilities with respect to the timing, rate and scheduling of acceptance of SNF from the Nuclear Station.

14. The Purchase and Sale Agreement that resulted in the Sale, including all drafts of such agreement.

15. All documents relating to the negotiations between Vermont Yankee and Entergy in connection with the Sale.

16. All proposed and/or draft agreements between Entergy, or any of its affiliates, and Vermont Yankee for purchase of the Nuclear Station that were negotiated prior to the auction that resulted in the Sale.

17. All bids, including all communications related thereto, submitted by Entergy in connection with its efforts to purchase the Nuclear Station.

18. All documents, including communications, generated by Entergy with regard to its interest in acquiring the Nuclear Station to official representatives of the State of Vermont, its agencies, or any local governmental body or agency within or acting on behalf of the State of Vermont.

19. All documents and/or communications relating to materials given to bidders in connection with the auction that resulted in the Sale of the Nuclear Station.

20. All comments made by Entergy relating to materials given to bidders in connection with the auction that resulted in the Sale of the Nuclear Station.

21. All due diligence and/or valuation documents relating to the Nuclear Station, both in the context of the auction prior to the Sale, and any other time Entergy considered acquisition of the Nuclear Station.

22. All due diligence materials and reports relating to the physical condition of the Nuclear Station.

23. All documents generated between January 1, 1997 and July 31, 2002 assessing the Nuclear Station, or reflecting Entergy's assessment of the nuclear industry in general.

24. All valuations, whether conducted internally or by third parties, relating to the assessment of the operating life of the Nuclear Station, including all analyses of possible or actual license extensions.

25. All valuation studies prepared by or on behalf of Entergy relating to the Nuclear Station.

26. All documents assessing the effect of DOE's delay in the acceptance of SNF on the value of the Nuclear Station.

27. All documents relating to communications between Entergy and Vermont Yankee relating to the Sale.

28. All documents generated from January 1997 through July 31, 2002 relating to meetings held by Entergy's governing boards and/or committees thereof, including minutes and transcripts, related to the Nuclear Station.

29. All documents, including documents submitted or provided to the Nuclear Regulatory Commission, state regulatory commissions, affected municipalities, and any other third parties, relating to the Sale of the Nuclear Station.

30. All documents, including documents submitted or provided to the Nuclear Regulatory Commission, state regulatory commissions, affected municipalities, and any other third parties, relating to any post-Sale extension or renewal of the operating license of the Nuclear Station.

31. All documents relating to Entergy's expectations or assumptions regarding future dry storage or re-racking at the time of the Sale.

32. All documents relating to costs and expenditures incurred by Vermont Yankee through July 31, 2002 to store SNF, and/or to plan for future storage of SNF at the Nuclear Station.

33. All financial statements relating to the operation of the Nuclear Station between January 1995 and July 31, 2002.

34. All capital expenditure analyses prepared by or for Entergy on or before July 31, 2002 relating to the Nuclear Station.

35. All documents relating to the financing of the Sale of the Nuclear Station, including but not limited to any communications with commercial banks and/or financial institutions, or otherwise relating to debt financing.

36. All presentations, press releases, meeting notes and other documents relating to Entergy's communications to the investment community regarding the Sale.

37. All documents and/or communications, analyses, or studies relating to Entergy's intentions and/or plans regarding the possible or actual securing of license extensions or renewals for operation of the Nuclear Station, including but not limited to any filings made to the Nuclear Regulatory Commission.

Date: June 21, 2007

Respectfully submitted,

Richard J. Conway by Scott Arnold

Richard J. Conway
DICKSTEIN SHAPIRO LLP
1825 Eye Street, N.W.
Washington, D.C. 20006
(202) 420-2200
*Counsel of Record for Vermont Yankee Nuclear Power Corporation*

Of Counsel:

Scott Arnold
Nicholas W. Mattia, Jr.
Bradley D. Wine
DICKSTEIN SHAPIRO LLP
1825 Eye Street, N.W.
Washington, D.C. 20006
(202) 420-2200

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of June, 2007, I caused to be served by hand messenger "Plaintiff Vermont Yankee Nuclear Power Corporation's First Request for Production of Documents to Plaintiffs Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc.," addressed as follows:

Marian E. Sullivan, Esq.
Trial Attorney
U.S. Department of Justice
Commercial Litigation Branch
Civil Division, 8th floor
Classification Unit
1100 L Street, N.W.
Washington, D.C. 20530
*Counsel for Defendant*

Brad Fagg, Esq.
MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
*Counsel for Plaintiffs Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc.*

Scott Arnold