**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **VERMONT YANKEE NUCLEAR POWER CORPORATION,**<br><br>**and**<br><br>**ENTERGY NUCLEAR VERMONT YANKEE, LLC, et al.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>**Defendant.** | ) | **Nos. 02-898C & 03-2663C**<br>**(Judge Wheeler)** |

**PLAINTIFF VERMONT YANKEE NUCLEAR POWER CORPORATION'S RESPONSE TO PLAINTIFFS ENTERGY NUCLEAR VERMONT YANKEE, LLC AND ENTERGY NUCLEAR OPERATIONS, INC.'S PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING OWNERSHIP OF AND RIGHT TO PURSUE CLAIMS OR, IN THE ALTERNATIVE, MOTION *IN LIMINE* TO PRECLUDE VERMONT YANKEE NUCLEAR POWER CORPORATION FROM INTRODUCING EVIDENCE REGARDING CLAIMS NOT RETAINED**

In response to Plaintiffs Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc.'s (collectively, "Entergy") Proposed Findings of Uncontroverted Fact in Support of Motion for Partial Summary Judgment Regarding Ownership of and Right to Pursue Claims or, in the Alternative, Motion *in Limine* to Preclude Vermont Yankee Nuclear Power Corporation ("VYNPC") from Introducing Evidence Regarding Claims Not Retained, Plaintiff VYNPC, through its undersigned counsel, respectfully responds as follows:

1. VYNPC entered into the Purchase and Sale Agreement ("PSA") on August 15, 2001, and completed the sale of the Power Station to Entergy on July 31, 2002.

**RESPONSE:** VYNPC does not dispute the statement in Paragraph 1 above.

2. In Section 2.1 of the PSA, VYNPC agreed to "sell, assign, convey, transfer and deliver" to Entergy substantially all of VYNPCs' [sic] property interests associated with the Power Station (the "Acquired Assets").

**RESPONSE:** VYNPC does not dispute that the PSA contains the language quoted in Paragraph 2 above, with the exception that Section 2.1 reads:

> 2.1 Transfer of Assets. Upon the terms and subject to the satisfaction of the conditions contained in this Agreement, at the Closing the Seller will sell, assign, convey, transfer and deliver to the Buyer, and the Buyer will purchase, assume and acquire from the Seller, free and clear of all Encumbrances (except for Permitted Encumbrances), all of the Seller's right, title and interest immediately prior to the Closing in and to all of the properties and assets constituting or used in the operation of the Facility on or prior to the Closing Date (collectively, "Acquired Assets"), including, without limitation: [the assets set forth in Sections 2.1(a) through 2.1(q)].

"Excluded Assets" set forth in Section 2.2 of the PSA were excluded from the "Acquired Assets" that Entergy acquired.

3. Among the Acquired Assets were:

> (b) All Inventories and Nuclear Fuel wherever located and all Spent Nuclear Fuel and other Nuclear Materials located at the Site to which [VYNPC] has title.
>
> . . .
>
> (n) Subject to Section 6.11(b), any claims of [VYNPC] related to [DOE's] defaults under the DOE Standard Contract accrued as of the closing, whether relating to periods prior to or following the Closing, excluding such claims as may related to the one-time fee with respect to fuel used to generate electricity prior to April 7, 1983.

PSA § 2.1(b), (n).

**RESPONSE:** VYNPC does not dispute that the PSA contains the language quoted in Paragraph 3 above, with the exception that Section 2.1(n) reads:

> (n) Subject to Section 6.11(b), any claims of [VYNPC] related to [DOE's] defaults under the DOE Standard Contract accrued as of the Closing, whether relating to periods prior to or following the Closing, excluding such claims as may relate to the one-time fee with respect to fuel used to generate electricity prior to April 7, 1983.

4. Expressly excluded from the PSA's definition of Acquired Assets were the "Excluded Assets" identified in Section 2.2 of the PSA.

**RESPONSE:** VYNPC does not dispute the statement in Paragraph 4 above.

5. The Excluded Assets included: "the claims of [VYNPC] related or pertaining to [DOE's] defaults under the DOE Standard contract to the extent applicable to the one-time fee with respect to fuel used to generate electricity prior to April 7, 1983," and "[a]ny asserted or unasserted rights or claims that relate to the Excluded Assets or the Excluded Liabilities." PSA § 2.2(f), (i).

**RESPONSE:** VYNPC does not dispute that the PSA contains the language quoted in Paragraph 5 above.

6. Additionally, VYNPC and Entergy expressly agreed that VYNPC would retain "[a]ny Liability . . . under the DOE Standard Contract with respect to the one-time fee for fuel burned prior to April 7, 1983." PSA § 2.4(m).

**RESPONSE:** VYNPC does not dispute that the PSA contains the language quoted in Paragraph 6 above.

7. With respect to spent nuclear fuel fees, the PSA provided at Section 6.11:

> (a) Between the date hereof and the Closing, and at all times thereafter, the Seller will pay as they come due all Spent Nuclear Fuel Fees and any other fees associated with electricity generated at VYNPS prior to Closing, and the Buyer shall have no liability or responsibility therefor. The Buyer shall pay and discharge all fees and expenses associated with electricity generated at VYNPS from and after the Closing, and the Seller shall have no liability or responsibility therefor. The Buyer shall assume title to and responsibility for the storage and disposal of Spent Nuclear Fuel in VYNPS as of the Closing. The Seller shall assign to the Buyer the Standard Contract, except for the obligation to pay the one-time fee, and shall provide the required notice to the DOE within ninety (90) days of transfer of title to spent fuel.
>
> (b) The Seller agrees, upon receipt of at least 30 days advance written notice from the Buyer of the date on which the one-time fee for fuel burned prior to April 7, 1983 under the DOE Standard Contract will become due and payable in accordance with the terms of the DOE Standard Contract, to cause such fee to

be duly paid when due, subject to any rights of set-off to which the Seller may be entitled by reason of the Department of Energy's defaults under said DOE Standard Contract.

**RESPONSE:** VYNPC does not dispute that the PSA contains the language quoted in Paragraph 7 above, with the exception that Section 6.11(a) reads:

> (a) Between the date hereof and the Closing, and at all times thereafter, the Seller will pay as they come due all Spent Nuclear Fuel Fees and any other fees associated with electricity generated at VYNPS prior to the Closing, and the Buyer shall have no liability or responsibility therefor. The Buyer shall pay and discharge all fees and expenses associated with electricity generated at VYNPS from and after the Closing, and the Seller shall have no liability or responsibility therefor. The Buyer shall assume title to and responsibility for the storage and disposal of the Spent Nuclear Fuel in VYNPS as of the Closing. The Seller shall assign to the Buyer the DOE Standard Contract, except for the obligation to pay the one time fee, and shall provide the required notice to the DOE within ninety (90) days of transfer of title to spent fuel.

8. When VYNPC entered into the Standard Contract, it elected to defer payment of the one-time fee until a date prior [to] first delivery [of] SNF to the government, with interest accruing from April 7, 1983 to the date of payment. *Vermont Yankee*, 73 Fed. Cl. at 238.

**RESPONSE:** VYNPC does not dispute that it has elected to defer payment of the one-time fee to the Government, with interest accruing from April 7, 1983 to the date of payment.

9. To date, VYNPC has not paid the one-time fee. *Vermont Yankee*, 73 Fed. Cl. at 238.

**RESPONSE:** VYNPC does not dispute that it has not yet paid the one-time fee.

10. VYNPC's First Amended Complaint in Case No. 02-898C asserts "claims for damages in accordance with the claims [VYNPC] reserved the rights to pursue in its purchase and sale agreement with [Entergy], including pursuit of damages for the diminished selling value of the Power Station." First Am. Compl. ¶ 3.

**RESPONSE:** VYNPC does not dispute that its First Amended Complaint contains the language quoted in Paragraph 10 above.

11. The First Amended Complaint in Case No. 02-898C asserts that "[a]s a direct consequence of DOE's disregard of its contractual obligations," VYNPC has suffered damages including "substantial additional costs to provide for extended on-site storage of the Power Station's SNF prior to the sale of the Power Station," "regulatory costs associated with efforts to ensure sufficient on-site storage capacity or alternative off-site storage capacity to permit continued operation of [VYNPC's] nuclear plants," as well as "diminished value of the Power Station" on the theory that, but for DOE's breach, VYNPC "would have been able to sell the Power Station for a higher price." First. Am. Compl. ¶¶ 22, 26.

**RESPONSE:** VYNPC does not dispute that its First Amended Complaint contains the language quoted in Paragraph 11 above, with the exception that the second sentence in paragraph 26 of its First Amended Complaint reads: "Furthermore, the breach diminished the value of the Power Station, such that Vermont Yankee would have received a higher price for selling the Power Station."

12. In case No. 02-898C, VYNPC seeks recovery for racking costs incurred during 2000-2001. For example, VYNPC's Fourth Request for Production of Documents to Entergy requested "all purchase orders, work orders, and contracts related to any racks acquired for storage of SNF at, or reracking performed at, the Vermont Yankee Nuclear Power Station during the years 2000 and 2001."

**RESPONSE:** VYNPC does not dispute that its Fourth Request for Production of Documents to Entergy contains the language quoted in Paragraph 12 above, or that VYNPC seeks recovery for racking costs incurred during 2000-2001.

13. In Case No. 02-898C, VYNPC seeks recovery for purported diminution-in-value of the plant. For example, VYNPC's First Request for Production of Documents to Entergy

requested "All documents assessing the effect of DOE's delay in the acceptance of SNF on the value of the Nuclear Station."

**RESPONSE:** VYNPC does not dispute that its First Request for Production of Documents to Entergy contains the language quoted in Paragraph 13 above, or that VYNPC seeks recovery for diminution-in-value damages.

14. In response to a motion by the government, VYNPC did not oppose the dismissal of its "takings" claims.

**RESPONSE:** VYNPC does not dispute the statement in Paragraph 14 above.

15. The Court dismissed the takings claims of VYNPC, with prejudice.

**RESPONSE:** VYNPC does not dispute the statement in Paragraph 15 above.

Date: July 31, 2008

Respectfully submitted,

s/Richard J. Conway
Richard J. Conway
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
(202) 420-2200 (Phone)
(202) 420-2201 (Fax)

*Counsel of Record for Plaintiff*
*Vermont Yankee Nuclear Power Corporation*

Of Counsel:

Scott Arnold
Nicholas W. Mattia, Jr.
Shannon Forchheimer
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
(202) 420-2200 (Phone)
(202) 420-2201 (Fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of July, 2008, a copy of the foregoing "Plaintiff Vermont Yankee Nuclear Power Corporation's Response to Plaintiffs Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc.'s Proposed Findings of Uncontroverted Fact in Support of Motion for Partial Summary Judgment Regarding Ownership of and Right to Pursue Claims or, in the Alternative, Motion *in Limine* to Preclude Vermont Yankee Nuclear Power Corporation from Introducing Evidence Regarding Claims Not Retained" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic case filing system. Parties may access this filing through the Court's system.

s/ Scott Arnold