**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **VERMONT YANKEE NUCLEAR POWER CORPORATION,** | ) | |
| **and** | ) | |
| **ENTERGY NUCLEAR VERMONT YANKEE, LLC, et al., Plaintiffs,** | ) | **Nos. 02-898C & 03-2663C (Judge Wheeler)** |
| **v.** | ) | |
| **THE UNITED STATES, Defendant.** | ) | |

**PLAINTIFF VERMONT YANKEE NUCLEAR POWER CORPORATION'S PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF ITS MEMORANDUM IN OPPOSITION TO PLAINTIFFS ENTERGY NUCLEAR VERMONT YANKEE, LLC AND ENTERGY NUCLEAR OPERATIONS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING OWNERSHIP OF AND RIGHT TO PURSUE CLAIMS OR, IN THE ALTERNATIVE, MOTION *IN LIMINE* TO PRECLUDE VERMONT YANKEE NUCLEAR POWER CORPORATION FROM INTRODUCING EVIDENCE REGARDING CLAIMS NOT RETAINED**

Pursuant to Rule 56(h)(2) of the Rules of the U.S. Court of Federal Claims, Plaintiff Vermont Yankee Nuclear Power Corporation ("VYNPC"), through its undersigned counsel, hereby submits the following Proposed Findings of Uncontroverted Fact in Support of Its Memorandum in Opposition to Plaintiffs Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc.'s (collectively, "Entergy") Motion for Partial Summary Judgment Regarding Ownership of and Right to Pursue Claims or, in the Alternative, Motion *in Limine* to Preclude Vermont Yankee Nuclear Power Corporation from Introducing Evidence Regarding Claims Not Retained:

1. In connection with the sale of the Vermont Yankee Nuclear Power Station ("Vermont Yankee"), JPMorgan circulated a Confidential Offering Memorandum in April 2001

which stated that "VYNPC chose to withhold payments to the [Department of Energy ("DOE")] for pre-1983 spent fuel disposal cost. This liability, along with any claims against DOE that arose prior to closing date, will be retained by VYNPC." *See* Exhibit A to Plaintiff Vermont Yankee Nuclear Power Corporation's Memorandum in Opposition to Plaintiffs Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc.'s Motion for Partial Summary Judgment Regarding Ownership of and Right to Pursue Claims or, in the Alternative, Motion *in Limine* to Preclude Vermont Yankee Nuclear Power Corporation from Introducing Evidence Regarding Claims Not Retained ("VYNPC Opposition") at VY00008239.

2. A draft Purchase and Sale Agreement ("PSA") was circulated in conjunction with the Confidential Offering Memorandum. *See* Exhibit B to VYNPC Opposition ¶ 2; Exhibit D to VYNPC Opposition ¶ 2.

3. The Confidential Offering Memorandum and the draft PSA each noted that VYNPC intended to retain certain claims arising out of DOE's breach of the Standard Contract obligation to commence acceptance of spent nuclear fuel ("SNF") for permanent disposal by January 31, 1998. *See* Exhibit B to VYNPC Opposition ¶ 3; Exhibit D to VYNPC Opposition ¶ 3.

4. The Confidential Offering Memorandum and the draft PSA provided that VYNPC intended to retain the obligations under the Standard Contract with respect to the payment of the "one time fee," and that such payment would be subject to a right of "set off" to which VYNPC may be entitled by reason of DOE's breach of the Standard Contract. *See* Exhibit B to VYNPC Opposition ¶ 4; Exhibit D to VYNPC Opposition ¶ 4.

5. The draft PSA contained the following language:

- Section 2.1(n) stated that an "Acquired Asset" of the sale would be: "Subject to Section 6.11(b), any claims of the Seller related to the Department of Energy's defaults under the DOE Standard Contract accrued as of the Closing Date, whether relating to periods prior to or following the Closing Date, excluding such claims as may relate to the one-time fee with respect to fuel burned prior to April 7, 1983." Exhibit C to VYNPC Opposition at VY00007431;

- Section 2.2(i) stated that an excluded asset of the sale would be: "The Vermont Yankee Spent Fuel Disposal Trust and claims of the Seller related or pertaining to the Department of Energy's defaults under the DOE Standard Contract to the extent applicable to the one-time fee with respect to fuel burned prior to April 7, 1983." *Id.* at VY00007432; and

- Section 6.11(b) stated that: "The Seller agrees, upon receipt of at least 30 days advance written notice from the Buyer of the date on which the one-time fee for fuel burned prior to April 7, 1983 under the DOE Standard Contract will become due and payable in accordance with the terms of the DOE Standard Contract, to cause such fee to be duly paid when due, subject to any rights of set-off to which the Seller may be entitled by reason of the Department of Energy's defaults under said DOE Standard Contract." *Id.* at VY00007465-66.

6. The purpose of the set-off language in Section 6.11(b) "was to allow VYNPC to recover its claims against DOE by reason of DOE's breach of the Standard Contract through a set-off mechanism, should it become necessary. Such necessity could arise in a situation where VYNPC is awarded damages from DOE for its breach of the Standard Contract with respect to fuel used to generate electricity prior to April 7, 1983, but VYNPC has not yet received those damages at the time the one-time fee becomes due." Exhibit D to VYNPC Opposition ¶ 4.

7. At the time of the distribution of the Offering Memorandum and the draft PSA, VYNPC intended to retain all claims associated with DOE's breach of the Standard Contract to the extent that DOE's defaults had damaged VYNPC with respect to the SNF to which the one-time fee related. *See* Exhibit B to VYNPC Opposition ¶ 5; Exhibit D to VYNPC Opposition ¶ 5.

8. In Entergy's July 20, 2001 markup of the provisions in the draft PSA dealing with retention of claims, Entergy suggested no significant changes. *See* Exhibit E to VYNPC Opposition at VY 02182008 PROD-2205, VY 02182008 PROD-2206, VY 02182008 PROD-2238.

9. The contract language addressing the retention of claims in the executed PSA was virtually identical to the language contained in the draft PSA sent in conjunction with the Confidential Offering Memorandum. *See* Exhibit F to VYNPC Opposition at VY00012468, VY00012469, VY00012512.

10. At no point during the negotiation of the PSA did Entergy disagree with or object to VYNPC's retention of VYNPC's claims against DOE. *See* Exhibit B to VYNPC Opposition ¶ 9; Exhibit D to VYNPC Opposition ¶ 8.

11. John Ritsher and Bruce Wiggett, each of whom was involved in the sale of Vermont Yankee on behalf of VYNPC, understood the PSA to mean that VYNPC retained all SNF claims against DOE as of closing with respect to fuel used to generate electricity prior to April 7, 1983. *See* Exhibit B to VYNPC Opposition ¶¶ 1, 7-8; Exhibit D to VYNPC Opposition ¶¶ 1, 7.

12. Once the PSA was executed, the sale of Vermont Yankee had to be approved by the Vermont Public Service Board ("VPSB"). *See* Exhibit D to VYNPC Opposition ¶ 9.

13. As part of the VPSB proceedings, the Vermont Department of Public Service submitted an information request to Entergy, asking Entergy to "[p]lease describe how Vermont consumers will receive reimbursement for damages associated with the DOE's breach of contract which occur prior to the closing date of the proposed transaction." Exhibit G to VYNPC Opposition at VY00030445. Entergy responded that "[t]o the extent that damages are related to

the one-time fee for pre-1983 fuel, Entergy is unable to answer this question as it has no right to pursue such damages. As to all other damages, these do not accrue to Vermont consumers." *Id.*

14. The VPSB issued an Order approving the sale on June 13, 2002. *See* Exhibit H to VYNPC Opposition.

15. The VPSB Order stated that:

> We also note that there is a meaningful chance that Vermont utilities will receive future funds – that they are not currently relying upon – as a result of distributions from (1) Nuclear Electric Insurance Limited, (2) excess funds in the Spent Fuel Disposal Trust, or (3) claims related to the Department of Energy's defaults under the DOE Standard Contract under Section 2.2(i) of the Sale Agreement. . . .
>
> If VYNPC receives Nuclear Electric Insurance Limited disbursements, access to excess funds in the Spent Fuel Disposal Trust, or claims related to the Department of Energy's defaults under the DOE Standard Contract under Section 2.2(i) of the Sale Agreement, Green Mountain and Central Vermont shall submit a plan for using their share of those funds to benefit ratepayers.

*Id.* at VY00004633, VY00004640.

16. On July 30, 2002, one day prior to the closing of the sale, VYNPC filed this lawsuit against DOE for breach of the Standard Contract. Exhibit I to VYNPC Opposition. VYNPC's Complaint asserted claims for damages for "costs to provide for extended on-site storage of its SNF" and "other substantial damages, including but not limited to regulatory costs associated with efforts to ensure sufficient on-site storage capacity or alternative off-site storage capacity to permit continued operation of its nuclear plants." *Id.* ¶ 22.

17. In an August 21, 2002 letter from VYNPC to DOE, by which Entergy was cc-ed, VYNPC informed DOE that it had retained damages "that might accrue under from [sic] the Department of Energy's breach of its obligations under the [Standard] Contract to the extent of the one-time fee for fuel used to generate electricity prior to April 7, 1983." Exhibit K to VYNPC Opposition at VYNPC 1st RFP 9-4.

18. In its First Amended Complaint, filed September 2, 2004, VYNPC claimed the damages listed above in Paragraph 16, as well as "damages for the diminished selling value of [Vermont Yankee]." Exhibit J to VYNPC Opposition ¶ 3.

19. In a January 31, 2006 hearing before the VPSB concerning the approval of an Independent Spent Fuel Storage Installation, an Entergy representative, Jay Thayer, when asked about any potential recovery from DOE, replied that "there is a claim from '98 to 2002, which is VYNPC's claim, and there's a claim from 2002 to present which would be the Entergy portion of the claim." Exhibit L to VYNPC Opposition at VY00168193-94.

20. At John Boguslawski's February 19, 2008 deposition, Mr. Boguslawski confirmed what claims VYNPC intended to retain in the PSA:

> Q . . . How did you know that you were retaining substantial claims, as you've used the phrase?
>
> A Because there were a lot of claims that arose by the closing.
>
> Q And, again, those claims are the re-rack claim[s]?
>
> A Re-racks, dry cask storage, and diminished value of the plant.

Exhibit Q to VYNPC Opposition at 60:22-61:4.

21. Curt Bregar, a Rule 30(b)(6) designee for Entergy, stated at his April 16, 2008 deposition that Entergy does not have any position or understanding as to the meaning of the phrase "claims . . . applicable to the one-time fee" in Section 2.2(i) of the PSA:

> Q. . . . Does Entergy have a position on what 2.2(i) means as a clause?
>
> A. We've never put a formal – that I know of, a formal position what that clause means.
>
> Q. How about informal position?
>
> A. I don't know of an informal position.
>
> Q. So Entergy has no position on what that clause means whatsoever, then?

A. Other than what I've already said, that our understanding of the Included Assets of it, we got pre- and postclosing damages.

Q. Does it – yes. But now I'm trying to figure out what this 2.2(i) Excluded Asset, means. And I'm asking you if Entergy has a position on 2.2(i). Does Entergy?

A. No, not that I know of.

Exhibit M to VYNPC Opposition at 362:6-22.

Date: July 31, 2008

Respectfully submitted,

s/Richard J. Conway
Richard J. Conway
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
(202) 420-2200 (Phone)
(202) 420-2201 (Fax)

*Counsel of Record for Plaintiff*
*Vermont Yankee Nuclear Power Corporation*

Of Counsel:

Scott Arnold
Nicholas W. Mattia, Jr.
Shannon Forchheimer
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
(202) 420-2200 (Phone)
(202) 420-2201 (Fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of July, 2008, a copy of the foregoing "Plaintiff Vermont Yankee Nuclear Power Corporation's Proposed Findings of Uncontroverted Fact in Support of Its Memorandum in Opposition to Plaintiffs Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc.'s Motion for Partial Summary Judgment Regarding Ownership of and Right to Pursue Claims or, in the Alternative, Motion *in Limine* to Preclude Vermont Yankee Nuclear Power Corporation from Introducing Evidence Regarding Claims Not Retained" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic case filing system. Parties may access this filing through the Court's system.

s/ Scott Arnold